William L. Wallander, SBT #20780750
Richard H. London, SBT #24032678
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; rlondon@velaw.com
blloyd@velaw.com

**COUNSEL FOR THE DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | |
| | § | Case No. 09-31797-bjh |
| CRUSADER ENERGY GROUP INC., *et al.* | § § § | Chapter 11 |
| | § | |
| DEBTORS. | § § | (Jointly Administered) |

### MOTION TO APPROVE AND AUTHORIZE IMPLEMENTATION OF MANAGEMENT INCENTIVE PROGRAM

**A HEARING WILL BE CONDUCTED ON THIS MATTER ON JUNE 23, 2009 AT 9:15 A.M. IN THE COURTROOM OF THE HONORABLE BARBARA J. HOUSER, 1100 COMMERCE STREET, 14TH FLOOR, DALLAS, TEXAS 75242. IF YOU OBJECT TO THE RELIEF REQUESTED, YOU MUST RESPOND IN WRITING, SPECIFICALLY ANSWERING EACH PARAGRAPH OF THIS PLEADING. UNLESS OTHERWISE DIRECTED BY THE COURT, YOU MUST FILE YOUR RESPONSE WITH THE CLERK OF THE BANKRUPTCY COURT WITHIN TWENTY (20) DAYS FROM THE DATE YOU WERE SERVED WITH THIS PLEADING. YOU MUST SERVE A COPY OF YOUR RESPONSE ON THE PERSON WHO SENT YOU THE NOTICE; OTHERWISE, THE COURT MAY TREAT THE PLEADING AS UNOPPOSED AND GRANT THE RELIEF REQUESTED.**

**TO THE HONORABLE BARBARA J. HOUSER, UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "Debtors")[1] file this *Motion to Approve and Authorize Implementation of Management Incentive Program* (the "Motion") and in support thereof would respectfully show the Court as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1. This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157. This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2. Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3. On March 30, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Cases").

4. Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

5. An official committee of unsecured creditors was appointed in the Cases on April 14, 2009.

## STATEMENT OF FACTS

6. Crusader Energy Group Inc. ("Crusader") and its seven direct subsidiaries (each of which is a Debtor) operate in the oil and gas industry. The Debtors' core operations consist of exploration for, and acquisition, production, and sale of, crude oil and natural gas. The Debtors hold leases covering approximately 1,000,000 gross acres (440,000 net acres) of oil and gas property (including approximately 12,800 drilling locations), operate approximately 350 wells, and hold working interests in approximately 670 wells. Their assets are located in various

---

[1] The Debtors include Crusader Energy Group Inc., Crusader Management Corporation, Crusader Energy Group, LLC, Knight Energy Management, LLC, Knight Energy Group, LLC, Knight Energy Group II, LLC, Hawk Energy Fund I, LLC, and RCH Upland Acquisition, LLC.

portions of Texas, Oklahoma, Colorado, Kansas, Louisiana, Montana, and North Dakota, specifically including the Anadarko Basin, Ft. Worth Basin, Permian Basin, and Williston Basin. The Debtors focus on the development of unconventional resource opportunities, such as the application of horizontal drilling and completion technology.[2] This focus has contributed to the Debtors' over 90% success rate with respect to their calendar year 2008 drilling program. The Debtors are lessees under oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

7. Since the Petition Date, Crusader's Board of Directors and, once employed, Chief Restructuring Officer, with the assistance of the Crusader's financial advisor, considered how to provide an incentive to Debtors' management (collectively, the "MIP Participants")[3] who have provided significant effort during the pendency of the Cases. Crusader's Board of Directors have proposed to implement a Management Incentive Program (the "MIP") to provide a further incentive to the MIP Participants to maximize the value of the Debtors' estates and to preserve the Debtors' businesses. Approval of the MIP is in the best interests of all parties in interest.

8. The terms of the MIP milestones as applicable to the MIP Participants are as follows:

    a.    Subject to the execution of an MIP agreement (a "MIP Agreement") in form and substance satisfactory to the Debtors, each of the MIP Participants will be eligible to participate in a MIP pool, which shall be funded from the proceeds of any sale of the Debtors' assets (each, a "Sale"), in an amount equal to 1% of (i) the aggregate value of any such Sales, minus (ii) $150,000,000 (the difference being

---

[2] Horizontal drilling and completion technology is an efficient means to develop shale and tight sand reservoirs.

[3] The MIP Participants that are eligible to participate in the management incentive program are David D. Le Norman, the Chief Executive Officer of Crusader; Charles L. Mullens, Jr., the General Counsel of Crusader; Roy A. Fletcher, the Vice President & Controller of Crusader; and Charles A. Paulson, the Vice President of Engineering of Crusader.

**MOTION TO APPROVE AND AUTHORIZE IMPLEMENTATION OF**
**MANAGEMENT INCENTIVE PROGRAM**     **Page 3 of 10**
Dallas 1565799v.3

the "<u>Incentive Payout</u>"), whether such Sale occurs through a plan of reorganization or otherwise.

b. Promptly after the closing of a Sale, subject to the value payout levels, each MIP Participant will be paid the following percentage of the Incentive Payout that has not previously been paid to them (the "<u>Incentive Payment</u>"): (i) David D. Le Norman – 40%; (ii) Charles L. Mullens – 20%; (iii) Roy A. Fletcher – 20%; and Charles A. Paulson – 20%.

c. Under no circumstances shall any MIP Participant be entitled to receive more than 130% of the MIP Participant's respective annual salary as of the date of the filing of this Motion.

d. If any MIP Participant is terminated for cause or resigns, such MIP Participant will not be eligible to participate in the MIP; however, such MIP Participant will still be eligible to participate in Crusader's current severance policy of two months severance. If the Cases are converted to ones under chapter 7 of the Bankruptcy Code, the MIP will terminate and no MIP Participant will be eligible to receive any Incentive Payment beyond that received as of such conversion. The MIP Participants shall not have entitlement to any remaining funds in the Incentive Payout.

e. As soon as reasonably practicable after the earlier of (i) a MIP Participant becomes disabled such that he can no longer perform his job functions, or (ii) the death of a MIP Participant, the Debtors or the trustee, as applicable, will make the following payments:

　　i. If such disability or death occurs prior to September 30, 2009, then the MIP Participant will be paid a percentage of its respective Incentive Payment calculated by dividing (A) the number of days between the Petition Date and the date of such disability, termination or conversion by (B) 180 days.

　　ii. If the disability or death occurs on or after September 30, 2009, the MIP Participant will be paid 100% of the unpaid portion of its respective Incentive Payment upon the applicable Sale or Sales, as the case may be, being consummated.

The MIP is illustrated in the document attached hereto as **Exhibit A**.

# RELIEF REQUESTED

## Overview

9.   Pursuant to Bankruptcy Code §§ 105(a), 363, and 503, the Debtors request that this Court enter an order authorizing the Debtors to implement the MIP and to allow all payments thereunder as administrative expenses of the Debtors' estates.

10.   Section 363(b)(1) provides that "[t]he trustee, after notice and a hearing, may use, sell, or lease, other than in the ordinary course of business, property of the estate." 11 U.S.C. § 363(b)(1). The use, sale, or lease of property of the estate, other than in the ordinary course of business, is authorized when a "sound business purpose" justifies such action. *See, e.g., In re Montgomery Ward Holding Corp.*, 242 B.R. 147, 153 (D. Del. 1999) (affirming bankruptcy court approval of key employee retention program, stated that "in determining whether to authorize the use, sale, or lease of property of the estate under [section 363(b)], courts require the debtors to show that a sound business purpose justifies such actions").

11.   The MIP is necessary to provide appropriate compensation to the MIP Participants given the additional responsibilities associated with the Debtors' Cases, and to ensure that the MIP Participants are adequately motivated and incentivized to perform the important tasks necessary to ensure an effective and orderly sale and/or reorganization of the Debtors' businesses. The MIP Participants have worked extremely hard before and after the filing of these Cases, and have expended significant effort to ensure a smooth transition to chapter 11. Additionally, the MIP Participants are largely responsible for the success of the sales process to date, which has been vibrant and active.

12.   The MIP Participants have provided their services without certainty of their ongoing and/or future employment. The MIP Participants are entitled to some incentive and assurance for their efforts. Otherwise, they may determine that they should seek employment

elsewhere. The targets set forth in the MIP are appropriate and market-based. Since the MIP guidelines are tied to Sale value, the MIP Participants' incentive is tied directly to the benefit experienced the Debtors' estates. Additionally, the MIP Participants create value for the Debtors' estates. In fact, many potentially interested bidders have already expressed a desire to retain current management after any Sale. Accordingly, the Debtors feel the MIP is a valid exercise of its business judgment.

13. Since the 2005 amendments to the Bankruptcy Code, courts have consistently upheld targeted incentive programs that are based on a variety of goals and targets as an exercise of the debtor's sound business judgment, and have repeatedly recognized that such programs have particular value in motivating management teams during the debtor's chapter 11 case. *See, e.g., In re Paul Reinhart, Inc.*, Case No. 08-35283 (HDH) [Doc. No. 180] (Bankr. N.D. Tex. December 4, 2008); *In re Nobex Corp.*, 2006 WL 4063024 *3-4 (Bankr. D. Del. 2006) (approving incentive payments to certain employees with amount of payments tied to a sales price achieved); *In re Pliant Corp.*, Case No. 06-10001 (MFW) (Bankr. D. Del. March 14, 2006) (approving management incentive compensation plan providing for cash rewards for achievement of organizational and personal performance goals); *In re Dura Automotive Sys., Inc.*, Case No. 06-11202 (KJC) [Doc. No. 1059] (Bankr. D. Del. February 21, 2007) (approving cash payments under the debtors' key management incentive plan for progress made in the debtors' restructuring); *In re PlusFunds Group, Inc.*, Case No. 06-10402 (JMP) (Bankr. S.D.N.Y. April 19, 2006) (granting debtor's request to implement a sale related incentive plan for six senior managers, payable upon a successful sale of substantially all of the debtor's assets).

### The MIP Complies With Section 503(c) of the Bankruptcy Code

14. Section 503(c) of the Bankruptcy Code is applicable to all bankruptcy cases filed after October 2005. It provides criteria for courts to use in approving certain types of payments

to insiders and "other transfers of obligations that are outside of the ordinary course of business." Section 503(c) contains: (1) a general prohibition of retention plans for insiders of a debtor; (2) limitations on severance payments to insiders of a debtor; and (3) standards governing other transfers or obligations that are outside the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition. 11 U.S.C. § 503(c). For the reasons set forth herein, neither §§ 503(c)(1) nor 503(c)(2) are applicable to the MIP. Moreover, as set forth below, the MIP complies with § 503(c)(3) of the Bankruptcy Code and, therefore, should be approved.

15. The MIP, and the payments contemplated thereunder, comply with section 503(c)(3) of the Bankruptcy Code. Section 503(c)(3) of the Bankruptcy Code states that:

> Notwithstanding subsection (b), there shall neither be allowed, nor paid—
>
> (3) other transfers or obligations that are outside of the ordinary course of business and not justified by the facts and circumstances of the case, including transfers made to, or obligations incurred for the benefit of, officers, managers, or consultants hired after the date of the filing of the petition.

11 U.S.C. § 503(c)(3). Courts have been unanimous in holding that they must use the "business judgment" standard to determine whether incentive programs and payments related thereto are justified. *See, e.g., In re Paul Reinhart, Inc.*, Case No. 08-35283 (HDH) [Doc. No. 180] (Bankr. N.D. Tex. December 4, 2008) (finding the management incentive plan was within the business judgment of the Debtor); *Global Home Prods.*, 369 B.R. at 784; *In re Old Ladder Co. (DE), Inc.*, Case No. 06-10578 (KJC) (Bankr. D. Del. July 20, 2006, Aug. 22, 2006, and Dec. 20, 2006); *In re Riverstone Networks, Inc.*, Case No. 06-10110 (CSS) (Bankr. D. Del. Mar. 28, 2006); *In re Pliant Corp.*, Case No. 06-10001 (MFW) (Bankr. D. Del. Mar. 14, 2006).

16. The Debtors submit that they have established a "sound business purpose" for the MIP, and therefore satisfy the requirements of §§ 363(b) and 503(c)(3) of the Bankruptcy Code. As set forth in detail below, the MIP is a "true" incentive plan that has been designed to motivate the MIP Participants to produce results that will benefit the Debtors' estates. Payments under the MIP are specifically tied to the various goals and/or financial indices necessary to effectuate a sale or reorganization of the Debtors' businesses. Based upon the foregoing, the Debtors believe they have a sound business purpose for establishing the MIP.

17. Pursuant to the statute's plain language, section 503(c)(1) of the Bankruptcy Code pertains solely to retention plans, and section 503(c)(2) only addresses the requirements for severance plans. Neither section applies to performance-based incentive plans. *See, e.g., In Re Global Home Prods. LLC*, 369 B.R. 778, 783 (Bankr. D. Del. 2007) ("If [the proposed plans] are plans intended to incentivize management, the analysis utilizes the more liberal business judgment review under § 363."); *In re Nobex Corp.*, Case No. 05-20050, 01/12/06 Hearing Tr. At 67 (Bankr. D. Del. 2006) (CSS); *In re Calpine Corp.*, Case No. 05-60200, 04/26/2006 Hearing Tr. At 87 (Bankr. S.D.N.Y. 2006 (BRL)).

18. The Debtors' proposed MIP is neither a retention plan nor a severance plan. The MIP is not intended to "induce" anyone to "remain with the Debtors' business," in a manner different than any other component of their management compensation, as all compensation is in some respect intended to induce employees to remain with their employer. Instead, the MIP is a performance-based plan that provides for targeted payments to the MIP Participants if they meet the objective performance criteria set forth herein. The Debtors have determined that the costs associated with such additional postpetition compensation are more than justified by the benefits that the Debtors will realize by creating appropriate incentive for the MIP Participants, whose

experience, skills and diligent work are critical for the Debtors to successfully sell or reorganize their businesses. The additional compensation proposed in this Motion will provide the MIP Participants with the appropriate incentives to reach certain performance goals related to the processing of the Debtors' Cases, and will enable the Debtors to maximize the value of their assets for the benefit of the estates and their creditors. Neither the performance goals nor the incentive payments provided under the MIP have an impermissible retention or severance component. Accordingly, sections 503(c)(1) and (c)(2) are not applicable to the MIP.

## Conclusion

19. For the reasons stated herein, the MIP is a valid exercise of the Debtors' business judgment and is warranted and justified by the facts and circumstances of this Case. The MIP satisfies the requirements of §§ 363(b) and 503(c)(3) of the Bankruptcy Code. The MIP is a true incentive plan that will both motivate and compensate the MIP Participants as well as benefit the Debtors' estates.

## PRAYER

The Debtors respectfully request that this Court approve and authorize them to implement the MIP and grant the Debtors such other and further relief to which they may be justly entitled.

Dated: May __, 2009

                                          Respectfully submitted,

                                          */s/*
                                          William L. Wallander, SBT #20780750
                                          Richard H. London, SBT #24032678
                                          Beth Lloyd, SBT #24060179
                                          **VINSON & ELKINS LLP**
                                          Trammell Crow Center
                                          2001 Ross Avenue, Suite 3700
                                          Dallas, Texas 75201-2975
                                          Tel: 214.220.7700
                                          Fax: 214.220.7716
                                          bwallander@velaw.com; rlondon@velaw.com; blloyd@velaw.com

                                      **COUNSEL FOR THE DEBTORS**

## CERTIFICATE OF SERVICE

I certify that on May __, 2009, a copy of the foregoing document was served by (i) the Electronic Case Filing System for the United States Bankruptcy Court for the Northern District of Texas; and (ii) to those parties listed on the attached Master Service List who do not otherwise receive electronic notice.

                                                        /s/
                                                 One of Counsel