U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

**ENTERED**

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

*Barbara J. Houser*

**Signed July 13, 2009**　　　　　　　　　　**United States Bankruptcy Judge**

---

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § | Case No. 09-31797-bjh-11 |
| | § | |
| **CRUSADER ENERGY GROUP INC.,** *et al.* | § § § | **Chapter 11** |
| | § | |
| **DEBTORS.** | § § | **Jointly Administered** |
| | § | |

### ORDER APPROVING AND AUTHORIZING
### IMPLEMENTATION OF MANAGEMENT INCENTIVE PROGRAM

On June 23, 2009, the Court considered the *Motion to Approve and Authorize Implementation of Management Incentive Program* [Docket No. 280] (the "Motion")[1] for entry of an order authorizing the Debtors to implement the MIP. The Court finds that (a) the relief requested in the Motion is essential to the operation of the Debtors' businesses and operations; (b) the implementation of the MIP is in the best interest of the Debtors' estates and creditors; and (c) adequate notice has been given under the circumstances and no other notice needs to be

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Motion.

given.  Based on the Motion, the representations and agreements of counsel, and the evidence

and arguments presented at the hearing on the Motion, the Court finds that the relief requested in

the Motion should be granted.  Therefore, it is

ORDERED that the Motion is **GRANTED** as set forth herein.  It is further

ORDERED that the MIP and the form of the Management Incentive Program Agreement

(the "MIP Agreement"), a copy of which is attached hereto as **Exhibit A**, is approved.  It is

further

ORDERED that the Debtors are authorized to implement the MIP on the following terms

(subject in all respects to those terms set forth in the MIP Agreement):

a.  Subject to the execution of a Management Incentive Program Agreement (a "MIP Agreement") in form and substance satisfactory to the Debtors and if the aggregate Transaction Value (as defined in that certain Engagement Letter dated February 26, 2009 by and between Jefferies & Company, Inc. and the Debtors but subject to the actual and unconditional receipt requirement of subparagraph (b) below) of any and all acquisitions by any person or persons of any of (i) the assets of the Debtors; or (ii) the outstanding capital stock of any of the Debtors (individually, a "Sale" and collectively, the "Sales") exceeds $200,000,000, then each MIP Participant will be eligible to participate in a MIP pool, which shall be funded from the proceeds of any Sale, in an amount equal to 1% of (i) the aggregate Transaction Value of any such Sales, minus (ii) $160,000,000 (the product being the "Incentive Payout"), whether any such Sale occurs through a plan of reorganization or otherwise.

b.  Any distribution of the Incentive Payout to the MIP Participants shall be at the discretion of Crusader Energy Group Inc.'s CRO Committee as currently constituted in consultation with the current CRO of the Debtors based upon such committee's determination as to the contribution of each individual toward a successful Sale and/or reorganization.  Subject to the foregoing, promptly after one or more of the Debtors' actual and unconditional receipt of the proceeds referenced in paragraph (a) above at levels to trigger the Incentive Payout, it is currently contemplated that each MIP Participant will be paid the following respective percentages of the Incentive Payout that has not previously been paid to them (the "Incentive Payment"): (i) David D. Le Norman – 40%; (ii) Charles L. Mullens – 20%; (iii) Roy A. Fletcher – 20%; and (iv) Charles A. Paulson – 20%.

c.  Under no circumstances shall any Incentive Payout be made on amounts by which any Sales exceed $300,000,000 such that the total Incentive Payment received by

1

any MIP Participant shall not be more than 156% of the MIP Participant's base salary as of the date of the filing of the Motion.

d.  If the MIP Participant is terminated for cause or resigns, the MIP Participant will not be eligible to participate in the MIP. If the Cases are converted to ones under Chapter 7 of the Bankruptcy Code, the MIP will terminate and the MIP Participant will not be eligible to receive any Incentive Payment beyond that received as of such conversion.

e.  If the MIP Participant is terminated without cause or a result of the MIP Participant's disability or death, the MIP Participant, or if applicable his beneficiary (as designated on a form provided by Crusader Energy Group Inc.) or if no such beneficiary is designated, his estate, will be paid the Incentive Payment in accordance with paragraph (b); provided that if such termination without cause, disability or death occurs prior to September 30, 2009, then the MIP Participant will be paid a percentage of the Incentive Payment calculated by dividing (i) the number of days between the Petition Date and the date of such disability by (ii) 180 days. The termination of the MIP Participant without cause or as a result of the MIP Participant's disability cannot be effectuated unless approved by the board of directors of Crusader Energy Group Inc.

f.  The MIP (i) replaces any incentive or performance based claim that could otherwise be asserted against any of the Debtors by any of the MIP Participants whether such claim arises by agreement, policy, practice, or procedure; and (ii) does not replace or affect any other claims of any of the MIP Participants, including any claim for severance if and as applicable; provided, however, that nothing herein shall be construed as a consent by any party in interest to any claims set forth in (ii) of this paragraph or under or the assumption of any agreement of employment, and such claims shall be subject to applicable non-bankruptcy and bankruptcy law with the all rights of interested parties reserved.

g.  The Incentive Payment payable pursuant to this Agreement shall be an allowed administrative expense claim, pursuant to section 503 of the Bankruptcy Code, for purposes of the Cases.

It is further

**ORDERED** that the Debtors are authorized to take any and all actions that they deem to be appropriate to implement the MIP, including the execution the MIP Agreements. It is further

**ORDERED** that, once earned, the Debtors are authorized to make payments to the MIP Participants under the MIP. It is further

**ORDERED** that the Debtors shall promptly reimburse the MIP Participants for their reasonable attorney's fees and related costs in connection with the MIP, provided that such reimbursement shall not exceed $30,000. It is further

**ORDERED** that this Order is without prejudice to the Debtors' second lienholders' entitlement to request and advocate the creation of an additional bonus pool for the benefit of the MIP Participants which bonus pool would be based upon, among other things, the achievement of certain operational and cash management objectives. It is further

**ORDERED** that the payments under the MIP shall be part of the carve-out as set forth in the current cash collateral order entered in this case.

**ORDERED** that this Court shall retain jurisdiction over all matters set forth in the Motion, including the entitlement of any party to any payment pursuant to the MIP.

### END OF ORDER ###

Dallas 1568439v.7

**EXHIBIT A**

Dallas 1568439v.7

# CRUSADER ENERGY GROUP INC.

## MANAGEMENT INCENTIVE PROGRAM AGREEMENT

WHEREAS, Crusader Energy Group Inc. (the "Company") recognizes the important goal of providing a further incentive to its management, including _____ (the "MIP Employee") to maximize the value of the Debtors' estates and to preserve the Debtors' businesses;

WHEREAS, in furtherance of that goal, the Company wishes to provide an additional financial incentive for the MIP Employee pursuant to this Crusader Energy Group Inc. Management Incentive Program Agreement (the "Agreement"); and

WHEREAS, the Agreement is one in a series of similar agreements, each as part of the Management Incentive Program (the "MIP").

NOW, THEREFORE, the Company and the MIP Employee agree as follows:

**1.     Purpose**.  The purpose of the Agreement is to provide a financial incentive for the MIP Employee to maximize the value of the Debtors' estates and to preserve the Debtors' businesses through the close of a Sale or Sales during the term of this Agreement.

**2.     Definitions**.  The following terms when used herein shall have the meanings set forth below, unless the context clearly indicates to the contrary.

(a)     "**Bankruptcy Court**" means the United States Bankruptcy Court for the Northern District of Texas.

(b)     "**Base Salary**" means the annual base salary of the MIP Employee in effect as of the date on which this Agreement is executed, which amount does not include any bonus, commission, incentive pay, overtime, equity compensation grants or exercises, auto or travel allowance, or other similar payments or compensation.

(c)     "**Board of Directors**" means the board of directors of the Company.

(d)     "**Cause**" means, as determined by the Board of Directors or the Compensation Committee thereof, in its sole discretion exercised in good faith, (i) the breach by the MIP Employee of any nondisclosure, noncompetition, or other agreements to which the MIP Employee and the Company are parties; (ii) the conviction, plea of *nolo contendre* or no contest or deferred adjudication or unadjudicated probation of or by the MIP Employee with respect to a felony or to a misdemeanor involving moral turpitude; (iii) the participation by the MIP Employee in any fraud; (iv) dishonesty by the MIP Employee that is detrimental to the best interest of the Company; (v) the willful and continued failure by the MIP Employee to substantially perform his duties for the Company (other than any such failure resulting from the MIP Employee's Disability) after written demand for substantial performance is delivered by the Company specifically identifying the manner in which the MIP Employee has not substantially performed his duties; or (vi) the willful engaging by the MIP Employee in misconduct which is

materially injurious to the Company, monetarily or otherwise, including, but not limited to, any failure to follow the established reasonable and material policies, standards and regulations of the Company.

(e) "**Chapter 11**" means Chapter 11 of Title 11 of the United States Code, 11 U.S.C. § 101, et seq.

(f) "**Chapter 11 Proceeding**" means the jointly administered cases under Chapter 11, Case No. 09-31797-bjh, of the Company and those Subsidiaries of the Company that filed petitions under Chapter 11 on March 30, 2009.

(g) "**Debtors**" shall mean the Company and each of its Subsidiaries that are parties to the Chapter 11 Proceeding.

(h) "**Disability**" means the disability of the MIP Employee such that he can no longer perform his job functions.

(i) "**Incentive Payment**" means the payment described in Section 3(a) and payable to the MIP Employee pursuant to the terms of this Agreement.

(j) "**Petition Date**" means March 30, 2009.

(k) "**Release**" has the meaning set forth in Section 3(h)(i).

(l) "**Management Incentive Program**" means the management incentive program for insider employees of the Debtors, which is an unfunded, unsecured arrangement.

(m) "**Sale**" or "**Sales**" means any acquisition by any person or persons of any of (1) the assets of the Company and its Subsidiaries or (2) the outstanding capital stock of the Company or any of its Subsidiaries.

(n) "**Subsidiary**" or "**Subsidiaries**" means, with respect to any person, any corporation or other organization, whether incorporated or unincorporated, of which (a) such person or any other Subsidiary of such person is a general partner, managing member or sole or controlling member or (b) at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors, managers or others performing similar functions with respect to such corporation, partnership, limited partnership, limited liability company or other organization is, directly or indirectly, owned or controlled by such person or by any one or more of its Subsidiaries, or by such person and any one or more of its Subsidiaries.

(o) "**Transaction Value**" shall have the meaning given to such term in that certain Engagement Letter dated February 26, 2009 by and between Jefferies & Company, Inc. and the Debtors, a copy of which is attached hereto as Exhibit A.

3. **Management Incentive Program**.

(a)     If the aggregate Transaction Value (subject to the actual and unconditional receipt requirement of Section 3(b)) of any and all Sales exceeds $200,000,000, then the MIP Employee will be eligible to participate in a MIP pool, which shall be funded from the proceeds of any Sale, in an amount equal to 1% of (i) the aggregate Transaction Value of any such Sales, minus (ii) $160,000,000 (the product being the "Incentive Payout"), whether any such Sale occurs through a plan of reorganization or otherwise.

(b)     Any distribution of the Incentive Payout to the MIP Employee shall be at the discretion of the Company's CRO Committee as currently constituted in consultation with the current CRO of the Debtors based upon such committee's determination as to the contribution of each individual toward a successful Sale and/or reorganization.  Subject to the foregoing, promptly after one or more of the Debtors' actual and unconditional receipt of the proceeds referenced in Section 3(a), at levels to trigger the Incentive Payout, it is currently contemplated that the MIP Employee will be paid **[David D. Le Norman – 40%; Charles L. Mullens – 20%; Roy A. Fletcher – 20%; and Charles A. Paulson – 20%]** of the Incentive Payout that has not previously been paid to the MIP Employee (the "Incentive Payment").

(c)     Under no circumstances shall any Incentive Payout be made on amounts by which any proceeds from any Sales exceed $300,000,000 in the aggregate such that the total Incentive Payment received by the MIP Employee under this Agreement shall not be more than 156% of the MIP Employee's Base Salary.

(d)     If the MIP Employee is terminated for Cause or resigns, the MIP Employee will not be eligible to participate in the MIP.  If the Cases are converted to ones under Chapter 7 of the Bankruptcy Code, the MIP will terminate and the MIP Employee will not be eligible to receive any Incentive Payment beyond that received as of such conversion.

(e)     If the MIP Employee is terminated without Cause or a result of the MIP Employee's Disability or death, the MIP Employee, or if applicable his beneficiary (as designated on a form provided by the Company) or if no such beneficiary is designated, his estate, will be paid the Incentive Payment in accordance with Section 3(b); provided that if such termination without Cause, Disability or death occurs prior to September 30, 2009, then the MIP Employee will be paid a percentage of the Incentive Payment calculated by dividing (i) the number of days between the Petition Date and the date of such Disability by (ii) 180 days.  The termination of the MIP Employee without Cause or as a result of the MIP Employee's Disability cannot be effectuated unless approved by the Board of Directors.

(f)     The MIP (i) replaces any incentive or performance based claim that could otherwise be asserted against any of the Debtors by the MIP Employee whether such claim arises by agreement, policy, practice, or procedure; and (ii) does not replace or affect any other claims of the MIP Employee, including any claim for severance if and as applicable; provided, however, that nothing herein shall be construed as a consent by any party in interest to any claims set forth in (ii) of this Section or under the assumption of any agreement of employment, and such claims shall be subject to applicable non-bankruptcy and bankruptcy law with all rights of interested parties reserved.

(g)     The Incentive Payment payable pursuant to this Agreement shall be an allowed administrative expense claim, pursuant to section 503 of the Bankruptcy Code, for purposes of the Chapter 11 Proceeding.

(h)     Notwithstanding the foregoing,

(i)     The payment of any Incentive Payment will be conditioned on, and made in cash within five business days following the seventh day after the execution and return (and, if applicable, non-revocation) of, a Release by the MIP Employee, or as applicable his beneficiary or the executor of his estate, to the Company in substantially the form attached hereto as Exhibit B or such other form as may be agreed to by the MIP Employee executing such Release and the Company (or if the Company is at the time of execution of such release subject to the jurisdiction of any U.S. federal bankruptcy court, approved by such court);

(ii)     The Company shall withhold any and all taxes on payments described in this Section 3 as may be required by applicable law; and

(iii)     The MIP Employee shall not have an entitlement to any remaining funds in the Incentive Payout after his receipt of the Incentive Payment(s) set forth herein.

(i)     The MIP Employee shall continue to receive continuation of Base Salary as of the date of this Agreement and benefits under any employee benefit plan currently in effect and sponsored by the Company or in which the Company participates in the normal course of business for the period beginning on the date this Agreement is executed and ending on the MIP Employee's termination of employment, and shall not be entitled to continuation of benefits following the MIP Employee's termination of employment for any reason under any employee benefit plan sponsored by the Company or in which the Company participates, or pursuant to this Agreement or any other agreement, including any employment agreement, previously entered into by the MIP Employee (other than benefits continuation required by law and approved by the Bankruptcy Court).

**4.     Confidentiality**.

(a)     The MIP Employee acknowledges that in the course of the MIP Employee's employment with the Company, the MIP Employee will obtain and has obtained confidential, proprietary and/or trade secret information of the Company and its Subsidiaries, relating to, among other things, (i) programs, strategies, information or materials related to the business, properties, services, manner of operation and activities of the Company and its Subsidiaries, (ii) customers, clients or prospects of the Company and its Subsidiaries, (iii) computer hardware or software used in the course of the business of the Company and its Subsidiaries, and (iii) other intellectual property of the Company and its Subsidiaries (hereinafter collectively referred to as "Confidential Information").

(b)     The MIP Employee recognizes that the Confidential Information has been developed by the Company and its Subsidiaries at great expense; is a valuable, special and unique asset of the Company and its Subsidiaries which they use in their business to obtain competitive advantage over their competitors; is and shall be proprietary to the Company and its Subsidiaries; is and shall remain the exclusive property of the Company and its Subsidiaries;

and, is not to be transmitted to any other person, entity or thing.  The MIP Employee hereby warrants and represents that the MIP Employee has not disclosed, copied, disseminated, shared or transmitted any Confidential Information to any person for any reason or purpose whatsoever, except in the course of carrying out the MIP Employee's duties and responsibilities of employment with the Company and its Subsidiaries, and agrees not to so disclose, copy, share or transmit any Confidential Information in the future.  The MIP Employee agrees not to make use of any Confidential Information for his own purposes or for the benefit of any person.  The MIP Employee further warrants and represents that all Confidential Information in the MIP Employee's possession, custody or control that is or was property of the Company or any of its Subsidiaries has been or shall be returned to the Company by or on the date of the termination of the MIP Employee's employment.

(c)     The MIP Employee further agrees that the MIP Employee will not reveal, or cause to be revealed, this Agreement or its terms to any third party (other than the MIP Employee's attorney, tax advisor, or spouse), except as required by law.  The MIP Employee further agrees to use reasonable efforts to give the Company notice of any and all attempts to compel disclosure of any Confidential Information, in such a manner so as to provide the Company with written notice no greater than one business day following the day the MIP Employee is informed that such disclosure will be compelled.  Such written notice shall include a description of the information to be disclosed, the court, government agency, or other forum through which the disclosure is sought, and the date by which the information is to be disclosed, and shall contain a copy of the subpoena, order, or other process used to compel disclosure.

(d)     If any court determines that any portion of this Section 4 is invalid or unenforceable, the remainder of this Section 4 shall not thereby be affected and shall be given full effect without regard to the invalid provisions.  The MIP Employee further agrees that the agreements in this Section 4 are in addition to, and do not supersede, the MIP Employee's obligations under any confidentiality or trade secrets agreements executed by the MIP Employee, or any laws protecting the Confidential Information.  The covenants undertaken pursuant to this Section 4 are subject to the injunctive relief provided pursuant to Section 19 of this Agreement.

**5.     Overpayment**.  If, due to mistake or any other reason, the MIP Employee receives any Incentive Payment under this Agreement in excess of what this Agreement provides, the MIP Employee shall repay the overpayment to the Company in a lump sum within 30 days of notice of the amount of overpayment.  If the MIP Employee fails to so repay the overpayment, then without limiting any other remedies available to the Company, the Company may deduct the amount of the overpayment from any other benefits which become payable to the MIP Employee under this Agreement or otherwise.

**6.     Setoff**.  Notwithstanding anything in this Agreement to the contrary, any Incentive Payment due under Section 3 of this Agreement shall be reduced by any loans or other amounts due to the Company or its Subsidiaries by the MIP Employee, any property of the Company or its Subsidiaries retained by the MIP Employee following termination of employment, or any advances.

**7.     Consulting**.  If the MIP Employee terminates employment, or the employment of the MIP Employee is terminated by the Company, and the MIP Employee receives any Incentive

Payment under this Agreement, then the Company upon its request shall have the right to consulting services to assist in the resolution of claims in the Chapter 11 Proceeding not to exceed four hours monthly from the MIP Employee for a period of six months following such termination. Such consulting services will be subject to the specific performance and injunctive relief provided in <u>Section 19</u> of this Agreement.

**8.** **No Outplacement Services**. In no event will the Company be obligated to provide outplacement services on behalf of the MIP Employee.

**9.** **Not a Contract of Employment/Benefit Plan**. This Agreement is not an employment contract for any definite period of time. Except as otherwise set forth in <u>Section 3</u>, this Agreement shall have no effect whatsoever on the **[at-will employment relationship OR that certain employment agreement]** between the MIP Employee and the Company. **[For David E. LeNorman - Subject to the MIP Employee's employment agreement with the Company,]** Nothing herein shall be deemed to give the MIP Employee the right to be retained in the employ of the Company or to restrict the right of the Company to discharge the MIP Employee at any time and for any reason, with or without Cause or notice. **[For David E. LeNorman - Subject to the MIP Employee's employment agreement with the Company,]** Nothing herein shall be deemed to give the Company the right to require the MIP Employee to remain in the employ of the Company or to restrict the MIP Employee's right to terminate his employment at any time. This Agreement is an incentive pay agreement and, as such, constitutes a payroll practice, not an employee benefit plan or a trust that requires ongoing administration; provided, however, the Compensation Committee of the Board of Directors (or, if there is currently no Compensation Committee, then the Board of Directors) will administer this Agreement, including without limitation, interpretation of this Agreement, computation of benefits under this Agreement, and the grant or denial of benefits claimed under this Agreement, subject to oversight by the Bankruptcy Court.

**10.** **Benefits Unfunded**. All rights under this Agreement of the MIP Employee shall at all times be entirely unfunded and no provision shall at any time be made with respect to segregating any assets of the Company for payment of any amounts due hereunder. Neither the MIP Employee nor his beneficiary shall have any interest in or rights against any specific assets of the Company; provided, however, that the Incentive Payment payable to the MIP Employee and his beneficiary shall be administrative expense claims, pursuant to Section 503 of the Bankruptcy Code, of the Company's estate in the Chapter 11 Proceeding.

**11.** **Assignment**. No interest of the MIP Employee or his beneficiary under this Agreement, or any right to receive any payment or distribution hereunder, shall be subject in any manner to sale, transfer, assignment, pledge, attachment, garnishment, or other alienation or encumbrance of any kind, nor may such interest or right to receive a payment or distribution be taken, voluntarily or involuntarily, for the satisfaction of the obligations or debts of, or other claims against, the MIP Employee or his beneficiary, including claims for alimony, support, separate maintenance, and claims in bankruptcy proceedings with respect to the MIP Employee. The Company may assign to any person or entity that acquires any assets of any Debtor any or all of its rights under <u>Sections 4 and 19</u> of this Agreement to the extent relating to the assets so acquired by such person or entity. Without limiting the foregoing sentence, any successor of the

Company or purchaser of assets of the Company pursuant to a Sale will be entitled to enforce such confidentiality provision as a third party beneficiary thereof.

**12.** **Severability**. In the event that any provision of this Agreement, or the application thereof to any circumstance, is held by a court of competent jurisdiction to be invalid, illegal or unenforceable in any respect under present or future laws effective during the effective term of any such provision, such invalid, illegal or unenforceable provision shall be fully severable; and this Agreement shall then be construed and enforced as if such invalid, illegal or unenforceable provision had not been contained in this Agreement; and the remaining provisions of this Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid or unenforceable provision or by its severance from this Agreement. Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically as part of this Agreement, a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

**13.** **Choice of Law**. Unless otherwise superseded by the provisions of the Bankruptcy Code, this Agreement shall be interpreted and construed in accordance with and shall be governed by the laws of the State of Texas without regard to any choice of law provisions thereof.

**14.** **Submission to Jurisdiction**. The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Agreement and to decide any claims or disputes which may arise or result from, or be connected with, this Agreement, any breach or default hereunder, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 21 hereof; provided, however, that if the bankruptcy cases have closed and have not been reopened pursuant to Section 350 of Title 11 of the United States Code, the parties agree to unconditionally and irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Northern District of Texas sitting in Dallas County and any appellate court from any thereof, for the resolution of any such claim or dispute. The parties hereby unconditionally and irrevocably waive, to the fullest extent permitted by law, any objection which they may now or hereafter have to the laying of venue of any dispute arising out of or relating to this Agreement brought in any court specified above, or any defense of inconvenient forum for the maintenance of such dispute and waives any bond, surety, or other security that might be required of any other party with respect thereto. Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law. Each of the parties hereto hereby consents to process being served by any party to this Agreement in any suit, action or proceeding by the mailing of a copy thereof in accordance with the provisions of Section 21.

**15.** **Entire Agreement**. This Agreement constitutes the entire agreement of the parties relating to any Incentive Payment. Except as otherwise provided in Section 3, any previous agreement with respect to this matter is superseded by this Agreement. No term, provision or condition of this Agreement may be modified in any respect except by a writing executed by both of the parties hereto and approved by the Bankruptcy Court. No person has any authority to make any representation or promise not set forth in this Agreement. This

Dallas 1568439v.7

Agreement has not been executed in reliance upon any representation or promise except those contained herein.

**16.** **Acknowledgment of Terms**. The MIP Employee acknowledges that he has carefully read this Agreement; that he has had the opportunity for review of it by an attorney of his choosing; that he fully understands its final and binding effect; that the only promises or representations made to him to sign this Agreement are those stated herein; and that he is signing this Agreement voluntarily.

**17.** **Waiver Under Agreement**. The failure of either party to enforce or require timely compliance with any term or provision of this Agreement shall not be deemed to be a waiver or relinquishment of rights or obligations arising hereunder, nor shall such a failure preclude the enforcement of any term or provision or avoid the liability for any breach of this Agreement.

**18.** **Costs and Attorneys' Fees**. If any action is initiated to enforce this Agreement, neither party shall be entitled to recover from the other party its costs or attorneys' fees.

**19.** **Remedies**. The MIP Employee acknowledges and agrees that the precise value of the covenants contained in Sections 4 and 7 of this Agreement are so difficult to evaluate that no measure of monetary damages could possibly be established to fully compensate the Company and that, in the event of a breach or threatened breach of any such covenant, the Company would be irreparably injured and that the Company's remedy at law would be inadequate and that, in addition to any other remedies at law or in equity that the Company may have, the Company, or the purchaser pursuant to any Sale, shall be entitled to specific performance and/or temporary and permanent injunctive relief, including but not limited to (a) ordering the return of such documents and any and all copies thereof and restraining the MIP Employee from using or disclosing, for the MIP Employee's benefit or the benefit of others, in whole or in part, any Confidential Information, including but not limited to the Confidential Information which such documents contain, constitute, or embody, or (b) ordering the MIP Employee to perform consulting services as outlined in Section 7, as applicable. Nothing herein shall be construed as prohibiting the Company from pursuing any other remedies for any such breach or threatened breach, including the recovery of damages.

**20.** **Bankruptcy Court Approval**. This Agreement is subject in all respects to the Bankruptcy Court's Order Authorizing and Approving the Implementation of the Management Incentive Program **[Docket No. _____].**

**21.** **Notice**. Notices required under this Agreement shall be in writing and sent by registered mail, return receipt requested, to the following addresses or to such other address as the party being notified may have previously furnished to the other party by written notice.

Dallas 1568439v.7

If to the Company:        Blackhill Partners
                          Attn: James R. Latimer, III
                          2602 McKinney Avenue
                          Suite 240
                          Dallas, Texas 75204
                          Fax: 214-382-3755

If to the MIP Employee:   _____
                          _____
                          _____
                          _____

**22.    Headings**.    The headings of the Sections herein are included solely for convenience.  If the headings and the text of the Agreement conflict, the text shall control.  All references to Sections are to this Agreement unless otherwise indicated.

**23.    Construction**.    This Agreement shall be deemed drafted equally by both parties. Its language shall be construed as a whole and according to its fair meaning.  Any presumption or principle that the language is to be construed against any party shall not apply.  Wherever appropriate herein, the masculine, neuter, and feminine genders shall be deemed to include each other, and the plural shall be deemed to include the singular and vice versa.  In addition, (a) "and" and "or" are each used both conjunctively and distinctively; (b) "any" and "all," "each" or "every" means "any and all, and each and every;" (c) "includes" and "including" are each without limitation; and (d) "herein," "hereof," "hereunder" and similar compounds of the word "here" refer to the entire Agreement and not to any particular provision or section.

**EXECUTED** on this _____ day of _____, 2009.

                          **CRUSADER ENERGY GROUP INC.**


                          By: _____
                               James R. Latimer, III
                               Chief Restructuring Officer


                          **MIP EMPLOYEE**


                          By: _____

Dallas 1568439v.7

# EXHIBIT A

# [To Be Inserted]

**EXHIBIT B**

**FORM OF RELEASE AGREEMENT**

This RELEASE AGREEMENT (this "Release"), is made and entered into by and between Crusader Energy Group Inc., a Nevada corporation (the "Company"), and _____ (the "Releasing Party").

**RECITALS**

WHEREAS, the Releasing Party entered into a Management Incentive Program Agreement dated _____, 2009, between the Company and the Releasing Party (the "MIP Agreement");

WHEREAS, Section 3 of the MIP Agreement provides that the Releasing Party shall execute a release with the Company as a condition precedent to receiving an Incentive Payment or portion thereof.

NOW, THEREFORE, in consideration of the foregoing, the Incentive Payment (as defined in the MIP Agreement) to be paid to the Releasing Party in accordance with Section 3 of the MIP Agreement, and other good and valuable consideration, the receipt and sufficiency of which are hereby acknowledged, the Releasing Party, intending to be legally bound, hereby agrees as follows:

**AGREEMENTS**

1.     **Definitions**.   The following terms shall have the meanings set forth below. Capitalized terms used herein but not defined herein and defined in the MIP Agreement shall have the meanings ascribed to such terms in the MIP Agreement.

a.     "**Bankruptcy Court**" means the Dallas Division of the United States Bankruptcy Court for the Northern District of Texas.

b.     "**Claims**" means all theories of recovery of whatever nature, whether known or unknown, absolute or contingent, matured or unmatured, presently existing or hereafter discovered, and now recognized by the law or equity of any jurisdiction.  This term includes causes of action, charges, indebtedness, losses, claims, liabilities, and demands, whether arising in equity or under the common law or under any contract or statute.  This term includes any claim for salary, benefits or other compensation, discrimination, harassment, retaliation, retaliatory discharge, or wrongful discharge, and any other claim that is alleged or that could be alleged by the Releasing Party, or on the Releasing Party's behalf, in any lawsuit or other proceeding.  This term includes any claims and rights arising under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq.; Title VII of the Civil Rights Act of 1964, 42 U.S.C. §2000e, et seq.; the Employee Retirement Income Security Act, 29 U.S.C. §1001, et seq.; the Americans with Disabilities Act, 42 U.S.C. §12101, *et seq*.; and the Texas Commission on Human Rights Act, TEX. LABOR CODE §21.001, *et seq*.

c.     "**Damages**" means all elements of relief or recovery of whatever nature, whether known or unknown, which are recognized by the law or equity of any jurisdiction that is sought or that could be sought by the Releasing Party, or on the Releasing Party's behalf, in any lawsuit or other proceeding.  This term includes actual, incidental, indirect, consequential, compensatory, exemplary, liquidated and punitive damages; rescission; attorneys' fees; interest; costs; equitable relief; and expenses.

d.     "**Person**" means any natural person, corporation, company, partnership (general or limited), limited liability company, trust, joint venture, joint stock company, unincorporated organization, governmental authority or other entity or association.

e.     "**Released Parties**" means and includes each of the Company and all of its Subsidiaries, and all of the foregoing Persons' past, present and future officers, directors, employees, members, managers, stockholders, partners, joint venturers, agents, attorneys, accountants, financial advisors, benefit plans (and each such plan's fiduciaries, administrators, committees, trustees, sponsors and representatives), insurance carriers, reinsurers, underwriters, predecessors, successors, assigns, Subsidiaries, executors, administrators, and representatives, in both their representative and individual capacities.  Each of the Released Parties is an intended beneficiary of this Release.

f.     "**Releasing Party**" means and includes the Releasing Party, acting individually, in any corporate or other representative capacity, and on behalf of his heirs, estate, executors, administrators, legal representatives, successors, beneficiaries, and assigns.

g.     "**Subsidiary**" or "**Subsidiaries**" means, with respect to any Person, any corporation or other organization, whether incorporated or unincorporated, of which (a) such Person or any other Subsidiary of such Person is a general partner, managing member or sole or controlling member or (b) at least a majority of the securities or other interests having by their terms ordinary voting power to elect a majority of the board of directors, managers or others performing similar functions with respect to such corporation, partnership, limited partnership, limited liability company or other organization is, directly or indirectly, owned or controlled by such Person or by any one or more of its Subsidiaries, or by such Person and any one or more of its Subsidiaries.

2.     **Release**.

a.     The Releasing Party hereby releases, acquits, remises and forever discharges the Released Parties from, and waives, any and all Claims and Damages, and hereby waives any and all offsets and defenses, related to any action, inaction, event, circumstance or occurrence occurring or alleged to have occurred on or prior to the date the Releasing Party executes this Release ("Release Date"), that the Releasing Party may now have or that might subsequently accrue to the Releasing Party, directly or derivatively, against any Released Party, including without limitation those related to, arising from or attributed to (i) his employment with, or service as an officer, director, manager or in any other capacity of, the Company or any of its Subsidiaries and his resignation or termination therefrom (if applicable), and (ii) any matter at any time prior to and including the Release Date (all such Claims described in this Section 2(a), as supplemented by Sections 2(b) and 2(c), the "Released Claims").

b.    The Releasing Party understands and expressly agrees that, by this Release, he waives any Claims and rights he may have against any of the Released Parties under the Age Discrimination in Employment Act, 29 U.S.C. §621, et seq., and under any other law prohibiting age discrimination arising on or prior to the Release Date; provided that the Released Claims shall not include a release or waiver of the Releasing Party's right to file an administrative charge with or participate in any proceeding conducted by the Equal Employment Opportunity Commission ("EEOC") or a corresponding state or local agency (provided the Releasing Party agrees that he is waiving any and all rights to recover any monetary or personal relief or recovery as a result of such EEOC or corresponding state or local agency proceeding or subsequent legal actions), or to challenge the validity or enforceability of this Release.

c.    The Released Claims also shall not include, and nothing contained in this Release is intended to, nor does it, limit, impair or otherwise modify or affect, Claims of the Releasing Party or the obligations of any Released Party arising from or pursuant to (i) the MIP Agreement, (ii) this Release, and (iii) any rights to indemnification under the organizational documents of the Company to the extent the Releasing Party is entitled to such rights as of the date of this Release.

d.    **THE RELEASE IN SECTION 2(a) IS SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVEN THAT ALL OR SOME OF THE RELEASED CLAIMS WERE SOLELY AND COMPLETELY CAUSED BY ANY ACTS OR OMISSIONS, WHETHER NEGLIGENT, GROSSLY NEGLIGENT, INTENTIONAL, OR OTHERWISE, OF OR BY ANY RELEASED PARTY**.

3.    **Agreements, Representations and Warranties**.  The Releasing Party agrees, represents and warrants that he is the sole owner of any and all Released Claims that have been or could have been asserted; he has the requisite capacity and authority to enter into this Release; he has not transferred, pledged or otherwise assigned or hypothecated to any other Person all or any portion of any Released Claims or any rights or entitlements with respect thereto; his execution and delivery of this Release does not, or will not, violate or conflict with the terms of any statute or contract to which he is a party or by which he otherwise is bound; the Incentive Payment is not something to which he is otherwise indisputably entitled; and the payment of the Incentive Payment, or the applicable portion thereof, is good and sufficient consideration for his execution (and, if applicable, non-revocation) of this Release.

4.    **Miscellaneous**.

a.    Notices.  All notices or communications hereunder shall be in writing (including facsimile or similar writing) addressed as follows:

To the Releasing Party:

        _____

        _____

_____
Telephone:_____
Facsimile: _____


To the Company:

Blackhill Partners
Attn: James R. Latimer, III
2602 McKinney Avenue
Suite 240
Dallas, Texas 75204
Telephone: 214-382-3750
Facsimile: 214-382-3755


With copies (which shall not constitute notice) to:

Vinson & Elkins LLP
3700 Trammell Crow Center
2001 Ross Avenue
Dallas, Texas 75201
Attention: William L. Wallander, Esq.
Telephone: 214-220-7781
Facsimile: 214-999-7781


Any such notice or communication shall be deemed given (i) when made, if made by hand delivery, and upon confirmation of receipt, if made by facsimile, (ii) one business day after being deposited with a next-day courier, postage prepaid, or (iii) three business days after being sent certified or registered mail, return receipt requested, postage prepaid, in each case addressed as above (or to such other address as such party may designate in writing from time to time).

        b.    <u>Acknowledgment of Terms</u>.  The Releasing Party acknowledges that he has carefully read the Release; that he has had the opportunity for review of it by his attorney; that he fully understands its final and binding effect; that the Company admits to no wrongdoing in connection with his employment or service, the termination of such employment or service, or any other matter covered by the release in Section 2(a); that this Release is intended as a compromise of all Released Claims which he has alleged or may allege against any of the Released Parties; that the only promises or representations made to him to sign this Release are those stated herein; and that he is signing this Release voluntarily.

Dallas 1568439v.7

c.    Severability.  If any provision of the Release shall be declared to be invalid or unenforceable, in whole or in part, such invalidity or unenforceability shall not affect the remaining provisions hereof which shall remain in full force and effect.  Furthermore, in lieu of each such illegal, invalid, or unenforceable provision, there shall be added automatically as part of the Release a provision as similar in terms to such illegal, invalid or unenforceable provision as may be possible and be legal, valid and enforceable.

d.    Assignment.  The Release shall be binding upon and inure to the benefit of the parties hereto and their respective heirs, legal representatives, successors, guardians, administrators, and assigns; provided, however, that neither the Release nor any rights hereunder shall be assignable or otherwise subject to hypothecation and any assignment in violation hereof shall be null and void.

e.    Counterparts.  This Release may be executed in one or more counterparts, all of which shall be considered one and the same, and shall become effective when one or more such counterparts have been signed by each of the parties and delivered to each party.

f.    Entire Agreement.  This Release (and the MIP Agreement) represents the entire agreement of the parties with respect to the subject matter hereof and shall supersede any and all previous contracts, arrangements or understandings between the parties with respect to the subject matter hereof.

g.    Governing Law.   The Release shall be construed, interpreted, and governed in accordance with the laws of the state of Texas, without reference to rules relating to conflicts of law, and where applicable the laws of the United States.

h.    Submission to Jurisdiction.  The parties agree that the Bankruptcy Court shall retain exclusive jurisdiction to enforce the terms of this Release and to decide any claims or disputes which may arise or result from, or be connected with, this Release, any breach or default hereunder, and any and all proceedings related to the foregoing shall be filed and maintained only in the Bankruptcy Court, and the parties hereby consent to and submit to the jurisdiction and venue of the Bankruptcy Court and shall receive notices at such locations as indicated in Section 4(a) hereof; provided, however, that if the bankruptcy cases have closed and have not been reopened pursuant to Section 350 of Title 11 of the United States Code, the parties agree to unconditionally and irrevocably submit to the non-exclusive jurisdiction of the United States District Court for the Northern District of Texas sitting in Dallas County and any appellate court from any thereof, for the resolution of any such claim or dispute.  The parties hereby unconditionally and irrevocably waive, to the fullest extent permitted by law, any objection which they may now or hereafter have to the laying of venue of any dispute arising out of or relating to this Release brought in any court specified above, or any defense of inconvenient forum for the maintenance of such dispute and waives any bond, surety, or other security that might be required of any other party with respect thereto.  Each of the parties hereto agrees that a judgment in any such dispute may be enforced in other jurisdictions by suit on the judgment or in any other manner provided by law.  Each of the parties hereto hereby consents to process being served by any party to this Release in any suit, action or proceeding by the mailing of a copy thereof in accordance with the provisions of Section 4(a).

B-5

i.    Attorneys' Fees.  If any action at law or equity, including an action for declaratory relief, is brought to enforce or interpret any provision of the Release, the prevailing party shall be entitled to recover reasonable attorneys' fees and expenses from the other party, which fees and expenses shall be in addition to any other relief which may be awarded; provided that the Releasing Party shall not be responsible for the payment of attorneys' fees and expenses in connection with any action described in the proviso of Section 2(b).

j.    Amendments.  No term, provision or condition of the Release may be modified in any respect except by a writing executed by the Releasing Party and the Company.

k.    Waiver.  The failure of either party to enforce or to require timely compliance with any term or provision of the Release shall not be deemed to be a waiver or relinquishment of rights or obligations arising hereunder, nor shall this failure preclude the enforcement of any term or provision or avoid the liability for any breach of this Release.

l.    Construction.  The Release shall be deemed drafted equally by all the parties.  Its language shall be construed as a whole and according to its fair meaning.  Any presumption or principle that the language is to be construed against any party shall not apply. The headings in this Release are only for convenience and are not intended to affect construction or interpretation.  The Release represents a compromise of disputed Released Claims and is not to be construed as an admission, direct or indirect, against any interest of the parties.  The plural includes the singular and the singular includes the plural; "and" and "or" are each used both conjunctively and disjunctively; "any," "all," "each," or "every" means "any and all, and each and every;" "including" and "includes" are each "without limitation;" and "herein," "hereof," "hereunder" and other similar compounds of the word "here" refer to the entire Release and not to any particular paragraph, subparagraph, section or subsection.

m.    Remedies Cumulative.  All rights, powers and remedies provided under the Release or otherwise available in respect hereof at law or in equity shall be cumulative and not alternative, and the exercise of any thereof by any party shall not preclude the simultaneous or later exercise of any other such right, power or remedy by such party.

n.    Withholdings.  The Company shall make all tax withholdings and deductions required by applicable law and the Incentive Payment shall be reduced by the amount of such withholdings and deductions.  As may be appropriate, the Company shall report the payments made hereunder by filing the appropriate W-2 forms and/or 1099 forms for this amount, and making any other reports required by law.

o.    Taxes.  The Releasing Party agrees to comply, on a timely basis, with all tax reporting requirements applicable to the receipt of the payments received hereunder and to timely pay all taxes due with respect to such amounts.

p.    Advice to Consult Counsel.  The Company hereby advises the Releasing Party to consult with an attorney prior to executing this Release.

q.    Timing.  The Releasing Party acknowledges and agrees that (i) he has had at least **[14/21/45]** days to consider this Release before executing this Release, though he may execute this Release at any time within the applicable **[14/21/45]** day period except he is not to

B-6

execute it prior to the date of the Releasing Party's termination if the Releasing Party has been advised of such termination at or before the time he receives this Release, and (ii) no changes (whether material or immaterial) to this Release shall restart the running of this **[14/21/45]** day period. **[The Releasing Party may revoke this Release within 7 days after he executes this Release by written notice (which may be by facsimile) to the General Partner and the Company, (iv) this Release will not become effective or enforceable, and the Incentive Payment will not be paid, until the expiration of this 7-day period without the Releasing Party's revocation of this Release, (v) the Company may require, as a prerequisite for payment of any portion of the Incentive Payment, the Releasing Party to acknowledge in a signed and dated writing that he did not revoke this Release during the applicable 7-day period, and (vi) the Releasing Party's acceptance of any portion of the Incentive Payment after the expiration of the 7-day period following delivery of the Release shall constitute his acknowledgment that he did not revoke this Release during such 7-day period.]** **[Note: The 21/7 day time periods are to be used if the employee is 40 years of age or older. The 45/7 day time periods are used if the employee is 40 years of age or older when terminated as part of a group termination (2 or more employees being terminated at the same time).]**

        r.      **[Required Listing.  The Releasing Party acknowledges and agrees that, at the same time this Release was made available to him, he was provided with the attached list of (i) all employees of the Company (by job title and age) whose employment is being terminated and (ii) all employees of the Company (by job title and age) who are in the same job classification or organizational unit whose employment is not being terminated, along with other information relating to coverage, eligibility factors and time limits associated with such terminations and related release agreements.] [Note:  Include this provision only if the Releasing Party is 40 years of age or older at the time of termination and is being terminated as part of a group termination (2 or more employees being terminated).  The above-referenced list will need to be provided.]**

        IN WITNESS WHEREOF, the parties hereto have caused this Release to be duly executed as of the day and year first above written.

                                **CRUSADER ENERGY GROUP INC.**

                                By: _____
                                     James R. Latimer, III
                                     Chief Restructuring Officer

                                Date: _____

                                **RELEASING PARTY**

                                By: _____

                                Date: _____

Dallas 1568439v.7