William L. Wallander, SBT #20780750
Richard H. London, SBT #24032678
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; rlondon@velaw.com
blloyd@velaw.com

**COUNSEL FOR THE DEBTORS**

Samuel M. Stricklin, SBT #19397050
Tricia R. DeLeon, SBT #24005885
**BRACEWELL & GIULIANI LLP**
1445 Ross Avenue, Suite 3800
Dallas, Texas 75202-2711
Tel. 214.468.3800
Fax: 214.468.3888
sam.stricklin@bgllp.com; tricia.deleon@bgllp.com

**COUNSEL FOR THE FIRST LIEN HOLDERS**

David M. Bennett, SBT #2139600
Demetra Liggins, SBT #24026844
**THOMPSON & KNIGHT LLP**
1722 Routh Street, Suite 1500
Dallas, Texas 75201
Tel: 214.969.1700
Fax: 214.969.1751
david.bennett@tklaw.com; demetra.liggins@tklaw.com

**COUNSEL FOR THE SECOND LIEN HOLDERS**

Richard Roberson, SBT #16993800
Michael S. Haynes, SBT #24050735
**GARDERE WYNNE SEWELL LLP**
3000 Thanksgiving Tower
1601 Elm Street
Dallas, Texas 75201-4761
Tel: 214.999.3000
Fax: 214.999.4667
rroberson@gardere.com; mhaynes@gardere.com

**COUNSEL FOR THE COMMITTEE**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § § § § § | CASE NO. 09-31797-bjh-11 |
| CRUSADER ENERGY GROUP INC., *et al.,* | | Chapter 11 |
| DEBTORS. | | (Jointly Administered) |

## JOINT PLAN OF REORGANIZATION FOR THE DEBTORS

## DATED: SEPTEMBER 22, 2009

# TABLE OF CONTENTS

**Page**

Article I        DEFINITIONS ...................................................................................................1

Article II       TREATMENT OF ADMINISTRATIVE CLAIMS ...........................................17
    2.1       Treatment ...............................................................................................17
    2.2       General Administrative Claims..............................................................17
    2.3       Treatment of Priority Tax Claims ..........................................................18
    2.4       Professional Fee Claims.........................................................................18
    2.5       U.S. Trustee Fees ..................................................................................18

Article III      DESIGNATION OF CLASSES OF CLAIMS AND INTERESTS .....................18
    3.1       Introduction............................................................................................18
    3.2       Claims against and Equity Interests in the Debtors ...............................18

Article IV       PROVISIONS FOR SATISFACTION OF CLAIMS AND INTERESTS ...........19
    4.1       Introduction............................................................................................19
    4.2       Treatment of Classified Claims and Equity Interests. ..........................19
    4.3       Designation of Impaired and Unimpaired Classes.................................23

Article V        ACCEPTANCE OR REJECTION OF THIS PLAN .......................................23
    5.1       Classes Entitled to Vote ........................................................................23
    5.2       Acceptance by Impaired Classes of Claims...........................................23
    5.3       Cramdown...............................................................................................23

Article VI       MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION
               INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE
               BUYER OR TRANSFER OF TRANSFERRED ASSETS TO THE
               BUYER ...................................................................................................24
    6.1       Introduction............................................................................................24
    6.2       Conditions Precedent to the Effective Date ...........................................24
    6.3       Limited Substantive Consolidation........................................................25
    6.4       Formation of Newco ..............................................................................25
    6.5       Alternative Transactions and Superior Proposal....................................25
    6.6       Cancellation of Lien Documents. ..........................................................25
    6.7       UCC Termination Statements ................................................................26
    6.8       Termination of Directors, Officers, and/or Managers of the Debtors....26
    6.9       Amendment of Debtors' Certificates and Agreements...........................26
    6.10      Creation of the Liquidating Trust ..........................................................27
    6.11      Transfer of Liquidating Trust Assets .....................................................27
    6.12      Conflicts Between Liquidating Trust Agreement and Plan ....................27
    6.13      Plan is Motion to Transfer Liquidating Trust Assets.............................27
    6.14      Issuance of Liquidating Trust Interests and Buyer Equity.....................28
    6.15      Authority ................................................................................................29

| | 6.16 | No Recourse to the Reorganized Debtors or Buyer | 29 |
|---|---|---|---|
| | 6.17 | Procedures regarding M&M Secured Claims. | 29 |
| | 6.18 | Release of Liens. | 31 |
| | 6.19 | Preservation of Rights of Action; Settlement of Litigation Claims. | 31 |
| | 6.20 | Issuance of Newco Equity Interests | 31 |
| Article VII | | MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER | 32 |
| | 7.1 | Introduction | 32 |
| | 7.2 | Conditions Precedent to the Effective Date | 32 |
| | 7.3 | Vesting of the Vested Assets | 32 |
| | 7.4 | Cancellation of Equity Interests and Issuance of New Crusader Shares and New Subsidiaries Equity Interests | 33 |
| | 7.5 | Consummation of Transactions Contemplated by Stock Purchase Agreement or Alternative Transaction Agreement | 33 |
| | 7.6 | Closing Loan by SandRidge Exploration | 33 |
| | 7.7 | Authority | 33 |
| | 7.8 | Preservation of Causes of Action | 33 |
| Article VIII | | MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION NOT INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER | 34 |
| | 8.1 | Introduction | 34 |
| | 8.2 | Conditions Precedent to the Effective Date | 34 |
| | 8.3 | Transfer of Transferred Assets | 34 |
| | 8.4 | Cancellation of Equity Interests and Issuance of New Crusader Shares and New Subsidiaries Equity Interests | 35 |
| | 8.5 | Authority | 35 |
| Article IX | | THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE | 35 |
| | 9.1 | The Liquidating Trust | 35 |
| | 9.2 | Funding of Res of Trust | 35 |
| | 9.3 | The Liquidating Trustee | 36 |
| | 9.4 | Retention of Professionals | 36 |
| | 9.5 | Compensation of the Liquidating Trustee | 37 |
| | 9.6 | Liquidating Trust Expenses | 37 |
| | 9.7 | Liability; Indemnification | 37 |
| | 9.8 | Termination | 37 |
| Article X | | COMMITTEE AND LIQUIDATING TRUST COMMITTEE | 38 |
| | 10.1 | Dissolution of Committees | 38 |
| | 10.2 | Creation of Liquidating Trust Committee | 38 |
| | 10.3 | Procedures | 38 |
| | 10.4 | Function, Duties, and Responsibilities | 38 |
| | 10.5 | Duration | 39 |
| | 10.6 | Compensation and Expenses | 39 |

10.7 Liability; Indemnification ...................................................................39

Article XI PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY ......................39
11.1 Distributions for Claims Allowed as of the Effective Date ...................................39
11.2 Means of Cash Payment.......................................................................40
11.3 Record Date for Distributions..................................................................40
11.4 Distribution of Buyer Equity. ..................................................................40
11.5 Delivery of Distribution........................................................................40
11.6 Fractional Dollars; De Minimis Distributions ................................................41
11.7 Withholding and Reporting Requirements ....................................................41
11.8 Setoffs ............................................................................................41
11.9 Duty to Disgorge Overpayments ..............................................................41

Article XII DISTRIBUTIONS TO HOLDERS OF ALLOWED CLASSES 7A AND 7B CLAIMS ........................................................................................41
12.1 Initial Cash Distribution........................................................................41
12.2 Subsequent Cash Distributions ................................................................42

Article XIII RESERVES ADMINISTERED BY THE LIQUIDATING TRUST....................42
13.1 Establishment of Reserve Accounts............................................................42
13.2 Undeliverable Distribution Reserve............................................................42
13.3 Senior Claim Distribution Reserve ............................................................43
13.4 Liquidating Trust Expense Reserve............................................................44
13.5 Carveout Reserve ...............................................................................44
13.6 Reserve Account Adjustments ..................................................................45

Article XIV PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS .....................................................................45
14.1 Objection Deadline; Prosecution of Objections...............................................45
14.2 No Distributions Pending Allowance ..........................................................46
14.3 Buyer Standing to Participate ..................................................................46

Article XV TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES – TRANSACTION INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER ..........................................................46

Article XVI TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES – TRANSACTION NOT INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER ..........................................................48

Article XVII TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES: Employment and benefit issues............................................................49
17.1 Employee Agreements ..........................................................................49

Article XVIII EFFECTS OF CONFIRMATION .........................................................49
18.1 Discharge ........................................................................................49
18.2 Legal Binding Effect............................................................................50
18.3 Moratorium, Injunction and Limitation of Recourse For Payment .......................50

The confirmation order shall, among other things, contain, direct and provide for the foregoing injunction........................................................................51

18.4 Term of Injunction or Stays ................................................................51
18.5 Exculpation and Limitation of Liability ...............................................51
18.6 Release and Covenant Not to Sue.........................................................52
18.7 Insurance .............................................................................................56

Article XIX RETENTION OF JURISDICTION ..................................................56
19.1 Retention .............................................................................................56
19.2 Rights of Reorganized Debtor and the Liquidating Trustee ..................58

Article XX MISCELLANEOUS PROVISIONS .....................................................58
20.1 Revocation, Withdrawal or Non-Consummation ..................................58
20.2 Severability of Plan Provisions.............................................................58
20.3 Exemption from Transfer Taxes and Recording Fees ...........................58
20.4 Expedited Tax Determination ...............................................................59
20.5 Access and Preservation of Records .....................................................59
20.6 Interest Accrual....................................................................................59
20.7 Allocation of Plan Distributions between Principal and Interest...........59
20.8 Rules of Interpretation; Computation of Time......................................59
20.9 The Reorganized Debtors, the Buyer and the Liquidating Trust Are Not Successors .............................................................................................60
20.10 Plan Documents ...................................................................................60
20.11 Reservation of Rights...........................................................................60
20.12 Further Assurances...............................................................................60
20.13 Successors and Assigns.........................................................................60
20.14 Governing Law ....................................................................................60
20.15 Abandonment.......................................................................................60
20.16 Notice of Effective Date ......................................................................61
20.17 Plan Supplement ..................................................................................61
20.18 Entire Agreement .................................................................................61
20.19 Waiver of Stay .....................................................................................61

Article XXI MODIFICATION OF THIS PLAN ....................................................61

<u>**JOINT PLAN OF REORGANIZATION FOR THE DEBTORS**</u>

Crusader Energy Group Inc., Crusader Management Corporation, Crusader Energy Group, LLC, Hawk Energy Fund I, LLC, Knight Energy Group, LLC, Knight Energy Group II, LLC, Knight Energy Management, LLC and RCH Upland Acquisition, LLC, the debtors and debtors-in-possession in the above-referenced jointly administered bankruptcy cases, together with the First Lien Holders, Second Lien Holders and Committee, hereby propose this Joint Plan of Reorganization for the Debtors dated September 22, 2009 pursuant to the provisions of chapter 11 of the Bankruptcy Code for the resolution and treatment of the Debtors' outstanding Claims, Liens and Equity Interests. Reference is hereby made to the Disclosure Statement for the Joint Plan of Reorganization for the Debtors that is distributed herewith for a discussion of, among other things, the history, businesses, properties, results of operations, risk factors, and a summary and analysis of this Plan, and related matters of the Debtors. All holders of Claims, Liens and Equity Interests are encouraged to read both this Plan and the Disclosure Statement before voting to accept or to reject this Plan. In the event of any inconsistencies between this Plan and Disclosure Statement, the terms and provisions of this Plan shall control. The Debtors reserve the right to alter, amend, modify, revoke, or withdraw this Plan prior to its Substantial Consummation pursuant to the terms of this Plan.

## <u>ARTICLE I</u>

### <u>DEFINITIONS</u>

Except as expressly provided or unless the context otherwise requires, the terms set forth in this <u>Article I</u> shall have the following meanings when used in initially capitalized form in this Plan. Any term used in initially capitalized form in this Plan that is not defined herein but that is defined in the Bankruptcy Code shall have the meaning assigned to such term in the Bankruptcy Code. Such meanings shall be equally applicable to both the singular and plural forms of such terms.

**1.1** **<u>1933 Act</u>** means the Securities Act of 1933, as amended, and the rules and regulations as promulgated thereunder.

**1.2** **<u>365 Contracts</u>** means all contracts, agreements, leases, licenses, indentures, notes, bonds, sale and purchase orders, instruments or other commitments, whether oral or written (including any amendments or modifications thereto) which may be assumed by one or more of the Debtors pursuant to Bankruptcy Code § 365.

**1.3** **<u>Ad Valorem Tax Claim</u>** means a Claim for taxes (together with any related interest, penalty, addition to tax or additional amount imposed by any Governmental Authority) which is assessed based upon the value of a Debtor's property and which is secured by a statutory Lien upon that property, or the net proceeds from the sale of such property, to the extent of the value, as of the Effective Date (or such other date as is established by the Bankruptcy Court) of such Lien as determined by a Non-Appealable Order or as otherwise agreed upon in writing by the holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date); or (b) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date).

**1.4**     **Administrative Claim** means a Claim for payment of an administrative expense of the kind specified in Bankruptcy Code § 503(b) and entitled to priority pursuant to Bankruptcy Code § 507(a)(2), including Professional Fee Claims and U.S. Trustee Fees.

**1.5**     **Allowed** means, with reference to a Claim or any portion thereof: (a) a Claim against any of the Debtors, proof of which, if required, was Filed on or before the Bar Date (or with respect to an Administrative Claim, the Post-Confirmation Bar Date), which is not a Disputed Claim; (b) if no Proof of Claim was so Filed, a Claim against any of the Debtors which has been or hereafter is listed by any of the Debtors in the Bankruptcy Schedules as liquidated in amount and not disputed or contingent and on account of which payment has not been made; or (c) a Claim allowed hereunder or by a Non-Appealable Order.  An Allowed Claim does not include any Claim, or portion thereof, which is a Disallowed Claim or which has been subsequently withdrawn, disallowed, released or waived by the holder thereof or pursuant to a Non-Appealable Order.  Unless otherwise specifically provided in this Plan, or by a Non-Appealable Order of the Bankruptcy Court or otherwise allowed under applicable bankruptcy law, an Allowed Claim shall not include any amount for punitive or exemplary damages, penalties, fines, post petition interest, attorney's fees or other costs.

**1.6**     **Allowed Amount** means the amount of any Allowed Claim.

**1.7**     **Alternative Transaction** means, other than the transactions contemplated by the Stock Purchase Agreement, this Plan or any transactions effected in the Ordinary Course of Business, any (i) sale, transfer or other disposition, directly or indirectly, of any assets of any Debtor (except any such sale, transfer or other disposition (A) to the extent permitted by Section 5.01(b)(iv) of the Stock Purchase Agreement, or (B) with respect to any "Trust Assets" as defined in the Stock Purchase Agreement), (ii) issuance, sale, transfer or other disposition, in each case by any Debtor, of any class of equity securities, ownership interests or voting securities of any Debtor (except for any such issuance by Crusader upon the exercise of stock options or the vesting of restricted shares, in either case outstanding as of the date of the Stock Purchase Agreement), (iii) merger, consolidation, recapitalization, business combination or other similar transaction involving any Debtor or (iv) Chapter 11 plan of reorganization or other restructuring or reorganization for, or liquidation of, any Debtor.

**1.8**     **Alternative Transaction Agreement** means any agreement, including any schedules, addendums, exhibits, annexes, or other attachments thereto, to effectuate an Alternative Transaction that is approved by the Bankruptcy Court.

**1.9**     **Assumed Contracts** means any and all Desired 365 Contracts that are (a) assumed by one or more of the Debtors on or before the Effective Date, and (b)(i) vested in one or more of the Reorganized Debtors or (ii) assigned to the Buyer as set forth in Article XV or Article XVI (as applicable).

**1.10**     **Available Cash** means the amount of Cash as of the Effective Date and each Available Cash Determination Date computed as follows:  Available Cash equals Cash held by the Liquidating Trust minus Cash held on deposit in the Distribution Reserve Accounts.

**1.11** <u>**Available Cash Determination Date**</u> means each anniversary of the Effective Date.

**1.12** <u>**Avoidance Actions**</u> means any and all rights, claims and causes of action which a trustee, Debtor in Possession or other appropriate party in interest (including the Committee and the Liquidating Trustee) would be able to assert on behalf of any of the Estates under applicable state statutes or the avoidance provisions of chapter 5 of the Bankruptcy Code, including actions under one or more of the provisions of Bankruptcy Code §§ 506, 542 through 551, and 553.

**1.13** <u>**Ballot**</u> means each of the ballot forms distributed with the Disclosure Statement to holders of Impaired Claims entitled to vote on which the holder is to indicate acceptance or rejection of this Plan in accordance with the voting instructions and make any other elections or representations required pursuant to this Plan or the Disclosure Statement Order.

**1.14** <u>**Bankruptcy Code**</u> means title 11 of the United States Code, as amended.

**1.15** <u>**Bankruptcy Court**</u> means the United States Bankruptcy Court for the Northern District of Texas, Dallas Division.

**1.16** <u>**Bankruptcy Rules**</u> means the Federal Rules of Bankruptcy Procedure, the Official Bankruptcy Forms, the Federal Rules of Civil Procedure, and the Local Rules of the United States District Court for the Northern District of Texas, each as now in effect or as hereafter amended, to the extent applicable to the Cases or proceedings therein, as the case may be.

**1.17** <u>**Bankruptcy Schedules**</u> means the schedules of assets and liabilities, lists of executory contracts and unexpired leases, statements of financial affairs, and related information Filed by each Debtor pursuant to Bankruptcy Code § 521 and Bankruptcy Rule 1007, as same may be amended, supplemented or modified from time to time.

**1.18** <u>**Bar Date**</u> means with respect to all Priority Tax Claims, Ad Valorem Tax Claims, Priority Claims, First Lien Secured Claims, Second Lien Secured Claims, M&M Secured Claims, Other Secured Claims, and General Unsecured Claims, the deadline set by the Bankruptcy Court by which a Proof of Claim must have been or must be Filed, which deadline is the later of (i) July 28, 2009, (ii) in the case of a Claim for damages arising from the rejection of an executory contract or unexpired lease, thirty days after entry of an Order of the Bankruptcy Court approving the rejection of such executory contract or unexpired lease, and (iii) such other date as the Bankruptcy Court may fix.

**1.19** <u>**Bid Protection Order**</u> means the *Order (A) Approving the Procedures for the Solicitation of Higher or Better Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving the Stock Purchase Agreement and Authorizing the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (E) Approving a Break-Up Fee, in Connection with the Transaction Contemplated by the Stock Purchase Agreement; and (F) Granting Related Relief* [Docket No. __] entered by the Bankruptcy Court on _____, 2009.

**1.20** **Business Day** means any day, excluding Saturdays, Sundays or "legal holidays" (as referenced in Bankruptcy Rule 9006(a)), on which commercial banks are open for business in Dallas, Texas.

**1.21** **Buyer** means (a) SandRidge Exploration or (b) if an Alternative Transaction is approved by the Bankruptcy Court, such other Person that agrees to purchase the Transferred Assets, New Crusader Stock, and/or New Subsidiaries Equity Interests under an Alternative Transaction Agreement that is approved by the Bankruptcy Court.

**1.22** **Buyer Equity** means any and all membership and/or equity interests in any party other than the Debtors or the Reorganized Debtors, together with any warrants, options, or other derivative securities or rights to purchase any such equity interest, which are provided as consideration under the Stock Purchase Agreement or an Alternative Transaction Agreement.

**1.23** **Carveout Reserve** means either (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 13.5 of this Plan.

**1.24** **Carveout Reserve Amount** means the Cash in the amount of $42,500,000 to be deposited in the Carveout Reserve on the Effective Date or such higher amount as determined by the Bankruptcy Court.

**1.25** **Cases** means these chapter 11 cases assigned Case Nos. 09-31797, 09-31798, 09-31799, 09-31801, 09-31802, 09-31803, 09-31804, 09-31806, in the Bankruptcy Court which are being jointly administered under Case No. 09-31797 (BJH), and, as jointly administered, styled *In re Crusader Energy Group Inc., et al.*

**1.26** **Cash** means legal tender of the United States of America or equivalents thereof.

**1.27** **Cash Consideration** means that portion of the consideration paid in Cash by the Buyer and received by the Liquidating Trustee (or such other Person designated by the Liquidating Trustee) under the Stock Purchase Agreement or the Alternative Transaction Agreement.

**1.28** **Causes of Action** means any and all rights, claims, causes of action, litigation, suits, proceedings, rights of setoff, rights of recoupment, complaints, defenses, counterclaims, cross-claims and affirmative defenses of any kind or character whatsoever whether known or unknown, asserted or unasserted, reduced to judgment or otherwise, liquidated or unliquidated, fixed or contingent, matured or unmatured, disputed or undisputed, secured or unsecured, assertable directly or derivatively, currently existing or hereafter arising, whether Scheduled or not Scheduled and whether arising under the Bankruptcy Code or other applicable law, in contract or in tort, in law, in equity or otherwise, based in whole or in part upon any act or omission or other event occurring, prior to the Petition Date or during the course of the Cases, to and including the Effective Date, (a) claims pursuant to Bankruptcy Code § 362, (b) claims and defenses such as fraud, mistake, duress and usury, (c) claims under Bankruptcy Code § 510(c), and (d) all Avoidance Actions.

**1.29** **CEG LLC** means Crusader Energy Group, LLC, an Oklahoma limited liability company and one of the jointly administered Debtors herein.

**1.30** **Claim** means a claim as defined in Bankruptcy Code § 101(5) against any of the Debtors.

**1.31** **Class** means all of the holders of Claims or Equity Interests with respect to any Debtor having characteristics substantially similar to the other Claims or Equity Interests with respect to such Debtor and which have been designated as a Class in this Plan.

**1.32** **Closing** shall have the meaning given to such term (a) in the Stock Purchase Agreement, or (b) if an Alternative Transaction Agreement is approved by the Bankruptcy Court, in the Alternative Transaction Agreement.

**1.33** **Closing Accounts Receivable** means all accounts receivable of the Debtors, determined in accordance with generally accepted accounting principles in the United States, as of 11:59 PM on the date immediately prior to the Closing Date.

**1.34** **Closing Cash Balance** means all Cash and Cash equivalents of the Debtors, determined in accordance with generally accepted accounting principles in the United States, as of 11:59 PM on the date immediately prior to the Closing Date, subject to such exclusions as set forth (a) in the Stock Purchase Agreement, or (b) if an Alternative Transaction Agreement is approved by the Bankruptcy Court, in the Alternative Transaction Agreement.

**1.35** **Closing Date** means the date of the Closing.

**1.36** **Closing Loan** means a senior loan in an amount not to exceed $30,000,000 to be provided by SandRidge Exploration to the Liquidating Trust under the Closing Loan Agreement.

**1.37** **Closing Loan Agreement** means the note to be issued by the Liquidating Trust to SandRidge Exploration on the Closing Date, if the Closing Loan is made by SandRidge Exploration in accordance with the Stock Purchase Agreement, setting forth the terms of the Closing Loan.

**1.38** **CMC** means Crusader Management Corporation, an Oklahoma corporation and one of the jointly administered Debtors herein.

**1.39** **Collateral** means any property or interest in property of any of the Debtors subject to a valid, enforceable Lien that secures the payment or performance of any Claim, which Lien is not subject to avoidance and is not otherwise invalid under the Bankruptcy Code or other applicable law.

**1.40** **Committee** means the Official Committee of Unsecured Creditors appointed in one or more of the Cases pursuant to Bankruptcy Code § 1102(a).

**1.41** **Confirmation** means the entry of the Confirmation Order on the Bankruptcy Court's docket.

**1.42 Confirmation Date** means the date on which the Confirmation Order is entered on the Bankruptcy Court's docket.

**1.43 Confirmation Hearing** means the hearing or hearings before the Bankruptcy Court at which the Bankruptcy Court will consider the Confirmation of this Plan pursuant to Bankruptcy Code § 1128, as such hearings may be adjourned or continued from time to time.

**1.44 Confirmation Order** means the Order entered by the Bankruptcy Court confirming this Plan pursuant to Bankruptcy Code § 1129, as such Order may be amended, modified or supplemented.

**1.45 Consideration** means the Cash Consideration and Other Consideration.

**1.46 Creditor** means a holder of a Claim.

**1.47 Crusader** means Crusader Energy Group Inc., a Nevada corporation and one of the jointly administered Debtors herein.

**1.48 Cure Claim** means a Claim relating to amounts that the Bankruptcy Court determines by Non-Appealable Order to be necessary to cure all defaults, if any, and to pay all losses that have resulted from defaults, under an Assumed Contract.

**1.49 Debtors in Possession** means the Debtors, when acting in their capacity as representatives of the Estates.

**1.50 Debtors** means Crusader, CEG LLC, CMC, Hawk, Knight, Knight II, KEM and RCH, as debtors and debtors in possession of their respective Estates.

**1.51 Debtor Subsidiaries** means CEG LLC, CMC, Hawk, Knight, Knight II, KEM and RCH, as debtors and debtors in possession of their respective Estates.

**1.52 Desired 365 Contracts** means any and all 365 Contracts that Buyer desires to be (a) assumed by one or more of the Debtors and vested in the respective Reorganized Debtors, or (b) assumed by one or more of the Debtors and assigned to the Buyer, each on the Effective Date pursuant to the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable), and as set forth in Article XV or Article XVI (as applicable).

**1.53 Disallowed Claim** means a Claim, or any portion thereof, that (a) has been disallowed by a Non-Appealable Order, (b) is Scheduled at zero or as contingent, disputed, or unliquidated and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date, or (c) is not Scheduled and as to which no Proof of Claim or request for payment has been Filed or deemed timely Filed by the applicable Bar Date.

**1.54 Disclosure Statement** means the Disclosure Statement for the Joint Plan of Reorganization for the Debtors dated September ___, 2009, including all exhibits and schedules thereto, as amended, supplemented or modified from time to time.

**1.55** **Disclosure Statement Order** means the Order (A) Approving (I) Disclosure Statement for the Joint Plan of Reorganization for the Debtors; (II) Summary Plan and Disclosure Statement, and (III) Unimpaired Class Notice; (B) Setting Dates for the Objection and Hearing Relating to the Confirmation of the Plan; and (C) Authorizing Other Relief Relating to Plan Solicitation and the Confirmation of the Plan [Docket No. __], entered by the Bankruptcy Court on _____, 2009.

**1.56** **Disputed Claim** means a Claim, or any portion thereof, that is set forth in a Filed Proof of Claim: (a) that (i) has not been Scheduled, or (ii) has been Scheduled at zero or as contingent, unliquidated or disputed, (b) that differs in nature, amount or priority from the Bankruptcy Schedules, or (c) that is the subject of an objection Filed by the Debtors, the Committee, or the Liquidating Trustee (as applicable) and which objection has not been withdrawn or overruled by a Non-Appealable Order; provided, however, that with respect to an Administrative Claim, "Disputed Claim" means an Administrative Claim that has not been paid, that has not been Allowed by Non-Appealable Order or that is a Disallowed Claim.

**1.57** **Distribution** means the payment of Cash or the issuance of Buyer Equity (if any) or Liquidating Trust Interests to the holders of Allowed Claims pursuant to this Plan.

**1.58** **Distribution Date** means with respect to each Allowed Claim of a particular Class, the date specified in this Plan for distribution to such Class of Claims.

**1.59** **Distribution Reserve Accounts** shall mean the Senior Claim Distribution Reserve, the Undeliverable Distribution Reserve, the Liquidating Trust Expense Reserve, and the Carveout Reserve established by the Liquidating Trustee pursuant to this Plan.

**1.60** **Effective Date** means the later of (a) the first Business Day on which all conditions precedent to the effectiveness of this Plan have been satisfied or waived as provided in Sections 6.2, 7.2, and 8.2 of this Plan, and (b) such other date agreed to by all of the Plan Proponents; provided, however, that the Effective Date shall occur simultaneously with the Closing Date.

**1.61** **Employee Agreement** means any agreement between any of the Debtors and any current or former directors, officers or employees of any of the Debtors.

**1.62** **Equity Interest** means an existing membership, stock, and/or equity interest in any Debtor or equity security (within the meaning of Bankruptcy Code §101(16)), in or to any Debtors, including, without limitation, all issued, unissued, authorized or outstanding shares of stock or other equity interests (including common and preferred) of the Debtors, together with any warrants, options, other derivative securities, convertible securities, liquidating preferred securities or contractual rights to purchase or acquire any such membership or equity interests at any time and all rights arising with respect thereto.

**1.63** **Excluded Causes of Action** means all Causes of Action that are identified as "Trust Assets" in the Stock Purchase Agreement or, if an Alternative Transaction Agreement is approved by the Bankruptcy Court, as "Excluded Assets" in the Alternative Transaction Agreement, and all Causes of Action against any Debtors or property of the Estates.

**1.64**    **Estates** means the estates created by Bankruptcy Code § 541 upon the commencement of the respective Cases.

**1.65**    **Face Amount** means (a) when used in reference to a Disputed or Disallowed Claim, the full stated amount claimed by the holder of such Claim in any Proof of Claim timely Filed or otherwise deemed timely Filed by a Non-Appealable Order or other applicable bankruptcy law, (b) when used in reference to Cure Claims or Claims secured by M&M Liens, the full stated amount claimed by the holder of such Claim, and (c) when used in reference to an Allowed Claim, the Allowed Amount of such Claim.

**1.66**    **Fee Application** means an application to the Bankruptcy Court for allowance of a Professional Fee Claim pursuant to Bankruptcy Code § 330 and Bankruptcy Rule 2016(a).

**1.67**    **Filed** means filed with the clerk of the Bankruptcy Court or, in the case of a Proof of Claim, filed with the clerk of the Bankruptcy Court or The BMC Group, Inc., the Bankruptcy Court appointed Claims Agent.

**1.68**    **First Lien Agent** means Union Bank of California, N.A. ("UBOC"), as administrative agent under the First Lien Credit Agreement, or any successor thereto.

**1.69**    **First Lien Credit Agreement** means the Second Amended and Restated Credit Agreement dated June 26, 2008 among Crusader, Union Bank of California, N.A., as administrative agent, and the lenders party thereto, as amended.

**1.70**    **First Lien Documents** means the First Lien Credit Agreement, First Lien Notes and all other instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the First Lien Credit Agreement, the First Lien Notes or any Liens securing any First Lien Claims.

**1.71**    **First Lien Holders** means the First Lien Agent as a holder of Claims and any holders of Claims under the First Lien Credit Agreement or any other First Lien Documents.

**1.72**    **First Lien Notes** means any and all promissory notes of Crusader or the other Debtors, if any, payable to the order of any First Lien Holder evidencing indebtedness of Crusader to such holder under the First Lien Credit Agreement.

**1.73**    **First Lien Secured Claim** means the entirety of any Claim arising out of or under the First Lien Credit Agreement, or any other First Lien Documents, in each case as such amount may be adjusted from time to time consistent with Orders of the Bankruptcy Court.

**1.74**    **Formation Documents** means the organizational documents, bylaws, operating agreements, and such other documents as shall be necessary or appropriate to effectuate the formation of Newco and which shall be Filed with the Plan Supplement.

**1.75**    **Free and Clear** means free and clear of all Liens, Claims, Causes of Action, encumbrances, interests, claims, pledges, security interests, rights of setoff, restrictions or limitation on use, successor liabilities, conditions, rights of first refusal, options to purchase, obligations to allow participation, agreements or rights, rights asserted in litigation matters,

rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, matters filed of record that relate to, evidence or secure an obligation of the Debtors or the Estates, and all expenses, and charges, of any type under, among other things, any document, instrument, agreement, affidavit, matter filed of record, cause, or state or federal law, whether known or unknown, legal or equitable, and all liens, rights of offset, replacement liens, adequate protection liens, charges, obligations, or claims granted, allowed or directed in any Order, except (i) any Permitted Liens (with respect to Transferred Assets to the Buyer or Vested Assets in the Reorganized Debtors) or  (ii) any Liquidating Trust Permitted Liens (with respect to the Liquidating Trust Assets) which in the case of (i) and (ii) are not otherwise released or satisfied under this Plan.

1.76   **General Account** means one or more general accounts (A) into which shall be deposited all funds not required or permitted to be deposited into any other account or reserve described in or contemplated by the Liquidating Trust Agreement, and (B) from which shall be made all Distributions to Liquidating Trust Beneficiaries and the Closing Loan Lender.

1.77   **General Unsecured Claim** means a Claim that is not a Priority Tax Claim, Administrative Claim, Ad Valorem Tax Claim, Priority Claim, First Lien Secured Claim, Second Lien Secured Claim, M&M Secured Claim, Cure Claim, Other Secured Claim or Subordinated Claim.

1.78   **Governmental Authority** means any transnational, domestic or foreign federal, state or local, governmental unit, authority, department, court, agency or official, including any political subdivision thereof, or any tribal authority.

1.79   **Hawk** means Hawk Energy Fund I, LLC, an Oklahoma limited liability company and one of the jointly administered Debtors herein.

1.80   **Impaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is impaired within the meaning of Bankruptcy Code § 1124.

1.81   **Initial Second Lien Cash Availability** means (a) the Closing Cash Balance, plus (b) the aggregate Cash Consideration actually received by the Liquidating Trustee (or such other Person designated by the Liquidating Trustee), minus (c) the Carveout Reserve Amount, minus (d) the amount approved by the Bankruptcy Court as necessary to satisfy the Distribution Reserve Accounts (other than the Carveout Reserve), (e) minus the amount of the First Lien Secured Claim.

1.82   **Intercompany Claim** means any Claim by a Debtor against another Debtor.

1.83   **KEM** means Knight Energy Management, LLC, a Delaware limited liability company and one of the jointly administered Debtors.

1.84   **Knight** means Knight Energy Group, LLC, a Delaware limited liability company and one of the jointly administered Debtors herein.

1.85   **Knight II** means Knight Energy Group II, LLC, a Delaware limited liability company and one of the jointly administered Debtors herein.

**1.86** **Lien** means, with respect to any property or asset, any mortgage, lien, interest pledge, charge, security interest, encumbrance, mechanics' lien, materialman's lien, statutory lien or right, and other consensual or non-consensual lien, whenever granted and including, without limitation, those charges or interests in property within the meaning of "lien" under Bankruptcy Code § 101(37).

**1.87** **Lien Documents** means any agreement, instrument, affidavit, filing, or recording evidencing, creating or perfecting a Lien.

**1.88** **Liquidating Trust** means the liquidating trust created under the Liquidating Trust Agreement for the benefit of the holders of Allowed Claims in Class 7B.

**1.89** **Liquidating Trust Agreement** means the Liquidating Trust Agreement to be executed by the Debtors and the Liquidating Trustee, in substantially the same form as attached hereto as **Exhibit 1**.

**1.90** **Liquidating Trust Assets** means, whether to be held by the Liquidating Trust or Newco, (a) the Closing Cash Balance, (b) the Closing Accounts Receivable (to the extent they constitute "Remaining Accounts Receivable" under the Stock Purchase Agreement) or, if applicable, subject to any treatment under the Alternative Transaction Agreement, (c) the net proceeds from the Closing Loan, if applicable, (d) the Cash Consideration, (e) the Excluded Causes of Action, (f) any other assets identified as "Trust Assets" in the Stock Purchase Agreement or, if an Alternative Transaction Agreement is approved by the Bankruptcy Court, "Trust Assets" or "Excluded Assets" in the Alternative Transaction Agreement, and (g) such other assets identified in the Plan Supplement in accordance with Section 6.11 of this Plan.

**1.91** **Liquidating Trust Beneficiary** means the holder of a Liquidating Trust Interest.

**1.92** **Liquidating Trust Committee** means the committee established upon the Effective Date, to monitor and supervise the Liquidating Trustee's administration of the Liquidating Trust and to take such other actions as are set forth in this Plan, the Liquidating Trust Agreement, and the Confirmation Order or as may be approved by the Bankruptcy Court.

**1.93** **Liquidating Trust Expense Reserve** means (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 13.4 of this Plan.

**1.94** **Liquidating Trust Expenses** means the projected operating expenses, including indemnity claims arising under Section 9.7 of this Plan, of the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Beneficiaries, and/or Newco as measured and projected as of the Effective Date and on each applicable Available Cash Determination Date (including, without limitation, any actual or projected tax liabilities of, or assumed by, the Liquidating Trust).

**1.95** **Liquidating Trust Interest** means a beneficial interest in the Liquidating Trust, which represents the right to receive a Distribution from the Liquidating Trust as set forth in this Plan.

**1.96    Liquidating Trust Permitted Liens** means (a) with respect to "Trust Assets" in the Stock Purchase Agreement or, if an Alternative Transaction Agreement is approved by the Bankruptcy Court, "Trust Assets" or "Excluded Assets" in the Alternative Transaction Agreement, any Liens, Claims, encumbrances, other interests, claims, liens, security interests, rights of setoff, obligations to lend, expenses, and charges, of any type under, among other things, any document, instrument, agreement, cause, Cause of Action, or state or federal law, which are not released or satisfied under this Plan and which relate to the "Trust Assets" or "Excluded Assets" (as applicable), and (b) with respect to the Consideration, any Liens, Claims, encumbrances, other interests, claims, liens, security interests, rights of setoff, obligations to lend, expenses, and charges, of any type under, among other things, any document, instrument, agreement, cause, Cause of Action, or state or federal law against the Debtors or the property or assets of the Debtors and their respective Estates which, pursuant to this Plan, shall attach to the Distribution Reserve Accounts held by the Liquidating Trust with the same force, validity, priority, and effect, if any, as such Liens, Claims, encumbrances, other interests, claims, liens, security interests, rights of setoff, rights of recoupment, obligations to lend, expenses, and charges formerly had against any Debtors, their Estates or any property or assets of the Debtors and their respective Estates.

**1.97    Liquidating Trustee** means the trustee of the Liquidating Trust and any successor to that trustee.

**1.98    M&M Claim** means any Claims of any Persons, other than Claims asserted by operators of oil and gas properties arising under operating agreements to which a Debtor is a party, arising on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by one or more of the Debtors.

**1.99    M&M Liens** means any Liens or Claims of any Persons, other than Liens or Claims asserted by operators of oil and gas properties arising under operating agreements to which a Debtor is a party, to the extent arising and properly perfected on account of labor performed, or services, materials, goods or equipment furnished with respect to development, drilling, completion, maintenance, repair, operations or related activity on or with respect to any lands, material, machinery, supplies, improvements, oil and gas leases, or wells or pipelines owned, in whole or in part, by one or more of the Debtors, to the extent arising under these categories and under applicable law, including without limitation, the Texas Property Code Chapter 56, Oklahoma Statutes, Title 42, Chapter 3, Title 71, Chapter 3 of the Montana Code Annotated, or similar laws of those or any other state.

**1.100    M&M Secured Claim** means a Secured Claim that is secured by an M&M Lien.

**1.101    M&M Secured Claim Bar Date** means the earlier of (a) sixty days after the Effective Date and (b) the deadline, pursuant to applicable state law, for filing any affidavit or other document necessary to perfect an M&M Secured Claim under applicable law.

**1.102    New Crusader Shares** means shares of common stock, par value $0.01 per share, of Reorganized Crusader to be issued pursuant to the applicable Transaction Documents.

**1.103    New Subsidiaries Equity Interests** means membership and/or equity interests in the respective Reorganized Subsidiaries issued pursuant to the Plan.

**1.104    Newco** means one or more legal entities, whether a corporation, limited liability company, general partnership, limited partnership, or other form of organization, to be designated by the Debtors, the Second Lien Holders and the Committee and to whom the Liquidating Trust Assets, including the Excluded Causes of Action, may be transferred and/or assigned Free and Clear (except as otherwise provided in the Plan) on the Effective Date.

**1.105    Newco Bylaws** means the bylaws, limited liability company agreement or other similar organizational document of Newco.

**1.106    Newco Certificate of Incorporation** means the certificate of incorporation, certificate of formation or other similar organizational document of Newco to be filed in the office of the appropriate secretary of state pursuant to applicable law.

**1.107    Newco Equity Interest** means the shares of capital stock, membership interests or other equity interests, as applicable, in Newco, which will be issued under the Plan in accordance with Bankruptcy Code § 1145.

**1.108    Non-Appealable Order** means an order entered by the Bankruptcy Court or other court of competent jurisdiction on its docket as to which (a) the time to appeal, petition for certiorari, or move for reargument, new trial or rehearing has expired and as to which no appeal, petition for certiorari, or other proceedings for reargument, new trial or rehearing shall then be pending; or (b) in the event that any appeal, writ of certiorari, reargument, new trial or rehearing thereof has been sought, such order shall have been affirmed by the highest court to which such order was appealed, or certiorari has been denied, or from which reargument, new trial or rehearing was sought, and the time to take any further appeal, petition for certiorari or move for reargument, new trial or rehearing shall have expired; provided, however, that no order shall fail to be a Non-Appealable Order solely because of the possibility that a motion pursuant to Rule 60 of the Federal Rules of Civil Procedure or a similar rule under the Federal Rules of Bankruptcy Procedure may be filed with respect to such order.

**1.109    Non-Second Lien General Unsecured Claim** means a General Unsecured Claim that is not a Second Lien Deficiency Claim.

**1.110    Order** means an order of the Bankruptcy Court.

**1.111    Ordinary Course of Business** means the ordinary course of business of the Debtors, consistent in all material respects with past custom and practice from June 26, 2008, until the Petition Date.

**1.112    Other Consideration** means consideration, other than Cash Consideration and proceeds from the Closing Loan, provided by the Buyer and received by the Liquidating Trustee or such other Person designated by the Liquidating Trustee under the Stock Purchase Agreement or Alternative Transaction Agreement, including, but not limited to, promissory notes and Buyer Equity.

**1.113** **Other Secured Claim** means a Secured Claim that is not an Ad Valorem Tax Claim, First Lien Secured Claim, Second Lien Secured Claim, or M&M Secured Claim.

**1.114** **Permitted Liens** shall have the meaning given to the term "Permitted Post-Closing Liens" or "Permitted Encumbrances" (as applicable) in the (a) Stock Purchase Agreement or (b) Alternative Transaction Agreement if an Alternative Transaction Agreement is approved by the Bankruptcy Court.

**1.115** **Person** means any person, entity or Governmental Authority of any nature whatsoever, specifically including an individual, firm, company, corporation, partnership, trust, joint venture, association, joint stock company, limited liability company, estate, unincorporated organization or other entity or organization.

**1.116** **Petition Date** means March 30, 2009, the date on which the Debtors commenced their Cases in the Bankruptcy Court.

**1.117** **Plan** means this Joint Plan of Reorganization for the Debtors dated September 22, 2009, together with any supplements, amendments, or modifications thereto.

**1.118** **Plan Documents** means all documents, forms, lists, and agreements contemplated under this Plan to effectuate the terms and conditions hereof.

**1.119** **Plan Proponents** means the Debtors, First Lien Holders, Second Lien Holders, and Committee.

**1.120** **Plan Supplement** means the compilation of Plan Documents and any other documents, forms, exhibits, lists, and schedules as specified in this Plan and the Disclosure Statement which will be Filed with the Bankruptcy Court not later than ten Business Days prior to the commencement of the Confirmation Hearing, as such documents may be altered, restated, modified, or supplemented from time to time.

**1.121** **Post-Confirmation Bar Date** means 4:00 p.m., prevailing Central time, on the first Business Day which is at least thirty days after the Effective Date.

**1.122** **Priority Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(4)-(7), (9)-(10).

**1.123** **Priority Tax Claim** means a Claim that is entitled to priority under Bankruptcy Code § 507(a)(8).

**1.124** **Pro Rata** means the proportion that the amount of an Allowed Claim in a Class bears to the aggregate amount of all Claims in that Class, including Disputed Claims but excluding Disallowed Claims. For purposes of this calculation, the amount of a Disputed Claim will equal the lesser of (a) its Face Amount, and (b) the amount estimated as allowable by the Bankruptcy Court.

**1.125** **Professional** means any Person employed in the Cases pursuant to Bankruptcy Code §§ 327 or 1103.

**1.126** **Professional Fee Claim** means an Administrative Claim of a Professional for compensation for services rendered and/or reimbursement of costs and expenses incurred on and after the Petition Date and prior to the Effective Date.

**1.127** **Proof of Claim** means a written statement setting forth a Creditor's Claim and conforming substantially to the appropriate official form.

**1.128** **RCH** means RCH Upland Acquisition, LLC, a Delaware limited liability company and one of the jointly administered Debtors.

**1.129** **Released Parties** means the Debtors, the Estates, the Reorganized Debtors, the Buyer, the First Lien Holders, the Second Lien Holders, the Committee, the Liquidating Trust, and the Liquidating Trustee.

**1.130** **Reorganized CEG LLC** means CEG LLC on and after the Effective Date.

**1.131** **Reorganized CMC** means CMC on and after the Effective Date.

**1.132** **Reorganized Crusader** means Crusader on and after the Effective Date.

**1.133** **Reorganized Debtors** means Reorganized Crusader, Reorganized CEG LLC, Reorganized CMC, Reorganized Hawk, Reorganized Knight, Reorganized Knight II, Reorganized KEM and Reorganized RCH.

**1.134** **Reorganized Hawk** means Hawk on and after the Effective Date.

**1.135** **Reorganized KEM** means KEM on and after the Effective Date.

**1.136** **Reorganized Knight** means Knight on and after the Effective Date.

**1.137** **Reorganized Knight II** means Knight II on and after the Effective Date.

**1.138** **Reorganized RCH** means RCH on and after the Effective Date.

**1.139** **Reorganized Subsidiaries** means Reorganized CEG LLC, Reorganized CMC, Reorganized Hawk, Reorganized Knight, Reorganized Knight II, Reorganized KEM and Reorganized RCH.

**1.140** **SandRidge Energy** means SandRidge Energy, Inc., a Delaware corporation.

**1.141** **SandRidge Exploration** means SandRidge Exploration and Production, LLC, a Delaware limited liability company.

**1.142** **Scheduled** means, with respect to any Claim or Equity Interest, the status and amount, if any, of such Claim or Equity Interest as set forth in the Bankruptcy Schedules.

**1.143** **Second Lien Agent** means Wilmington Trust FSB, as administrative agent under the Second Lien Credit Agreement, or any successor thereto.

**1.144** **Second Lien Claim** means the entirety of any Claim, whether or not a fully secured Claim, arising out of or under the Second Lien Credit Agreement or any other Second Lien Documents.

**1.145** **Second Lien Credit Agreement** means the Second Lien Credit Agreement dated July 17, 2008 among Crusader, Wilmington Trust FSB (as successor to JPMorgan Chase Bank, N.A.), as administrative agent, and the lenders party thereto.

**1.146** **Second Lien Deficiency Claim** means a General Unsecured Claim held by a Second Lien Holder.

**1.147** **Second Lien Documents** means the Second Lien Credit Agreement, the Second Lien Notes and all other instruments, agreements, deeds of trust, mortgages, security agreements, assignments, pledges, and financing statements that evidence, secure or relate to the Second Lien Credit Agreement, the Second Lien Notes, any Second Lien Claims or any Liens securing any Second Lien Claims.

**1.148** **Second Lien Holders** means the Second Lien Agent as a holder of Claims and the holders of Claims under the Second Lien Credit Agreement or any other Second Lien Documents.

**1.149** **Second Lien Notes** means any and all promissory notes of Crusader payable to the order of any Second Lien Holder evidencing indebtedness of Crusader to such holder under the Second Lien Credit Agreement.

**1.150** **Second Lien Secured Claim** means a Secured Claim arising out of or under the Second Lien Credit Agreement or any other Second Lien Documents, as such amount may be adjusted from time to time consistent with Orders of the Bankruptcy Court.

**1.151** **Secured Claim** means (a) any Claim or portion thereof that is reflected in the Bankruptcy Schedules or a Proof of Claim as secured by a perfected security interest in, or Lien upon, any Collateral, or the net proceeds from the sale of such Collateral, in which a Debtor has an interest, to the extent of the value, as of the Petition Date (or such other date as is established by the Bankruptcy Court) of such security interest or Lien as determined by a Non-Appealable Order pursuant to Bankruptcy Code § 506 or as otherwise agreed upon in writing by the holder of such Claim and (i) the Debtors (if such agreement is effectuated prior to the Effective Date) or (ii) the Liquidating Trustee (if such agreement is effectuated on or after the Effective Date); or (b) a Setoff Claim.

**1.152** **Senior Claim Distribution Reserve** means (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 13.3 of this Plan.

**1.153** **Setoff Claim** means a Claim of a holder that has a valid right of setoff with respect to such Claim which right is enforceable under Bankruptcy Code § 553 as determined by a Non-Appealable Order or as otherwise agreed in writing by the holder of such Claim and (a) the Debtors (if such agreement is effectuated prior to the Effective Date), or (b) the

Liquidating Trustee (if such agreement is effectuated on or after the Effective Date), to the extent of the amount subject to such right of setoff.

**1.154 Stock Purchase Agreement** means the Stock Purchase Agreement dated as of September 22, 2009 among SandRidge Energy, SandRidge Exploration, and the Debtors, a copy of which has been Filed at Docket No. 664 in the Cases, and any schedules, addendums, exhibits, annexes, or other attachments thereto.

**1.155 Subordinated Claim** means any Claim (a) arising from rescission of a purchase or sale of a security of any of the Debtors or of an affiliate of any of the Debtors, (b) for damages arising from the purchase or sale of such a security, (c) for reimbursement or contribution allowed under Bankruptcy Code § 502 on account of a Claim described in (a) or (b) above, (d) otherwise subordinated pursuant to Bankruptcy Code § 510, (e) subordinated by Non-Appealable Order, or (f) based on fines, penalties, forfeiture or for multiple, exemplary, or punitive damages.

**1.156 Substantial Consummation** means the consummation of the transactions (including the Closing) required, as applicable, under (a) Article VI and (b) Article VII or Article VIII (as applicable) in accordance with Bankruptcy Code § 1101(2), which shall occur on the Effective Date.

**1.157 Transaction Documents** means the Transaction Documents as defined in the Stock Purchase Agreement or the Alternative Purchase Agreement (as applicable).

**1.158 Transferred Assets** means all of each Debtors' right, title and interest in and to any Properties (as defined in an Alternative Transaction Agreement pursuant to which assets of one or more of the Debtors are to be transferred to the Buyer) as the same shall exist as of the Effective Date of every kind, type or designation, whether tangible or intangible, real, personal or mixed, wherever located, that are to be sold or transferred by one or more of the Debtors to the Buyer under an Alternative Transaction Agreement pursuant to which assets of one or more of the Debtors are to be transferred to the Buyer, but excluding the Liquidating Trust Assets and property that is to be abandoned under Section 20.15 of this Plan.

**1.159 U.S. Trustee Fees** means fees payable pursuant to 28 U.S.C. § 1930.

**1.160 Undeliverable Distribution Reserve** means (i) a segregated account established by the Liquidating Trustee, or (ii) a book entry account, in the sole discretion of the Liquidating Trustee, established in accordance with Section 13.2 of this Plan.

**1.161 Undeliverable or Unclaimed Distribution** means a Distribution by the Liquidating Trustee pursuant to this Plan that is either (a) attributable to a holder of an Allowed Claim in Classes 1-7B that has failed to prepare, execute and return to the Liquidating Trustee an Internal Revenue Service Form W-9 if so requested by the Liquidating Trustee, or (b) returned to the Liquidating Trustee as undeliverable or otherwise unclaimed.

**1.162 Unimpaired** means, when used with reference to a Claim or Equity Interest, a Claim or Equity Interest that is not Impaired.

**1.163**  **Vested Assets** means all of each Debtors' (and their respective Estates') right, title and interest in and to any assets, contracts, leases, Oil and Gas Leases as defined in the Stock Purchase Agreement or an Alternative Transaction Agreement, properties and business, as the same shall exist as of the Effective Date of every kind, type or designation, whether tangible or intangible, known or unknown, real, personal or mixed, wherever located, including all claims and Causes of Action against any Person to the extent not released and discharged pursuant to this Plan, that are to be vested in one or more of the Reorganized Debtors under the Stock Purchase Agreement or an Alternative Transaction Agreement pursuant to which any New Crusader Shares or New Subsidiary Equity Interests are to be issued or transferred to the Buyer, but excluding the Liquidating Trust Assets and property that is to be abandoned under Section 20.15 of this Plan.

**1.164**  **Voting Deadline** means the date and time, as fixed by an Order of the Bankruptcy Court and set forth in the Disclosure Statement, by which all Ballots to accept or reject this Plan must be received in order to be counted.

**1.165**  **Voting Record Date** means the record date for voting on this Plan, which shall be _____, 2009.

## ARTICLE II

## TREATMENT OF ADMINISTRATIVE CLAIMS

**2.1**  **Treatment**.  Except as otherwise provided herein, the holder of an Allowed Administrative Claim, in full satisfaction, settlement, release and discharge of, and in exchange for such Claim, shall (a) be paid by the Liquidating Trustee from the Liquidating Trust Assets, as set forth in Section 13.3 of this Plan, in the amount of such holder's Allowed Claim in one Cash payment on the later of (i) the Effective Date (or as soon as reasonably practicable thereafter) or (ii) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (b) receive such other less favorable treatment that may be agreed upon in writing by the Liquidating Trustee and such holder.

**2.2**  **General Administrative Claims**.  Except as otherwise set forth in this Article II, each holder of an Administrative Claim shall be required to file with the Bankruptcy Court, and to serve upon all parties required to receive notice, an application for allowance of such Administrative Claim on or before the Post-Confirmation Bar Date or be forever barred and discharged from doing so.  The Administrative Claims subject to the Post-Confirmation Bar Date include (a) any right to payment, whether or not such right is reduced to judgment, liquidated, unliquidated, fixed, contingent, matured, unmatured, disputed, undisputed, legal, equitable, secured, or unsecured, and (b) any right to an equitable remedy for breach of performance if such breach gives rise to a right to payment, whether or not such right to an equitable remedy is reduced to judgment, fixed, contingent, matured, unmatured, disputed, undisputed, secured, or unsecured.  An Administrative Claim with respect to which an application has been properly and timely filed pursuant to this Section 2.2 shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order; provided, however, that Administrative Claims incurred and paid by any Debtor in the ordinary course on and after the Petition Date shall be deemed Allowed Claims and shall not be required to submit applications for approval of

Administrative Claims. Any professionals employed by the First Lien Holders and the Second Lien Holders shall continue to be paid pursuant to the *Final Order Authorizing Use of Cash Collateral and Granting Adequate Protection* [Docket No. 524] and all previous payments made pursuant thereto shall be deemed Allowed Claims.

**2.3** **Treatment of Priority Tax Claims**. Each holder of an Allowed Priority Tax Claim shall be paid in Cash in full by the Liquidating Trustee on the later of the Effective Date and allowance from Liquidating Trust Assets by the Liquidating Trustee, as set forth in Section 13.3 of this Plan. The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Tax Claim.

**2.4** **Professional Fee Claims**. Each Professional whose retention with respect to the Debtors' Cases has been approved by the Bankruptcy Court and who holds or asserts an Administrative Claim that is a Professional Fee Claim shall be required to File with the Bankruptcy Court, and to serve on all parties required to receive notice, a final Fee Application on or before 30 days after the Effective Date. The failure to timely File the Fee Application shall result in the Professional Fee Claim being forever barred and discharged. A Professional Fee Claim with respect to which a Fee Application has been properly and timely filed pursuant to this Section 2.4 of this Plan shall be treated and paid as an Administrative Claim only to the extent allowed by Non-Appealable Order. No Professional Fee Claims shall be allowed on account of any services rendered by a Professional whose retention with respect to the Cases has not been approved by the Bankruptcy Court.

**2.5** **U.S. Trustee Fees**. All unpaid U.S. Trustee Fees shall be paid in Cash in full by the Liquidating Trustee on and after the Effective Date (or as soon as reasonably practicable after such fees become due) from Liquidating Trust Assets by the Liquidating Trustee, as set forth in Section 13.3 of this Plan.

## ARTICLE III

### DESIGNATION OF CLASSES
### OF CLAIMS AND INTERESTS

**3.1** **Introduction**. In accordance with Bankruptcy Code § 1123(a)(1), all Claims and Equity Interests (except for Administrative Claims) are placed in the Classes described below for all purposes, including voting on, confirmation of, and Distributions under this Plan. Administrative Claims have not been classified.

A Claim or Equity Interest is placed in a particular Class only to the extent that the Claim or Equity Interest falls within the description of that Class and is classified in other Classes only to the extent the other portion of the Claim or Equity Interest falls within the description of such other Classes. A Claim is also placed in a particular Class for the purpose of receiving Distributions pursuant to this Plan only to the extent that such Claim is an Allowed Claim in that Class and such Claim has not been paid, released, or otherwise settled prior to the Effective Date.

**3.2** **Claims against and Equity Interests in the Debtors**. The Claims against and Equity Interests in the Debtors are classified as follows:

| Class | Class Description | Status | Voting Rights |
|-------|-------------------|--------|---------------|
| Class 1 | Allowed Ad Valorem Tax Claims | Unimpaired | Not Entitled to Vote |
| Class 2 | Allowed Priority Claims | Unimpaired | Not Entitled to Vote |
| Class 3 | Allowed First Lien Secured Claims | Unimpaired | Not Entitled to Vote |
| Class 4 | Allowed Second Lien Secured Claims | Impaired | Entitled to Vote |
| Class 5 | Allowed M&M Secured Claims | Impaired | Entitled to Vote |
| Class 6 | Allowed Other Secured Claims | Impaired | Entitled to Vote |
| Class 7A | Allowed Non-Second Lien General Unsecured Claims | Impaired | Entitled to Vote |
| Class 7B | Allowed Second Lien Deficiency Claims | Impaired | Entitled to Vote |
| Class 8 | Allowed Subordinated Claims | Impaired | Not Entitled to Vote |
| Class 9 | Allowed Equity Interests | Impaired | Not Entitled to Vote |

## ARTICLE IV

## PROVISIONS FOR SATISFACTION
## OF CLAIMS AND INTERESTS

**4.1** **Introduction**. The Claims and Equity Interests as classified in Article III shall be treated and satisfied in the manner set forth in this Article IV. The payments or Distributions may be made as more particularly set forth in this Plan.

**4.2** **Treatment of Classified Claims and Equity Interests**.

(a) **Class 1 (Allowed Ad Valorem Tax Claims)**. Each holder of an Allowed Ad Valorem Tax Claim against the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from Liquidating Trust Assets, as set forth in Section 13.3 of this Plan, the amount of such holder's Allowed Ad Valorem Tax Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment from the Liquidating Trust Assets that may be agreed upon in writing by the Liquidating Trustee and such holder. The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Ad Valorem Tax Claim; provided, however, that any Lien upon, property, or the net proceeds from the sale of such property, related to such Claim, shall attach to the Cash held in the Senior Claim Distribution Reserve with the same force, validity, priority, and effect, if any of such security interest and Lien.

(b) **Class 2 (Allowed Priority Claims)**. Each holder of an Allowed Priority Claim against the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from the Liquidating Trust Assets, as set forth in Section 13.4 of this Plan, the amount of such holder's Allowed Priority Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter), and (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment from the Liquidating Trust Assets that may be agreed upon in writing by the Liquidating Trustee and such holder. The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed Priority Claim.

(c)     **Class 3 (Allowed First Lien Secured Claims)**.  On the Effective Date, the First Lien Secured Claims shall be Allowed in the aggregate amount of $28,488,225 as of the date of this Plan, subject to upward adjustment based on, among other things, any and all interest, fees, and other expenses to which the First Lien Holders may be entitled under the First Lien Credit Agreement and Orders of the Bankruptcy Court.  On the Effective Date (or as soon as reasonably practicable thereafter), each holder of an Allowed First Lien Secured Claim shall be paid by wire transfer to an account designated by the First Lien Agent in writing by the Buyer the amount of such holder's Allowed First Lien Secured Claim in one Cash payment.  The Cash payment shall be in exchange for and in full satisfaction and discharge of the holder's Allowed First Lien Secured Claim.

(d)     **Class 4 (Allowed Second Lien Secured Claims)**.  On the Effective Date (or as soon as reasonably practicable thereafter), each of the Second Lien Secured Claims shall be Allowed.  Each holder of an Allowed Second Lien Secured Claim against any of the Debtors' Estates shall receive the following Distributions in exchange for and in full satisfaction and discharge of the holders' Allowed Second Lien Secured Claims:

(i)     If SandRidge Exploration is the Buyer, then each holder of an Allowed Second Lien Secured Claim shall receive the holder's Pro Rata share of the Other Consideration subject to (A) the terms of Section 11.4 of this Plan and (B) any adjustment under Section 2.01 or Section 2.03 of the Stock Purchase Agreement.

(ii)     If SandRidge Exploration is not the Buyer and the Buyer provides only Cash Consideration, then each holder of an Allowed Second Lien Secured Claim shall be paid by the Liquidating Trustee from the Liquidating Trust Assets the holder's Pro Rata share of the Initial Second Lien Cash Availability.

(iii)     If SandRidge Exploration is not the Buyer and the Buyer provides Cash Consideration and Other Consideration, then each holder of an Allowed Second Lien Secured Claim shall (A) receive the holder's Pro Rata share of the Other Consideration subject to (I) the terms of Section 11.4 of this Plan and (II) adjustment as provided in the Alternative Transaction Agreement, and (B) be paid by the Liquidating Trustee from the Liquidating Trust Assets the holder's Pro Rata share of the Initial Second Lien Cash Availability.

Each holder of an Allowed Second Lien Secured Claim shall have an Allowed Second Lien Deficiency Claim equal to its Pro Rata share of the aggregate amount of (i) $249,750,000 minus (A) the amount of its Allowed Second Lien Secured Claim and (B) the amount of any adequate protection payments, or (ii) such lesser amount as agreed by holders of Second Lien Secured Claims, and shall receive such treatment as set forth in Section 4.2(h) of this Plan.

(e)     **Class 5 (Allowed M&M Secured Claims)**.  Each holder of an Allowed M&M Secured Claim against any of the Debtors' Estates shall either (i) be paid by the Liquidating Trustee from the Carveout Reserve, as set forth in Section 13.5 of this Plan, the amount of such holder's Allowed M&M Secured Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) or (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment from the Carveout Reserve that may be agreed upon in writing by

the Liquidating Trustee and such holder, in exchange for and in full satisfaction and discharge of the holders' Allowed M&M Secured Claim; provided, however, any security interest in or Lien upon, property, or the net proceeds from the sale of such property, related to such Claim, shall attach to the Cash held in the Carveout Reserve with the same force, validity, priority, and effect, if any of such security interest and Lien.

(i)     Notwithstanding the foregoing and without regard to the priority, validity, or enforceability of an M&M Secured Claim, each holder of an M&M Claim against any of the Debtors' Estates that is identified by schedule to the Disclosure Statement (which schedule shall contain no less than $25,000,000 of M&M Claims in the aggregate, as amended, the "M&M Claim Schedule") shall be paid, on the Effective Date (or as soon as reasonably practicable thereafter), 60% of the aggregate amount of such holder's M&M Claims set forth on the M&M Claim Schedule in exchange for and in full satisfaction and discharge of the holder's M&M Claims provided that the holder of such M&M Claims elects on a timely cast Ballot to receive such treatment with respect thereto.  Any such election shall constitute a waiver of the right to collect, and a release of all M&M Claims held by such electing holder, and the holder of such M&M Claims shall be deemed to have released the Released Parties, the Buyer and its subsidiaries, SandRidge Energy (if SandRidge Exploration is the Buyer) and all third party working interest owners and other Persons from: (i) its M&M Claims, and (ii) any and all liability for, or enforcement of, any potential liens, Liens or Claims with respect to the property to which such M&M Claims, potential liens, Liens or Claims relate.  The Debtors shall release such holder of M&M Claims making the election set forth herein from any and all Excluded Causes of Action.  Any holder of M&M Claims making the election shall be deemed to assign its M&M Liens to the Liquidating Trust; provided, however, notwithstanding any assignment of such M&M Liens: (i) the M&M Liens are assigned solely for the purpose of avoiding dilution of the priority of Liens against the property affected thereby, (ii) any such M&M Liens assigned to the Liquidating Trust or Newco shall not be enforced or enforceable against Reorganized Debtors or any other Person, the Vested Assets, or any property of the Reorganized Debtors or any other Person, and (iii) any such M&M Liens shall be, and are, released, including of record, pursuant to the Plan (including Sections 6.6 and 6.18 of this Plan).

(ii)    A holder of M&M Claims not identified on the M&M Claim Schedule also may opt to receive 60% of such holder's aggregate M&M Claims in exchange for and in full satisfaction and discharge of the holder's M&M Claims without regard to the priority, validity or enforceability of the M&M Liens provided that (y) the holder of such M&M Claims elects on a timely cast Ballot to receive such treatment, and (z) the Debtors and the Second Lien Holders consent to the holder of such M&M Claims making such election.  Any such election that is consented to by the Debtors and the Second Lien Holders, shall constitute a waiver of the right to collect, and a release of, all M&M Claims of such electing holder, and the holder of such M&M Claims shall be deemed to have released the Released Parties, the Buyer, SandRidge Energy (if SandRidge Exploration is the Buyer) and all third party working interest owners and other Persons: (i) its M&M Claims, and (ii) any and all liability for, or enforcement of, any potential liens, Liens or Claims with respect to the property to which such M&M Claims, potential liens, Liens or Claims relate.  The Debtors shall also release such holder of M&M Claims making the election set forth herein from any and all Excluded Causes of Action, provided such election is consented to by the Debtors and the Second Lien Holders.  The holder of such M&M Claims that timely elects to reduce the amount of its M&M Claims, and such

election is consented to by the Debtors and the Second Lien Holders, shall be deemed to be the holder of an Allowed M&M Secured Claim for classification, voting, and all other purposes under this Plan. Any holder of an M&M Claim making the election, and provided such election is consented to by the Debtors and the Second Lien Holders, shall be deemed to assign its M&M Liens to the Liquidating Trust; provided, however, notwithstanding any assignment of such M&M Liens: (i) the M&M Liens are assigned solely for the purpose of avoiding dilution of the priority of Liens against the property affected thereby, (ii) any such M&M Liens assigned to the Liquidating Trust or Newco shall not be enforced or enforceable against Reorganized Debtors or any other Person, the Vested Assets, or any property of the Reorganized Debtors or any other Person, and (iii) any such M&M Liens shall be, and are, released, including of record, pursuant to the Plan (including Sections 6.6 and 6.18 of this Plan).

(iii)     The Debtors may modify the M&M Claim Schedule up to any time prior to the Effective Date, solely for the purpose of adding any holders of M&M Claims or increasing the amounts owed to any holders of M&M Claims.

(f)     **Class 6 (Allowed Other Secured Claims)**.  Each holder of an Allowed Other Secured Claim against any of the Debtors' Estates shall either (i) as set forth in Section 13.3 of this Plan, be paid by the Liquidating Trustee from the Senior Claim Distribution Reserve the amount of such holder's Allowed Other Secured Claim in one Cash payment on the later of (A) the Effective Date (or as soon as reasonably practicable thereafter) and (B) fifteen Business Days following the date such Claim is Allowed by Non-Appealable Order, or (ii) receive such other less favorable treatment from the Senior Claim Distribution Reserve that may be agreed upon in writing by the Liquidating Trustee and such holder, in exchange for and in full satisfaction and discharge of the holders' Allowed Other Secured Claim; provided, however, any security interest in or Lien upon, property, or the net proceeds from the sale of such property, related to such Claim, shall attach to the Cash held in the Senior Claim Distribution Reserve with the same force, validity, priority, and effect, if any of such security interest and Lien.

(g)     **Class 7A (Allowed Non-Second Lien General Unsecured Claims)**. Each holder of an Allowed Non-Second Lien General Unsecured Claim against any of the Debtors' Estates shall be paid by the Liquidating Trustee from the Carveout Reserve, as set forth in Section 13.5 of this Plan, in exchange for and in full satisfaction and discharge of such Claim, the lesser of (i) 32.5% of such holder's Allowed Non-Second Lien General Unsecured Claim and (ii) the Pro Rata share of $8,750,000.

(h)     **Class 7B (Second Lien Deficiency Claims)**.  Each holder of a Second Lien Deficiency Claim against any of the Debtors' Estates shall receive in exchange for and in full satisfaction and discharge of such Claim its Pro Rata share of (i) the Liquidating Trust Interests on the Effective Date (or as soon as reasonably practicable thereafter), and (ii) Distributions of Available Cash on account of such Liquidating Trust Interest as provided in Sections 12.1 and 12.2 of this Plan, subject to other applicable terms of this Plan and the Liquidating Trust Agreement.

(i)     **Class 8 (Allowed Subordinated Claims)**.  Holders of Subordinated Claims against any of the Debtors' Estates shall not be entitled to receive any Distributions or

retain any property under this Plan or from the Liquidating Trust, Buyer or its subsidiaries on account of such Claims.

(j) **Class 9 (Allowed Equity Interests)**. Holders of Equity Interests in any of the Debtors shall not be entitled to receive any Distributions or retain any property under this Plan or from the Liquidating Trust, Buyer or its subsidiaries on account of such Equity Interests. Upon confirmation, all Equity Interests shall be cancelled, terminated and extinguished.

### 4.3 Designation of Impaired and Unimpaired Classes.

(a) **Impaired Classes of Claims**. Classes 4, 5, 6, 7A, and 7B are Impaired, and therefore, holders of Claims in such Classes are entitled to cast Ballots with respect to this Plan. Class 8 is also Impaired; however, the Creditors in that Class are not entitled to cast Ballots with respect to this Plan because they are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

(b) **Impaired Classes of Equity Interests**. Class 9 is Impaired; however, the holders of Equity Interests in that Class are not entitled to cast Ballots with respect to this Plan because such holders are not entitled to receive or retain any property under this Plan and are deemed to have rejected this Plan in accordance with Bankruptcy Code § 1126(g).

## ARTICLE V

## ACCEPTANCE OR REJECTION OF THIS PLAN

**5.1 Classes Entitled to Vote**. Each Impaired Class of Claims that will receive or retain property or any interest in property under this Plan shall be entitled to vote to accept or reject this Plan as provided in the Disclosure Statement Order or any other Order.

**5.2 Acceptance by Impaired Classes of Claims**. An Impaired Class of Claims shall have accepted this Plan if (a) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of at least two-thirds in dollar amount of the Allowed Claims actually voting in such Class have voted to accept this Plan and (ii) the holders (other than any holder designated under Bankruptcy Code § 1126(e)) of more than one-half in number of the Allowed Claims actually voting in such Class have voted to accept this Plan.

**5.3 Cramdown**. If each Impaired Class of Claims does not accept this Plan, the Plan Proponents request Confirmation of this Plan under Bankruptcy Code § 1129(b). The Plan Proponents reserve the right to modify this Plan to the extent, if any, that Confirmation pursuant to Bankruptcy Code § 1129(b) requires modification or for any other reason in their discretion, but no such modification may adversely affect an extant Buyer or any of its subsidiaries (except with Buyer's consent), whether this Plan contemplates consummation of the Stock Purchase Agreement or Alternative Transaction Agreement.

# ARTICLE VI

## MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER OR TRANSFER OF TRANSFERRED ASSETS TO THE BUYER

**6.1** **Introduction**.  This <u>Article VI</u> shall apply to any transactions under the Stock Purchase Agreement or an Alternative Transaction Agreement.

**6.2** **Conditions Precedent to the Effective Date**.  Each of the following events shall occur on or before the Effective Date; <u>provided</u> <u>however</u>, the Plan Proponents may waive in writing any or all of the following events, whereupon the Effective Date shall occur without further action by any Person:

(a)   the Confirmation Order, in a form and substance reasonably acceptable to each of the Plan Proponents and the Buyer shall have been entered by the Bankruptcy Court and shall not be subject to a stay and shall include one or more findings that (i) this Plan is confirmed with respect to each Debtor, (ii) the Plan Proponents and Buyer have acted in good faith and in compliance with the applicable provisions of the Bankruptcy Code as set forth in Bankruptcy Code § 1125(e), (iii) the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable) is approved on a final basis and the Debtors, the Plan Proponents, and the Buyer acted in good faith in connection therewith, (iv) the Debtors are authorized to take all actions and consummate all transactions contemplated under the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable), and this Plan, and (v) if the Buyer is to issue Buyer Equity as Consideration under the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable) the Buyer is a successor to the Debtors only to the limited extent needed to comply with Bankruptcy Code § 1145 and for no other reason under any state or federal law;

(b)   each of the conditions to closing set forth in the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable) shall have occurred (or occur on the Effective Date) or been waived in accordance with such agreement;

(c)   the First Lien Holders are paid in full;

(d)   the Court shall have approved the amount of Cash necessary to fund the Liquidating Trust Expense Reserve, Carveout Reserve and Senior Claim Distribution Reserve;

(e)   the Liquidating Trustee shall be identified in the Plan Supplement;

(f)   the Bankruptcy Court shall have determined that the Liquidating Trustee is or will be duly authorized to take the actions contemplated in this Plan and the Liquidating Trust Agreement, which approval and authorization may be set forth in the Confirmation Order;

(g)   the Bankruptcy Court shall have entered an Order approving the substantive consolidation of the Debtors on the terms set forth in <u>Section 6.3</u>;

(h)    all documents, instruments, and agreements provided under, or necessary to implement, this Plan and the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable) shall have been executed and delivered by the applicable parties (except with respect to such documents, instruments, and agreements contemplated to be executed at the Closing); and

(i)    all other documents required to be Filed with the Plan Supplement, each in form and substance reasonably acceptable to the Plan Proponents, shall have been duly and validly executed and delivered by the parties thereto and all conditions to their effectiveness shall have been satisfied or waived.

**6.3    Limited Substantive Consolidation**.  Pursuant to the Bankruptcy Court's **[*Order Approving Substantive Consolidation of the Debtors*]** [Docket No. ___], solely for the purpose of the Cases and this Plan, and without affecting any Reorganized Debtor in any manner, (a) each Claim against any of the Debtors will be deemed to be a Claim against a consolidated entity consisting of all of the Debtors, (b) any Proof of Claim Filed against one or more of the Debtors will be deemed to have been Filed against the consolidated entity; (c) all intercompany Claims by and among the Debtors will be eliminated; (d) all guarantees by one of the Debtors in favor of any of the other Debtors will be eliminated, and all guarantees executed by any of the Debtors in favor of a Creditor will be deemed to be a single obligation.   Substantive consolidation shall have no effect on valid, enforceable, and unavoidable Liens except for Liens that secure an Intercompany Claim that is eliminated by virtue of substantive consolidation and related Liens against Collateral that ceases to exist by virtue of substantive consolidation. Substantive consolidation shall not (u) create a Claim in a Class different from the Class in which a Claim would have been placed in the absence of substantive consolidation; (v) change the priority or nature of a Claim in a manner different from the priority or nature of such Claim in the absence of substantive consolidation; or (w) affect any preserved Causes of Action, including Avoidance Actions, of each of the Debtors; (x) affect the legal or organizational structure of the Debtors or the Reorganized Debtors or their respective ownership of any property or asset; (y) affect the defenses, other than proper-party defenses, to any Causes of Action; or (z) affect distributions out of any insurance policies or proceeds of such policies.

**6.4    Formation of Newco**.  On or before the Effective Date, the Liquidating Trustee shall file the Newco Certificate of Incorporation and any other Formation Documents as necessary or appropriate to effectuate the formation of Newco in the office of the appropriate secretary of state.  The Newco Certificate of Incorporation shall include, among other things, a provision prohibiting the issuance of non-voting equity securities.

**6.5    Alternative Transactions and Superior Proposal**.   Pursuant to the Bid Protection Order and the Stock Purchase Agreement, the Debtors may terminate the Stock Purchase Agreement and seek Bankruptcy Court approval of an Alternative Transaction in certain circumstances.

**6.6    Cancellation of Lien Documents**.

(a)    On the Effective Date, the First Lien Documents, the Second Lien Documents and all other Lien Documents, if any, shall be deemed cancelled, discharged,

released, terminated, and of no further force or effect and this Plan shall operate to cancel all obligations of the Debtors, the Liquidating Trust, and the Reorganized Debtors under the First Lien Documents, the Second Lien Documents and all other Lien Documents. Notwithstanding the foregoing, (a) such cancellation of the Lien Documents shall not impair the rights of holders of any Claims arising under or relating to such Lien Documents to receive Distributions from the Liquidating Trust, or as otherwise provided in this Plan, on account of such Claims, and (b) each Lien Document that is administered by an agent or servicer shall continue in effect solely for the purposes of (i) allowing such agent or servicer to make distributions to be made on account of such Claims under this Plan and (ii) permitting such agent or servicer to maintain any rights it may have for fees, costs, and expenses under such agreement. Nothing herein shall impair the rights and duties under the First Lien Documents as among the First Lien Agent and the First Lien Holders or under the Second Lien Documents as among the Second Lien Agent and the Second Lien Holders.

(b)      The holders of M&M Liens shall, within 10 days after the Effective Date, release of record their respective M&M Liens with respect to the Debtors, the Estates, the Reorganized Debtors, the Vested Assets and the Transferred Assets.

**6.7**      **UCC Termination Statements**.  Not later than two Business Days prior to the Effective Date, the First Lien Agent and Second Lien Agent shall deliver to Buyer UCC-3 termination statements and such other documents as are reasonably requested by Buyer to evidence the termination of the Liens granted to secure the First Lien Claims and Second Lien Claims, respectively, which statements and other documents shall be released for filing only upon the occurrence of the Closing and the Effective Date.

**6.8**      **Termination of Directors, Officers, and/or Managers of the Debtors**. Effective as of the Effective Date, all of the directors, officers, and/or managers of any of the Debtors shall be deemed terminated, and the Persons identified in the Plan Supplement shall be elected and appointed as the directors, officers, and/or managers of the Reorganized Debtors.  In addition, the Liquidating Trustee shall be elected and appointed as the sole director, officer and/or manager of Newco.

**6.9**      **Amendment of Debtors' Certificates and Agreements**.  On the Effective Date, each of the Reorganized Debtor's certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, bylaws, and limited liability company agreements shall be amended and filed (both only as required) with the appropriate secretary of state's office on the Effective Date or as soon thereafter as is reasonably practicable, and no Reorganized Debtor shall have any indemnification or other obligation under any such documents in effect prior to the Effective Date.   All necessary action will be taken to prohibit the issuance of non-voting equity securities of the Debtors to the extent required by Bankruptcy Code § 1123; provided that any such prohibition shall apply only for so long as Bankruptcy Code § 1123 is in effect and applicable to the Debtors and will have no force and effect beyond that required by Bankruptcy Code § 1123.  Copies of the proposed form of the amendments to the Reorganized Debtor's certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, and limited liability company agreements shall be included in the Plan Supplement.

**6.10     Creation of the Liquidating Trust**.  On the Effective Date, the Liquidating Trust shall be formed pursuant to this Plan, the Liquidating Trust Agreement shall be executed, and the Liquidating Trust shall be established and become effective.  In accordance with this Plan and the Liquidating Trust Agreement, the Liquidating Trustee shall (a) pay or provide for payments of all Allowed Priority Tax Claims, Allowed Administrative Claims (including but not limited to Professional Fee Claims), Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Second Lien Secured Claims (to the extent not satisfied by the receipt of Other Consideration), Allowed M&M Secured Claims, Allowed Other Secured Claims, Allowed Non-Second Lien General Unsecured Claims, and Cure Claims, (b) establish and fund the Distribution Reserve Accounts, and (c) distribute any remaining Liquidating Trust Assets to the holders of Liquidating Trust Interests.  On and after the Effective Date, the Liquidating Trust shall perform and pay when due liabilities related to ownership or operation the Liquidating Trust Assets, and neither the Reorganized Debtors nor the Buyer, nor any of its subsidiaries shall be responsible for any such Claims or liabilities.

**6.11     Transfer of Liquidating Trust Assets**.  Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, the Liquidating Trust Assets shall be transferred and assigned to, the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco, Free and Clear, but subject to the Liquidating Trust's obligations under the Plan.  In the case of an Alternative Transaction, any other assets which are not Vested Assets or Transferred Assets (as applicable) may be deemed to be Liquidating Trust Assets and transferred and assigned to, the Liquidating Trust and/or Newco on the Effective Date; provided, that the Debtors must identify those assets to be deemed to be Liquidating Trust Assets in the Plan Supplement.  The Debtors shall convey, transfer, assign and deliver to the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco, all or any portion of the Liquidating Trust Assets, subject to all Liens that are not Liquidating Trust Permitted Liens or released pursuant to the terms of this Plan.  Any proceeds received by Newco on account of the transfer, sale, assignment or other disposition of a Liquidating Trust Asset held by Newco (less (A) expenses of Newco incurred in connection with, or otherwise existing upon, the transfer, sale, assignment or other disposition of such Liquidating Trust Assets, (B) expenses of Newco sufficient to perform its obligations under the terms of any agreement relating to the transfer, sale, assignment or other disposition of such Liquidating Trust Assets, and (C) all amounts determined by the Liquidating Trustee to be maintained at Newco for the payment of anticipated expenses of Newco) shall be delivered to the Liquidating Trust for deposit into the General Account.

**6.12     Conflicts Between Liquidating Trust Agreement and Plan**.  In the event of any inconsistencies or conflict between the Liquidating Trust Agreement and this Plan, the terms and provisions of this Plan shall control.

**6.13     Plan is Motion to Transfer Liquidating Trust Assets**.  This Plan shall be considered a motion pursuant to Bankruptcy Code §§ 105, 363, and 365 to transfer and assign to the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco, Free and Clear, but subject to the Liquidating Trust's obligations under the Plan, any and all Liquidating Trust Assets as of the Effective Date and with all benefits to the Estates under such sections of the Bankruptcy Code.  Any objections to such transfer and

assignment must be made as an objection to Confirmation of this Plan to be heard at the Confirmation Hearing.

After the Effective Date, the Liquidating Trustee may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Liquidating Trust Assets are or were located, which provide that such property is conveyed to the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Liquidating Trust Assets shall be conclusively deemed to have consented to the transfer and assignment of such Liquidating Trust Assets Free and Clear to the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco, by failing to object to confirmation of this Plan, except as otherwise provided in this Plan.

**6.14    Issuance of Liquidating Trust Interests and Buyer Equity**.

(a)    **Liquidating Trust Interests**.  It is an integral and essential element of this Plan that the offer and issuance of Liquidating Trust Interests pursuant to this Plan, to the extent such Liquidating Trust Interest constitutes securities under the 1933 Act, shall be exempt from registration under the 1933 Act and any State or local law, pursuant to Bankruptcy Code § 1145 or other applicable exemptions, without limitation.  The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Cases, the Debtors, the Reorganized Debtors, the Liquidating Trustee, the U.S. Securities and Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that such offer and issuance, to the extent such Liquidating Trust Interest constitutes securities under the 1933 Act, fall within the exemption from registration under the 1933 Act and any State or local law pursuant to Bankruptcy Code § 1145.  In lieu of certificates evidencing the Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of the holders of the Liquidating Trust Interests based upon the provisions of this Plan which designate the Persons who are entitled to receive the beneficial interests in the Liquidating Trust.  The Liquidating Trust Interests may not be transferred, sold, pledged, or otherwise disposed of, or offered for sale except for transfers by operation of law.

(b)    **Buyer Equity**.  This Section 6.14(b) shall apply if Buyer Equity is issued under the Stock Purchase Agreement or an Alternative Transaction Agreement.  It is an integral and essential element of this Plan that the offer and issuance of Buyer Equity pursuant to this Plan (as well as any securities offered through, and the sale of a security upon exercise of any warrant, option, right to subscribe or conversion privilege that are issued as Buyer Equity) shall be exempt from registration under the 1933 Act and any other foreign, federal, state or local law, pursuant to Bankruptcy Code § 1145.  The Confirmation Order shall include a finding and conclusion, binding upon all parties to the Cases, the Debtors, the Reorganized Debtors, the Liquidating Trustee, the Buyer, the Securities Exchange Commission and all other federal, state and local regulatory enforcement agencies, to the effect that such offer and issuance fall within

the exemption from registration under the 1933 Act and any other foreign, federal, state or local law pursuant to Bankruptcy Code § 1145. The subsequent transfer of the Buyer Equity (or any security issued upon the exercise of any warrant, option, right or privilege issued as Buyer Equity) by a recipient thereof under this Plan have not been registered under the 1933 Act or any state or foreign securities laws and the Buyer Equity (or such other security, as applicable) may not be sold, transferred, offered for sale, pledged hypothecated or otherwise disposed of by a recipient thereof under this Plan unless such transfer, sale, assignment, pledge, hypothecation or other disposition is pursuant to the terms of an effective registration statement under the 1933 Act and are registered under any applicable state or foreign securities laws or pursuant to an exemption from registration under the 1933 Act and any applicable state or foreign securities laws.

6.15 **Authority**. All actions and transactions contemplated under this Plan, including, but not limited to, any certificates, agreements or other documents to be executed in connection with the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust or, at the written election of the Debtors, Second Lien Holders and Committee, to Newco, are and shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (y) all known holders of Claims and (z) all current holders of Equity Interests of each of the Debtors. Specifically, all amendments to the certificates of incorporation or formation, the articles of incorporation or organization, the operating agreements, the limited liability company agreements, and/or bylaws of any of the Debtors and all other corporate action on behalf of any of the Debtors or the Reorganized Debtors as may be necessary to put into effect or carry out the terms and intent of this Plan may be effected, exercised, and taken without further action by the Debtors' directors, officers, managers, and/or members with like effect as if effected, exercised, and taken by unanimous action of the directors, officers, managers, and/or members of the Debtors or the Reorganized Debtors (as applicable). The Confirmation Order shall include provisions dispensing with the need of further approvals, notices or meetings of the Debtors or holders of Equity Interests and authorizing and directing any director, officer, manager, or member of each respective Debtor to execute any document, certificate or agreement necessary to effectuate this Plan on behalf of such Debtor, which documents, certificates and agreements shall be binding on the Debtors, the Creditors, and all holders of Equity Interests.

6.16 **No Recourse to the Reorganized Debtors or Buyer.** On the Effective Date, the Debtors, the Reorganized Debtors, Buyer and its subsidiaries shall not have, and do not assume, any liability or obligation for any Claims or Liens (other than, in the case of the applicable Reorganized Debtors, Permitted Liens), and are not required or obligated to pay any Claims or Liens under the Plan, including Claims or Liens treated in Classes 1 through 8 of Article IV of the Plan and any Cure Claims. The Liquidating Trust (and, in the case of the Class 3 Allowed First Lien Secured Claims, the First Lien Agent or in the case of the Class 4 Allowed Second Lien Secured Claims, the Second Lien Agent) is the sole source of payments and Distributions to holders of Claims and Liens under the Plan, including those Claims identified in Classes 1 through 7B of Article IV of the Plan; provided, however, the Allowed First Lien Secured Claims shall be paid by the Buyer in accordance with Section 4.2(c) of this Plan.

6.17 **Procedures regarding M&M Secured Claims**.

(a)     **Lien Affidavits and Related Information**.   On or before the M&M Secured Claim Bar Date, each holder of an M&M Secured Claim that does not make the election set forth in Section 4.2(e) of this Plan must File with The BMC Group, Inc. (or such other claims agent employed by the Liquidating Trustee), and serve on the Debtors (if before the Effective Date) or the Liquidating Trustee (if on or after the Effective Date), a notice which (i) includes any affidavit or other document that evidences the perfection of its Lien on the property of any of the Debtors or their Estates, (ii) includes copies of any invoices and billing statements relating to the M&M Secured Claim, (iii) identifies the wells or other property to which the M&M Secured Claims attach, (iv) identifies the first and last date of goods or service relating to the M&M Secured Claims, (v) identifies the location and date of the filing of the affidavit or other document that evidences the perfection of its Lien on the property of any of the Debtors or their Estates, and (vi) sets forth the amount of the M&M Secured Claim, alleged priority date (relative to the First Lien Holders and the Second Lien Holders) and legal and factual basis for the alleged priority date.   Nothing herein shall extend any deadline for filing such affidavit or other document under the Texas Property Code Chapter 56; Oklahoma Statutes Title 42, Chapter 3; Title 71, Chapter 3 of the Montana Code Annotated; or other similar laws of another state giving rise to an M&M Secured Claim.  If a holder of an M&M Secured Claim that does not make the election set forth in Section 4.2(e) of this Plan fails to File and serve such notice as set forth in this Section 6.17(a) of this Plan on or before the M&M Secured Claim Bar Date, then such holder shall not be entitled to receive any Cash or other Distribution from the Debtors, the Reorganized Debtors, the Buyer, any of its subsidiaries, the Liquidating Trust, or the Liquidating Trustee.

(b)     **Liquidating Trustee Objections**.  On or before sixty days after the M&M Secured Claim Bar Date, the Liquidating Trustee shall provide the holder of an M&M Secured Claim that does not make the election set forth in Section 4.2(e) of this Plan a written notice advising such holder of the Liquidating Trustee's position with respect to such holder's M&M Secured Claim (the "M&M Objection Notice").  If such holder and the Liquidating Trustee are able to resolve the Liquidating Trustee's objection to such holder's M&M Secured Claim or if the Liquidating Trustee does not object to such holder's M&M Secured Claim, the Liquidating Trustee shall file a motion with the Bankruptcy Court to allow the entire or the agreed upon portion (as appropriate) of the M&M Secured Claim.  If such holder and the Liquidating Trustee are unable to resolve the Liquidating Trustee's objection to such holder's M&M Secured Claim within thirty days after the Liquidating Trustee's service of the M&M Objection Notice set forth in this Section 6.17(b) of this Plan, then such holder or the Liquidating Trustee may File a motion with the Bankruptcy Court to determine the allowance of such holder's M&M Secured Claim no later than 150 days after the Effective Date.

(c)     **Mediation and Arbitration.**  After a motion is Filed pursuant to Section 6.17(b) of this Plan, disputes concerning the allowance of the applicable holder's M&M Secured Claim shall be subject to mandatory mediation, the cost of which shall be paid out of the Liquidating Trust Expense Reserve up to a maximum of $150,000 in the aggregate.  To the extent such costs exceed $150,000 they shall be split by the Liquidating Trustee and the holder of the M&M Secured Claim.  In the event mediation is unsuccessful in resolving any such disputes, the Liquidating Trustee shall consent to binding arbitration if the holder of the M&M Secured Claim so selects.  The costs of such binding arbitration shall be split evenly between the holder of the M&M Secured Claim and the Liquidating Trustee.  If the holder of the M&M

Secured Claim decides not to participate in the mediation or arbitration, then such holder's M&M Secured Claim shall be disallowed.

**6.18    Release of Liens**.

(a)    On the Effective Date, all Liens on any property of any Debtors or any Reorganized Debtors shall automatically terminate, all Collateral subject to such Liens shall be automatically released, and all guarantees of any Debtors or any Reorganized Debtors shall be automatically discharged and released; provided, however, that such Liens shall attach to Cash in the applicable Distribution Reserve Accounts in the Liquidating Trust, as provided in this Plan or the Confirmation Order.

(b)    Without limiting the effect of the foregoing, on the Effective Date, all M&M Liens shall be released, discharged and of no further force or effect against the Vested Assets or Transferred Assets (as applicable).  The holders of M&M Liens shall, within 10 days of the Effective Date, release their respective M&M Liens with respect to the Reorganized Debtors, the Vested Assets, and the Transferred Assets; provided, however that such Liens shall attach to Cash in the Carveout Reserve, as provided in this Plan or the Confirmation Order.

**6.19    Preservation of Rights of Action; Settlement of Litigation Claims**.

(a)    **Preservation of Rights of Action**.  The Liquidating Trustee shall be appointed representative of the Estates pursuant to Bankruptcy Code § 1123(b)(3)(B) with respect to the Excluded Causes of Action and, except as otherwise ordered by the Bankruptcy Court and subject to any releases in this Plan, on the Effective Date, the Liquidating Trust shall be transferred all Excluded Causes of Action, and may enforce, sue on, and, subject to Bankruptcy Court approval (except as otherwise provided herein) settle or compromise (or decline to do any of the foregoing) any or all of the Excluded Causes of Action.  Except as otherwise ordered by the Bankruptcy Court, the Liquidating Trustee shall be vested with authority and standing to prosecute any Excluded Causes of Action.  The Liquidating Trustee and his or her attorneys and other professional advisors shall have no liability for pursuing or failing to pursue any such Excluded Causes of Action.

(b)    **Settlement of Litigation Claims and Disputed Claims**.  At any time after the Confirmation Date and before the Effective Date, notwithstanding anything in this Plan to the contrary, the Debtors, with the consent of the Committee and the Second Lien Lenders, may settle some or all of the Excluded Causes of Action or the Disputed Claims subject to obtaining any necessary Bankruptcy Court approval.  The proceeds from the settlement of an Excluded Cause of Action shall constitute a Liquidating Trust Asset that shall be transferred to the Liquidating Trust on the Effective Date, for Distribution in accordance with this Plan and the Liquidating Trust Agreement.

**6.20    Issuance of Newco Equity Interests.**  On the Effective Date, the Newco Equity Interests shall be issued to the Liquidating Trust.

## ARTICLE VII

## MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER

**7.1    Introduction**.  This <u>Article VII</u> shall apply to any transactions under the Stock Purchase Agreement or an Alternative Transaction Agreement under which the New Crusader Shares shall be issued to the Buyer.

**7.2    Conditions Precedent to the Effective Date**.  In addition to the conditions precedent set forth in <u>Section 6.2</u>, on or before the Effective Date, the Bankruptcy Court shall have approved the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable), the vesting of the Vested Assets in the respective Reorganized Debtors Free and Clear, the termination and extinguishment of the Equity Interests in the Debtors, the issuance of the New Crusader Shares to the Buyer, the issuance of the New Subsidiaries Equity Interests to Reorganized Crusader, and the assumption of the Desired 365 Contracts by the applicable Debtors and the vesting of the same in the applicable Reorganized Debtors, Free and Clear; <u>provided</u> <u>however</u>, the Plan Proponents may, with the consent of Buyer, waive in writing any or all of the foregoing events, whereupon the Effective Date shall occur without further action by any Person.

**7.3    Vesting of the Vested Assets**.  Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the Assumed Contracts shall be assumed by the applicable Debtor(s) as provided in <u>Article XV</u> and vest in the applicable Reorganized Debtor(s). Except as otherwise set forth in this Plan or the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable), from and after the Effective Date the Reorganized Debtors shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets, and the Liquidating Trust shall not be responsible for any such liabilities.  The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

After the Effective Date, the Reorganized Debtors may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Vested Assets is or were located, which provide that such property is conveyed to and vested in the Reorganized Debtors.  The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned.  This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s).  Any Person having a Lien, Claim, encumbrance, or other interest against any Vested Assets shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Vested Assets Free and Clear to the Reorganized Debtors by failing to object to confirmation of this Plan, except as otherwise provided in this Plan; provided, however, nothing herein shall be deemed to be a release of any Lien, Claim, encumbrance or other interest on, in or against property that is not a Vested Asset.

**7.4    Cancellation of Equity Interests and Issuance of New Crusader Shares and New Subsidiaries Equity Interests**.  On the Effective Date, all Equity Interests in the Debtors (including those Equity Interests held in treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those Equity Interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.  On the Effective Date, the Reorganized Subsidiaries shall issue the New Subsidiaries Equity Interests to Reorganized Crusader, and Reorganized Crusader shall issue the New Crusader Shares to the Buyer in accordance with the Stock Purchase Agreement and Alternative Transaction Agreement, and in each case such shares shall be Free and Clear.

**7.5    Consummation of Transactions Contemplated by Stock Purchase Agreement or Alternative Transaction Agreement**.  On the Effective Date, upon the satisfaction (or waiver, to the extent permitted by this Plan and the Stock Purchase Agreement or Alternative Transaction Agreement, as applicable) of the conditions to the Effective Date set forth in Section 6.2 and 7.2 of this Plan and the conditions to Closing set forth in the Stock Purchase Agreement or Alternative Transaction Agreement, as applicable, the Debtors and Reorganized Debtors shall close and consummate the Stock Purchase Agreement or Alternative Transaction Agreement, as applicable, and all transactions, payments, transfers, agreements and assignments contemplated or required by the Stock Purchase Agreement and all related agreements in accordance with the terms thereof.

**7.6    Closing Loan by SandRidge Exploration**.  If the Buyer is SandRidge Exploration, then SandRidge Exploration shall make a Closing Loan to the Liquidating Trust at the Closing to the extent required by and in the amount and on the terms set forth in the Stock Purchase Agreement and the Closing Loan Agreement.

**7.7    Authority**.  All actions and transactions contemplated under this Plan and by the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable), including but not limited to, the Transaction Documents and any documents executed in connection therewith or related thereto, and any certificates, agreements or other documents or instruments to be executed in connection with (a) the transfer, assignment, and vesting of the Vested Assets in the Reorganized Debtors, Free and Clear, and the release of all Liens, Claims, Causes of Action, and other interests, rights of setoff, restrictions or limitation on use, successor liabilities, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, expenses, and charges, of any type under, among other things, any document, instrument, agreement, cause, cause of action, or state or federal law, except for Permitted Liens, (b) the issuance of the New Subsidiaries Equity Interests to Reorganized Crusader, (c) the issuance of the New Crusader Shares to the Buyer, and (d) the effectuation of the Closing Loan from SandRidge Exploration, if necessary, as described in Section 7.6 of this Plan, shall be authorized upon Confirmation of this Plan without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (y) all known holders of Claims and (z) all current holders of Equity Interests of each of the Debtors.

**7.8    Preservation of Causes of Action**.  All Causes of Action, rights of setoff and other legal and equitable defenses of any Debtor or any Estate are preserved for the benefit of the

Reorganized Debtors unless expressly released, waived, or relinquished under the Plan or Confirmation Order, or, as to Excluded Causes of Action, vested in the Liquidating Trust. No Person may rely on the absence of a specific reference in the Plan or the Disclosure Statement to any Cause of Action against them as an indication that Reorganized Debtors will not pursue a Cause of Action against them.

## ARTICLE VIII

## MEANS FOR IMPLEMENTATION OF THIS PLAN – TRANSACTION NOT INVOLVING ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER

**8.1** **Introduction**. This Article VIII shall apply to any transactions under an Alternative Transaction Agreement under which the New Crusader Shares shall not be issued to the Buyer.

**8.2** **Conditions Precedent to the Effective Date**. On or before the Effective Date, the Bankruptcy Court shall have approved the transfer of the Transferred Assets to the Buyer Free and Clear, the termination and extinguishment of the Equity Interests in the Debtors, the issuance of the New Crusader Shares to the Liquidating Trustee, the issuance of the New Subsidiaries Equity to Reorganized Crusader, and the assumption of the Desired 365 Contracts by the applicable Debtors and the assignment of the same to the Buyer; provided however, the Plan Proponents may waive in writing any or all of the foregoing events, whereupon the Effective Date shall occur without further action by any Person.

**8.3** **Transfer of Transferred Assets**. Except as otherwise set forth in this Plan or the Confirmation Order, on the Effective Date, (a) the Transferred Assets shall be transferred to the Buyer Free and Clear, and (b) the Assumed Contracts shall be assumed by the applicable Debtor(s) as provided in Article XVI and assigned to the Buyer. Except as otherwise set forth in this Plan or the Alternative Transaction Agreement, the Buyer shall assume, perform and pay when due liabilities under, or related to the ownership or operation of the Transferred Assets, and the Liquidating Trust shall not be responsible for any such liabilities, and the Buyer may operate free of any restrictions of the Bankruptcy Code.

After the Effective Date, the Buyer may present such Order(s) or assignment(s) to the Bankruptcy Court, suitable for filing in the records of every county or governmental agency where the Transferred Assets is or were located, which provide that such property is conveyed to the Buyer. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. This Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by this Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Transferred Assets shall be conclusively deemed to have consented to the transfer and assignment of such Transferred Assets Free and Clear to the Buyer by failing to object to confirmation of this Plan, except as otherwise provided in this Plan; provided, however, nothing herein shall be deemed to be a release of any Lien, Claim, encumbrance or other interest on, in or against property that is not a Transferred Asset.

**8.4     Cancellation of Equity Interests and Issuance of New Crusader Shares and New Subsidiaries Equity Interests.**  On the Effective Date, all Equity Interests in the Debtors (including those Equity Interests held in treasury by any of the Debtors) shall be terminated and extinguished and the certificates that previously evidenced ownership of those Equity Interests shall be deemed cancelled (all without further action by any Person or the Bankruptcy Court) and shall be null and void and such certificates shall evidence no rights or interests in any of the Debtors.  On the Effective Date, the Reorganized Subsidiaries shall issue the New Subsidiaries Equity Interests to Reorganized Crusader, and Reorganized Crusader shall issue the New Crusader Shares to the Liquidating Trust.

**8.5     Authority.**  All actions and transactions contemplated under this Plan, including, but not limited to, any certificates, agreements or other documents to be executed in connection with the transfer and assignment of the Transferred Assets in the Buyer shall be authorized upon Confirmation of this Plan without the need for further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members, other than the notice provided by serving this Plan on (y) all known holders of Claims and (z) all current holders of Equity Interests of each of the Debtors.

## ARTICLE IX

## THE LIQUIDATING TRUST AND THE LIQUIDATING TRUSTEE

**9.1     The Liquidating Trust.**  The Liquidating Trust, duly organized under the laws of the State of Texas, is created for the purpose of liquidating the Liquidating Trust Assets in accordance with Treasury Regulation Section 301.7701-4(d) and making the Distributions to (i) certain holders of Allowed Claims from the Distribution Reserve Accounts and (ii) holders of Liquidating Trust Interests from the General Account, and the Liquidating Trust is not otherwise authorized to engage in any trade or business.  The beneficiaries of the Liquidating Trust, who will be treated as the grantors and deemed owners for federal income tax purposes, are the holders of Allowed Second Lien Deficiency Claims in Class 7B.  The Liquidating Trustee shall file federal income tax returns for the Liquidating Trust as a grantor trust pursuant to § 671 of the Internal Revenue Code of 1986, as amended, and the Treasury Tax Regulations promulgated thereunder.  The parties shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Service.

**9.2     Funding of Res of Trust.**  To fund the Liquidating Trust, all of the Liquidating Trust Assets shall be transferred and assigned to the Liquidating Trust, and the Liquidating Trust shall be in possession of, and have title to, all the Liquidating Trust Assets, as of the Effective Date. The Liquidating Trustee shall be substituted as the plaintiff, defendant, or other party in all lawsuits regarding Excluded Causes of Action pending in which any of the Debtors or the Committee is the plaintiff as of the Effective Date. The conveyances of all Liquidating Trust Assets shall be accomplished pursuant to this Plan and the Confirmation Order and shall be effective upon the Effective Date, without the need of further documentation or instruments of conveyance.  Upon the Effective Date, the Liquidating Trust shall also be deemed to have taken (a) an assignment of all Excluded Causes of Action against third parties for obligations or claims

existing on or created by virtue of the Effective Date, unless expressly released herein, and (b) an assignment, bill of sale, deed and/or release covering all other Liquidating Trust Assets. The Liquidating Trustee may present such Orders to the Bankruptcy Court as may be necessary to require third parties to accept and acknowledge such conveyance to the Liquidating Trust. Such Orders may be presented without further notice other than as has been given in this Plan.

For all federal income tax purposes, all Persons (including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) shall treat the transfer and assignment of the Liquidating Trust Assets to the Liquidating Trust for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer by the Liquidating Trust Beneficiaries to the Liquidating Trust of the Liquidating Trust Assets. The Liquidating Trust will be treated as a grantor trust for federal tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of their Pro Rata portion of the Liquidating Trust Assets for federal income tax purposes.

**9.3** __The Liquidating Trustee__. The Liquidating Trustee shall be appointed by mutual consent of the Debtors, the Second Lien Holders and the Committee. The Liquidating Trustee shall retain and have all the rights, powers and duties necessary to carry out his or her responsibilities under this Plan, the Closing Loan Agreement, and the Liquidating Trust Agreement, and as otherwise provided in the Confirmation Order. The Liquidating Trustee shall be the exclusive trustee of the Liquidating Trust Assets for the purposes of 31 U.S.C. § 3713(b) and 26 U.S.C. § 6012(b)(3), as well as the representative of the Estates appointed pursuant to Bankruptcy Code § 1123(b)(3)(B). Subject to the Bankruptcy Court's approval and appointment of the selection of the Liquidating Trustee at the Confirmation Hearing, a Person to be designated by the Second Lien Holders in the Plan Supplement shall initially serve as the Liquidating Trustee. Matters relating to the appointment, removal and resignation of the Liquidating Trustee and the appointment of any successor Liquidating Trustee shall be set forth in the Liquidating Trust Agreement, provided that the Liquidating Trust Agreement shall authorize the Liquidating Trust Committee, in its sole discretion, to remove the Liquidating Trustee at any time. The Liquidating Trustee shall be required to perform his or her duties as set forth in this Plan, the Liquidating Trust Agreement and the Closing Loan Agreement.

**9.4** __Retention of Professionals__. The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties. The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Liquidating Trust Expense Reserve upon the monthly submission of statements to the Liquidating Trustee. The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets, and shall not be subject to the approval of the Bankruptcy Court, and shall not be subject to the approval of the Bankruptcy Court. Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Liquidating Trustee on a special counsel basis. Additionally, the Liquidating Trust Beneficiaries shall have the right to retain the services of attorneys, accountants, and other professionals. The reasonable fees and expenses of such professionals incurred in connection with services performed relating to the

Liquidating Trust shall be paid by the Liquidating Trust from the Liquidating Trust Expense Reserve upon the monthly submission of statements to the Liquidating Trustee, and shall not be subject to the approval of the Bankruptcy Court.

**9.5** **Compensation of the Liquidating Trustee**.  The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be determined by the Second Lien Holders and disclosed in the Plan Supplement. The payment of the fees of the Liquidating Trustee and any professionals retained by the Liquidating Trustee shall be made in accordance with the Liquidating Trust Agreement.

**9.6** **Liquidating Trust Expenses**.  Subject to the provisions of the Liquidating Trust Agreement, all costs, expenses and obligations incurred by the Liquidating Trustee in administering this Plan, the Liquidating Trust Beneficiaries, Newco, the Liquidating Trust, or in any manner connected, incidental or related thereto, in effecting distributions from the Liquidating Trust thereunder (including the reimbursement of reasonable expenses) shall be a charge against the Liquidating Trust Assets remaining from time to time in the hands of the Liquidating Trustee.  Such expenses shall be paid as they are incurred without the need for Bankruptcy Court approval.

**9.7** **Liability; Indemnification**.  The Liquidating Trustee shall not be liable for any act or omission taken or omitted to be taken in his or her capacity as the Liquidating Trustee, other than acts or omissions resulting from such Person's willful misconduct, gross negligence or fraud.  The Liquidating Trustee may, in connection with the performance of his or her functions, and in his or her sole absolute discretion, consult with attorneys, accountants and agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

**9.8** **Termination**.  The duties, responsibilities and powers of the Liquidating Trustee shall terminate after all Liquidating Trust Assets, including Excluded Causes of Action transferred and assigned to the Liquidating Trust , or at the election of the Debtors, the Second Lien Holders and the Committee, to Newco, or involving the Liquidating Trustee on behalf of the Liquidating Trust, are fully resolved, abandoned or liquidated and the Available Cash has been distributed in accordance with this Plan, the Liquidating Trust Agreement and the Closing Loan Agreement.  Except in the circumstances set forth below, the Liquidating Trust shall terminate no later than three years after the Effective Date.  However, if warranted by the facts and circumstances provided for in this Plan, and subject to the approval of the Bankruptcy Court

upon a finding that an extension is necessary for the purpose of the Liquidating Trust, the term of the Liquidating Trust may be extended, one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Service that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, based on the particular circumstances at issue. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid beneficiaries of the Liquidating Trust. Upon the occurrence of the termination of the Liquidating Trust, the Liquidating Trustee shall File with the Bankruptcy Court a report thereof, seeking an order discharging the Liquidating Trustee.

## ARTICLE X

## COMMITTEE AND LIQUIDATING TRUST COMMITTEE

**10.1** **Dissolution of Committees**. The Committee shall continue in existence through the Effective Date to exercise those powers and perform those duties specified in Bankruptcy Code § 1103. Unless otherwise ordered by the Bankruptcy Court, on the Effective Date, (a) the Committee shall be dissolved and their members shall be released of all their duties, responsibilities and obligations in connection with the Cases, this Plan and the implementation of the same and (b) the retention or employment of the Committee's Professionals and other agents shall terminate.

**10.2** **Creation of Liquidating Trust Committee**.

(a) On the Effective Date, the Liquidating Trust Committee shall be formed and constituted of Persons, numbering no more than three, and approved by the Bankruptcy Court, prior to the conclusion of the Confirmation Hearing. One member of the Liquidating Trust Committee shall be selected by the Second Lien Holders, one member of the Liquidating Trust Committee shall be appointed by the Committee, and one member of the Liquidating Trust Committee shall be selected jointly by the two individuals selected by the Second Lien Holders and the Committee. If the two individuals selected by the Second Lien Holders and the Committee are unable to agree upon the third member of the Liquidating Trust Committee, then such selection shall be made by the Bankruptcy Court.

(b) In the event that a member of the Liquidating Trust Committee (i) sells, transfers or assigns all of its Liquidating Trust Interests or (ii) resigns or is otherwise removed, such member immediately shall be removed from the Liquidating Trust Committee. A replacement Liquidating Trust Committee member, as identified in the Plan Supplement, shall be appointed.

**10.3** **Procedures**. The Liquidating Trust Committee shall adopt bylaws that shall provide for the governance of the Liquidating Trust Committee.

**10.4** **Function, Duties, and Responsibilities**. The function, duties, and responsibilities of the Liquidating Trust Committee shall be set forth in the Liquidating Trust Agreement.

**10.5    Duration**.  The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 9.8 of this Plan.

**10.6    Compensation and Expenses**.  The members of the Liquidating Trust Committee shall serve without compensation for their performance of services as members of the Liquidating Trust Committee except that they shall be entitled to reimbursement of reasonable expenses from the Liquidating Trust without further order of the Bankruptcy Court.

**10.7    Liability; Indemnification**.  Neither the Liquidating Trust Committee, nor any of its members, or designees, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, designee, agent or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud. The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members and/or designees, unless such determination is based on willful misconduct, gross negligence or fraud.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, designees, and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

# ARTICLE XI

## PROVISIONS GOVERNING DISTRIBUTIONS GENERALLY

**11.1    Distributions for Claims Allowed as of the Effective Date**.  Except as otherwise provided herein or as ordered by the Bankruptcy Court, Distributions, whether of Cash or Liquidating Trust Interests, to be made on account of Claims that are Allowed Claims, as of the Effective Date (other than Claims in Class 7B), shall be made on or as soon as practicable after the Effective Date.  The Liquidating Trustee shall make all Distributions required under this Plan, except with respect to a Claim whose Distribution is governed by an agreement and is administered by an agent or servicer, which Distributions shall be deposited with the appropriate agent or servicer, who shall deliver such Distributions to the holders of Claims in accordance with the provisions of this Plan.

The Liquidating Trustee shall make all Distributions of Cash on account of Allowed Claims in Class 7B required to be distributed under the applicable provisions of this Plan and the Liquidating Trust Agreement. The Liquidating Trustee may employ or contract with other Persons to assist in or make the Distributions on account of Allowed Claims in Class 7B required by this Plan as provided for in the Liquidating Trust Agreement.

**11.2  Means of Cash Payment**. Cash payments made pursuant to this Plan shall be in U.S. funds, by the means, including by check or wire transfer, determined by the Liquidating Trustee as appropriate.

**11.3  Record Date for Distributions**. At the close of business on the Effective Date, the transfer ledgers for the First Lien Notes (maintained by the First Lien Agent) and Second Lien Notes (maintained by the Second Lien Agent) shall be closed, and there shall be no further changes in the record holders of such notes or the indebtedness evidenced thereby. The Debtors, Reorganized Debtors, and Liquidating Trustee shall have no obligation to recognize any transfer of any First Lien Notes or Second Lien Notes, or any indebtedness evidenced thereby, occurring after the Effective Date and shall be entitled instead to recognize and deal for all purposes hereunder with only those record holders listed on the transfer ledgers as of the close of business on the Effective Date.

**11.4  Distribution of Buyer Equity**.

(a)  If Buyer Equity is issued as all or a portion of any Other Consideration, then such Buyer Equity shall be issued and delivered to the Second Lien Agent in accordance with the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable) and, upon delivery of such Buyer Equity to the Second Lien Agent, neither the Buyer, any Reorganized Debtor nor the Liquidating Trust shall have any further obligation with respect to the issuance or distribution of any such Buyer Equity.

(b)  Upon receipt of Buyer Equity as provided in <u>Section 11.4(a)</u> of this Plan, the Second Lien Agent shall deliver to each holder of an Allowed Second Lien Secured Claim such holder's Pro Rata share of the Buyer Equity in accordance with <u>Section 4.2(d)</u> of this Plan and the Second Lien Credit Agreement. To the extent any holder of an Allowed Second Lien Secured Claim shall be entitled to receive any fractional share or interest of any Buyer Equity, the Second Lien Agent shall have full authority and discretion to allocate such fractional shares or interest based on a median number, among the holders of Allowed Second Lien Secured Claims so that each such holder shall receive a full share or interest of such Buyer Equity and no fractional Buyer Equity shall be distributed to any holder of an Allowed Second Lien Secured Claim.

**11.5  Delivery of Distribution**. Distributions to holders of Allowed Claims shall be made (a) at the addresses set forth on the Proofs of Claim Filed by such holders (or at the last known address of such holders if no Proof of Claim is Filed or if the Debtors have been notified of a change of address), (b) at the addresses set forth in any written notices of address changes delivered to the Debtors and the Liquidating Trustee (as applicable) after the date of any related Proof of Claim, or (c) if no Proof of Claim has been Filed and the Debtor and the Liquidating

Trustee (as applicable) have not received a written notice of a change of address, at the addresses reflected in the Bankruptcy Schedules, if any.

**11.6** **Fractional Dollars; De Minimis Distributions**. Notwithstanding any other provision of this Plan, payments of fractions of dollars shall not be made. Whenever any payment of a fraction of a dollar under this Plan would otherwise be called for, actual payment made shall reflect a rounding of such fraction to the nearest whole dollar (up or down). The Liquidating Trustee shall not make any payment of less than fifty dollars with respect to any Claim unless a request therefor is made in writing to the Liquidating Trustee. Notwithstanding the foregoing, the Liquidating Trustee may, in his or her discretion, make payments of fractions of dollars and/or of less than fifty dollars.

**11.7** **Withholding and Reporting Requirements**. In connection with this Plan and all Distributions hereunder, the Liquidating Trustee shall, to the extent applicable, comply with all tax withholding and reporting requirements imposed by any federal, state, local, or foreign taxing authority, and all Distributions hereunder shall be subject to any such withholding and reporting requirements. The Liquidating Trustee shall be authorized to take any and all actions that may be reasonably necessary or appropriate to comply with such withholding and reporting requirements.

**11.8** **Setoffs**. The Liquidating Trustee may, but shall not be required to, set off against any Claim, and the payments or other Distributions to be made pursuant to this Plan in respect of such Claim, claims of any nature whatsoever that the Liquidating Trustee may have against the holder of such Claim; provided, however, neither the failure to do so nor the allowance of any Claim hereunder shall constitute a waiver or release by the Liquidating Trustee of any such Claim that the Liquidating Trustee may have against such holder, unless otherwise agreed to in writing by such holder and the Liquidating Trustee.

**11.9** **Duty to Disgorge Overpayments**. To the extent that a Claim may be an Allowed Claim in more than one Class, the holder of such Claim shall not be entitled to recover more than the full amount of its Allowed Claim. The holder of an Allowed Claim that receives more than payment in full of its Allowed Claim shall immediately return any excess payments to the Liquidating Trust. In the event that the holder of an Allowed Claim fails to return an excess payment, the Liquidating Trustee may bring suit against such holder for the return of the overpayment in the Bankruptcy Court or any other court of competent jurisdiction.

## ARTICLE XII

## DISTRIBUTIONS TO HOLDERS OF
## ALLOWED CLASSES 7A AND 7B CLAIMS

**12.1** **Initial Cash Distribution**. On or before the first anniversary of the Effective Date (but not earlier than the date that is 181 days after the Closing Date with respect to Class 7B), an initial Cash Distribution will be made Pro Rata to holders of Allowed Claims in Classes 7A and 7B; provided, however, an initial Cash Distribution will be made on the first anniversary of the Effective Date only if the Liquidating Trustee determines that sufficient Available Cash exists.

**12.2** **Subsequent Cash Distributions**. After the initial Cash Distribution under Section 12.1 of this Plan, the Liquidating Trustee shall make Cash Distributions Pro Rata to holders of Allowed Claims in Classes 7A and 7B on each anniversary of the Effective Date; provided, however, each annual Distribution will be made only if the Liquidating Trustee determines that sufficient Available Cash exists; provided, further, if the Liquidating Trustee intends to make its final Cash Distribution, such Cash distribution shall be made regardless of the amount of Available Cash.

## ARTICLE XIII

## RESERVES ADMINISTERED BY THE LIQUIDATING TRUST

**13.1** **Establishment of Reserve Accounts**. The Liquidating Trustee shall establish each of the Distribution Reserve Accounts (which, notwithstanding anything to the contrary contained in this Plan, may be effected by either establishing a segregated account or establishing book entry accounts, in the sole discretion of the Liquidating Trustee).

**13.2** **Undeliverable Distribution Reserve**.

(a) **Deposits**. If a Distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with Section 13.2(b) of this Plan.

(b) **Forfeiture**. Any holder of an Allowed Claim that does not assert a claim pursuant to this Plan for an Undeliverable or Unclaimed Distribution within one year after the first Distribution is made to such holder shall be deemed to have forfeited its claim for such Undeliverable or Unclaimed Distribution and shall be forever barred and enjoined from asserting any such claim for the Undeliverable or Unclaimed Distribution against any Debtor, any Reorganized Debtor, any Estate, the Liquidating Trustee, the Liquidating Trust, or their respective properties or assets. In such cases, any Cash or other property held by the Liquidating Trust in the Undeliverable Distribution Reserve for distribution on account of such claims for Undeliverable or Unclaimed Distributions, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve, shall become the property of the Liquidating Trust, notwithstanding any federal or state escheat laws to the contrary, and shall be available for immediate distribution by the Liquidating Trust according to the terms of the Liquidating Trust Agreement.

(c) **Disclaimer**. The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim holder.

(d) **Distribution from Reserve**. Within fifteen Business Days after the holder of an Allowed Claim satisfies the requirements of this Plan, such that the distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in Section 13.2(b) of this Plan), the

Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve to the General Account.

**13.3** **Senior Claim Distribution Reserve**.  On the Effective Date, the Liquidating Trustee shall establish the Senior Claim Distribution Reserve by depositing from the Liquidating Trust Assets Cash in the amount estimated by the Bankruptcy Court to be necessary to satisfy all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims and the U.S. Trustee Fees payable or to be paid.  The Liquidating Trustee shall use the Senior Claim Distribution Reserve to pay Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims and the U.S. Trustee Fees payable or to be paid.  If all or any portion of a Priority Tax Claim, Administrative Claim, Ad Valorem Tax Claim, Priority Claim or Other Secured Claim shall become a Disallowed Claim, the amount on deposit in the Senior Claim Distribution Reserve attributable to such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Senior Claim Distribution Reserve, shall remain in the Senior Claim Distribution Reserve or be transferred out of the Senior Claim Distribution Reserve, as determined by the Liquidating Trustee, as follows:

(a)     it shall remain in the Senior Claim Distribution Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Senior Claim Distribution Reserve is sufficient to ensure that all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims and U.S. Trustee Fees payable or to be paid will be paid in accordance with the Plan;

(b)     to the extent not required to remain in the Senior Claim Distribution Reserve pursuant to clause (a), it shall be transferred to the Carveout Reserve to the extent the Liquidating Trustee determines necessary to ensure that the Cash held in the Carveout Reserve is sufficient to ensure that all Allowed M&M Secured Claims, Allowed General Unsecured Claims and Cure Claims will be paid in accordance with the Plan; and

(c)     to the extent not required to remain in the Senior Claim Distribution Reserve pursuant to clause (a) or transferred to the Carveout Reserve pursuant to clause (b), it shall be transferred to the General Account.

Beginning on the Effective Date and thereafter, on each anniversary of the Effective Date, the Liquidating Trustee shall evaluate, deposit or remove Cash in or from the Senior Claim Distribution Reserve in an amount that he or she estimates will be sufficient to pay U.S. Trustee Fees incurred during each twelve (12) month period beginning on the Effective Date or the anniversary thereof, as applicable.

**13.4    Liquidating Trust Expense Reserve**.

        (a)    On the Effective Date, the Liquidating Trustee shall deposit Cash from the Liquidating Trust Assets into the Liquidating Trust Expense Reserve in the amount of $2,000,000. The funds constituting the Liquidating Trust Expense Reserve are to be used by the Liquidating Trustee solely to satisfy the expenses of the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Beneficiaries and Newco as set forth in the Plan; *provided, however,* that (i) all costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents, as set forth in Section 2.2 of the Liquidating Trust Agreement, shall constitute expenses of the Liquidating Trust and shall be paid from the funds held in the Liquidating Trust Expense Reserve and (ii) all expenses of Newco incurred in connection with the transfer, sale, assignment or other disposition of any Liquidating Trust Assets held by Newco shall first be paid out of proceeds, if any, received by Newco upon the transfer, sale, assignment or other disposition of any Liquidating Trust Assets held by Newco. In no event shall the Liquidating Trustee be required or permitted to use his or her personal funds or assets for such purposes.

        (b)    Beginning on the first anniversary of the Effective Date and each anniversary thereafter, the Liquidating Trustee shall evaluate, deposit or remove from the General Account and deposit in or from the Liquidating Trust Expense Reserve Cash in an amount that he or she estimates will be sufficient to pay Liquidating Trust Expenses incurred during each twelve (12) month period following such anniversary, as applicable, as well as the costs and expenses associated with the winding up of the Liquidating Trust and the other expenses described in Section 4.7(a) of the Liquidating Trust Agreement.

**13.5    Carveout Reserve**. On the Effective Date, the Liquidating Trustee shall establish the Carveout Reserve by depositing from the Liquidating Trust Assets Cash in the amount of the Carveout Reserve Amount. The Carveout Reserve Amount shall be used to pay Allowed M&M Claims, Allowed Non-Second Lien General Unsecured Claims and Cure Claims. Of the Carveout Reserve Amount, up to $8,750,000 shall be used to make Distributions to holders of Allowed Non-Second Lien General Unsecured Claims. If (i) the aggregate amount of all Distributions to holders of Allowed Non-Second Lien General Unsecured Claims on account of Allowed Claims is less than $8,750,000, or (ii) all or any portion of a M&M Secured Claim, Non-Second Lien General Unsecured Claim or cure amount shall become a Disallowed Claim, then the amount on deposit in the Carveout Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Carveout Reserve, shall remain in the Carveout Reserve or be transferred out of the Carveout Reserve, as determined by the Liquidating Trustee, as follows:

        (a)    it shall remain in the Carveout Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Carveout Reserve is sufficient to ensure that all Allowed M&M Secured Claims, Allowed Non-Second Lien General Unsecured Claims and Cure Claims will be paid in accordance with the Plan;

        (b)    to the extent not required to remain in the Carveout Reserve pursuant to clause (a), it shall be transferred to the Senior Claim Distribution Reserve to the extent the Liquidating Trustee determines necessary to ensure that the Cash held in the Senior Claim

Distribution Reserve is sufficient to ensure that all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims and Allowed Other Secured Claims and U.S. Trustee fees payable and to be paid will be paid in accordance with the Plan; and

(c)     to the extent not required to remain in the Carveout Reserve pursuant to clause (a) or transferred to the Senior Claims Distribution Reserve pursuant to clause (b), it shall be transferred to the General Account.

**13.6     Reserve Account Adjustments**.  From time to time and upon the receipt of Cash from Newco or any other source, the Liquidating Trustee shall determine the amount of Cash required to adequately maintain each of the Senior Claim Distribution Reserve and the Carveout Reserve (each, an "Adjustable Reserve Account") and in any event, on each Closing Loan Cash Calculation Date (as defined in Section 3.1(b) of the Liquidating Trust Agreement) and each annual Distribution Date.  If, and to the extent that, after making and giving effect to any determination referred to in the immediately preceding sentence, the Liquidating Trustee determines that any Adjustable Reserve Account (i) contains Cash in an amount in excess of the amount then required to adequately maintain such Adjustable Reserve Account, then at any such time the Liquidating Trustee shall transfer such surplus Cash to the General Account, or (ii) does not contain Cash in an amount sufficient to adequately maintain such Adjustable Reserve Account, then at any such time the Liquidating Trustee shall transfer Cash from the General Account to the extent Cash (including any Cash that would have constituted Closing Loan Cash that has not been distributed pursuant to Section 3.1(b) of the Liquidating Trust Agreement) is available in the General Account until the deficit in such Adjustable Reserve Account is eliminated.

**ARTICLE XIV**

**PROCEDURES FOR RESOLVING DISPUTED, CONTINGENT, AND UNLIQUIDATED CLAIMS**

**14.1     Objection Deadline; Prosecution of Objections**.  As soon as reasonably practicable, but in no event later than 120 days after the Effective Date (unless extended with or without notice by an Order of the Bankruptcy Court), the Liquidating Trustee shall File objections to Claims and serve such objections upon the holders of each of the Claims to which objections are made.  Nothing contained herein shall limit the Liquidating Trustee's right to object to Claims, if any, Filed or amended more than 120 days after the Effective Date.  Subject to the limitations set forth in this Plan, the Liquidating Trustee shall be authorized to resolve all Disputed Claims by withdrawing or settling such objections thereto, or by litigating to judgment in the Bankruptcy Court or such other court having competent jurisdiction the validity, nature, and/or amount thereof.  If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by granting such holder an Allowed Claim in the amount of $50,000 or less, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim without further Bankruptcy Court approval; provided, however, that the Liquidating Trustee shall File a notice with the Bankruptcy Court advising that the Allowed Claim has been compromised, settled, and/or resolved.  If the Liquidating Trustee and the holder of a Disputed Claim agree to compromise, settle, and/or resolve a Disputed Claim by

granting such holder an Allowed Claim in an amount between $50,000 and $100,000, then the Liquidating Trustee may compromise, settle, and/or resolve such Disputed Claim with the consent of the Liquidating Trust Committee without further Bankruptcy Court approval; provided, however, that the Liquidating Trustee shall File a notice with the Bankruptcy Court advising that the Allowed Claim has been compromised, settled, and/or resolved. Otherwise, the Liquidating Trustee may only compromise, settle, and/or resolve such Disputed Claim with Bankruptcy Court approval.

Any Proofs of Claim that are Filed after the applicable Bar Date, including amendments to existing Proofs of Claim, or applications for the allowance of an Administrative Claim that are Filed after the Post-Confirmation Bar Date shall be deemed invalid and Disallowed unless consented to by the Liquidating Trustee or authorized by Order of the Bankruptcy Court.

Notwithstanding the foregoing, objections to, and compromises, settlements, and resolutions of, M&M Secured Claims shall be governed solely by Sections 4.2(e) and 6.17 of this Plan and objections to, and compromises, settlements, and resolutions of, cure amounts shall be governed solely by Article XV or Article XVI (as applicable) of this Plan.

**14.2     No Distributions Pending Allowance**.  Notwithstanding any other provision of this Plan, no payments or Distribution by the Liquidating Trustee shall be made with respect to all or any portion of a Disputed Claim unless and until all objections to such Disputed Claim have been settled or withdrawn or have been determined by Non-Appealable Order, and the Disputed Claim, or some portion thereof, has become an Allowed Claim.

**14.3     Buyer Standing to Participate**.  The Buyer (or its designees, successors and assigns) and Reorganized Debtors shall be able to participate in, but not commence, any proceeding related to the allowance or amount of any M&M Liens or Cure Claims, with standing to object to such Liens or Claims being reserved solely as to the Liquidating Trustee.

**ARTICLE XV**

**TREATMENT OF EXECUTORY CONTRACTS AND
UNEXPIRED LEASES – TRANSACTION INVOLVING
ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER**

Except to the extent (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, (c) at the Confirmation Hearing, the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases, or (d) the executory contract or unexpired lease is set forth on **Exhibit 2** or **3** to this Plan, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.  The executory contracts and unexpired leases identified on Exhibit 2, which shall be the Desired 365 Contracts, shall be assumed by the Reorganized Debtors pursuant to the terms of the Stock Purchase Agreement or the Alternative Transaction Agreement (as applicable) and this Plan.  The executory contracts and unexpired leases identified on Exhibit 3 shall be assumed and assigned to the Liquidating Trust or at the

election of the Debtors, the Second Lien Holders and the Committee, to Newco (as applicable) pursuant to the terms of the Liquidating Trust Agreement and this Plan.

On or soon after the entry of the Bid Protection Order, the Debtors shall serve a notice to parties to executory contracts and unexpired leases whose agreements may be assumed by one or more of the Debtors and vested in one or more of the Reorganized Debtors under this Plan, in accordance with the requirements of the Stock Purchase Agreement and Bid Protection Order or Alternative Transaction Agreement, as applicable. That notice shall include the proposed cure payment to be paid to the non-debtor parties or any other third parties necessary to cure all defaults and arrearages under the executory contracts and unexpired leases and a means by which such parties may receive information regarding the providing of adequate assurance.

This Plan shall serve as, and shall be deemed to be, a motion for entry of an order approving the assumption of the Desired 365 Contracts and the vesting of the Desired 365 Contracts in the applicable Reorganized Debtor(s), both as of the Effective Date. Except as otherwise set by Order of the Court, any objection to the assumption and vesting of, or the proposed cure amount under, the Desired 365 Contracts must be made as an objection to Confirmation of this Plan. If no objection to the assumption and vesting of, or the proposed cure amount under, any particular Desired 365 Contract is Filed and timely served, an Order (which may be Confirmation Order) that approves the assumption and vesting of, and the proposed cure amount under, each respective Desired 365 Contract may be entered by the Bankruptcy Court. If any such objections are Filed and timely served, a hearing with respect to the assumption and vesting or cure of any of the Desired 365 Contracts, and the objections thereto, shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

If the Bankruptcy Court approves the assumption and vesting of one or more Desired 365 Contracts, those Desired 365 Contracts shall be deemed Assumed Contracts, and they shall be assumed by the Debtors effective as of the Effective Date, and they shall vest in the applicable Reorganized Debtor(s) on the Effective Date. Any Cure Claims relating to the assumption and vesting of an executory contract or unexpired lease and ordered to be paid by the Bankruptcy Court shall be paid by the Liquidating Trustee from the Carveout Reserve on or as soon as reasonably practicable after the Effective Date. In the event of a dispute concerning the assumption of an executory contract or unexpired lease, the dispute shall be resolved by the Bankruptcy Court. Nothing herein shall require the Liquidating Trustee to pay any cure amount that is a Disputed Claim, but an amount of Cash necessary to pay the entire cure amount shall be deposited and maintained in the Carveout Reserve pending the entry of an Order of the Bankruptcy Court determining the amount of the Cure Claim to which such cure amount relates. As soon as practicable after any cure amount that is a Disputed Claim becomes a Cure Claim, the Liquidating Trustee shall distribute to the holder of such Cure Claim, out of the Carveout Reserve, Cash in the full amount of such Cure Claim, including the interest which has accrued on said amount while on deposit in the Carveout Reserve.

The Liquidating Trust shall be solely responsible for paying all Cure Claims. Reorganized Debtors and Buyer shall not be obligated to pay any Cure Claims.

## ARTICLE XVI

## TREATMENT OF EXECUTORY CONTRACTS AND
## UNEXPIRED LEASES – TRANSACTION NOT INVOLVING
## ISSUANCE OF NEW CRUSADER SHARES TO THE BUYER

Except to the extent (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order assuming an executory contract or unexpired lease, (c) at the Confirmation Hearing, the Bankruptcy Court approves the assumption of any executory contracts or unexpired leases, or (d) the executory contract or unexpired lease is set forth on **Exhibit 2** or **3** to this Plan, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123. The executory contracts and unexpired leases identified on Exhibit 2, which shall be the Desired 365 Contracts, shall be assumed by the Reorganized Debtors and assigned to the Buyer (as applicable) pursuant to the terms of the Alternative Transaction Agreement (as applicable), and this Plan. The executory contracts and unexpired leases identified on Exhibit 3 shall be assumed and assigned to the Liquidating Trust or Newco (as applicable) pursuant to the terms of the Liquidating Trust Agreement and this Plan.

On or soon after entry of the Bid Protection Order, the Debtors shall serve a notice to parties to executory contracts and unexpired leases whose agreements may be assumed by one or more of the Debtors and assigned to the Buyer under this Plan, in accordance with the requirements of the Stock Purchase Agreement and Bid Protection Order or Alternative Transaction Agreement, as applicable. That notice shall include the proposed cure payment to be paid to the non-debtor parties or any other third parties necessary to cure all defaults and arrearages under the executory contracts and unexpired leases and a means by which such parties may receive information regarding the providing of adequate assurance.

This Plan shall serve as, and shall be deemed to be, a motion for entry of an order approving the assumption of the Desired 365 Contracts and the vesting of the Desired 365 Contracts in the applicable Reorganized Debtor(s), both as of the Effective Date. Except as otherwise set by Order of the Court, any objection to the assumption and vesting of, or the proposed cure amount under, the Desired 365 Contracts must be made as an objection to Confirmation of this Plan. If no objection to the assumption and vesting of, or the proposed cure amount under, any particular Desired 365 Contract is Filed and timely served, an Order (which may be Confirmation Order) that approves the assumption and vesting of, and the proposed cure amount under, each respective Desired 365 Contract may be entered by the Bankruptcy Court. If any such objections are Filed and timely served, a hearing with respect to the assumption and vesting or cure of any of the Desired 365 Contracts, and the objections thereto, shall be scheduled by the Bankruptcy Court, which hearing may, but is not required to, coincide with the Confirmation Hearing.

If the Bankruptcy Court approves the assumption and vesting of one or more Desired 365 Contracts, those Desired 365 Contracts shall be deemed Assumed Contracts, and they shall be assumed by the Debtors effective as of the Effective Date, and they shall vest in the applicable Reorganized Debtor(s) on the Effective Date. Any Cure Claims relating to the assumption and vesting of an executory contract or unexpired lease and ordered to be paid by the Bankruptcy

Court shall be paid by the Liquidating Trustee from the Carveout Reserve on or as soon as reasonably practicable after the Effective Date. In the event of a dispute concerning the assumption of an executory contract or unexpired lease, the dispute shall be resolved by the Bankruptcy Court. Nothing herein shall require the Liquidating Trustee to pay any cure amount that is a Disputed Claim, but an amount of Cash necessary to pay the entire cure amount shall be deposited and maintained in the Carveout Reserve pending the entry of an Order of the Bankruptcy Court determining the amount of the Cure Claim to which such cure amount relates. As soon as practicable, after any cure amount that is a Disputed Claim becomes a Cure Claim, the Liquidating Trustee shall distribute to the holder of such Cure Claim, out of the Carveout Reserve, Cash in the full amount of such Cure Claim, including the interest which has accrued on said amount while on deposit in the Carveout Reserve.

The assumption by the Debtors or the agreement of the Debtors to assume any Employee Agreement will not entitle any Person to any contractual right to any benefit or alleged entitlement under any of the Debtors' policies, programs or plans, except as to such individual and as expressly set forth in such Employee Agreement.

## ARTICLE XVII

## TREATMENT OF EXECUTORY CONTRACTS AND UNEXPIRED LEASES: EMPLOYMENT AND BENEFIT ISSUES

**17.1** **Employee Agreements**. Pursuant to Bankruptcy Code §§ 365 and 1123, each Employee Agreement entered into prior to the Effective Date shall be deemed rejected effective as of the Effective Date, except for any Employee Agreement (i) that has been assumed or rejected with the consent of Buyer pursuant to an Order entered prior to the Effective Date, (ii) that is the subject of a motion to assume pending on the Confirmation Date, or (iii) that has been agreed to be assumed as part of the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable). The assumption by the Debtors or the Reorganized Debtors or the agreement of the Debtors or the Reorganized Debtors to assume any Employee Agreement will not entitle any Person to any contractual right to any benefit or alleged entitlement under any of the Debtors' policies, programs or plans, except as to such individual and as expressly set forth in such Employee Agreement.

## ARTICLE XVIII

## EFFECTS OF CONFIRMATION

**18.1** **Discharge**. On the Effective Date, the Debtors, their Estates, the Reorganized Debtors and their respective assets and properties are automatically and forever discharged and released from all Claims and vested Free and Clear of all Liens to the fullest extent permitted under Bankruptcy Code § 1141. Except as otherwise set forth in this Plan or the Confirmation Order, the rights afforded under this Plan and the treatment of Claims and Equity Interests under this Plan are in exchange for and in complete satisfaction, discharge, and release of, all Claims including any interest accrued on any Claims from the Petition Date against the Debtors, the Estates and the Reorganized Debtors, and the termination and cancellation of all Equity Interests. Except as set forth in this Plan or the Confirmation Order, Confirmation shall (a) discharge the

Debtors, the Reorganized Debtors, and the Liquidating Trust from all Claims or other debts that arose before the Effective Date, and all debts of a kind specified in Bankruptcy Code §§ 502(g), (h), or (i), whether or not (i) a Proof of Claim based on such debt is Filed or deemed Filed under Bankruptcy Code § 501, (ii) a Claim based on such debt is Allowed, or (iii) the holder of a Claim based on such debt has accepted this Plan, and (b) terminate all Equity Interests and other rights of Equity Interests in the Debtors, other than the New Crusader Shares and the New Subsidiaries Equity Interests.

**18.2    Legal Binding Effect**.  The provisions of this Plan shall bind all holders of Claims and Equity Interests and their respective successors and assigns, whether or not they accept this Plan.  On and after the Effective Date, except as expressly provided in this Plan, all holders of Claims, Liens and Equity Interests shall be precluded from asserting any Claim, Cause of Action or Liens against the Debtors, the Estates, the Reorganized Debtors, Buyer, any of its subsidiaries, the Liquidating Trust, or the Liquidating Trustee or their respective property and assets based on any act, omission, event, transaction or other activity of any kind that occurred or came into existence prior to the Effective Date.

**18.3    Moratorium, Injunction and Limitation of Recourse For Payment.  EXCEPT AS OTHERWISE PROVIDED IN THIS PLAN OR BY SUBSEQUENT ORDER OF THE BANKRUPTCY COURT, UPON CONFIRMATION OF THIS PLAN (AND FROM AND AFTER THE EFFECTIVE DATE) ALL PERSONS WHO HAVE HELD, HOLD, OR MAY HOLD CLAIMS OR LIENS AGAINST, OR EQUITY INTERESTS IN, ANY OF THE DEBTORS OR THEIR PROPERTIES ARE PERMANENTLY ENJOINED FROM TAKING ANY OF THE FOLLOWING ACTIONS AGAINST THE ESTATES, THE DEBTORS, THE REORGANIZED DEBTORS, THE BUYER, SANDRIDGE ENERGY (IF THE BUYER IS SANDRIDGE EXPLORATION), ITS SUBSIDIARIES, THE FIRST LIEN HOLDERS, THE SECOND LIEN HOLDERS, THE COMMITTEE, THE MEMBERS OF THE COMMITTEE, THE LIQUIDATING TRUSTEE, OR THE LIQUIDATING TRUST, OR ANY OF THEIR RESPECTIVE MANAGERS, FORMER AND CURRENT OFFICERS, INCLUDING THE CHIEF RESTRUCTURING OFFICER, FORMER AND CURRENT DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, OR OTHER PROFESSIONALS, OR ANY OF THEIR RESPECTIVE PROPERTY OR OTHER ASSETS ON ACCOUNT OF ANY SUCH CLAIMS OR EQUITY INTERESTS:  (A) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY ACTION OR OTHER PROCEEDING; (B) ENFORCING, ATTACHING, COLLECTING OR RECOVERING IN ANY MANNER ANY JUDGMENT, AWARD, DECREE OR ORDER; (C) CREATING, PERFECTING OR ENFORCING ANY LIEN OR ENCUMBRANCE; (D) ASSERTING A SETOFF, RIGHT OF SUBROGATION, NETTING OR RECOUPMENT, EXCEPT SUCH RECOUPMENT ORDERS ENTERED BY THE COURT DURING THE PENDENCY OF THESE CASES RELATED TO ST. MARY'S LAND AND EXPLORATION COMPANY [DOCKET NO. 394] AND XTO ENERGY INC. [DOCKET NO. {TO BE SUPPLIED PRIOR TO SOLICITATION}], OF ANY KIND AGAINST ANY DEBT, LIABILITY OR OBLIGATION DUE TO THE DEBTORS, THE REORGANIZED DEBTORS, THE BUYER, SANDRIDGE ENERGY (IF THE BUYER IS SANDRIDGE EXPLORATION), ITS SUBSIDIARIES OR THE LIQUIDATING TRUST; AND (E) COMMENCING OR CONTINUING, IN ANY MANNER OR IN ANY PLACE, ANY**

ACTION THAT DOES NOT COMPLY WITH OR IS INCONSISTENT WITH THE PROVISIONS OF THIS PLAN; <u>PROVIDED</u>, <u>HOWEVER</u>, THAT NOTHING CONTAINED HEREIN OR IN THE CONFIRMATION ORDER SHALL ENJOIN OR PRECLUDE (Y) SUCH PERSONS FROM EXERCISING THEIR RIGHTS PURSUANT TO AND CONSISTENT WITH THE TERMS OF THIS PLAN; AND (Z) THE REORGANIZED DEBTORS OR THE BUYER IN ANY MANNER OR THE REORGANIZED DEBTORS, THE BUYER, THE LIQUIDATING TRUST, OR THE LIQUIDATING TRUSTEE FROM ENFORCING OR EXERCISING THEIR RIGHTS OR REMEDIES PURSUANT TO OR ARISING OUT OF THIS PLAN, THE CONFIRMATION ORDER, THE STOCK PURCHASE AGREEMENT OR ALTERNATIVE TRANSACTION AGREEMENT (AS APPLICABLE), THE PLAN DOCUMENTS OR THE LIQUIDATING TRUST AGREEMENT. SUCH INJUNCTION SHALL EXTEND TO AND FOR THE BENEFIT OF ANY SUCCESSORS OR ASSIGNEES OF THE DEBTORS AND REORGANIZED DEBTORS AND THEIR RESPECTIVE PROPERTIES AND INTEREST IN PROPERTIES. SUCH INJUNCTION SHALL NOT PRECLUDE ANY RIGHT OF AN ENTITY TO ASSERT A SEPARATE AND DIRECT CLAIM THAT IS NOT PROPERTY OF THE ESTATE AGAINST A PARTY THAT IS NOT ANY DEBTOR, ANY REORGANIZED DEBTORS, OR THE LIQUIDATING TRUST.

THE CONFIRMATION ORDER SHALL, AMONG OTHER THINGS, CONTAIN, DIRECT AND PROVIDE FOR THE FOREGOING INJUNCTION.

**18.4** <u>Term of Injunction or Stays</u>. EXCEPT FOR SECTION 18.3, ANY INJUNCTION OR STAY ARISING UNDER OR ENTERED DURING THE CASES UNDER BANKRUPTCY CODE §§ 105 AND 362 OR OTHERWISE THAT IS IN EXISTENCE ON THE CONFIRMATION DATE SHALL REMAIN IN FULL FORCE AND EFFECT UNTIL THE LATER OF THE EFFECTIVE DATE AND THE DATE INDICATED IN THE ORDER PROVIDING FOR SUCH INJUNCTION OR STAY.

**18.5** <u>Exculpation and Limitation of Liability</u>. NOTWITHSTANDING ANYTHING SET FORTH HEREIN, NO HOLDER OF ANY CLAIM OR EQUITY INTEREST SHALL HAVE ANY RIGHT OF ACTION AGAINST THE DEBTORS, THE ESTATES, THE REORGANIZED DEBTORS, THE BUYER, SANDRIDGE ENERGY (IF THE BUYER IS SANDRIDGE EXPLORATION), ITS SUBSIDIARIES, THE LIQUIDATING TRUSTEE, THE LIQUIDATING TRUST, THE FIRST LIEN HOLDERS, THE SECOND LIEN HOLDERS, THE COMMITTEE, OR ANY OF THEIR RESPECTIVE MANAGERS, FORMER AND CURRENT OFFICERS, INCLUDING THE CHIEF RESTRUCTUING OFFICER, FORMER AND CURRENT DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, OTHER PROFESSIONALS, OR ANY OF THEIR RESPECTIVE PROPERTY AND ASSETS FOR ANY ACT OR OMISSION IN CONNECTION WITH, RELATING TO OR ARISING OUT OF THE CASES, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CASES, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, THE PREPARATION AND DISTRIBUTION OF THE DISCLOSURE STATEMENT, THE STOCK PURCHASE AGREEMENT, THE ALTERNATIVE TRANSACTION AGREEMENT, OR ANY OTHER TRANSACTION

DOCUMENTS, THE ADMINISTRATION OF THE LIQUIDATING TRUST, THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN, OR THE OFFER, ISSUANCE, SALE, OR PURCHASE OF A SECURITY OFFERED OR SOLD UNDER THIS PLAN, PROVIDED SUCH EXCULPATED PERSON DID NOT AND DOES NOT ENGAGE IN WILLFUL MISCONDUCT, GROSS NEGLIGENCE OR FRAUD AND IN COMPLIANCE WITH THE APPLICABLE PROVISIONS OF THE BANKRUPTCY CODE AND PROVIDED FURTHER THAT SUCH EXCULPATION SHALL NOT EXTEND TO SUCH EXCULPATED PERSON'S RIGHTS AND OBLIGATIONS UNDER THIS PLAN, THE STOCK PURCHASE AGREEMENT OR THE ALTERNATIVE TRANSACTION AGREEMENT (AS APPLICABLE), THE PLAN DOCUMENTS OR THE LIQUIDATING TRUST AGREEMENT.

      **18.6**    <u>Release and Covenant Not to Sue.</u>

      (a)    **NOTWITHSTANDING ANYTHING SET FORTH HEREIN, ON THE EFFECTIVE DATE, EACH OF THE RELEASED PARTIES SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED THE OTHER RELEASED PARTIES AND ALL MANAGERS, FORMER AND CURRENT OFFICERS, INCLUDING THE CHIEF RESTRUCTURING OFFICER, CURRENT AND FORMER DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS EMPLOYED BY ANY OF THE RELEASED PARTIES (BUT SOLELY IN THE CAPACITIES SO EMPLOYED) OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE IN CONNECTION WITH, BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CASES, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY RELATING TO THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION, PREPARATION OR DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, WHICH CAUSES OF ACTION ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN (OTHER THAN THE RIGHTS OF THE REORGANIZED DEBTORS TO ENFORCE THIS PLAN, THE PLAN DOCUMENTS, AND THOSE CAUSES OF ACTION EXPRESSLY RETAINED**

BY THE REORGANIZED DEBTORS OR TRANSFERRED TO THE LIQUIDATING TRUST UNDER THIS PLAN) AND THE RELEASED PARTIES COVENANT NOT TO SUE ANY OF THE OTHER PARTIES IDENTIFIED IN THIS SECTION 18.6(A) WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN (ALL OF THE FOREGOING BEING HEREIN CALLED THE "RELEASED CLAIMS"); PROVIDED, HOWEVER, DAVID D. LE NORMAN, ROBERT H. NIEHAUS, AND ROBERT J. RAYMOND (COLLECTIVELY, THE "LIMITED RELEASE PARTIES") ARE NOT RELEASED FROM ANY CLAIMS THAT MAY BE BROUGHT BY THE LIQUIDATING TRUSTEE RELATED TO (AND THE RELEASED CLAIMS SHALL NOT INCLUDE) ANY TRANSACTIONS ENTERED INTO AFTER JANUARY 1, 2008 BETWEEN THE LIMITED RELEASE PARTIES AND ANY OF THE DEBTORS OR THE ESTATES OTHER THAN THOSE TRANSACTIONS SET FORTH ON A SCHEDULE FILED OR TO BE FILED WITH THE BANKRUPTCY COURT OR PREVIOUSLY DISCLOSED IN A FILING UNDER THE 1933 ACT OR THE SECURITIES AND EXCHANGE ACT OF 1934; AND, PROVIDED FURTHER, THAT NO RELEASED PARTIES, INCLUDING THE LIMITED RELEASE PARTIES, SHALL BE RELEASED AND DISCHARGED FROM (AND THE RELEASED CLAIMS SHALL NOT INCLUDE) OBLIGATIONS UNDER THIS PLAN, THE STOCK PURCHASE AGREEMENT, THE ALTERNATIVE TRANSACTION AGREEMENT (IF APPLICABLE), OR ANY CLAIM OR CAUSE OF ACTION ARISING FROM OR RELATED TO ACTS OR OMISSIONS INVOLVING FRAUD OR WILLFUL MISCONDUCT. EACH OF THE RELEASED PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH RELEASED PARTY HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS SECTION 18.6(A) OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH RELEASED PARTY IS A PARTY OR BY WHICH SUCH RELEASED PARTY OTHERWISE IS BOUND. ALL TRANSACTIONS LISTED ON THE SCHEDULE TO BE FILED WITH THE PLAN PURSUANT TO THIS SECTION 18.6(A) MUST BE ON COMMERCIALLY REASONABLE TERMS AND AT COMMERCIALLY REASONABLE PRICES AND FEES AND NOT EXCEED, IN THE AGGREGATE, $500,000.00. IN ADDITION, TWO TRANSACTIONS MAY EXCEED THE FOREGOING $500,000.00 LIMIT, SO LONG AS THEY ARE ON COMMERCIALLY REASONABLE TERMS AND AT COMMERCIALLY REASONABLE PRICES AND FEES FOR SIMILAR SERVICES. THE TWO TRANSACTIONS THAT MAY EXCEED THE FOREGOING LIMIT ARE: (1) THE SUPPLYING OF FRAC TANKS OWNED BY DAVID D. LE NORMAN AND THAT ARE MANAGED BY AN ENTITY CALLED BLUE IRON; AND (2) THE SUPPLYING OF NITROGEN SERVICES BY CRYO GAS SERVICES, IN WHICH DAVID D. LE NORMAN AND OTHER OFFICERS OF THE DEBTOR HAVE AN EQUITY INTEREST. WITHOUT LIMITING THE FOREGOING, THE CONFIRMATION ORDER SHALL INCLUDE A FINDING AND ORDER PROVIDING THAT ANY CAUSES OF ACTIONS ARISING UNDER, OR IN ANY WAY RELATED TO, THE FIRST LIEN DOCUMENTS ARE PROPERTY OF THE DEBTORS' BANKRUPTCY ESTATES, AND BY THE TERMS OF THE RELEASE CONTAINED

WITHIN THIS PARAGRAPH SUCH CAUSES OF ACTION, IF ANY, ARE BARRED FROM BEING ASSERTED IN ANY MANNER BY THE DEBTORS, THE REORGANIZED DEBTORS, THE BUYER, THE LIQUIDATING TRUSTEE, NEWCO, THE HOLDERS OF CLAIMS AGAINST THE DEBTORS, OR THE CURRENT OR FORMER HOLDERS OF EQUITY INTERESTS IN THE DEBTOR.  FOR THE AVOIDANCE OF DOUBT, CAUSES OF ACTION AGAINST THE FIRST LIEN HOLDERS, IF ANY, ARE BEING RELEASED BY THE RELEASED PARTIES PURSUANT TO THIS PARAGRAPH AND SUCH CAUSES OF ACTION ARE NOT RETAINED BY, OR CONVEYED TO, ANY PARTY PURSUANT TO THIS PLAN OR ANY PLAN DOCUMENT.

(b)    NOTWITHSTANDING ANYTHING SET FORTH HEREIN, ON THE EFFECTIVE DATE, EACH HOLDER OF A CLAIM WHO VOTES TO ACCEPT THIS PLAN AS SET FORTH ON THE RELEVANT BALLOT AND WHO DOES NOT MARK HIS OR HER BALLOT TO INDICATE HIS OR HER REFUSAL TO GRANT THE RELEASES PROVIDED IN THIS PARAGRAPH SHALL BE DEEMED TO HAVE IRREVOCABLY RELEASED AND DISCHARGED RELEASED PARTIES AND ALL MANAGERS, FORMER AND CURRENT OFFICERS, INCLUDING THE CHIEF RESTRUCTURING OFFICER, FORMER AND CURRENT DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONALS EMPLOYED BY ANY OF THE RELEASED PARTIES OF AND FROM ANY CLAIM OR CAUSE OF ACTION ON ACCOUNT OF ANY CLAIMS OR EQUITY INTERESTS, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE BASED ON, RELATING TO OR IN ANY MANNER ARISING FROM, IN WHOLE OR IN PART, THE DEBTORS, THE DEBTORS' RESTRUCTURING, THE CASES, THE NEGOTIATION OF ANY SETTLEMENT OR AGREEMENT IN THE CASES, THE PURCHASE, SALE OR RESCISSION OF THE PURCHASE OR SALE OF ANY SECURITY OF THE DEBTORS, THE SUBJECT MATTER OF, OR THE TRANSACTIONS OR EVENTS GIVING RISE TO, ANY CLAIM OR EQUITY INTEREST THAT IS TREATED IN THIS PLAN, THE BUSINESS OR CONTRACTUAL ARRANGEMENTS BETWEEN ANY DEBTOR AND ANY RELEASED PARTY RELATING TO THE RESTRUCTURING OF CLAIMS AND EQUITY INTERESTS PRIOR TO OR IN THE CASES, THE NEGOTIATION, FORMULATION, PREPARATION OR DISTRIBUTION OF THIS PLAN AND THE DISCLOSURE STATEMENT, OR RELATED AGREEMENTS, INSTRUMENTS OR OTHER DOCUMENTS, WHICH CAUSES OF ACTION ARE BASED IN WHOLE OR IN PART ON ANY ACT, OMISSION, TRANSACTION, EVENT OR OTHER OCCURRENCE, THE PURSUIT OF CONFIRMATION OF THIS PLAN, THE CONSUMMATION OF THIS PLAN, AND THE ADMINISTRATION OF THIS PLAN OR THE PROPERTY TO BE DISTRIBUTED UNDER THIS PLAN (OTHER THAN THE RIGHTS OF THE REORGANIZED DEBTORS TO ENFORCE THIS PLAN, THE PLAN DOCUMENTS, AND THOSE CAUSES OF ACTION EXPRESSLY RETAINED BY THE

REORGANIZED DEBTORS OR TRANSFERRED TO THE LIQUIDATING TRUST UNDER THIS PLAN) AND EACH HOLDER OF A CLAIM WHO VOTES TO ACCEPT THIS PLAN AS SET FORTH ON THE RELEVANT BALLOT AND WHO DOES NOT MARK HIS OR HER BALLOT TO INDICATE HIS OR HER REFUSAL TO GRANT THE RELEASES PROVIDED IN THIS PARAGRAPH COVENANTS NOT TO SUE ANY OF THE OTHER PARTIES IDENTIFIED IN THIS <u>SECTION 18.6(B)</u> WITH RESPECT TO THE CLAIMS AND CAUSES OF ACTION RELEASED HEREIN; PROVIDED, HOWEVER, NO SUCH PARTIES SHALL BE RELEASED AND DISCHARGED FROM OBLIGATIONS UNDER THIS PLAN, THE STOCK PURCHASE AGREEMENT, THE ALTERNATIVE TRANSACTION AGREEMENT (AS APPLICABLE), THE LIQUIDATING TRUST AGREEMENT, THE PLAN DOCUMENTS, OR OF ANY CLAIM OR CAUSE OF ACTION ARISING FROM OR RELATED TO ACTS OR OMISSIONS INVOLVING WILLFUL MISCONDUCT OR FRAUD. EACH HOLDER OF A CLAIM THAT SHALL BE DEEMED TO HAVE RELEASED THE RELEASED PARTIES REPRESENTS AND WARRANTS THAT EACH SUCH HOLDER HAS NOT TRANSFERRED, PLEDGED OR OTHERWISE ASSIGNED TO ANY OTHER PERSON OR ENTITY ALL OR ANY PORTION OF ANY CLAIM RELEASED UNDER THIS <u>SECTION 18.6(B)</u> OR ANY RIGHTS OR ENTITLEMENTS WITH RESPECT THERETO AND THE EFFECTUATION OF THIS RELEASE DOES NOT VIOLATE OR CONFLICT WITH THE TERMS OF ANY CONTRACT TO WHICH SUCH HOLDER IS A PARTY OR BY WHICH SUCH HOLDER OTHERWISE IS BOUND. NOTWITHSTANDING THE FOREGOING, NOTHING HEREIN SHALL BE DEEMED TO MODIFY THE RELEASES GRANTED BY THE SECOND LIEN HOLDERS UNDER SECTION 18.6(A) OF THIS PLAN, AND THE SECOND LIEN HOLDERS MAY NOT OPT OUT OF THE RELEASE IN FAVOR OF THE FIRST LIEN HOLDERS, THEIR MANAGERS, OFFICERS, DIRECTORS, AGENTS, ATTORNEYS, INVESTMENT BANKERS, FINANCIAL ADVISORS, AND PROFESSIONAL PERSONS.

(c) ON THE EFFECTIVE DATE, THE FIRST LIEN HOLDERS, AND ALL MANAGERS, FORMER AND CURRENT OFFICERS, INCLUDING THE CHIEF RESTRUCTURING OFFICER, AND FORMER AND CURRENT DIRECTORS OF THE DEBTORS IRREVOCABLY RELEASE AND DISCHARGE ONE ANOTHER OF AND FROM ANY CLAIM OR CAUSE OF ACTION, WHETHER KNOWN OR UNKNOWN, FORESEEN OR UNFORESEEN, ASSERTED OR NOT ASSERTED, SCHEDULED OR NOT SCHEDULED, NOW EXISTING OR HEREAFTER ARISING, IN LAW, EQUITY OR OTHERWISE, AND WHETHER ARISING UNDER THE BANKRUPTCY CODE OR OTHER APPLICABLE LAW, ARISING FROM OR RELATED TO ACTS OR OMISSIONS OCCURRING ON OR BEFORE THE EFFECTIVE DATE.

(d) THE RELEASES IN THIS <u>SECTION 18.6</u> ARE SPECIFICALLY INTENDED TO OPERATE AND BE APPLICABLE EVEN IF IT IS ALLEGED, CHARGED OR PROVEN THAT ALL OR SOME OF THE CLAIMS OR DAMAGES RELEASED WERE SOLELY AND COMPLETELY CAUSED BY ANY ACTS OR OMISSIONS, WHETHER NEGLIGENT OR GROSSLY NEGLIGENT OF OR BY ONE OR MORE OF THE RELEASED PARTIES.

**18.7** **Insurance**. Confirmation and consummation of this Plan shall have no effect on insurance policies of any of the Debtors (including, but not limited to, director and officer liability policies to the extent that the Debtors have any rights under such policies) in which any of the Debtors are or were an insured party. Each insurance company is prohibited from, and the Confirmation Order shall include an injunction against, denying, refusing, altering or delaying coverage for any Debtor or Reorganized Debtor on any basis regarding or related to any of the Debtors' Cases, this Plan or any provision within this Plan, including the treatment or means of liquidation set out within this Plan for insured Claims.

## ARTICLE XIX

## RETENTION OF JURISDICTION

**19.1** **Retention**. Under Bankruptcy Code §§ 105(a) and 1142, and notwithstanding entry of the Confirmation Order and occurrence of the Effective Date, the Bankruptcy Court shall retain exclusive jurisdiction over all matters arising out of, and related to, the Cases, this Plan, the Stock Purchase Agreement, the other Transaction Documents, the Alternative Transaction Agreement (if applicable), and the Liquidating Trust to the fullest extent permitted by law, including, among other things, jurisdiction to:

(a) allow, disallow, determine, liquidate, classify, estimate or establish the priority or secured or unsecured status of any Claim or Equity Interest, including the resolution of any application or request for payment of any Administrative Claim, and the resolution of any objections to the allowance or priority of Claims or Equity Interest;

(b) hear and determine all Fee Applications;

(c) determine any and all adversary proceedings, motions, applications, and contested or litigated matters, including, but not limited to, all Causes of Action, and consider and act upon the compromise and settlement of any Claim against, or Causes of Action on behalf of, the Liquidating Trust;

(d) enter such orders as may be necessary or appropriate to construe, execute, implement, or consummate the provisions of this Plan, the Liquidating Trust Agreement, the Stock Purchase Agreement, the other Transaction Documents, the Alternative Transaction Agreement (if applicable), and all property, contracts, instruments, releases, and other agreements or documents transferred, vested, or created in connection therewith;

(e) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of this Plan, the other Transaction Documents, the Liquidating Trust Agreement, the Stock Purchase Agreement, and the Alternative Transaction Agreement (if applicable), the Confirmation Order, any transactions or payment contemplated hereby, or any disputes arising under agreements, documents or instruments executed in connection therewith;

(f) hear and determine disputes arising in connection with the interpretation, implementation, consummation, or enforcement of the Closing Loan and Closing Loan Agreement.

(g)      consider any modifications of this Plan, the Disclosure Statement, the Liquidating Trust Agreement, the Stock Purchase Agreement, the other Transaction Documents, and the Alternative Transaction Agreement (if applicable), in each case to the extent requiring the approval of the Bankruptcy Court, cure any defect or omission, or reconcile any inconsistency in any order of the Bankruptcy Court, including the Confirmation Order;

(h)      issue injunctions, enter and implement other orders, or take such other actions as may be necessary or appropriate to restrain interference by any Person with the implementation, consummation, or enforcement of this Plan, the Stock Purchase Agreement, the Alternative Transaction Agreement (if applicable), the Confirmation Order or any other order of the Bankruptcy Court;

(i)      hear and determine any matters arising in connection with or relating to this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, the Stock Purchase Agreement, the other Transaction Documents, or the Alternative Transaction Agreement (if applicable), or any contract, instrument, release, or other agreement or document created in connection with this Plan, the Disclosure Statement, the Confirmation Order, the Liquidating Trust Agreement, the Stock Purchase Agreement, the other Transaction Documents, or the Alternative Transaction Agreement (if applicable);

(j)      enforce all orders, judgments, injunctions, releases, exculpations, indemnifications and rulings entered in connection with the Cases;

(k)      hear and determine matters concerning state, local, and federal taxes in accordance with Bankruptcy Code §§ 346, 505 and 1146 (including the expedited determination of taxes under Bankruptcy Code § 505(b);

(l)      hear and determine all matters related to the property of the Estates, the Debtors, the Reorganized Debtors, the Liquidating Trust, or the Liquidating Trustee from and after the Effective Date;

(m)      hear and determine such other matters as may be provided in the Confirmation Order and as may be authorized under the provisions of the Bankruptcy Code; and

(n)      hear and determine all matters with respect to the assumption or rejection of executory contracts or unexpired leases and the allowance of cure amounts;

(o)      enter, implement or enforce such orders as may be appropriate in the event the Confirmation Order is for any reason stayed, reversed, revoked, modified or vacated;

(p)      hear and determine any other matters related to this Plan and not inconsistent with the Bankruptcy Code;

(q)      determine any other matters that may arise in connection with or are related to this Plan, the Disclosure Statement, the Disclosure Statement Order, the Confirmation Order, any of the Plan Documents or any other contract, instrument, release or other agreement or document related to this Plan, the Disclosure Statement or the Plan Supplements;

(r)     hear any other matter not inconsistent with the Bankruptcy Code; and

(s)     enter final decrees closing the Cases.

**19.2     Rights of Reorganized Debtor and the Liquidating Trustee**.     Nothing contained in this <u>Article XIX</u> shall be construed so as to limit the rights of the Reorganized Debtors or Liquidating Trustee to commence or to prosecute any Cause of Action, in any court of competent jurisdiction.

# ARTICLE XX

## MISCELLANEOUS PROVISIONS

**20.1     Revocation, Withdrawal or Non-Consummation**.     The Debtors reserve the right to revoke or withdraw this Plan prior to the Confirmation Date and to file any amended or subsequent plans.   If Confirmation or Substantial Consummation do not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) this Plan shall be null and void in all respects, (b) settlements or compromises embodied in this Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumptions or rejections of executory contracts or unexpired leases affected by this Plan, and any documents or agreements executed pursuant to this Plan, shall be deemed null and void, and (c) nothing contained in this Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

**20.2     Severability of Plan Provisions**.   If, prior to Confirmation, any term or provision of this Plan is held by the Bankruptcy Court to be invalid, void or unenforceable (other than any term or provision of this Plan providing for or addressing the satisfaction of the Allowed First Lien Secured Claims or any provision for the benefit of the Allowed First Lien Secured Claims) the Bankruptcy Court, at the request of the Plan Proponents, shall have the power to alter and interpret such term or provision to make it valid or enforceable to the maximum extent practicable, consistent with the original purpose of the term or provision held to be invalid, void or unenforceable, and such term or provision shall then be applicable as altered or interpreted. Notwithstanding any such holding, alteration or interpretation, the remainder of the terms and provisions of this Plan shall remain in full force and effect and shall in no way be affected, impaired or invalidated by such holding, alteration or interpretation.   The Confirmation Order shall constitute a judicial determination and shall provide that each term and provision of this Plan, as it may be altered or interpreted in accordance with the foregoing, is valid and enforceable pursuant to its terms.

**20.3     Exemption from Transfer Taxes and Recording Fees**.   In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under this Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with this Plan, including the

issuance and delivery of the New Crusader Shares and the releases of Liens contemplated under this Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. The Confirmation Order shall direct the appropriate federal, state and/or local governmental officials or agents to forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

**20.4    Expedited Tax Determination**.  The Reorganized Debtors may request an expedited determination of taxes under Bankruptcy Code § 505(b) for all returns filed for or on behalf of such Debtors or Reorganized Debtors for all taxable periods through the Effective Date.

**20.5    Access and Preservation of Records**.  The Liquidating Trustee shall be granted access to, among other things, the offices, books, and records relating to the Debtors or any of their businesses or operations that are in possession of the Buyer and the Buyer shall preserve records, all to the extent and on the terms set forth in the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable).

**20.6    Interest Accrual**.  Except with respect to and only to the extent permitted by bankruptcy law and applicable law as to Secured Claims, no post-petition interest shall accrue on any Claim or scheduled liability (including, but not limited to, Allowed Administrative Claims).

**20.7    Allocation of Plan Distributions between Principal and Interest**.  To the extent that any Allowed Claim entitled to a distribution under this Plan is comprised of indebtedness and accrued but unpaid interest thereon, such distribution shall, for federal income tax purposes, be allocated to the principal amount of the Claim first, and then, to the extent the consideration exceeds the principal amount of the Claim, to accrued but unpaid interest.

**20.8    Rules of Interpretation; Computation of Time**.  For purposes of this Plan, (a) any reference in this Plan to a contract, instrument, release, indenture, or other agreement or document as being in a particular form or containing particular terms and conditions means that such document shall be substantially in such form or substantially on such terms and conditions, (b) any reference in this Plan to an existing document or exhibit Filed or to be Filed means such document or exhibit as it may have been or may be amended, modified, or supplemented, (c) unless otherwise specified, all references in this Plan to Sections, Articles, and Exhibits, if any, are references to Sections, Articles, and Exhibits of or to this Plan, (d) the words "herein" and "hereto" refer to this Plan in its entirety rather than to a particular portion of this Plan, (e) the words "include", "includes" or "including" shall be deemed to be followed by the words "without limitation", whether or not they are in fact followed by those words or words of like import, (f) captions and headings to Articles and Sections are inserted for convenience of reference only and are not intended to be a part of or to affect the interpretation of this Plan, and (g) the rules of construction set forth in Bankruptcy Code § 102 and in the Bankruptcy Rules shall apply.  In computing any period of time prescribed or allowed by this Plan, unless otherwise specifically designated herein, the provisions of Bankruptcy Rule 9006(a) shall apply.

All references to immediately available funds, dollar amounts, or Cash Distributions contained in this Plan shall mean United States dollars.

**20.9  The Reorganized Debtors, the Buyer and the Liquidating Trust Are Not Successors**.  Save and except as needed to comply with Bankruptcy Code § 1145, the Reorganized Debtors, (in the case of a transaction under an Alternative Transaction Agreement under which New Crusader Shares or any other shares of capital stock of any Reorganized Debtor shall not be issued to the Buyer), any Buyer, the Liquidating Trust, and their affiliates, successors, or assigns shall not be deemed, as a result of actions taken in connection with this Plan, to be a successor to any of the Debtors or a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors.  The Liquidating Trust and any Buyer or any affiliate of the Buyer that issues Buyer Equity as Consideration under the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable) shall be deemed to be a successor to the Debtors only to the limited extent needed to comply with Bankruptcy Code § 1145 and for no reason under any state or federal law.

**20.10  Plan Documents**.  The Plan Documents are incorporated herein and are a part of this Plan as if set forth in full herein.

**20.11  Reservation of Rights**.  This Plan shall have no force or effect unless the Bankruptcy Court shall enter the Confirmation Order. Prior to the Effective Date, none of the filing of this Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

**20.12  Further Assurances**.  The Debtors, Reorganized Debtors and all holders of Claims receiving Distributions hereunder and all other parties in interest may and shall, from time to time, prepare, execute and deliver any agreements or documents and take any other actions as may be necessary or advisable to effectuate the provisions and intent of this Plan.

**20.13  Successors and Assigns**.  This Plan and all rights, benefits and obligations of any Person named or referred to in this Plan shall be binding on, and shall inure to the benefit of, any heir, executor, administrator, successor or assign of such Person.

**20.14  Governing Law**.  Except as otherwise provided under the Stock Purchase Agreement and Alternative Transaction Agreement (if applicable) and unless a rule of law or procedure is supplied by federal law, including the Bankruptcy Code and Bankruptcy Rules, (a) the construction and implementation of this Plan and any agreements, documents, and instruments executed in connection with this Plan, and (b) governance matters shall be governed by the laws of the State of Texas, without giving effect to the principles of conflict of law thereof.

**20.15  Abandonment**.  As part of the Plan Supplement, the Debtors will file a list of property of the Estates to be abandoned, if any.  Such property may include property that would otherwise be Liquidating Trust Assets and will be deemed abandoned upon entry of the Confirmation Order.

**20.16   Notice of Effective Date**.  On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all holders of Claims in Class 7 that are not Disallowed Claims a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

**20.17   Plan Supplement**.  Any and all documents, forms, exhibits, lists, or schedules specified in this Plan but not Filed with this Plan shall be contained in the Plan Supplement and Filed with the Bankruptcy Court at least ten (10) Business Days prior to the date of the commencement of the Confirmation Hearing. Upon its filing with the Bankruptcy Court, the Plan Supplement may be inspected in the office of the Clerk of the Bankruptcy Court during normal Bankruptcy Court hours.

**20.18   Entire Agreement**.  This Plan and this Plan Documents set forth the entire agreement and understanding among the parties in interest relating to the subject matter hereof and supersede all prior discussions and documents.

**20.19   Waiver of Stay**.  Notwithstanding Bankruptcy Rules 3002(e), 6004(h), and 6006(d), the Debtors shall be authorized to consummate this Plan and the transactions and transfers contemplated thereby immediately after entry of the Confirmation Order.

# ARTICLE XXI

# MODIFICATION OF THIS PLAN

The Plan Proponents, with the consent of the Buyer if required by the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable), may alter, amend, or modify this Plan or any Plan Documents under Bankruptcy Code § 1127(a) at any time prior to the Confirmation Date.  After the Confirmation Date and prior to Substantial Consummation of this Plan, the Debtors may, under Bankruptcy Code § 1127(b), with the approval of Buyer if required by the Stock Purchase Agreement or Alternative Transaction Agreement (as applicable), (i) amend this Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, and in the case of the First Lien Holders does not, in the sole discretion of the First Lien Holders, alter their treatment or benefits under this Plan, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in this Plan, the Disclosure Statement, or the Confirmation Order, and (iii) amend this Plan as may be necessary to carry out the purposes and effects of this Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under this Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court.

[The Remainder of the Page Intentionally Left Blank]

Respectfully submitted,

**CRUSADER ENERGY GROUP INC**

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**CRUSADER ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**CRUSADER MANAGEMENT CORPORATION**

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**HAWK ENERGY FUND I, LLC**
By: Crusader Energy Group Inc. its Sole Member

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP II, LLC**
By: Crusader Energy Group Inc. its Sole Member

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY MANAGEMENT, LLC**
By: Crusader Energy Group Inc. its Sole Member

By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**RCH URLAND ACQUISITION, LLC**
By: Crusader Energy Group Inc. its Sole Member
By: _____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY MANAGEMENT, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**FIRST LIEN HOLDERS**

By: _____
Name: _____
Title: _____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**HAWK ENERGY FUND I, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP II, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**RCH UPLAND ACQUISITION, LLC**

By: Crusader Energy Group Inc. its Sole Member
By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**SECOND LIEN HOLDERS**

By:_____
Name:_____
Title:_____

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**CRUSADER MANAGEMENT
CORPORATION**

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY MANAGEMENT, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED
CREDITORS**
By:_____
Name: Richard M. Roberson
Title: Attorney in Fact

**CRUSADER ENERGY GROUP, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**HAWK ENERGY FUND I, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**KNIGHT ENERGY GROUP II, LLC**
By: Crusader Energy Group Inc. its Sole Member

By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**RCH UPLAND ACQUISITION, LLC**

By: Crusader Energy Group Inc. its Sole Member
By:_____
Name: James R. Latimer, III
Title: Chief Restructuring Officer

**SECOND LIEN HOLDERS**

By:_____
Name:_____
Title:_____

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
Canpartners Investments IV, LLC
By: Canyon Capital Advisors LLC, its Manager

By:_____
Name: _____Jonathan Kaplan_____
Title:_____General Counsel_____

**DATED:** September 22, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
Each Holder below is submitting this Plan solely as Holder of the aggregate principal amount of Second Lien Claims it holds directly:

Farallon Capital Partners, L.P.
Farallon Capital Institutional Partners, L.P.
Farallon Capital Institutional Partners II, L.P.
Farallon Capital Institutional Partners III, L.P.
Farallon Capital Offshore Investors II, L.P.

By: Farallon Partners, L.L.C., the general partner of each

By:_____
Name:_____ RAJ PATEL
Title: Managing Member

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

DATED: _September 22_ , 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**

The Holder below is submitting this Plan solely as Holder of the aggregate principal amount of Second Lien Claims it holds directly:

Farallon Capital Offshore Investors, Inc.
  By: Farallon Capital Management, L.L.C.,
  its agent and attorney-in-fact

By: _____
Name:_____ RAJ PATEL
Title: _Managing Member_____

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT
CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
GoldenTree Credit Opportunities Second Financing, Limited
By: GoldenTree Asset Management, LP
By: _Karen Weber_____
Name:_____Karen Weber_____
Title:_____Director - Bank Debt_____

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT
CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
GoldenTree 2004 Trust
By: GoldenTree Asset Management, LP
By: _Karen Weber_
Name: _Karen Weber_
Title: _Director - Bank Debt_

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
*GoldenTree Credit Opportunities Financing iLimited*
By: GoldenTree Asset Management, LP
By: *Karen Weber* (signature)
Name: Karen Weber
Title: Director - Bank Debt

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
GoldenTree Capital Opportunities, LP
By: GoldenTree Asset Management, LP
By: _Karen Weber_ (signature)
Name:_____Karen Weber_____
Title:_____Director - Bank Debt____

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**

*GoldenTree Leverage Loan Financing 1, Limited*
**GoldenTree Leverage Loan Manager, LLC**
By:_____
Name:_____Karen Weber_____
Title:_____Director - Bank Debt_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**DATED:** September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name: CONSTANTINE M. DAKOLIAS
PRESIDENT
Title:_____

**DATED:** September 21 , 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

**CRUSADER MANAGEMENT
CORPORATION**

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name:_____
Title:_____

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

DATED: _September 21_, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT
CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF
UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

**DATED:** September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

DATED: September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

DATED: September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY- FORTRESS CREDIT OPPORTUNITIES I GPLL

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**DATED:** September 31, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS CREDIT OPPORTUNITIES I LP
BY: FORTRESS CREDIT OPPORTUNITIES I GP LLC

By:_____
Name: CONSTANTINE M. DAKOLIAS
Title: PRESIDENT

**DATED:** _September 21_, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
_FORTRESS PARTNERS CLO LP_
_By: FORTRESS PARTNERS CLO GP LLC_

By:_____
Name:____CONSTANTINE M. DAKOLIAS____
Title:_____VICE PRESIDENT____

**DATED:** September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**

FORTRESS PARTNERS CLO LP
BY: FORTRESS PARTNERS CLO GP LLC

By:_____
Name:____CONSTANTINE M. DAKOLIAS____
Title:_____VICE PRESIDENT_____

DATED: September 31, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS PARTNERS CLO LP
BY: FORTRESS PARTNERS CLO GP LLC

By:_____
Name:____CONSTANTINE M. DAKOLIAS____
Title:_____VICE PRESIDENT_____

**DATED:** September 21, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____


**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**


By:_____
Name:_____
Title:_____


**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**


By:_____
Name:_____
Title:_____


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____


**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____


**HAWK ENERGY FUND I, LLC**


By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**


By:_____
Name:_____
Title:_____


**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS PARTNERS CLO LP
BY: FORTRESS PARTNERS CLO GP LLC

By:_____
Name:___CONSTANTINE M. DAKOLIAS___
Title:___VICE PRESIDENT___

DATED: *September 21*, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____


**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**


By:_____
Name:_____
Title:_____


**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**


By:_____
Name:_____
Title:_____


**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____


**HAWK ENERGY FUND I, LLC**


By:_____
Name:_____
Title:_____


**KNIGHT ENERGY GROUP II, LLC**


By:_____
Name:_____
Title:_____


**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
*FORTRESS PARTNERS CLO LP*
*BY: FORTRESS PARTNERS CLO GP LLC*

By:_____
Name:___CONSTANTINE M. DAKOLIAS___
Title:_____VICE PRESIDENT_____

**DATED:** _September 21_, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
_FORTRESS PARTNERS CLO LP_
_BY: FORTRESS PARTNERS CLO GP LLC_

By:_____
Name:___CONSTANTINE M. DAKOLIAS___
Title:___VICE PRESIDENT___

DATED: September 31, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**
FORTRESS PARTNERS CLO LP
BY: FORTRESS PARTNERS CLO GP LLC

By:_~~CONSTANTINE M. DAKOLIAS~~_____
Name:___~~VICE PRESIDENT~~_____
Title:_____

DATED: _____, 2009

Respectfully submitted,

**CRUSADER ENERGY GROUP INC.**

By:_____
Name:_____
Title:_____

**CRUSADER MANAGEMENT CORPORATION**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY MANAGEMENT, LLC**

By:_____
Name:_____
Title:_____

**FIRST LIEN HOLDERS**

By:_____
Name:_____
Title:_____

**OFFICIAL COMMITTEE OF UNSECURED CREDITORS**

By:_____
Name:_____
Title:_____

**CRUSADER ENERGY GROUP, LLC**

By:_____
Name:_____
Title:_____

**HAWK ENERGY FUND I, LLC**

By:_____
Name:_____
Title:_____

**KNIGHT ENERGY GROUP II, LLC**

By:_____
Name:_____
Title:_____

**RCH UPLAND ACQUISITION, LLC**

By:_____
Name:_____
Title:_____

**SECOND LIEN HOLDERS**

By: *Dan Klein*
Name: *Daniel Klein*
Title: *MD*

**EXHIBIT 1**

**(Liquidating Trust Agreement)**

**EXHIBIT 1**

Dallas 1577143v.15

# KRU LIQUIDATING TRUST AGREEMENT

THIS KRU LIQUIDATING TRUST AGREEMENT (this "**Liquidating Trust Agreement**") dated as of [_____], 2009, by and among Crusader Energy Group Inc., a Nevada corporation, Crusader Energy Group, LLC, an Oklahoma limited liability company, Hawk Energy Fund I, LLC, an Oklahoma limited liability company, Knight Energy Group, LLC, a Delaware limited liability company, Knight Energy Group II, LLC, a Delaware limited liability company, Knight Energy Management, LLC, a Delaware limited liability company, RCH Upland Acquisition, LLC, a Delaware limited liability company, and Crusader Management Corporation, an Oklahoma corporation (each a "**Debtor**" and, collectively, the "**Debtors**"), and [_____] as trustee (in such capacity as trustee of the Liquidating Trust, the "**Liquidating Trustee**"), is executed to facilitate the implementation of the Joint Plan of Reorganization for the Debtors dated September 22, 2009 (as amended, modified and supplemented from time to time, the "**Plan**"). All capitalized terms used and not otherwise defined in this Liquidating Trust Agreement and defined in the Plan shall have the meanings ascribed to them in the Plan.

**WHEREAS**, on March 30, 2009 (the "**Petition Date**"), the Debtors filed voluntary petitions for relief under chapter 11 of title 11 of the United States Code (the "**Bankruptcy Code**") in the United States Bankruptcy Court for the Northern District of Texas, Dallas Division (the "**Bankruptcy Court**");

**WHEREAS**, the Plan provides for, among other things, the transfer of all Liquidating Trust Assets to the Liquidating Trust, the initiation and/or prosecution of Excluded Causes of Action, the management and liquidation of the Liquidating Trust Assets by the Liquidating Trustee and the making of Distributions pursuant to the Plan;

**WHEREAS**, the Liquidating Trust is intended to qualify as a liquidating trust treated as a grantor trust within the meaning of Treasury Regulations Section 301.7701-(4)(d) and is established for the purpose of (i) liquidating the Liquidating Trust Assets for the benefit of holders of Allowed Second Lien Deficiency Claims in Class 7B (who are collectively defined as the "**Liquidating Trust Beneficiaries**" in the Plan) in accordance therewith, and, solely to the extent and for the purposes set forth in <u>Section 3.1(b)</u>, SandRidge Exploration and Production, LLC, as the lender under the Closing Loan Agreement (the "**Closing Loan Lender**"), (ii) making such other Distributions from the Reserve Accounts or the General Accounts as set forth in the Plan and (iii) forming Newco, managing (as the sole member of Newco) Newco, including without limitation effecting the disposition of assets of Newco, and paying the expenses of Newco.

**NOW**, **THEREFORE**, in consideration of the premises and mutual covenants and agreements contained herein and in the Plan, the parties hereto agree as follows:

## ARTICLE I.

## ESTABLISHMENT OF THE LIQUIDATING TRUST

1.1    **Establishment of Liquidating Trust**. Pursuant to the Plan, the Debtors and the Liquidating Trustee hereby establish the Liquidating Trust on behalf of the Liquidating Trust

Beneficiaries. The Liquidating Trustee shall accept and hold the Liquidating Trust Assets in trust for the Liquidating Trust Beneficiaries subject to the terms of this Liquidating Trust Agreement. The Liquidating Trust shall be established as a liquidating trust treated as a grantor trust within the meaning of Treasury Regulations Section 301.7701-(4)(d) with no objective or authority to carry on or conduct a trade or business, or accept an assignment of any claim or right of action from, or assume any liabilities of, any person or entity other than the Debtors, and no part of the Liquidating Trust Assets or the proceeds, revenue or income from the Liquidating Trust Assets shall be used or disposed of by the Liquidating Trust in furtherance of any trade or business.

1.2 **Purpose of Liquidating Trust**. The sole purpose of this Liquidating Trust is to (a) liquidate the Liquidating Trust Assets in a manner calculated to conserve, protect and maximize the value of the Liquidating Trust Assets, (b) collect and distribute the Liquidating Trust Assets and the income and proceeds therefrom to pay the outstanding principal of, and interest on, the Closing Loan in accordance with the Closing Loan Agreement and as provided in Section 3.1(b) hereof and to the Liquidating Trust Beneficiaries, after the payment of, or provision for, the Liquidating Trust Expenses, (c) make any such other Distributions from the Reserve Accounts and the General Accounts as set forth in the Plan and (d) form Newco, manage (as the sole member of Newco) Newco, including without limitation effecting the disposition of assets of Newco, and pay the expenses of Newco. In the exercise of such purpose, in addition to the powers listed in Section 4.1 of this Liquidating Trust Agreement, as set forth in the Plan, the Liquidating Trustee shall be authorized to, among other things, (i) investigate and prosecute the Excluded Causes of Action, (ii) file all federal, state and local tax returns of the Liquidating Trust and furnish appropriate tax reporting information to the Liquidating Trust Beneficiaries, (iii) establish reserves, including the Liquidating Trust Expense Reserve, Senior Claim Distribution Reserve, Carveout Reserve, Undeliverable Distribution Reserve and any additional accounts and reserves established in accordance with Section 4.6(a)(v) (collectively, the "**Reserve Accounts**"), and open, maintain and administer bank accounts as necessary to discharge the duties of the Liquidating Trustee, and (iv) represent the Estates before the Bankruptcy Court or other courts of competent jurisdiction with respect to matters concerning the Liquidating Trust and Liquidating Trust Assets. The Plan further provides that the Liquidating Trust will be responsible for making Distributions to the Liquidating Trust Beneficiaries in accordance with the Plan and making payments on the Closing Loan in accordance with the Closing Loan Agreement and as provided in Section 3.1(b) hereof. Pursuant to these express purposes and subject to the provisions of Article IV of this Liquidating Trust Agreement, the Liquidating Trustee is hereby authorized and directed to take all reasonable and necessary actions to hold, conserve, protect and maximize the Liquidating Trust Assets, to collect upon, sell, or otherwise liquidate or dispose of the Liquidating Trust Assets, to distribute the Liquidating Trust Assets to the Liquidating Trust Beneficiaries and to make payments on the Closing Loan, in accordance with the provisions of the Plan and this Liquidating Trust Agreement; *provided, however,* that the investment powers of the Liquidating Trustee, other than those reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited as set forth in Section 4.3 hereof.

1.3 **No Additional Beneficiaries**. The Liquidating Trust shall be solely for the benefit of the Liquidating Trust Beneficiaries, and, solely to the extent set forth in Section 3.1(b)

hereof, the Closing Loan Lender. From and after the Effective Date, any holder of an Allowed Second Lien Deficiency Claim as set forth in Class 7B of the Plan will be deemed to be a Liquidating Trust Beneficiary as of the date that such Claim became an Allowed Second Lien Deficiency Claim.

1.4 **Transfer of Liquidating Trust Assets and Rights to the Liquidating Trust**. As of the Effective Date, the Debtors hereby transfer, assign and deliver to the Liquidating Trust or, at the written election of the Debtors, the Second Lien Holders and the Committee, to Newco, (a) all of their rights, title and interests in the Liquidating Trust Assets free and clear of any Liens or Claims of any other Person except as otherwise provided in the Plan and (b) all of their rights with respect to the Liquidating Trust Assets, including attorney-client privilege and the protections afforded by the work product doctrine, and hereby waive their right and the right of any legal, financial or other advisors to assert such rights as a defense or otherwise.

1.5 **Instruments of Further Assurance; Information**. The Reorganized Debtors and such Persons as shall have the right and power after the Effective Date, upon reasonable request of the Liquidating Trustee or its successors or assigns, shall execute, acknowledge and deliver such further instruments, documents, books and records and take, or cause to be taken, all such further actions as may be necessary or proper to effectively carry out the purposes of this Liquidating Trust Agreement and the Plan and to otherwise carry out the intent of the parties hereunder and under the Plan.

1.6 **Title to Liquidating Trust Assets**. On the Effective Date, the Liquidating Trust Assets shall be vested in, and transferred to, the Liquidating Trust and/or Newco pursuant to the Plan for the benefit of the Liquidating Trust Beneficiaries. As of the Effective Date, the Liquidating Trust and/or Newco shall hold legal title to all Liquidating Trust Assets and will succeed to all of the Debtors' right, title and interest in the Liquidating Trust Assets and the Debtors will have no further interest in or with respect to the Liquidating Trust Assets or the Liquidating Trust, except as provided in the Plan. The Liquidating Trustee hereby declares that it shall hold the Liquidating Trust Assets in trust to be administered and disposed of pursuant to the terms of this Liquidating Trust Agreement and the Plan for the benefit of the Liquidating Trust Beneficiaries.

1.7 **Valuation of Trust Assets**. The fair market value of the Liquidating Trust Assets as of the Effective Date will be agreed to by the Debtors and the Liquidating Trustee. As soon as practicable after the Effective Date, the Liquidating Trustee shall inform the Liquidating Trust Beneficiaries in writing of the agreed upon value of the Liquidating Trust Assets transferred to the Liquidating Trust. Such valuation shall be used consistently by all parties, including, without limitation, the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries, for all federal income tax purposes.

1.8 **Reliance**. The Liquidating Trustee may rely upon the Bankruptcy Schedules and all other information provided by the Debtors or their representatives concerning Claims against the Debtors, and their reconciliation and documents supporting such reconciliation.

1.9 **Governance of the Liquidating Trust**. The Liquidating Trust shall be governed by the Liquidating Trustee. The Liquidating Trustee's powers are exercisable solely in a

fiduciary capacity consistent with, and in furtherance of, the purposes of this Liquidating Trust Agreement and not otherwise. Subject to the terms and conditions of this Liquidating Trust Agreement, the Liquidating Trustee may delegate responsibility for discrete issues or decisions to one or more third parties subject to continued oversight by the Liquidating Trustee.

1.10 **Appointment of the Liquidating Trustee**. As of the date hereof, the Liquidating Trustee shall be **[_____]**. The Liquidating Trustee accepts the trust imposed on him/her by this Liquidating Trust Agreement and agrees to observe and perform that trust on and subject to the terms and conditions set forth in this Liquidating Trust Agreement.

1.11 **Liquidating Trust Interests; Transferability**.

(a) Liquidating Trust Interests shall be issued by the Liquidating Trustee to the Liquidating Trust Beneficiaries. In lieu of certificates evidencing Liquidating Trust Interests, the Liquidating Trustee shall maintain a register of the names, addresses, and interest percentages of the Liquidating Trust Beneficiaries based upon the provisions of the Plan which designate the Persons who are entitled to receive the Liquidating Trust Interests.

(b) The Liquidating Trust Interests may not be transferred, sold, pledged or otherwise disposed of, or offered for sale except for transfers by operation of law.

## ARTICLE II.

## DURATION AND TERMINATION OF LIQUIDATING TRUST

2.1 **Duration**. This Trust shall terminate three years from the Effective Date unless an earlier termination is required by applicable law, or unless earlier terminated following the Distribution of all of the Liquidating Trust Assets in accordance with Section 3.2 hereof, *provided,* however, that the Liquidating Trustee may extend the duration of the Liquidating Trust one or more times (not to exceed a total of four extensions, unless the Liquidating Trustee receives a favorable ruling from the Internal Revenue Services that any further extension would not adversely affect the status of the Liquidating Trust as a grantor trust for federal income tax purposes) for a finite period, not to exceed six months, if the Liquidating Trust Assets have not been distributed or if the Liquidating Trustee determines that such extension is in the best interests of the Liquidating Trust and the Liquidating Trust Beneficiaries. Each such extension must be approved by the Bankruptcy Court within two months prior to the beginning of the extended term with notice thereof to all of the unpaid Liquidating Trust Beneficiaries.

2.2 **Continuance of Liquidating Trust for Winding Up**. After the termination of the Liquidating Trust and for the purpose of liquidating and winding up the affairs of the Liquidating Trust, the Liquidating Trustee shall continue to act as such until all duties under the Plan and this Liquidating Trust Agreement have been fully performed. Upon distribution of all of the Liquidating Trust Assets, or the proceeds thereof, the Liquidating Trustee shall hold the books, records and files delivered to or created by the Liquidating Trustee for a period of four years after the last Distribution of Available Cash is made. All costs and expenses associated with the storage of such documents shall be paid by the Liquidating Trust. At the Liquidating Trustee's discretion, all such records and documents may be destroyed at any time after four

-4-

years from the distribution of all of the Liquidating Trust Assets. Except as otherwise specifically provided herein, upon the distribution of all of the Liquidating Trust Assets, the Liquidating Trustee shall have no further duties or obligations hereunder except (a) to account and report as provided in Sections 2.3 and 3.4 hereof and (b) to perform such other acts as may be required by law.

2.3 **Final Accounting.** Upon termination of the Liquidating Trust, the Liquidating Trustee shall file an accounting with the Bankruptcy Court setting forth the amount he or she has collected and disbursed, and the fees and expenses incurred in administering the Liquidating Trust, including the fees and expenses incurred by the Liquidating Trustee and its professionals. The Liquidating Trustee shall seek the issuance and entry of any orders necessary to approve such accounting and discharge it from any and all liability for acting as Liquidating Trustee under the Plan and this Liquidating Trust Agreement. The Liquidating Trust's professionals shall be required to maintain accurate time and expense records.

## ARTICLE III.

## ADMINISTRATION OF TRUST ESTATE

3.1 **Payment of Expenses, Liabilities and Obligations under the Closing Loan.**

(a) The Liquidating Trustee shall pay all Liquidating Trust Expenses, including the U.S. Trustee Fees as set forth in Section 2.4 of the Plan, and the costs associated with winding up the Liquidating Trust, from funds in the Liquidating Trust Expense Reserve or Senior Claim Distribution Reserve, as applicable.

(b) All Cash held by the Liquidating Trust in the General Account, including Cash received by the Liquidating Trust from the disposition of any Liquidating Trust Assets or the resolution of any Excluded Causes of Action and Cash, if any, transferred to the General Account from the Senior Claim Distribution Reserve and the Carveout Reserve in accordance with Section 4.9, 4.10 or 4.11 hereof, at any time on or prior to _____, 2010 **[the date that is 180 days after Closing]** that the Liquidating Trustee determines is not required to be deposited into any other account or reserve described in or contemplated by this Liquidating Trust Agreement ("**Closing Loan Cash**") shall, if at such time there shall be any principal or interest outstanding under the Closing Loan, (i) first, prior to any Distribution of Closing Loan Cash to any Liquidating Trust Beneficiary, be paid to the Closing Loan Lender as a payment on the Closing Loan within three (3) Business Days after any determination of the existence of any Closing Loan Cash and (ii) second, upon payment in full of all outstanding principal and accrued interest under the Closing Loan (or satisfaction thereof in accordance with Section 2.03 of the Purchase Agreement), the Closing Loan Cash may be distributed to the Liquidating Trust Beneficiaries in accordance with the Plan and this Liquidating Trust Agreement. From time to time and in any event on the dates that are the 30th, 60th, 90th, 120th, 150th, and 178th day after the Effective Date (each such date a "**Closing Loan Cash Calculation Date**"), the Liquidating Trustee shall determine the amount of Closing Loan Cash. Other than with respect to the Closing Loan Cash, the Closing Loan Lender shall not have any rights with respect to the Liquidating Trust Assets and shall not have any recourse to the Liquidating Trust.

3.2     **Disbursement to Liquidating Trust Beneficiaries**.  The Liquidating Trustee shall disburse funds to the Liquidating Trust Beneficiaries in accordance with Article XI of the Plan and the following terms and conditions:

(a)     Any payments to be made by the Liquidating Trust to the Liquidating Trust Beneficiaries shall be made only (i) after all outstanding principal and accrued interest under the Closing Loan shall have been paid in full or otherwise satisfied in accordance with Section 4 of the Closing Loan Agreement or pursuant to the last paragraph of Section 7 of the Closing Loan Agreement, and (ii) from the Liquidating Trust Assets to the extent that the Liquidating Trust shall have sufficient Liquidating Trust Assets to make such payments in accordance with the terms of this Section 3.2.  The Liquidating Trust Beneficiaries shall look solely to Liquidating Trust Assets for any Distributions provided herein or in the Plan.

(b)     Subject to Sections 3.3 and 3.1(b) of this Liquidating Trust Agreement, the Liquidating Trustee shall distribute at least annually to the Liquidating Trust Beneficiaries any net income of the Liquidating Trust, except that the Liquidating Trust may retain an amount that is reasonably necessary to maintain the value of the Liquidating Trust Assets, administer the Liquidating Trust, satisfy Allowed Claims as set forth in Section 13.6 of the Plan, prosecute the Excluded Causes of Action and pay contingent liabilities or as otherwise required by the Plan.

(c)     Distributions shall be made by the Liquidating Trustee to the Liquidating Trust Beneficiaries pursuant to the terms of the Plan until all Liquidating Trust Assets have been exhausted.  Subject to the foregoing and Sections 3.3 and 3.1(b) hereof, Distributions to the Liquidating Trust Beneficiaries shall be made on each anniversary of the Effective Date. Unclaimed distributions shall be treated in accordance with the terms of Section 13.2 of the Plan.

(d)     Upon resolution of a Disputed Claim, any distributions reserved in an amount greater than that required to be distributed as a result of the order allowing or disallowing such Disputed Claim shall become available for distribution in accordance with the terms of the Plan, subject to Sections 3.1(b), 4.8, 4.9 and 4.10 hereof.

(e)     The Liquidating Trustee may require any Liquidating Trust Beneficiary or any holder of an Allowed Claim entitled to a Distribution from the Liquidating Trust to furnish to the Liquidating Trustee such holder's Employer Identification Number or Federal Tax Identification Number as assigned by the IRS, and the Liquidating Trustee may condition any Distribution to such holder upon receipt of such identification number.

(f)     All checks shall be transmitted by United States Post Office -- First Class Mail, postage prepaid and addressed to the payee at such payee's address determined as set forth in Section 11.5 of the Plan.

3.3     **De Minimis Distributions**.  Notwithstanding any provision of this Liquidating Trust Agreement to the contrary, (a) except for payment of Closing Loan Cash to the Closing Loan Lender in accordance with Section 3.1(b) hereof, the Liquidating Trustee shall not be required to make Distributions or payments of fractions of dollars, (b) all Distributions shall be rounded to the nearest whole dollar (up or down), with half dollars being rounded down, and (c) the Liquidating Trustee shall not have a duty to make a Distribution on account of a Liquidating

-6-

Trust Beneficiary if the amount to be distributed to the holder of such Allowed Claim on the Effective Date or that particular annual Distribution Date, as the case may be, on account of such Allowed Claim is less than fifty dollars ($50.00), unless a specific request therefor is made in writing to the Liquidating Trustee on or before 90 days after the Effective Date.

3.4 **Reports**.

(a) The Liquidating Trustee shall maintain good and sufficient books and records of account relating to the Liquidating Trust Assets, the Available Cash, the management thereof, all transactions undertaken by the Liquidating Trustee, all expenses incurred by or on behalf of the Liquidating Trust, and all distributions either contemplated or effectuated under the Plan or this Liquidating Trust Agreement.

(b) As soon as practicable, but no later than 35 days after each calendar quarter or the termination of the Liquidating Trust, the Liquidating Trustee shall file with the Bankruptcy Court a written report and account showing (i) the assets and liabilities of the Liquidating Trust at the end of such quarter or upon termination of the Liquidating Trust and the receipts and disbursements of the Liquidating Trust for such quarter, (ii) any changes in the Liquidating Trust Assets or to the allowance of Claims which have not been previously reported, (iii) a general description of the activities of the Liquidating Trust, and (iv) if applicable, the amount of compensation paid to the Liquidating Trustee for the preceding quarter pursuant to Section 6.1 hereof. The Liquidating Trustee may file similar reports for such interim periods as he or she, in his or her discretion, deems advisable. The Liquidating Trustee shall provide such other and further information regarding the Liquidating Trust and the Liquidating Trust Assets as may be necessary to be in compliance with applicable law and shall prepare such additional reports as required by the Bankruptcy Court or the Plan.

(c) No later than 35 days after the end of each fiscal year, the Liquidating Trustee shall furnish to each Liquidating Trust Beneficiary a written statement indicating (i) the assets and liabilities of the Liquidating Trust at the end of such fiscal year and the receipts and disbursements of the Liquidating Trust for such fiscal year, and (ii) any changes in the Liquidating Trust Assets or to the allowance of Claims which have not been previously reported.

(d) The fiscal year of the Liquidating Trust shall end on the last day of December of each year unless some other fiscal year-end date is required by applicable law and is permissible under the Internal Revenue Code.

## ARTICLE IV.

## POWERS OF AND LIMITATIONS ON THE LIQUIDATING TRUSTEE

4.1 **General Powers of Liquidating Trustee**. Subject to the express limitations contained in this Liquidating Trust Agreement, the Liquidating Trustee shall have, in addition to any powers conferred by other provisions of this Liquidating Trust Agreement or the Plan, the power to take any and all actions as, in the sole discretion of the Liquidating Trustee, are necessary or advisable to effectuate the purpose of the Liquidating Trust, including the following

US 53251v.18

powers, which it may exercise without the approval of the Bankruptcy Court, except to the extent otherwise required under the provisions of the Plan or this Liquidating Trust Agreement:

(a)     To hold legal title to any and all rights of the Liquidating Trust Beneficiaries in or arising from the Liquidating Trust Assets, including, without limitation, the right to collect and receive any and all money and other property belonging to the Liquidating Trust;

(b)     To invest or reinvest Liquidating Trust Assets as provided in <u>Section 4.3</u> hereof and to cause such investments, or any part thereof, to be registered and held in its name, as Liquidating Trustee, or in the names of nominees;

(c)     To establish and maintain such bank accounts as may be necessary or appropriate, to draw checks on such bank accounts and to perform such other necessary and appropriate duties with respect to such accounts, or designate individuals as signatories therefor, as the Liquidating Trustee may direct and authorize;

(d)     To engage employees, agents and professional persons, including, without limitation, former employees of any of the Debtors, to assist the Liquidating Trustee with respect to its responsibilities;

(e)     To perform all of the Liquidating Trustee's obligations under the Plan, the Closing Loan Agreement and hereunder, including maintaining the Reserve Accounts, making all required payments in respect of the Closing Loan and making all required Distributions to holders of Allowed Claims and Cure Claims and payment of U.S. Trustee Fees;

(f)     To maintain the Liquidating Trust Expense Reserve and to pay all Liquidating Trust Expenses;

(g)     To avoid and recover transfers of the Debtors' property as may be permitted by the Bankruptcy Code, applicable state law, and the Plan, to the extent the right to avoid and recover such transfers are Liquidating Trust Assets under the Plan;

(h)     To exercise offsets against Claims as permitted under the Plan, to the extent such offset rights are Liquidating Trust Assets under the Plan;

(i)     To object to the allowance of any Claims or Equity Interests that are not Allowed under the Plan or by Court Order and to compromise and settle Disputed Claims, both as set forth in Section 14.1 of the Plan;

(j)     To pursue and prosecute all Excluded Causes of Action, as set forth in Section 6.15 of the Plan;

(k)     To institute, join or defend actions or other requests for relief and to take such other actions, including settlements thereof, on any terms deemed reasonable by the Liquidating Trustee, in its discretion, to enforce or collect upon any instruments, contracts, agreements or Excluded Causes of Action constituting or relating to the Liquidating Trust Assets;

-8-

(l)     To perform any act authorized, permitted or required under any instrument, contract, agreement, claim or Excluded Cause of Action constituting or relating to the Liquidating Trust Assets, whether in the nature of an approval, consent, demand or notice thereunder or otherwise, unless such act would require the consent of the Liquidating Trust Beneficiaries in accordance with the express provisions of this Liquidating Trust Agreement;

(m)     To file or cause to be filed all required federal, state, local and foreign tax filings of the Liquidating Trust, make tax elections, if any, available to the Liquidating Trust under federal, state, local or foreign law, and prepare applications for rulings or other administrative determinations from federal, state, local and foreign tax authorities as may be reasonably necessary to determine the tax liabilities of the Liquidating Trust or the Liquidating Trust Beneficiaries;

(n)     To request any appropriate tax determination with respect to the Liquidating Trust, including, without limitation, a determination pursuant to section 505 of the Bankruptcy Code;

(o)     To obtain insurance coverage with respect to its liabilities and obligations as Liquidating Trustee under this Liquidating Trust Agreement (in the form of an errors and omissions policy or otherwise);

(p)     To establish and maintain a website for the purpose of providing notice of the Liquidating Trust activities in lieu of sending written notice to Liquidating Trust Beneficiaries, subject to providing notice of such website to such Liquidating Trust Beneficiaries;

(q)     To assert or waive any privilege on behalf of the Debtors, solely with respect to the Liquidating Trust Assets, or on behalf of the Liquidating Trust; and

(r)     To exercise such other powers as may be vested in or assumed by the Liquidating Trustee pursuant to the Plan, this Liquidating Trust Agreement, or the Confirmation Order or as may be necessary and desirable to carry out the provisions of the Closing Loan Agreement or this Liquidating Trust Agreement and applicable law.

4.2     **Limitations on Liquidating Trustee**. The Liquidating Trustee shall carry out the purposes of the Liquidating Trust and the directions contained herein, and shall not at any time, on behalf of the Liquidating Trust or the Liquidating Trust Beneficiaries, (a) enter into or engage in any business or (b) accept an assignment of any right of action from, or assume any liabilities of, any person or entity other than the Debtors, and no part of the Liquidating Trust Assets or the proceeds, revenue or income therefrom shall be used or disposed of by the Liquidating Trustee in furtherance of any business other than as contemplated by the Plan. This limitation shall apply irrespective of whether the conduct of any such business activities is deemed by the Liquidating Trustee to be necessary or proper for the conservation and protection of the Liquidating Trust. The Liquidating Trustee shall make continuing efforts to liquidate the Liquidating Trust Assets, make timely distributions, and not unduly prolong the duration of the Liquidating Trust. The Liquidating Trustee may not hold a controlling interest in the stock of, or be a partner, an officer or a director of any of the Liquidating Trust Beneficiaries. In exercising its rights under Section

2.08 of the Stock Purchase Agreement, the Liquidating Trustee shall exercise such rights in consultation with the Liquidating Trust Beneficiaries.

4.3 **Investment Power**. The investment power of the Liquidating Trustee, other than that reasonably necessary to maintain the value of the Liquidating Trust Assets and to further the liquidating purpose of the Liquidating Trust, shall be limited to the power to invest (a) in demand and time deposits, such as short-term certificates of deposit, (b) in banks or other savings institutions, or (c) in other temporary, liquid investments such as Treasury bills. Once such funds are so invested, the Liquidating Trustee shall not sell or otherwise liquidate the investment until such time as such funds are (a) needed to pay expenses incurred pursuant to this Liquidating Trust Agreement or the Plan, or (b) to be distributed pursuant to the Plan or this Liquidating Trust Agreement; *provided, however,* that the Liquidating Trustee may liquidate such investments if the Liquidating Trustee determines in his or her discretion that such liquidation is necessary to protect the Liquidating Trust from loss on the amounts invested. The Liquidating Trustee shall be restricted to the holding and collection of the Liquidating Trust Assets and the payment and distribution thereof for the purposes set forth herein and in the Plan and to the conservation, protection and maximization of the Liquidating Trust Assets and to the administration thereof in accordance with the provisions of this Liquidating Trust Agreement. The Liquidating Trustee shall keep all Liquidating Trust Assets segregated from and shall not commingle any Liquidating Trust Assets with any assets of any other Person, including any of the Liquidating Trustee's own assets.

4.4 **Additional Powers of Liquidating Trustee**. Subject to the express limitations contained herein, the Liquidating Trustee shall have, and may exercise with respect to the Liquidating Trust Assets, or any part thereof, and to the administration and distribution of the Liquidating Trust Assets, all powers now or hereafter conferred on trustees by the laws of the State of Texas. The powers conferred by this Section 4.4 in no way limit any power conferred on the Liquidating Trustee by any other section hereof but shall be in addition thereto; *provided, however,* that the powers conferred by this Section 4.4 are conferred and may be exercised only and solely within the limitations and for the limited purposes imposed and expressed in the Plan and in Article III and Section 4.4 hereof.

4.5 **Tax and Reporting Duties of the Liquidating Trustee.** The Liquidating Trustee shall be responsible for all tax and other matters as set forth in Article V of this Liquidating Trust Agreement.

4.6 **Establishment and Maintenance of Accounts and Reserves**.

(a) On the Effective Date, or as soon thereafter as practicable, the Liquidating Trustee shall establish the following accounts and reserves (which, notwithstanding anything to the contrary contained in this Liquidating Trust Agreement, may be effected by either establishing segregated accounts or establishing book entry accounts, in the sole discretion of the Liquidating Trustee):

(i) General Account: One or more general accounts (collectively, the "**General Account**)" (A) into which shall be deposited (1) all funds not required or permitted to be deposited into any other account or reserve described in or contemplated by this Liquidating

Trust Agreement and (2) all proceeds received by Newco on account of the transfer, sale, assignment or other disposition of Liquidating Trust Assets held by Newco less (x) expenses of Newco incurred in connection with, or otherwise existing upon, the transfer, sale, assignment or other disposition of such Liquidating Trust Assets, (y) expenses of Newco sufficient to perform its obligations under the terms of any agreement relating to the transfer, sale, assignment or other disposition of such Liquidating Trust Assets, and (z) all amounts determined by the Liquidating Trustee to be maintained at Newco for the payment of anticipated expenses of Newco, and (B) from which shall be made all Distributions to Liquidating Trust Beneficiaries, and, as provided in <u>Section 3.1(b)</u>, the Closing Loan Lender (1) on the initial Distribution Date and (2) on each subsequent Distribution Date.

> (ii)     <u>Liquidating Trust Expense Reserve</u>:  An account designated as a "**Liquidating Trust Expense Reserve**," as described more fully in <u>Section 4.7</u> of this Liquidating Trust Agreement.

> (iii)     <u>Senior Claim Distribution Reserve</u>:  An account designated as a "**Senior Claim Distribution Reserve**," as described more fully in <u>Section 4.9</u> of this Liquidating Trust Agreement.

> (iv)     <u>Carveout Reserve</u>:     An account designated as a "**Carveout Reserve**," as described more fully in <u>Section 4.10</u> of this Liquidating Trust Agreement.

> (v)     <u>Subsequent Establishment of Accounts and Reserves</u>.  On or after the Effective Date, the Liquidating Trustee (i) shall establish and maintain such additional accounts and reserves as may be required by applicable law or by order of the Bankruptcy Court and (ii) may establish and maintain such additional accounts and reserves as it deems necessary or desirable to carry out the provisions of the Plan and this Liquidating Trust Agreement, including without limitation, an account, designated as an "**Undeliverable Distribution Reserve**," as described more fully in <u>Section 4.8</u> of this Liquidating Trust Agreement, and an account at Newco into which proceeds received by Newco upon the transfer, sale, assignment or other disposition of any Liquidating Trust Assets held by Newco may be deposited and from which expenses of Newco may be paid.

4.7     <u>**Creation of Liquidating Trust Expense Reserve**</u>.

> (a)     On the Effective Date, the Liquidating Trustee shall deposit Cash from the Liquidating Trust Assets into the Liquidating Trust Expense Reserve in the amount of $2,000,000.  The funds constituting the Liquidating Trust Expense Reserve are to be used by the Liquidating Trustee solely to satisfy the expenses of the Liquidating Trust, the Liquidating Trustee, the Liquidating Trust Beneficiaries and Newco as set forth in the Plan; *provided, however,* that (i) all costs and expenses associated with the winding up of the Liquidating Trust and the storage of records and documents, as set forth in <u>Section 2.2</u> of this Liquidating Trust Agreement, shall constitute expenses of the Liquidating Trust and shall be paid from the funds held in the Liquidating Trust Expense Reserve and (ii) all expenses of Newco incurred in connection with the transfer, sale, assignment or other disposition of any Liquidating Trust Assets held by Newco shall first be paid out of proceeds, if any, received by Newco upon the transfer, sale, assignment or other disposition of any Liquidating Trust Assets held by Newco.  In

no event shall the Liquidating Trustee be required or permitted to use his or her personal funds or assets for such purposes.

(b)     Beginning on the first anniversary of the Effective Date and each anniversary thereafter, the Liquidating Trustee shall evaluate, deposit or remove from the General Account and deposit in or from the Liquidating Trust Expense Reserve Cash in an amount that he or she estimates will be sufficient to pay Liquidating Trust Expenses incurred during each twelve (12) month period following such anniversary, as applicable, as well as the costs and expenses associated with the winding up of the Liquidating Trust and the other expenses described in Section 4.7(a) hereof.

4.8     **Undeliverable Distribution Reserve**.

(a)     If a Distribution to any holder of an Allowed Claim is returned to the Liquidating Trustee as undeliverable or is otherwise unclaimed, such Distribution shall be deposited in a segregated, interest-bearing account, designated as an "Undeliverable Distribution Reserve," for the benefit of such holder until such time as such Distribution becomes deliverable, is claimed or is deemed to have been forfeited in accordance with the Plan.

(b)     The Liquidating Trustee and his or her respective agents and attorneys are under no duty to take any action to either (i) attempt to locate any Claim holder, or (ii) obtain an executed Internal Revenue Service Form W-9 from any Claim holder.

(c)     Within fifteen Business Days after the holder of an Allowed Claim satisfies the requirements of the Plan, such that the Distribution(s) attributable to its Claim is no longer an Undeliverable or Unclaimed Distribution (provided that satisfaction occurs within the time limits set forth in Section 13.2(b) of the Plan), the Liquidating Trustee shall distribute out of the Undeliverable Distribution Reserve the amount of the Undeliverable or Unclaimed Distribution attributable to such Claim, including the interest that has accrued on such Undeliverable or Unclaimed Distribution while in the Undeliverable Distribution Reserve.

(d)     If an Undeliverable or Unclaimed Distribution is forfeited in accordance with the Plan, then the amount of such forfeited Undeliverable or Unclaimed Distribution deposited in the Undeliverable Distribution Reserve shall be transferred to the Senior Claim Distribution Reserve or the Carveout Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Senior Claim Distribution Reserve and the Carveout Reserve is sufficient to ensure that all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Other Secured Claims, U.S. Trustee Fees payable or to be paid, Allowed M&M Secured Claims, Allowed Non-Second Lien General Unsecured Claims and Cure Claims to be paid therefrom shall be paid in accordance with the Plan, and any excess shall be transferred to the General Account.

4.9     **Senior Claim Distribution Reserve**.   On the Effective Date, the Liquidating Trustee shall establish the Senior Claim Distribution Reserve by depositing from the Liquidating Trust Assets Cash in the amount estimated by the Bankruptcy Court to be necessary to satisfy all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax

-12-

Claims, Allowed Priority Claims, Allowed Other Secured Claims and the U.S. Trustee Fees payable or to be paid. The Liquidating Trustee shall use the Senior Claim Distribution Reserve to pay Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims and the U.S. Trustee Fees payable or to be paid. If all or any portion of a Priority Tax Claim, Administrative Claim, Ad Valorem Tax Claim, Priority Claim or Other Secured Claim shall become a Disallowed Claim, the amount on deposit in the Senior Claim Distribution Reserve attributable to such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the Senior Claim Distribution Reserve, shall remain in the Senior Claim Distribution Reserve or be transferred out of the Senior Claim Distribution Reserve, as determined by the Liquidating Trustee, as follows:

(a)     it shall remain in the Senior Claim Distribution Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Senior Claim Distribution Reserve is sufficient to ensure that all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims, Allowed Other Secured Claims and U.S. Trustee Fees payable or to be paid will be paid in accordance with the Plan;

(b)     to the extent not required to remain in the Senior Claim Distribution Reserve pursuant to clause (a), it shall be transferred to the Carveout Reserve to the extent the Liquidating Trustee determines necessary to ensure that the Cash held in the Carveout Reserve is sufficient to ensure that all Allowed M&M Secured Claims, Allowed General Unsecured Claims and Cure Claims will be paid in accordance with the Plan; and

(c)     to the extent not required to remain in the Senior Claim Distribution Reserve pursuant to clause (a) or transferred to the Carveout Reserve pursuant to clause (b), it shall be transferred to the General Account.

Beginning on the Effective Date and thereafter, on each anniversary of the Effective Date, the Liquidating Trustee shall evaluate, deposit or remove Cash in or from the Senior Claim Distribution Reserve in an amount that he or she estimates will be sufficient to pay U.S. Trustee Fees incurred during each twelve (12) month period beginning on the Effective Date or the anniversary thereof, as applicable.

4.10    **Carveout Reserve**. On the Effective Date, the Liquidating Trustee shall establish the Carveout Reserve by depositing from the Liquidating Trust Assets Cash in the amount of the Carveout Reserve Amount. The Carveout Reserve Amount shall be used to pay Allowed M&M Claims, Allowed Non-Second Lien General Unsecured Claims and Cure Claims. Of the Carveout Reserve Amount, up to $8,750,000 shall be used to make Distributions to holders of Allowed Non-Second Lien General Unsecured Claims. If (i) the aggregate amount of all Distributions to holders of Allowed Non-Second Lien General Unsecured Claims on account of Allowed Claims is less than $8,750,000, or (ii) all or any portion of a M&M Secured Claim, Non-Second Lien General Unsecured Claim or cure amount shall become a Disallowed Claim, then the amount on deposit in the Carveout Reserve attributable to such surplus or such Disallowed Claim, including the interest that has accrued on said amount while on deposit in the

-13-

Carveout Reserve, shall remain in the Carveout Reserve or be transferred out of the Carveout Reserve, as determined by the Liquidating Trustee, as follows:

(a)    it shall remain in the Carveout Reserve to the extent that the Liquidating Trustee determines necessary to ensure that the Cash remaining in the Carveout Reserve is sufficient to ensure that all Allowed M&M Secured Claims, Allowed Non-Second Lien General Unsecured Claims and Cure Claims will be paid in accordance with the Plan;

(b)    to the extent not required to remain in the Carveout Reserve pursuant to clause (a), it shall be transferred to the Senior Claim Distribution Reserve to the extent the Liquidating Trustee determines necessary to ensure that the Cash held in the Senior Claim Distribution Reserve is sufficient to ensure that all Allowed Priority Tax Claims, Allowed Administrative Claims, Allowed Ad Valorem Tax Claims, Allowed Priority Claims and Allowed Other Secured Claims and U.S. Trustee Fees payable or to be paid will be paid in accordance with the Plan; and

(c)    to the extent not required to remain in the Carveout Reserve pursuant to clause (a) or transferred to the Senior Claims Distribution Reserve pursuant to clause (b), it shall be transferred to the General Account.

4.11    **Reserve Account Adjustments**.  From time to time and upon the receipt of Cash from Newco or any other source, the Liquidating Trustee shall determine the amount of Cash required to adequately maintain each of the Senior Claim Distribution Reserve and the Carveout Reserve (each, an "**Adjustable Reserve Account**") and in any event, on each Closing Loan Cash Calculation Date and each annual Distribution Date.  If, and to the extent that, after making and giving effect to any determination referred to in the immediately preceding sentence, the Liquidating Trustee determines that any Adjustable Reserve Account (i) contains Cash in an amount in excess of the amount then required to adequately maintain such Adjustable Reserve Account, then at any such time the Liquidating Trustee shall transfer such surplus Cash to the General Account, or (ii) does not contain Cash in an amount sufficient to adequately maintain such Adjustable Reserve Account, then at any such time the Liquidating Trustee shall transfer Cash from the General Account to the extent Cash (including any Cash that would have constituted Closing Loan Cash that has not been distributed pursuant to Section 3.1(b)) is available in the General Account until the deficit in such Adjustable Reserve Account is eliminated.

## ARTICLE V.

## TAX MATTERS

5.1    **Classification of the Liquidating Trust.**  For all federal income tax purposes, all parties (including the Debtors, the Liquidating Trustee and the Liquidating Trust Beneficiaries) are required to treat the vesting of the Liquidating Trust Assets in the Liquidating Trust and/or Newco, and the transfer of the Liquidating Trust Assets to the Liquidating Trust and/or Newco for the benefit of the Liquidating Trust Beneficiaries as (a) a transfer of the Liquidating Trust Assets directly to the Liquidating Trust Beneficiaries followed by (b) the transfer by the Liquidating Trust Beneficiaries to the Liquidating Trust and/or Newco of the Liquidating Trust

Assets. The Liquidating Trust will be treated as a grantor trust for federal income tax purposes and, to the extent permitted under applicable law, for state and local income tax purposes. The Liquidating Trust Beneficiaries shall be treated as the grantors and owners of their allocable portion of the Liquidating Trust Assets for federal income tax purposes. The parties shall not take any position on their respective tax returns or with respect to any other matter related to taxes that is inconsistent with treating the Liquidating Trust as a "liquidating trust" within the meaning of Treasury Regulation Section 301.7701-4(d), unless any party receives definitive guidance to the contrary from the Internal Revenue Service.

5.2 **General Tax Reporting by the Liquidating Trust and the Liquidating Trust Beneficiaries**. (a) The Liquidating Trustee shall prepare, consistent with <u>Section 4.1</u> hereof, and file on behalf of the Liquidating Trust, at the time and in the manner prescribed by the Internal Revenue Code and applicable state and local law, such tax returns and reports as may be required, including but not limited to returns and reports required by Treasury Regulations Section 1.671-4(a), and shall promptly furnish copies of such returns and reports as filed to _____. The Liquidating Trustee shall pay or cause to be paid any and all taxes imposed on the Liquidating Trust. The Liquidating Trustee will also file or cause to be filed, all appropriate tax returns with respect to any Trust Assets allocable to Disputed Claims as set forth in <u>Section 5.3</u> hereof, and pay or cause to be paid any and all taxes imposed with respect to the Disputed Claims.

(b) As soon as practicable after the close of each fiscal year, the Liquidating Trustee shall mail to each of the Liquidating Trust Beneficiaries a statement setting forth the beneficiary's share of items of income, gain, loss, deduction or credit and will instruct all such beneficiaries to report such items on their federal income tax returns. The Liquidating Trust's taxable income, gain, loss, deduction or credit will be allocated (subject to subsection (c) hereof, related to Disputed Claims) to the Liquidating Trust Beneficiaries in accordance with their relative beneficial interests in the Liquidating Trust.

(c) Absent definitive guidance from the IRS or a court of competent jurisdiction to the contrary, the Liquidating Trustee shall:

(i) treat all Liquidating Trust Assets allocable to, or retained on account of, Disputed Claims, as a discrete trust for federal income tax purposes, consisting of separate and independent shares to be established in respect of each Disputed Claim;

(ii) treat as taxable income or loss of this separate trust with respect to any given taxable year the portion of the taxable income or loss of the Liquidating Trust that would have been allocated to the holders of such Disputed Claims had such claims been Allowed on the Effective Date (but only for the portion of the taxable year with respect to which such claims are unresolved);

(iii) treat as a distribution from this separate trust any increased amounts distributed by the Liquidating Trust as a result of any Disputed Claim resolved earlier in the taxable year, to the extent such distribution relates to taxable income or loss of this separate trust determined in accordance with the provisions hereof, and

-15-

(iv)     to the extent permitted by applicable law, report consistently for state and local income tax purposes.

(d)     The Liquidating Trustee shall be responsible for payments, out of the Liquidating Trust Assets, of any taxes imposed on the Liquidating Trust or its assets. In the event, and to the extent any cash retained on account of Disputed Claims in any such reserve is insufficient to pay the portion of any such taxes attributable to the taxable income arising from the assets allocable to, or retained on account of, Disputed Claims, such taxes paid by the Liquidating Trustee other than from the reserve for Disputed Claims shall be (i) reimbursed from any subsequent cash amount retained on account of Disputed Claims or (ii) to the extent such Disputed Claims have subsequently been resolved, deducted from any amounts distributable by the Liquidating Trustee as a result of the resolutions of such Disputed Claims.

(e)     The Liquidating Trust may retain professionals to perform the Liquidating Trustee's duties under this <u>Section 5.2</u> and, subject to <u>Section 6.6</u>, may rely upon the performance of such professionals with respect to such duties.

(f)     The Liquidating Trustee may request an expedited determination of taxes of the Liquidating Trust, including with respect to the Disputed Claims under section 505(b) of the Bankruptcy Code for all returns filed for, or on behalf of, the Liquidating Trust for all taxable periods through the dissolution of the Liquidating Trust.

5.3     **Withholding of Taxes and Other Charges**.  The Liquidating Trust may withhold from any amounts distributable at any time to the Liquidating Trust Beneficiaries such sum or sums as may be necessary to pay any taxes or other charges which have been or may be imposed on the Liquidating Trust or the Liquidating Trust Beneficiaries under the income tax laws of the United States or of any state or political subdivision or entity by reason of any Distribution provided for in <u>Section 3.2</u> hereof or in the Plan, whenever such withholding is required by any law, regulation, rule, ruling, directive or other governmental requirement, and the Liquidating Trustee, in the exercise of its discretion and judgment, may enter into agreements with taxing or other authorities for the payment of such amounts as may be withheld in accordance with the provisions of this <u>Section 5.3</u>.  Notwithstanding the foregoing but without prejudice to the Liquidating Trust's rights hereunder, the Liquidating Trust Beneficiaries shall have the right with respect to the United States or any state or political subdivision or entity to contest the imposition of any tax or other charge by reason of any distribution hereunder or under the Plan.

5.4     **Other**.  The Liquidating Trustee shall file, or cause to be filed, any other statements, returns, or disclosures relating to the Liquidating Trust that are required by any governmental unit or applicable law.

## ARTICLE VI.

## THE LIQUIDATING TRUSTEE

6.1     **Liquidating Trustee's Compensation and Reimbursement**.

-16-

(a)     The Liquidating Trustee's compensation, on a post-Effective Date basis, shall be determined by the Committee and disclosed in the Plan Supplement.  The Liquidating Trustee may pay from the Liquidating Trust Assets reasonable salaries, fees and expenses of the Liquidating Trustee.

(b)     The Liquidating Trustee shall have the right to retain the services of attorneys, accountants, and other professionals that, in the discretion of the Liquidating Trustee, are necessary to assist the Liquidating Trustee in the performance of his or her duties.  The reasonable fees and expenses of such professionals shall be paid by the Liquidating Trust from the Liquidating Trust Expense Reserve upon the monthly submission of statements to the Liquidating Trustee, and shall not be subject to the approval of the Bankruptcy Court.  The payment of the reasonable fees and expenses of the Liquidating Trustee's retained professionals shall be made in the ordinary course of business from the Liquidating Trust Assets and shall not be subject to the approval of the Bankruptcy Court.  Professionals of, among others, the Debtors and the Committee, shall be eligible for retention by the Liquidating Trustee on a special counsel basis.  Additionally, the Liquidating Trust Beneficiaries shall have the right to retain the services of attorneys, accountants, and other professionals.  The reasonable fees and expenses of such professionals incurred in connection with services performed relating to the Liquidating Trust shall be paid by the Liquidating Trust from the Liquidating Trust Expense Reserve upon the monthly submission of statements to the Liquidating Trustee, and shall not be subject to the approval of the Bankruptcy Court.

6.2     **Resignation**.  The Liquidating Trustee may resign as Liquidating Trustee hereunder by giving not less than 90 days' prior written notice thereof to the Liquidating Trust Beneficiaries.  Such resignation shall become effective on the later to occur of: (a) the day specified in such notice or (b) the appointment of a successor Liquidating Trustee pursuant to Section 6.4 of this Liquidating Trust Agreement and the acceptance of such successor Liquidating Trustee of such appointment.  If a successor Liquidating Trustee is not appointed or does not accept his or her appointment within 90 days following delivery of notice of resignation, the Liquidating Trustee may petition the Bankruptcy Court for the appointment of a successor Liquidating Trustee.

6.3     **Removal**.  The Liquidating Trustee (and its successors) may be removed by an order of the Bankruptcy Court for cause shown and upon notice and a hearing and the Bankruptcy Court shall retain jurisdiction for this purpose under the Plan and this Liquidating Trust Agreement.

6.4     **Appointment of Successor Liquidating Trustee**.  In the event of the resignation, removal or incapacity of the Liquidating Trustee, the Liquidating Trust Committee shall designate a successor Liquidating Trustee, subject to the approval of the Bankruptcy Court, after notice and a hearing.  The successor Liquidating Trustee shall give written notice of his or her appointment to the Liquidating Trust Beneficiaries as soon thereafter as is practicable.  Any successor Liquidating Trustee appointed hereunder shall execute, acknowledge and deliver to the Bankruptcy Court and the retiring Liquidating Trustee an instrument duly accepting such appointment and agreeing to be bound by the terms of this Liquidating Trust Agreement and thereupon such successor Liquidating Trustee, without further act, deed or conveyance, shall become vested with all the rights, powers, trusts and duties of the Liquidating Trustee under this

Liquidating Trust Agreement. All fees and expenses of the Liquidating Trustee shall be paid unless disputed by the successor Liquidating Trustee, in which case such dispute shall be subject to resolution by the Bankruptcy Court.

6.5 **Liquidating Trust Continuance**. The resignation or removal of the Liquidating Trustee shall not operate to terminate the Liquidating Trust or to revoke any existing agency created pursuant to the terms of this Liquidating Trust Agreement or invalidate any action theretofore taken by the Liquidating Trustee or any prior Liquidating Trustee. In the event of the resignation or removal of the Liquidating Trustee, such Liquidating Trustee shall promptly execute and deliver such documents, instruments and other writings as may be reasonably requested by the successor Liquidating Trustee to effect the termination of the Liquidating Trustee's capacity under this Liquidating Trust Agreement and the conveyance of the Liquidating Trust Assets then held by the Liquidating Trustee to such Liquidating Trustee's successor; deliver to the successor Liquidating Trustee all documents, instruments, records and other writings related to the Liquidating Trust as may be in the possession of the Liquidating Trustee; and otherwise assist and cooperate in effecting the assumption of his or her obligations and functions by such successor Liquidating Trustee.

6.6 **Reliance by Liquidating Trustee**. The Liquidating Trustee may rely, and shall be fully protected personally in acting upon, any resolution, statement, certificate, instrument, opinion, report, notice, request, consent, order, or other instrument or document which the Liquidating Trustee believes to be genuine and to have been signed or presented by the proper party or parties or, in the case of facsimile transmissions or electronic mail, to have been sent by the proper party or parties, in each case without obligation to satisfy itself that the same was given in good faith and without responsibility for errors in delivery, transmission, or receipt. In the absence of fraud, willful misconduct or gross negligence on the Liquidating Trustee's part, the Liquidating Trustee may rely as to the truth of any statements contained therein in acting thereon. The Liquidating Trustee may consult with and rely on the advice of legal counsel and such other experts, advisors, consultants or other professionals as shall have been retained pursuant to this Liquidating Trust Agreement and shall be fully protected in respect of any action taken or suffered by them in accordance with the written opinion of legal counsel. Notwithstanding such authority, the Liquidating Trustee shall be under no obligation to consult with attorneys, accountants or his or her agents, and his or her determination to not do so should not result in imposition of liability on the Liquidating Trustee unless such determination is based on willful misconduct, gross negligence or fraud.

6.7 **Standard of Care**. Except in the case of fraud, willful misconduct or gross negligence, the Liquidating Trustee shall not be liable for any loss or damage by reason of any action taken or omitted by the Liquidating Trustee pursuant to the discretion, power and authority conferred on the Liquidating Trustee by this Liquidating Trust Agreement, the Plan and the Confirmation Order.

6.8 **No Liability for Acts of Predecessor Trustees**. No successor Liquidating Trustee shall be in any way liable for the acts or omissions of any predecessor Liquidating Trustee unless a successor Liquidating Trustee expressly assumes such responsibility.

6.9    **Insurance**.  The Liquidating Trustee may purchase, at the expense of the Liquidating Trust, errors and omissions insurance with regard to any liabilities, losses, damages, claims, costs and expenses it may incur, including but not limited to attorneys' fees, arising out of or due to its actions or omissions or consequences of such actions or omissions, other than as a result of its fraud, gross negligence or willful misconduct, with respect to the implementation of this Liquidating Trust Agreement, the Plan or the Confirmation Order.

6.10   **No Implied Obligations**.  No Liquidating Trustee shall be liable for any duties or obligations except for the performance of such duties and obligations as are specifically set forth herein, and no implied covenants or obligations shall be read into this Liquidating Trust.

6.11   **No Personal Liability**.  Persons dealing with the Liquidating Trust must look solely to the Liquidating Trust or Liquidating Trust Assets for the enforcement of any claims against the Liquidating Trust or to satisfy any liability incurred by the Liquidating Trustee to such Persons in carrying out the terms of this Liquidating Trust, and neither the Liquidating Trustee nor the Debtors or any other Person shall have any personal liability or individual obligation to satisfy any such liability.

6.12   **Indemnification**.  The Liquidating Trust shall indemnify and hold harmless the Liquidating Trustee and his or her agents, representatives, professionals, and employees from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including, but not limited to attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions, with respect to the Liquidating Trust or the implementation or administration of the Plan; *provided*, *however*, that no such indemnification will be made to such Persons for such actions or omissions as a result of willful misconduct, gross negligence or fraud.

# ARTICLE VII.

## LIQUIDATING TRUST COMMITTEE

7.1    **Creation of Liquidating Trust Committee; Replacement of Members**.

(a)     On the Effective Date, the Liquidating Trust Committee shall be formed and constituted of the following Persons, numbering no more than three, and approved by the Bankruptcy Court, prior to the conclusion of the Confirmation Hearing:  (i) one selected by the Second Lien Holders, (ii) one selected by the Committee and (iii) one selected jointly by the two individuals selected by the Second Lien Holders and the Committee.  If the two individuals selected by the Second Lien Holders and the Committee are unable to agree upon the third member of the Liquidating Trust Committee, then such selection shall be made by the Bankruptcy Court.  A list of the members of the Liquidating Trust Committee shall be included in the Plan Supplement.  Each member of the Liquidating Trust Committee that is not an individual may designate an individual to act on its behalf on the Liquidating Trust Committee (a "**Committee Designee**").

(b)     In the event that a member of the Liquidating Trust Committee (i) sells, transfers or assigns all of its Liquidating Trust Interests or (ii) resigns or is otherwise removed,

such member immediately shall be removed from the Liquidating Trust Committee. A replacement Liquidating Trust Committee member, as identified in the Plan Supplement, shall be appointed.

7.2  **Procedures**.  The Liquidating Trust Committee shall adopt bylaws that shall provide for the governance of the Liquidating Trust Committee.

7.3  **Function, Duties, and Responsibilities**.  Subject to Section 14.1 of the Plan, the Liquidating Trust Committee shall have the following function, duties and responsibilities:

(a)  it shall meet with the Liquidating Trustee upon such regular basis as the Liquidating Trust Committee and the Liquidating Trustee deem appropriate, but in no event less frequently than quarterly; and

(b)  it shall consult with the Liquidating Trustee regarding the carrying out of his or her duties, including but not limited to:

(i)  pursuit and resolution of claims and causes of action against third parties:

(ii)  resolution of Claims filed by Creditors against the Debtors;

(iii)  administration of the trust estate; and

(iv)  Distributions to beneficiaries.

7.4  **Duration**.  The Liquidating Trust Committee shall remain in existence until the Liquidating Trust is terminated in accordance with Section 9.8 of the Plan.

7.5  **Compensation and Expenses**.  The members of the Liquidating Trust Committee shall serve without compensation for their performance of services as members of the Liquidating Trust Committee, except that they shall be entitled to reimbursement of reasonable expenses from the Liquidating Trust without further order of the Bankruptcy Court.

7.6  **Liability; Indemnification**.  Neither the Liquidating Trust Committee, nor any of its members, nor Committee Designees, nor any duly designated agent or representative of the Liquidating Trust Committee, or their respective employees, shall be liable for the act or omission of any other member, Committee Designee, agent or representative of the Liquidating Trust Committee, nor shall any member of the Liquidating Trust Committee be liable for any act or omission taken or omitted to be taken in its capacity as a member of the Liquidating Trust Committee, other than acts or omissions resulting from such member's willful misconduct, gross negligence or fraud.  The Liquidating Trust Committee may, in connection with the performance of its functions, and in its sole and absolute discretion, consult with attorneys, accountants, and its agents, and shall not be liable for any act taken, omitted to be taken, or suffered to be done in accordance with advice or opinions rendered by such professionals.  Notwithstanding such authority, the Liquidating Trust Committee shall be under no obligation to consult with attorneys, accountants or its agents, and its determination to not do so shall not result in the imposition of liability on the Liquidating Trust Committee, or its members and/or Committee

-20-

Designees, unless such determination is based on willful misconduct, gross negligence or fraud. The Liquidating Trust shall indemnify and hold harmless the Liquidating Trust Committee and its members, Committee Designees and Professionals, and any duly designated agent or representative thereof (in their capacity as such), from and against and in respect to any and all liabilities, losses, damages, claims, costs and expenses, including but not limited to reasonable attorneys' fees and costs arising out of or due to their actions or omissions, or consequences of such actions or omissions with respect to the Liquidating Trust or the implementation or administration of this Plan; provided, however, that no such indemnification will be made to any such Person for such actions or omissions as a result of such Person's willful misconduct, gross negligence or fraud.

## ARTICLE VIII.

## AMENDMENTS

8.1 **Amendments**. The parties hereto may make and execute written amendments to this Liquidating Trust Agreement; *provided, however,* that in no event shall this Liquidating Trust Agreement be amended (a) so as to change the purpose of the Liquidating Trust as set forth in Article I hereof, (b) so as to allow funds constituting Liquidating Trust Assets to be invested in a manner other than as permitted in Section 4.3 hereof, (c) so as to adversely affect the Distributions to be made under this Liquidating Trust Agreement to any Liquidating Trust Beneficiaries, (d) so as to adversely affect the U.S. Federal income status of the Liquidating Trust in accordance with Article I hereof, or (e) at any time from and after the date of this Liquidating Trust Agreement through the date the Closing Loan shall have been paid in full or otherwise satisfied in accordance with Section 4 or pursuant to the last paragraph of Section 7 of the Closing Loan Agreement, without the consent of the Closing Loan Lender, in any manner that adversely affects the entitlement of the Closing Loan Lender to Closing Loan Cash as set forth in Section 3.1(b) or in any manner that would limit or decrease the amount of Cash required to be deposited in the General Account or increase the withdrawals from the General Account.

## ARTICLE IX.

## MISCELLANEOUS PROVISIONS

9.1 **Applicable Law**. The Liquidating Trust created herein shall be construed, regulated and administered under the laws of the State of Texas without regard to principles of conflicts of law; *provided* that the Liquidating Trust and any interpretation or enforcement of the provisions of this Liquidating Trust Agreement shall be subject to the jurisdiction of the Bankruptcy Court.

9.2 **No Association, Partnership or Joint Venture**. This Liquidating Trust Agreement is not intended to create and shall not be interpreted as creating an association, partnership or joint venture of any kind.

9.3 **Partial Invalidity**. If any term or provision of this Liquidating Trust Agreement is held to be illegal, invalid, or unenforceable under present or future laws effective during the term of this Liquidating Trust Agreement, such term or provision shall be fully severable and this

Liquidating Trust Agreement shall be construed and enforced as if such illegal, invalid, or unenforceable provision had never comprised a part of this Liquidating Trust Agreement; and the remaining terms and provisions of this Liquidating Trust Agreement shall remain in full force and effect and shall not be affected by the illegal, invalid, or unenforceable provision or by its severance from this Liquidating Trust Agreement, and this Liquidating Trust Agreement shall be construed so as to limit any term or provision so as to make it a legal, valid and enforceable provision, provided that such construction, to the maximum extent possible, shall give effect to the purposes of the Plan.

9.4 **Notices**. All notices, requests, consents and other communications hereunder shall be in writing and shall be addressed (i) if to the Liquidating Trustee, [_____] or such other address as such Liquidating Trustee will have furnished; (ii) if to any Liquidating Trust Beneficiary, at the address determined as set forth in Section 11.5 of the Plan; and (iii) if to the Closing Loan Lender, at the address set forth in the Closing Loan Agreement. All such notices, requests, consents and other communications shall be given to the Liquidating Trustee by facsimile, hand delivery, overnight delivery, or, to a Liquidating Trust Beneficiary, by first-class mail, postage prepaid, and shall be deemed given when actually delivered (with respect to the Liquidating Trustee), or three business days after deposit in the U.S. mail if mailed (with respect to a Liquidating Trust Beneficiary).

9.5 **Counterparts**. This Liquidating Trust Agreement may be executed in any number of counterparts, each of which shall be an original, but such counterparts shall together constitute one and the same instrument.

9.6 **Headings**. The section headings contained in this Liquidating Trust Agreement are solely for convenience of reference and shall not affect the meaning or interpretation of this Liquidating Trust Agreement or of any term or provision hereof.

9.7 **Confidentiality**. The Liquidating Trustee shall, during the period that it serves in such capacity under this Liquidating Trust Agreement and following either the termination of this Liquidating Trust Agreement or such Liquidating Trustee's removal, incapacity, or resignation hereunder, hold strictly confidential and not use for personal gain any material, non-public information of or pertaining to any entity to which any of the Liquidating Trust Assets relates or of which it has become aware in its capacity as Liquidating Trustee.

9.8 **No Bond Required**. Notwithstanding any state law to the contrary, the Liquidating Trustee (including any successor trustee) shall be exempt from giving any bond or other surety in any jurisdiction.

9.9 **Retention of Jurisdiction**. The Bankruptcy Court shall retain jurisdiction as set forth in Section 13.1 of the Plan over issues related to the enforcement or interpretation of this Liquidating Trust Agreement, including the determination of all claims, controversies, disputes and issues arising under or in connection with the Liquidating Trust or this Liquidating Trust Agreement and the management and administration of the Liquidating Trust and for all of the purposes contemplated herein.

9.10 **Relationship to Plan**.  The principal purpose of this Liquidating Trust Agreement is to aid in the implementation of the Plan and, therefore, this Liquidating Trust Agreement incorporates and is subject to the provisions of the Plan.  In the event any provision of this Liquidating Trust Agreement is found to be inconsistent with a provision of the Plan or the Confirmation Order, the provision of the Plan or the Confirmation Order shall control.

[Remainder of Page Internationally Left Blank]

US 53251v.18

IN WITNESS WHEREOF, the parties hereto have executed this Liquidating Trust Agreement or caused this Liquidating Trust Agreement to be duly executed as of the day and year first written.

**CRUSADER ENERGY GROUP INC.**

By: _____

Name: _____

Title: _____

**CRUSADER ENERGY GROUP, LLC**

By: _____

Name: _____

Title: _____

**HAWK ENERGY FUND I, LLC**

By: _____

Name: _____

Title: _____

**KNIGHT ENERGY GROUP, LLC**

By: _____

Name: _____

Title: _____

**KNIGHT ENERGY GROUP II, LLC**

By: _____

Name: _____

Title: _____

S-1

**KNIGHT ENERGY MANAGEMENT, LLC**

By: _____
Name: _____
Title: _____


**RCH UPLAND ACQUISITION, LLC**

By: _____
Name: _____
Title: _____


**CRUSADER MANAGEMENT CORPORATION**

By: _____
Name: _____
Title: _____


[_____],
As Liquidating Trustee

By: _____
Name: _____
Title: _____

US 53251v.18

## **EXHIBIT 2**

## **(Desired 365 Contracts)**

**-To Be Provided-**

**EXHIBIT 2**

## EXHIBIT 3

**(Executory Contracts & Unexpired Leases to be Assigned to the Liquidating Trust)**

**-To Be Provided-**

**EXHIBIT 3**