William L. Wallander, SBT #20780750
Richard H. London, SBT #24032678
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; rlondon@velaw.com
blloyd@velaw.com

**COUNSEL FOR THE DEBTORS**

## IN THE UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| **IN RE:** | § | **Case No. 09-31797-bjh-11** |
| | § | |
| | § | **Chapter 11** |
| **CRUSADER ENERGY GROUP INC.** *et al.,* | § | |
| | § | **(Jointly Administered)** |
| | § | |
| **DEBTORS.** | § | **Expedited Hearing Requested** |
| | § | |

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE; (C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK <u>PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF</u>**

**TO THE HONORABLE BARBARA J. HOUSER, CHIEF UNITED STATES BANKRUPTCY JUDGE:**

The above-referenced debtors and debtors in possession (collectively, the "<u>Debtors</u>" or

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE; (C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND <u>(F) GRANT RELATED RELIEF</u> Page 1 of 30**
Dallas 1563873v.11

"The Debtors")[1] file this *Expedited Motion to (A) Approve the Procedures for the Solicitation of Higher or Better Offers; (B) Approve the Form and Manner of Notice; (C) Approve Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approve the Stock Purchase Agreement and Authorize the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (E) Approve a Break-Up Fee in Connection with the Transaction Contemplated by the Stock Purchase Agreement; and (F) Grant Related Relief* (the "Motion"),[2] and in support thereof, the Debtors respectfully state as follows:

## JURISDICTION AND PROCEDURAL BACKGROUND

1.     This Court has jurisdiction over this matter pursuant to 28 U.S.C. §§ 1334 and 157.  This Motion is a core proceeding pursuant to 28 U.S.C. § 157(b)(2).

2.     Venue is proper in this Court pursuant to 28 U.S.C. §§ 1408 and 1409.

3.     On March 30, 2009 (the "Petition Date"), the Debtors each filed a voluntary petition for relief under chapter 11 of title 11 of the United States Code (the "Bankruptcy Code"), thereby commencing the above-captioned bankruptcy cases (the "Cases").  These Cases have been consolidated for procedural joint administration only pursuant to Rule 1015(b) of the Federal Rules of Bankruptcy Procedure.

4.     Since the Petition Date, the Debtors have continued to operate and manage their businesses as debtors in possession pursuant to Bankruptcy Code §§ 1107(a) and 1108.

---

[1]  The Debtors are Crusader Energy Group Inc., Crusader Energy Group, LLC, Hawk Energy Fund I, LLC, Knight Energy Group, LLC, Knight Energy Group II, LLC, Knight Energy Management, LLC, RCH Upland Acquisition, LLC and Crusader Management Corporation.

[2]  Capitalized terms not defined herein shall have the meaning given to them in the Bid Procedures.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

Dallas 1563873v.11

5. On April 14, 2009, the United States Trustee appointed the Official Committee of Unsecured Creditors (the "Committee").

## STATEMENT OF FACTS

### Case Background

6. Crusader Energy Group Inc. ("Crusader") and its seven direct subsidiaries (each of which is a Debtor) operate in the oil and gas industry. The Debtors' core operations consist of exploration for, and acquisition, production, and sale of, crude oil and natural gas. The Debtors hold leases covering approximately 1,000,000 gross acres (440,000 net acres) of oil and gas property (including approximately 12,800 drilling locations), operate approximately 350 wells, and hold working interests in approximately 670 wells. Their assets are located in various portions of Texas, Oklahoma, Colorado, Kansas, Louisiana, Mississippi, Montana, and North Dakota, specifically including the Anadarko Basin, Ft. Worth Basin, Permian Basin, and Williston Basin. The Debtors focus on the development of unconventional resource opportunities, such as the application of horizontal drilling and completion technology.[3] This focus has contributed to the Debtors' over 90% success rate with respect to their calendar year 2008 drilling program. The Debtors are lessees under oil and gas leases and are parties to certain operating agreements, farmout agreements, joint venture agreements, gas marketing agreements, gas transportation agreements, and other agreements.

### The Marketing Process

7. Beginning in March of 2009 and through their investment bankers, Jefferies & Company, Inc. ("Jefferies"), the Debtors have extensively explored various sale and

---

[3] Horizontal drilling and completion technology is an efficient means to develop shale and tight sand reservoirs.
**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

Dallas 1563873v.11

reorganization alternatives, including the sale of assets or properties of the Debtors and the issuance of the equity of the Debtors. Jefferies contacted approximately 121 parties who it thought might be interested in engaging in a transaction with the Debtors. Among the parties contacted by Jefferies were other oil and gas companies, hedge funds, private equity funds and other investors. Fifty-three parties signed confidentiality agreements in order to obtain access to the diligence materials assembled by the Debtors. Jefferies continued discussions with prospective buyers through September of 2009. The Debtors received at least fourteen bids or bona fide indications of interest from third parties. Ultimately, the Debtors, their counsel, and Jefferies engaged in substantial negotiation of agreements with at least four parties.

**The Plan, Disclosure Statement, Plan Support Agreement, and Stock Purchase Agreement**

8.     On September 22, 2009, the Debtors, the Debtors' first lien lenders (collectively, the "First Lien Lenders"), the Debtors' second lien lenders (collectively, the "Second Lien Lenders"), and the Committee (together with the Debtors, First Lien Lenders, and Second Lien Lenders, the "Plan Proponents") filed their *Joint Plan of Reorganization for the Debtors* [Docket No. 665] (the "Plan"). Also, the Debtors will subsequently file their *Disclosure Statement for the Joint Plan of Reorganization for the Debtors* (the "Disclosure Statement").

9.     Under the Plan, the Debtors propose to effectuate the transactions contemplated by the Stock Purchase Agreement dated as of September 22, 2009 (the "Stock Purchase Agreement") among SandRidge Energy, Inc. ("SandRidge Energy") and SandRidge Exploration and Production, LLC (the "Potential Buyer," and together with SandRidge Energy, the "SandRidge Parties") and the Debtors (the "Transaction"), subject to receipt of a higher or better

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                                    **Page 4 of 30**
Dallas 1563873v.11

offer and consummation of the Plan. A copy of the Stock Purchase Agreement, without exhibits, schedules, annexes, and other attachments, is attached hereto as **Exhibit "A"**. The Stock Purchase Agreement provides for, among other things, the vesting of substantially all of the Debtors' property in the reorganized Debtors Free and Clear (as defined in the Plan) of any and all Liens (as defined in the Plan), Claims (as defined in the Plan) and other interests, except as otherwise set forth in the Plan, the cancellation of the Debtors' existing equity interests, and the issuance of new equity interests in Crusader to the Potential Buyer. The Transaction is subject to higher or better offers as more particularly set forth in this Motion. In consideration for the issuance of the new equity interests in Crusader, SandRidge Energy and the Potential Buyer agree to provide consideration at the closing of the Transaction comprised of: shares of SandRidge Energy with a value of $175,000,000.00 (subject to certain adjustments), warrants to purchase shares of SandRidge Energy with an agreed value (as to the Second Lien Lenders) of $11,000,000.00,[4] and cash in the amount of $55,000,000.00 (subject to certain adjustments). The Potential Buyer has also agreed to provide a loan of up to $30,000,000 in cash on the Effective Date of the Plan and closing of the Transaction in accordance with the Plan.

10. The Debtors have extensively explored various sale and reorganization alternatives, including the sale of assets or properties of the Debtors and the issuance of the equity of the Debtors. After extensive review and consideration of the proposals received from prospective buyers to date and the prospects for receipt of a higher or better offer, in consultation with Jefferies, the Debtors have determined, in the exercise of their business judgment, to request

---

[4] The Second Lien Lenders have agreed to allocate a value of $11,000,000 of debt satisfaction to the warrants.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF** Page 5 of 30
Dallas 1563873v.11

the Court's approval of the Stock Purchase Agreement as the "stalking-horse" bid to set a minimum price in connection with a proposed auction process as described below.

11.     The Debtors, First Lien Lenders, certain of the Second Lien Lenders, Committee, SandRidge Energy, and the Potential Buyer executed that certain Plan Support Agreement dated as of September 22, 2009 (the "Plan Support Agreement") under which those parties agreed to, among other things, support the Transaction and confirmation of the Plan.  A copy of the Plan Support Agreement is attached hereto as **Exhibit "B"**.

## RELIEF REQUESTED

### Introduction

12.     Pursuant to Bankruptcy Code §§ 105, 363, 503(b), 507(a)(2) and 1129 and Rules 2002, 6004, and 6006 of the Federal Rules of Bankruptcy Procedure (the "Bankruptcy Rules"), the Debtors request that the Court (a) approve the Stock Purchase Agreement, including the Break-Up Fee (as defined below), as the stalking horse bid and subject to all terms and conditions therein, (b) approve the Plan Support Agreement, (c) approve the bid procedures which are attached hereto as **Exhibit "C"** (the "Bid Procedures"), (d) approve the form and manner of notice of the Bid Procedures and the respective dates, times and places for an auction, if required under the Bid Procedures (the "Transaction Notice"), substantially in the form attached hereto as **Exhibit "D"**, (e) approve the form and manner of the notice of the assumption (and, if necessary, assignment) of executory contracts and unexpired leases (the "Assumption Notice"), substantially in the form attached hereto as **Exhibit "E"**, (f) establish procedures for

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**         **Page 6 of 30**
Dallas 1563873v.11

determining cure amounts in connection with the assumption (and, if necessary, assignment) of executory contracts and unexpired leases, and (g) grant such other relief as is fair and equitable.

## Approval of Stock Purchase Agreement

13.     Under the Stock Purchase Agreement, the Transaction is subject to higher or better offers and a possible auction as more particularly set forth herein, and consummation of the Transaction is conditioned upon entry of an Order confirming the Plan (the "<u>Confirmation Order</u>").  To afford SandRidge Energy and the Potential Buyer the bid protections set forth in the Stock Purchase Agreement, the Plan Support Agreement and the Bid Procedures, and to enable the Debtors to take the steps contemplated under the Stock Purchase Agreement, the Plan Support Agreement and the Bid Procedures, the Debtors request approval of the Stock Purchase Agreement.

## Approval of the Stock Purchase Agreement

14.     The Debtors are requesting authority to enter into the Stock Purchase Agreement, pursuant to which the Potential Buyer would purchase all of the shares of common stock that would be issued by the reorganized Crusader under its Plan (the "<u>New Crusader Shares</u>").  The Transaction under the Stock Purchase Agreement is subject to higher or better offers, and consummation of the Transaction is conditioned upon entry of the Confirmation Order and satisfaction of other conditions to closing contained in the Stock Purchase Agreement.

15.     The pertinent terms of the Stock Purchase Agreement are provided in the table below for summary and notice purposes only.  To the extent any of the terms described below

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                                    **Page 7 of 30**
Dallas 1563873v.11

are inconsistent with the Stock Purchase Agreement, the Stock Purchase Agreement shall control.[5]

| | |
|---|---|
| **Purchase Consideration**: | The consideration payable by the Potential Buyer consists of the following:<br><br>• $55,000,000 in cash, subject to certain adjustments (as adjusted, the "<u>Cash Consideration</u>");<br>• 13,015,797 shares of SandRidge Energy common stock, par value $0.001 per share, subject to certain adjustments (as adjusted, the "<u>Stock Consideration</u>"); and<br>• warrants to purchase 2,000,000 shares of SandRidge Stock at an exercise price of $15.00 per share, with an exercise period ending five years after the Closing Date. |
| **Closing Loan:** | If the total cash required to pay Cure Costs and other Allowed Claims on the Closing Date and to fund the Liquidating Trust's cash reserves exceeds the Cash Consideration plus the Debtors' cash balances as of the Closing Date, the Potential Buyer will make a senior loan to the Liquidating Trust by the amount of the shortfall, up to $30,000,000, and a number of shares of SandRidge Stock that has a value (at $13.4452 per share) equal to the amount of the loan will be withheld from the Stock Consideration delivered on the Closing Date (the "<u>Loan Reserved Shares</u>"). The Liquidating Trust will repay the principal and interest on the Closing Loan using any cash collections on Trust Assets, to the extent not required to fund reserves, and SandRidge will also apply cash collections on the Debtors' accounts receivable (and setoff amounts) to repay the Closing Loan.<br><br>SandRidge will be required to deliver the Loan Reserved Shares 185 days after the Closing Date, but if any principal or interest on the Closing Loan is not paid in full within 180 days after the Closing Date, the number of Loan Reserved Shares that SandRidge is required to deliver will be reduced by the number of shares of SandRidge Stock that has a value (at $13.4452 per share) equal to the amount of the amount of the shortfall. |
| **Other Adjustments to** | The Cash Consideration is subject to reduction for (i) certain incremental rejection damages costs that the Debtors may be required to incur, (ii) |

---

[5] Capitalized terms used but not defined in this summary are used with the meanings given them in the Stock Purchase Agreement. The description of the Stock Purchase Agreement below is intended as a summary and is qualified in its entirety by reference to the Stock Purchase Agreement.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

| | |
|---|---|
| the Purchase Consideration | $90,322.58 per day from and after September 1, 2009, up to but excluding the Closing Date, and (iii) certain accrued non-income tax liabilities of the Debtors.<br><br>The Cash Consideration is subject to increase for (i) certain cash deposits held by the Debtors; (ii) certain capital expenditures made by the Debtors; and (iii) the net value of certain crude oil in storage tanks of the Debtors.<br><br>The Stock Consideration may also be reduced to address certain litigation matters. |
| **Escrow Amount**: | No later than one Business Day after the execution of the Stock Purchase Agreement, SandRidge Energy will deposit $7 million (the "Escrow Amount") in escrow as a good faith deposit for its obligations under the Stock Purchase Agreement. |
| **Closing Conditions**: | The parties' obligations to consummate the Transaction are subject to certain customary closing conditions, including:<br><br>• satisfaction of conditions to the effectiveness of the Plan and effectiveness of the Plan;<br><br>• the Bid Protection Order, the Disclosure Statement Order and the Confirmation Order shall have been entered by the Court, and each such order shall be a SandRidge Final Order (in the case of the SandRidge Parties) or a Crusader Final Order (in the case of the Debtors);<br><br>• Court determination that the Plan is feasible;<br><br>• execution, delivery and effectiveness of the Liquidating Trust Agreement;<br><br>• receipt by SandRidge Energy of all Post-Signing Financial Statements;<br><br>• the Stock Consideration shall have been approved for listing on the New York Stock Exchange, subject to official notice of issuance;<br><br>• compliance in all material respects with covenants and agreements;<br><br>• accuracy of representations and warranties, generally except as |

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**  Page 9 of 30

Dallas 1563873v.11

| | |
|---|---|
| | would not have a SandRidge Material Adverse Effect or Crusader Material Adverse Effect; and<br><br>• termination by Debtors of any employees requested by the SandRidge Parties. |
| **Termination**: | The Stock Purchase Agreement may be terminated by mutual written agreement of the parties.<br><br>The Stock Purchase Agreement may be terminated by either party if:<br><br>• the Closing is not consummated on or before December 30, 2009;<br><br>• consummation of the Transaction is illegal or otherwise prohibited by Applicable Law or any final non-appealable final order, decree or judgment;<br><br>• the Court shall not have approved the substantive consolidation of the Debtors prior to the hearing to consider approval of the Disclosure Statement;<br><br>• the other party is in breach of its representations, warranties, or covenants and such breach would result in a failure of a closing condition that is not cured within 10 days; or<br><br>• any of the closing conditions become incapable of being satisfied by December 30, 2009.<br><br>SandRidge Energy may terminate the Stock Purchase Agreement if:<br><br>• the Bid Protection Order is not entered before 30 days (subject to extension in certain cases) after execution of the Stock Purchase Agreement;<br><br>• the Bid Deadline is later than 30 days after the Bid Protection Order is entered;<br><br>• the Disclosure Statement is not approved by the Court on or before October 30, 2009, or if the Disclosure Statement Order is not entered within seven days after approval (subject to extension in certain cases); |

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**         **Page 10 of 30**

Dallas 1563873v.11

| | |
|---|---|
| | <ul><li>the Court approves any Alternative Transaction, Crusader enters into any definitive agreement for any Alternative Transaction (which agreement is approved by the Court), or Crusader determines that an Alternative Transaction is the Successful Bid at the Auction but such Alternative Transaction is not approved by the Bankruptcy Court within 30 days after such Auction;</li><li>there is intentional and material breach by any Debtors or their Representatives of the non-solicitation provisions.</li></ul> Crusader may terminate the Stock Purchase Agreement if: <ul><li>the Court approves any Alternative Transaction, or Crusader enters into any definitive agreement for any Alternative Transaction (which agreement is approved by the Court);</li><li>SandRidge Energy does not deposit the Escrow Amount with the Escrow Agent within one Business Day after the date of execution of Stock Purchase Agreement.</li></ul> |
| **Break-Up Fee**: | Debtors must pay SandRidge Energy a $7 million Break-Up Fee upon consummation of an Alternative Transaction if any Debtors consummate an Alternative Transaction within 12 months after the date of the Stock Purchase Agreement and the Stock Purchase Agreement has been terminated by:<ul><li>Crusader because the Closing does not occur on or before December 30, 2009 and the Court approves an Alternative Transaction or Crusader enters into a definitive agreement for an Alternative Transaction (which agreement is approved by the Court) prior to February 1, 2010; or</li><li>SandRidge Energy because the Court approves any Alternative Transaction, Crusader enters into a definitive agreement for an Alternative Transaction (which agreement is approved by the Court), or Crusader determines that an Alternative Transaction is the Successful Bid at the Auction and the Successful Bid is not approved by the Bankruptcy Court within 30 days after the Auction; or</li><li>Crusader if the Court approves an Alternative Transaction or Crusader enters into any definitive agreement for an Alternative</li></ul> |

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                    **Page 11 of 30**

Dallas 1563873v.11

| | |
|---|---|
| | Transaction (which agreement has been approved by the Court) |
| **Representations and Warranties:** | The Stock Purchase Agreement contains customary representations and warranties. The representations and warranties do not survive the Closing and there is no indemnification for breaches of representations and warranties. |
| **Certain Covenants:** | • The Debtors are required to continue to conduct their business in the ordinary course and are subject to certain limitations on, among other things, capital expenditures, dispositions of properties, incurrence of indebtedness, entry into material agreements, modification of material agreements, certain employment arrangements and settlement of litigation.<br><br>• The Debtors have agreed, except as expressly permitted or required by the Bid Protection Order (after entry of the Bid Protection Order), to limit their efforts to solicit, initiate, facilitate or encourage offers, proposals and inquiries regarding Alternative Transactions; provide non-public information to potential bidders; participate in discussions with potential bidders; or enter into agreements with potential bidders.<br><br>• Crusader has agreed to use commercially reasonable efforts to provide SandRidge with certain financial information, including audited annual financial statements for the year ended December 31, 2008, monthly financial statements and quarterly financial statements, reviewed by KPMG LLP, for the quarters ended March 31, 2009, June 30, 2009 and September 30, 2009. |

16.     To enable the Debtors to take the steps contemplated under the Stock Purchase Agreement, the Plan Support Agreement and the Bid Procedures, and to provide to the SandRidge Parties the rights provided under the Stock Purchase Agreement, including the right to receive a Break-Up Fee in certain circumstances as provided therein, the Debtors request approval of the Stock Purchase Agreement and authority to enter into the Stock Purchase Agreement and perform their respective obligations thereunder.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                           **Page 12 of 30**
Dallas 1563873v.11

## Approval of the Plan Support Agreement

17.     Plan support agreements are often entered into and approved by Bankruptcy Courts, including this Court.  *See e.g. In re Heritage Organization*, *LLC*, 376 B.R. 783, 791-93 (Bankr. N.D. Tex. 2007) (holding a written memorialization of negotiations between the debtor and its creditor constituents was not a solicitation in violation Bankruptcy Code § 1125(b)); *see also Century Glove, Inc. v. First American Bank of New York*, 860 F.2d 94, 101-02 (3rd Cir. 1988) (holding the prohibition of "solicitation" under § 1125(b) must be read narrowly so as not to impede the negotiations of creditors during the plan process).  The Plan Support Agreement in this Case memorializes the negotiations and agreements to support the Plan among SandRidge Energy, the Potential Buyer, the Debtors, the First Lien Lenders, certain of the Second Lien Lenders, and the Committee.  Furthermore, similar to the situation in *Heritage*, many of the parties to the Plan Support Agreement (the Debtors, the First Lien Lenders, certain of the Second Lien Lenders and the Committee) are also co-proponents of the Plan.  *Id.*  The Plan Support Agreement does not "specifically request an official vote" on the Plan or prevent a party thereto from reconsidering its preliminary decision to vote in favor of the Plan, as was also the case in *Heritage*.  *Id.*  Accordingly, the Plan Support Agreement is a proper means to evidence the agreements reached among SandRidge Energy, the Potential Buyer, and the Plan proponents, is not an improper solicitation of votes under Bankruptcy Code § 1125(b), and should be approved.

## Bid Procedures

18.     Pursuant to Bankruptcy Rule 6004(f)(1), sales of property outside the ordinary course of business may be by private sale or auction.  Good cause exists to expose the assets,

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                                              **Page 13 of 30**
Dallas 1563873v.11

properties, and equity of the Debtors to auction. An auction conducted substantially in accordance with the Bid Procedures (the "<u>Auction</u>") will enable the Debtors to obtain the highest or best offer(s) for the assets, properties, and equity of the Debtors, thereby maximizing the value of their estates.

19.     The Bid Procedures provide an appropriate framework for obtaining offers for an Alternative Transaction (as applicable) and will enable the Debtors to review, analyze and compare all bids received to determine which bid is in the best interests of the Debtors' estate and creditors. Therefore, the Debtors respectfully request that this Court approve the Bid Procedures.

<u>**Transaction Notice and Assumption Notice**</u>

20.     Bankruptcy Rule 2002(a) provides, in relevant part, that all creditors must be given at least 20 days' notice by mail of (a) a proposed use, sale or lease of property of the estate other than in the ordinary course of business and (b) the time fixed to accept or reject a plan. Further, Bankruptcy Rule 2002(c) sets forth that the content of such notices must include the time and place of any sale, the terms and conditions of such sale, and the time fixed for filing objections.

21.     In accordance with Bankruptcy Rule 2002, the Debtors are required to notify their creditors of the proposed Transaction or Alternative Transaction (as applicable), including a disclosure of the time and place of the Auction, the terms and conditions of the Transaction, and the deadline for filing any objections to the Transaction or Alternative Transaction (as applicable). The Debtors are in a unique position in these Cases, as given the timeline of the

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF** **Page 14 of 30**
Dallas 1563873v.11

proposed Transaction or Alternative Transaction (as applicable), the date of the hearing to consider confirmation of the Plan (the "<u>Confirmation Hearing</u>") will not be set prior to the entry of an Order approving this Motion.  As such, in addition to the Transaction Notice and Assumption Notice discussed herein, the Debtors propose to serve one or more subsequent notices (the "<u>Supplemental Notices</u>") advising parties of, among other things, the deadline to file objections to confirmation of the Plan and other matters required to permit consummation of the Transaction or Alternative Transaction (as applicable) and the date of the Confirmation Hearing.[6]

Transaction Notice

22.     In combination with the Supplemental Notices, the Transaction Notice (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, (b) includes information concerning the Bid Procedures and the bidding protections, and (c) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the Auction, (ii) the Bid Procedures, and (iii) the deadline to object to the Transaction or Alternative Transaction (as applicable), the Confirmation Hearing, and the approval of the Transaction or Alternative Transaction (as applicable).[7]   Accordingly, the Debtors request that this Court approve the form and content of the Transaction Notice.

23.     Within five business days after the Court enters an Order approving this Motion, the Debtors shall serve the Transaction Notice by (a) first class United States mail, postage

---

[6] The proposed forms of the Supplemental Notices are set forth in the Debtors' *Motion to (A) Approve (I) Disclosure Statement for the Joint Plan of Reorganization for the Debtors; (II) Summary Plan and Disclosure Statement; and (III) Unimpaired Class Notice; (B) Set Dates for the Objection and Hearing relating to the Confirmation of the Plan; and (C) Authorize Other Relief Relating to Plan Solicitation and the Confirmation of the Plan* (the "<u>Disclosure Statement Motion</u>"), which will be filed subsequent to this Motion.

[7] The dates of such deadline and hearing shall be specified in the Supplemental Notices.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

prepaid on (i) the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) at the addresses set forth therein, (ii) the parties identified on the Creditor Matrix filed in these Cases at the addresses set forth therein, including all known holders of Liens (iii) the parties that have filed proofs of claim in these Cases at the addresses set forth in the respective proofs of claim, and (iv) the counterparties to executory contracts and unexpired leases with one or more of the Debtors, and (v) certain other parties who have expressed an interest in acquiring or in investing in the Debtors or any of their assets; (b) the Court's electronic filing system on those parties receiving electronic notice by such system; and (c) by publication of the Transaction Notice in the national edition of *The Wall Street Journal* and other periodicals of the Debtors' choice, if any. In combination with the Supplemental Notices, service of such Transaction Notice is proper, due, timely, good, and sufficient notice of, among other things, the entry of this Order, the Bid Procedures, the Auction (if required under the Bid Procedures), the proposed Transaction, including the vesting or transferring of substantially all of the Debtors' assets Free and Clear of any and all Liens, Claims and other interests except as otherwise set forth in the Plan, and the procedure for objecting thereto.

<u>Assumption Notice</u>

24.     In accordance with Bankruptcy Rule 2002, the Debtors must provide notice of the (i) potential assumption (and, as applicable, assignment) of executory contracts and unexpired leases, (ii) the maximum amount that the Debtors may pay to cure all defaults, if any, and to pay all losses that have resulted from defaults, under executory contracts and unexpired leases that the Debtors propose to assume and/or assign (collectively, the "<u>Cure Amounts</u>"), and (iii) the

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                          **Page 16 of 30**
Dallas 1563873v.11

deadline to file objections to such assumption (and, if applicable, assignment), maximum Cure Amounts and the existence of any defaults and/or adequate assurance of the future performance. Analysis of the Cure Amounts invokes certain complicated issues in these Cases.  There are several different types of cure situations with which the Debtors may be confronted: (a) Cure Amounts related to direct counterparties to the executory contracts and unexpired leases and (b) Cure Amounts related to executory contracts and unexpired leases whereby the counterparties thereto may assert (or have asserted) such Cure Amounts must be paid to third parties in order to be satisfied.[8]  Thus, the Debtors propose to serve the Assumption Notice set forth in <u>Exhibit E</u>, which will contain a detailed list of the maximum Cure Amounts related to each executory contract and unexpired lease and information as to the party[9] to whom such Cure Amounts will be paid, to specifically address these situations.  As a result of the complexities surrounding these varying types of Cure Amounts, in the Plan, the Plan Proponents propose to (i) pay all valid and undisputed Cure Amounts as provided in the Plan, and (ii) establish a cash reserve to satisfy disputed Cure Amounts upon approval by the Court.

25.    In combination with the Transaction Notice and the Supplemental Notices, the Assumption Notice (a) contains the type of information required under Bankruptcy Rule 2002 that is currently known to the Debtors, and (b) is reasonably calculated to provide due, adequate and timely notice to all interested parties of (i) the potential assumption (and, if necessary,

---

[8] For example, the Debtors are operators under certain Joint Operating Agreements.  The non-operators under such Joint Operating Agreements may assert (or have asserted) that in order for such Joint Operating Agreement to be assumed, the claims of certain third parties providing services related to such Joint Operating Agreement, such as trade vendors, must be satisfied because such third parties may have recourse against the non-operators (as well as the Debtor operators) depending on state law.

[9] The counterparty (or counterparties) or some other third party (or third parties).

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

Dallas 1563873v.11

assignment) of executory contracts and unexpired leases, (ii) the maximum amount and manner offered to satisfy the Cure Amounts, and (iii) the deadline to file objections to such assumption (and, if applicable, assignment), maximum Cure Amounts and the existence of any defaults and/or adequate assurance of the future performance.

26. Within five business days after the Court enters an Order approving this Motion, the Debtors shall serve the Assumption Notice by (a) first class United States mail, postage prepaid on (i) the parties identified on the Master Service List maintained in these Cases (who do not receive electronic notice) at the addresses set forth therein, and (ii) all counterparties to executory contracts and unexpired leases that may be assumed by one or more of the Debtors pursuant to Bankruptcy Code § 365 and that the Potential Buyer desires to be assumed by the Debtor party thereto (the "Desired 365 Contracts"); and (b) the Court's electronic filing system on those parties receiving electronic notice by such system. In combination with the Supplemental Notices, such Assumption Notice is proper, due, timely, good, and sufficient notice of, among other things, the proposed assumption (and, if applicable, assignment) of the Desired 365 Contracts, the Cure Amounts, and the procedures for objecting thereto.

## Objections

27. The Debtors request that the following procedures be implemented with respect to the notices discussed herein and relief related thereto:

a. Objections, if any, to the Transaction or Alternative Transaction (as applicable) and/or the proposed assumption (and, if applicable, assignment) of the Desired 365 Contracts, including but not limited to objections relating to any Cure Amounts and/or adequate

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**        **Page 18 of 30**
Dallas 1563873v.11

assurances of future performance, must (a) be in writing, (b) state with specificity the nature of such objection, (c) if concerning a Cure Amount, set forth a specific default in the Desired 365 Contract and claim a specific monetary amount that differs from the Cure Amount (if any) specified by the Debtors in the Assumption Notice (with appropriate documentation in support thereof), (d) comply with the Federal Rules of Bankruptcy Procedure, and (e) be filed with this Court and served upon the following parties in accordance with the Assumption Notice on or before the deadline subsequently set by the Court (the "Objection Deadline"):[10] (u) counsel for the Debtors at Vinson & Elkins LLP, Attn: William L. Wallander, Trammell Crow Center, 2001 Ross Avenue, Suite 3700, Dallas, Texas, (fax) 214.999.7905, bwallander@velaw.com, (v) counsel for SandRidge Energy and the Potential Buyer at Davis Polk & Wardwell LLP, Attn: Nancy L. Sanborn, 450 Lexington Avenue, New York, New York, 10017, (fax) 212.701.5800, nancy.sanborn@davispolk.com, (w) counsel for the Debtors' first lien lenders at Bracewell & Giuliani LLP, Attn: Samuel M. Stricklin, 1445 Ross Avenue, Suite 3800, Dallas, Texas, 75202-2711, (fax) 214.758.8395, sam.stricklin@bgllp.com, (x) counsel for the Debtors' second lien lenders at Thompson & Knight LLP, Attn: David M. Bennett, 1722 Routh Street, Suite 1500, Dallas, Texas, 75201, (fax) 214.880.3293, david.bennett@tklaw.com, (y) counsel for the Official Committee of Unsecured Creditors at Gardere Wynne Sewell LLP, Attn: Richard M. Roberson, 1601 Elm Street, Suite 3000, Dallas, Texas, 75201, (fax) 214.999.3955, rroberson@gardere.com, and (z) the United States Trustee's Office at Office of the United States Trustee, Attn: George

---

[10] The Supplemental Notices, which the Debtors will serve on the parties as set forth in this Motion, will identify the Objection Deadline.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

McElreath, 1100 Commerce Street, Room 9-C-60, Dallas, Texas, 75242, (fax) 214.767.6530,

George.F.McElreath@usdoj.gov, (collectively, the "Notice Parties").

b.     The Debtors are authorized to amend the Assumption Notice by adding Desired 365 Contracts at any time prior to the Confirmation Hearing (by sending a new or amended Assumption Notice), and they shall use commercially reasonable efforts to affect the assumption (and, as applicable, the assignment) of such 365 Contract (as defined in the Stock Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable)) by the applicable Debtor in accordance with the Bankruptcy Code and the Plan; provided, however, that counterparties to any Desired 365 Contracts that are added to the Assumption Notice or whose Cure Amounts are amended shall have at least five calendar days from service of the amended Assumption Notice to (i) properly object to such addition/deletion or Cure Amount amendment, and (ii) modify their vote to accept or reject the Plan.

c.     Any Person (as defined in the Plan) failing to timely file an objection to the Transaction, shall be forever barred from objecting to the Transaction or the consummation thereof, including the vesting or transferring of substantially all of the Debtors' assets Free and Clear of any and all Liens, claims and other interests except as otherwise set forth in the Plan, and will be deemed to consent to the Transaction, including the vesting or transferring of substantially all of the Debtors' assets Free and Clear of any and all Liens, claims and other interests except as otherwise set forth in the Plan and provided by such Transaction or Alternative Transaction.

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF** **Page 20 of 30**
Dallas 1563873v.11

d.      Any Person failing to timely file an objection to any Cure Amounts set forth in the Assumption Notice or the proposed assumption (and, if applicable, assignment) of the Desired 365 Contracts shall be forever barred from objecting to the Cure Amounts and from asserting a claim for any cure or other amounts (or asserting that any defaults exist under the Desired 365 Contract as of the date of assumption) against any Debtors, their estates, the reorganized Debtors (if applicable), SandRidge Energy, and the Potential Buyer or any of their respective affiliates (or such other Person that agrees to purchase the New Crusader Shares (as defined in the Plan) or Transferred Assets (as defined in the Plan) under an Alternative Transaction that is approved by the Bankruptcy Court) with respect to its Desired 365 Contract arising prior to assumption (and, if applicable, assignment) of the Desired 365 Contract and will be deemed to consent to the proposed assumption (and, if applicable, assignment) of its Desired 365 Contract as provided by such Transaction or Alternative Transaction.

e.      Where a counterparty to a Desired 365 Contract files a timely objection asserting a higher cure amount than the maximum Cure Amount set forth in the Assumption Notice and the parties are unable to consensually resolve the dispute prior to the Confirmation Hearing, the amount to be paid or reserved with respect to such objection will be determined at the Confirmation Hearing or such other date and time as may be fixed by this Court. All other objections to the proposed assumption (and, if applicable, assignment) of the Desired 365 Contracts will be heard at the Confirmation Hearing.

f.      If any Person asserts that any property, other than an executory contract or unexpired lease, cannot be transferred, sold, vested, assumed, and/or assigned Free and Clear of

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                   **Page 21 of 30**
Dallas 1563873v.11

all Liens, claims and other interests except as otherwise set forth in the Plan, in accordance with the Transaction and Bankruptcy Code § 1141 on account of one or more alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights, then such Person shall file and serve a notice (a "Rights Notice") so that the Rights Notice is actually received by the Notice Parties on or before the Objection Deadline. Each Rights Notice must identify the property or properties that are subject to such alleged right, identify the type of right(s) claimed by such party, identify the agreement, document, or statute giving rise to such right, and identify the portion of the agreement, document, or statute giving rise to such right.

g. Any Person failing to timely file and serve a Rights Notice shall be (a) forever barred from objecting to the transfer, sale, vesting, assumption, and/or assignment of the properties, Free and Clear of all Liens, claims and other interests except as otherwise set forth in the Plan, and from asserting any alleged approval rights, consent rights, preferential purchase rights, rights of purchase, rights of first refusal, rights of first offer, or similar rights with respect to the Debtors' transfer, sale, assumption, and/or assignment of the properties, as set forth in (i) the Plan and (ii) the Stock Purchase Agreement or other definitive agreement to effectuate an Alternative Transaction (if applicable), and (b) deemed to consent to and approve of the transfer, sale, vesting, assumption, and/or assignment of the properties, Free and Clear of all Liens, claims and other interests except as otherwise set forth in the Plan (regardless of whether such consent must be in writing).

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**      **Page 22 of 30**
Dallas 1563873v.11

28.     In combination with the Supplemental Notices, the Transaction Notice and the Assumption Notice to be provided and the method of service proposed herein constitute good, proper and adequate notice of the Transaction or Alternative Transaction (as applicable) and the proceedings to be had with respect thereto (including, but not limited to, the Auction and the Confirmation Hearing).  Therefore, the Debtors respectfully request that this Court approve the foregoing notice procedures.

## Bidding Protections Are Fair and Reasonable

29.     The Debtors have aggressively marketed the assets, properties, and equity of the Debtors.  Although the Debtors have determined in their reasonable business judgment that the Transaction should be subject to the Auction, such Auction would be of little value absent SandRidge Energy and the Potential Buyer setting the minimum value for the Transaction or Alternative Transaction (as applicable).   As a result, the Debtors request authority to pay SandRidge Energy $7,000,000.00 (the "Break-Up Fee") if the conditions set forth in the Bid Procedures are satisfied.  The Debtors propose that the Break-Up Fee be paid, in cash, on the date of consummation of the first Alternative Transaction consummated by the Debtors or one business day thereafter, from the sale proceeds thereof or otherwise from the Debtors' cash balances.  The Debtors also propose that the Break-Up Fee constitute an administrative expense claim against any Debtor under Bankruptcy Code § 503(b) or 507(a)(2).

30.     The Debtors submit that the SandRidge Parties have expended, and likely will continue to expend, considerable time, money and energy pursuing the Transaction and have engaged in extended and lengthy good faith negotiations. In particular, the Stock Purchase

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**                                                          **Page 23 of 30**
Dallas 1563873v.11

Agreement is part of an extensive process undertaken by the Debtors and their professionals to identify and negotiate a transaction that the Debtors currently believe to be the highest or best proposal for an acquisition of the Debtors, in order to maximize the value realized for the benefit of the Debtors' estates, their creditors and other parties in interest.

31.     The Debtors submit that the Stock Purchase Agreement and the Break-Up Fee, were negotiated, proposed and entered into by the Debtors and the SandRidge Parties without collusion, in good faith and from arms' length bargaining positions.

32.     The Debtors submit that the Break-Up Fee is (1) an actual and necessary cost of preserving the Debtors' estates within the meaning of Section 503(b) and 507(a) of the Bankruptcy Code, (2) commensurate to the real and substantial benefit conferred on the Debtors' estates by the SandRidge Parties, and (3) reasonable and appropriate in light of, among other things (a) the size and nature of the Transaction contemplated under the Stock Purchase Agreement and the Plan and comparable transactions, (b) the substantial efforts that have been and will be expended by the SandRidge Parties, (c) the benefits the SandRidge Parties have provided to the Debtors' estates, their creditors and other parties in interest, notwithstanding that the Stock Purchase Agreement may be terminated by the Debtors if any higher or otherwise better Alternative Transaction is identified and consummated, and (d) necessary to induce the Potential Buyer to serve as a "stalking horse" bidder and to continue to pursue the Transaction. The grant, allowance and payment of the Break-Up Fee are in the best interest of the Debtors, their respective estates and creditors.  The Break-Up Fee induced the Potential Buyer to submit a bid that will serve as a minimum floor on which the Debtors, its creditors and other bidders may

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**     **Page 24 of 30**
Dallas 1563873v.11

rely.  The SandRidge Parties have provided a material benefit to the Debtors and their creditors (and the Debtors have received a material benefit) by increasing the likelihood that the best possible price for the New Crusader Shares or Transferred Assets will be received.

33.     The Debtors submit that payment to SandRidge Energy of the Break-Up Fee under the terms and conditions set forth in the Stock Purchase Agreement, the Plan Support Agreement and the Bid Procedures, should be approved because, among other things: (1) the protection afforded to the SandRidge Parties by the Break-Up Fee was a material inducement for, and express condition of, the SandRidge Parties' willingness to enter into the Stock Purchase Agreement, and (2) assurance to SandRidge Energy of payment of the Break-Up Fee has promoted (and will promote) more competitive bidding by, among other things, inducing the Potential Buyer's offer, which offer otherwise would not have been made and without which competitive bidding would be limited.  Further, the Break-Up Fee induced SandRidge Parties to conduct due diligence with respect to the Transaction.  Thus, the SandRidge Parties have provided a material and substantial benefit to the Debtors' estates, their creditors and other parties in interest by increasing the likelihood that the price at which a Transaction may be effected or a sale of substantially all of the Debtors' assets will be made will reflect their true value.  Accordingly, the Bid Procedures and the Break-Up Fee are fair, reasonable and appropriate and represent the best method for maximizing value for the benefit of the Debtors' estates.

34.     The payment of the Break-Up Fee and the establishment of Bid Procedures are both reasonable and necessary to induce SandRidge Energy and the Potential Buyer to enter into

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**     **Page 25 of 30**
Dallas 1563873v.11

the Stock Purchase Agreement and to obtain the highest price possible for the assets, properties, or equity of the Debtors.

35.     The payment of a termination, or break-up fee is normal and customary in transactions of this nature.  Such fees frequently have been approved in connection with transactions in other chapter 11 cases.  Break-up fees are a vital means by which a debtor in possession can manage value maximization risk by setting a value floor for assets to be conveyed, which is a key benefit to the Debtors and their estates and weighs heavily in favor of approving the Break-Up Fee.  Moreover, without prompt approval of the Break-Up Fee, the sale and reorganization process would be substantially hampered.  Such fees encourage an initial bidder to invest the time, effort and money necessary to consummate the transaction, despite the possibility that such bidder may not ultimately effectuate the transaction.  A break-up fee is an important tool to be used to encourage bidding.  Court approval of the Break-Up Fee is necessary, reasonable, and in the best interests of the Debtors, their estate and creditors.

36.     The determination of whether a break-up fee should be allowed is made based on whether the fees and expenses are necessary to preserve the value of the estate.  *In re O'Brien Environmental Energy, Inc.*, 181 F.3d 527, 534 (3rd Cir. 1999).  The considerations that underlie a debtor's business judgment to pay a break-up fee are relevant to the Court's determination of the request.  *Id*.  Indeed, courts have evaluated break-up fee arrangements under the business judgment rule standard.  *Cottle v. Storer Communications, Inc.*, 849 F.2d 570 (11th Cir. 1988); *CRTF Corp. v. Federated Dep't Stores*, 683 F.Supp. 422 (S.D.N.Y. 1988); *In re Integrated Res., Inc.*, 147 B.R. 650, 657 (S.D.N.Y. 1992), *appeal dismissed by* 3 F.3d 49 (2d Cir. 1993).

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**           **Page 26 of 30**
Dallas 1563873v.11

37.     It is well-established that "[a] bankruptcy court should uphold a break-up fee which was not tainted by self-dealing and was the product of arm's-length negotiations." *In re Integrated Res., Inc.*, 147 B.R. at 658.  In the instant case, the proposed Break-Up Fee is the product of good faith, arm's-length negotiations among the Debtors, SandRidge Energy, and the Potential Buyer.  The Break-Up Fee is approximately 3% of the consideration to be received by the Debtors under the Stock Purchase Agreement.  It is the Debtors' business judgment that the Break-Up Fee is fair and reasonable in light of the time, effort, cost and expense that SandRidge Energy and the Potential Buyer have incurred in negotiating the Stock Purchase Agreement and related transaction documents, and will continue to incur and the aggregate consideration to be paid by the Potential Buyer.

38.     Further, the Break-Up Fee is necessary to enhance and preserve the value of the assets, properties, and equity of the Debtors for their estate and to allow them to obtain the best "stalking-horse" bid possible.  Without the "stalking-horse" bid, the consideration for the Transaction or Alternative Transaction (as applicable) would be minimized.  If higher or better bids in connection with an Alternative Transaction are received, it will be because SandRidge Energy and the Potential Buyer have served as "stalking-horses" for such offers.

39.     The Break-Up Fee of approximately 3% is within the spectrum of termination fees approved by bankruptcy courts in chapter 11 cases.  *See e.g., In re VarTec Telecom, Inc.,* Case No. 04-81694 (SAF) (Bankr. N.D. Tex., November 23, 2004 and April 15, 2005) (Court approved a break-up fee of approximately 3% with respect to two sales of assets);  *In re Datavon, Inc., et al.,* Case No. 02-38600-SAF-11 (Bankr. N.D. Tex. 2002) [Doc. No. 224]

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**      **Page 27 of 30**
Dallas 1563873v.11

(approving a 3% break-up fee); *In re Mirant Corp., et al.,* Case No. 03-46590 (DML) (Bankr. N.D. Tex. 2004) [Doc. No. 6092] (approving 3% break-up fees); *In re Ameriserve*, Case No. 00-0358 (PJW) (Bankr. D. Del., September 27, 2000) (Court approved a break-up fee of 3.64% or $4,000,000 in connection with $110,000,000 sale); *In re Montgomery Ward Holding Corp.*, et al., Case No. 97-1409 (PJW) (Bankr. D. Del., June 15, 1998) (Court approved termination fee of 2.7%, or $3,000,000, in connection with $110,000,000 sale of real estate assets); *see also Integrated Res.*, 147 B.R. at 648; *In re Crowthers McCall Pattern, Inc.*, 113 B.R. 877, 879 (Bankr. S.D.N.Y. 1990); *In re 995 Fifth Ave. Assocs., L.P.*, 96 B.R. 24, 28 (Bankr. S.D.N.Y. 1989).

40.     As stated, the Stock Purchase Agreement is subject to higher or better offers received pursuant to the Bid Procedures.  If higher or better offers emerge, they will be considered with reference and by comparison to the terms of the Stock Purchase Agreement. Therefore, the Break-Up Fee should be approved because it is necessary to maximize the value of the Transaction or Alternative Transaction (as applicable), and it does not prejudice the Debtors' estates.

## No Prior Request

41.     No prior request for the relief sought herein has been requested from this Court or any other court.

## PRAYER

The Debtors respectfully request the Court (a) approve bid protections and the Bid Procedures, (b) schedule an Auction and Confirmation Hearing, (c) approve the Transaction

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF** **Page 28 of 30**
Dallas 1563873v.11

Notice and the Assumption Notice, (d) establish procedures for determining Cure Amounts in connection with the assumption (and, if necessary, assignment) of executory contracts and unexpired leases, (e) approve the Stock Purchase Agreement and all terms and conditions therein, (f) approve the Break-Up Fee, (g) approve the Plan Support Agreement, and (h) grant such other relief as is fair and equitable.

Dated:  September 22, 2009

Respectfully submitted,

*/s/ William L. Wallander*
William L. Wallander, SBT #20780750
Richard H. London, SBT #24032678
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel:  214.220.7700
Fax: 214.220.7716
bwallander@velaw.com ; rlondon@velaw.com;
blloyd@velaw.com

**COUNSEL FOR THE DEBTORS**

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF** 
**Page 29 of 30**
Dallas 1563873v.11

## CERTIFICATE OF SERVICE

I certify that on September 22, 2009, a copy of the foregoing document was served by the Electronic Case Filing system for the United States Bankruptcy Court for the Northern District of Texas. A supplemental *Certificate of Service* will be filed with respect to the service by first class United States mail to those parties listed on the attached Master Service List that do not receive notice via the Electronic Case Filing system.

*/s/ Beth Lloyd*
One of Counsel

**EXPEDITED MOTION TO (A) APPROVE THE PROCEDURES FOR THE SOLICITATION OF HIGHER OR BETTER OFFERS; (B) APPROVE THE FORM AND MANNER OF NOTICE;(C) APPROVE PROCEDURES FOR DETERMINING CURE AMOUNTS FOR EXECUTORY CONTRACTS AND UNEXPIRED LEASES; (D) APPROVE THE STOCK PURCHASE AGREEMENT AND AUTHORIZE THE DEBTORS TO ENTER INTO THE STOCK PURCHASE AGREEMENT AND COMPLY WITH THEIR OBLIGATIONS THEREUNDER; (E) APPROVE A BREAK-UP FEE IN CONNECTION WITH THE TRANSACTION CONTEMPLATED BY THE STOCK PURCHASE AGREEMENT; AND (F) GRANT RELATED RELIEF**

Dallas 1563873v.11