U.S. BANKRUPTCY COURT
NORTHERN DISTRICT OF TEXAS

# ENTERED

TAWANA C. MARSHALL, CLERK
THE DATE OF ENTRY IS
ON THE COURT'S DOCKET



**The following constitutes the ruling of the court and has the force and effect therein described**.

**Signed December 16, 2009**                    *Barbara J. Houser*
                                        **United States Bankruptcy Judge**

---

## UNITED STATES BANKRUPTCY COURT
## FOR THE NORTHERN DISTRICT OF TEXAS
## DALLAS DIVISION

| | | |
|---|---|---|
| IN RE: | § § § | Case No. 09-31797-bjh-11 |
| CRUSADER ENERGY GROUP INC., *et al.* | § § § | Chapter 11 |
| DEBTORS. | § § § | (Jointly Administered) |

### ORDER CONFIRMING SECOND AMENDED JOINT
### PLAN OF REORGANIZATION FOR THE DEBTORS

On December 15, 2009, the Bankruptcy Court held a hearing (the "Confirmation Hearing") to consider confirmation of the *Second Amended Joint Plan of Reorganization for the Debtors* (as supplemented, amended or modified, the "Plan")[1] filed by the Debtors, the First Lien Holders, the Participating Second Lien Holders, and the Committee, (collectively, the "Plan Proponents").

---

[1] Capitalized terms not defined herein shall have the meaning given to them in the Plan.

On September 22, 2009, the Plan Proponents filed their *Joint Plan of Reorganization for the Debtors* [Docket No. 665], and on October 2, 2009, the Debtors filed their *Disclosure Statement for Joint Plan of Reorganization for the Debtors* [Docket No. 699]. On November 3, 2009, the Plan Proponents filed the *Amended Joint Plan of Reorganization for the Debtors* [Docket No. 891], and on November 3, 2009, the Debtors filed their *Amended Disclosure Statement for Amended Joint Plan of Reorganization for the Debtors* [Docket No. 892] (as supplemented, amended or modified, the "Disclosure Statement"). Also, on November 3, 2009, the Bankruptcy Court entered its *Order (A) Approving (I) Amended Disclosure Statement for the Amended Joint Plan of Reorganization for the Debtors; (II) Summary Plan and Disclosure Statement; and (III) Unimpaired Class Notice; (B) Setting Dates for the Objection and Hearing Relating to the Confirmation of the Plan; and (C) Granting Other Relief Relating to Plan Solicitation and the Confirmation of the Plan* [Docket No. 895] (the "Disclosure Statement Order"). On November 25, 2009, the Plan Proponents filed their *Plan Supplement for Amended Joint Plan of Reorganization for the Debtors* [Docket No. 986] (as supplemented, amended, or modified, the "Plan Supplement").

In support of Confirmation of the Plan, the Plan Proponents filed, among other things, their *Brief in Support of Confirmation of Amended Joint Plan of Reorganization for the Debtors* [Docket No. 1120] (the "Brief in Support"), and the *Declaration of Myrtle H. John on Behalf of BMC Group, Inc., in Connection with the Solicitation and Tabulation of Votes with Respect to the Amended Joint Plan of Reorganization for the Debtors* [Docket No. 1087] (the "BMC Declaration").

Based upon the Bankruptcy Court's review of, among other things, (i) the Plan, (ii) the Plan Supplement, (iii) the Brief in Support, (iv) the BMC Declaration, (v) objections to

confirmation of the Plan and responses to the same, (vi) exhibits admitted and other evidence presented or proffered at the Confirmation Hearing, and (vii) representations and arguments of counsel at the Confirmation Hearing, the Bankruptcy Court makes the following findings of fact and conclusions of law, and issues this *Order Confirming Second Amended Joint Plan of Reorganization for the Debtors*:

## FINDINGS OF FACT AND CONCLUSIONS OF LAW

### Jurisdiction and Venue

A.   <u>Jurisdiction; Venue; Core Proceeding.</u>   The Bankruptcy Court has jurisdiction over these Cases pursuant to 28 U.S.C. §§ 157 and 1334.   Venue in the Bankruptcy Court is proper under 28 U.S.C. §§ 1408 and 1409.   Each of the Debtors was and is qualified to be a debtor under section 109 of the Bankruptcy Code.   This matter constitutes a core proceeding under 28 U.S.C. § 157(b)(2), including those set forth in subsections (b)(2)(A), (B), (C), (F), (G), (H), (K), (L), (M), (N) and (O), and the Bankruptcy Court has exclusive jurisdiction to determine whether the Plan complies with the applicable provisions of the Bankruptcy Code and should be confirmed.

### Notice, Solicitation and Acceptance

B.   <u>Service of Solicitation Materials and Notices.</u>   In accordance with the Disclosure Statement Order and Bankruptcy Rule 3017(d), all appropriate pleadings and Ballots were transmitted, mailed or published, all as evidenced by the *Affidavit of Publication of Notice of Transaction in National Edition of Wall Street Journal* [Docket No. 945], the *Certificate of Service* [Docket No. 1025], and the *Certificate of Service* [Docket No. 1026].   The Debtors timely and properly served (1) a notice of unimpaired status via First Class United States Mail on all parties in Classes 1, 2 and 3, (2) a summary of the Plan and Disclosure Statement via First

Class United States Mail on all parties in Classes 8 and 9, (3) a solicitation package, including a copy of the Plan, Disclosure Statement and related Ballots, via First Class United States Mail on all parties in Classes 4, 5, 6, 7A and 7B.

C.    <u>Adequate Notice of Confirmation Hearing.</u>    In accordance with Bankruptcy Rules 2002, 3018, 3019, 6004, 6006, 9007 and 9014, Local Rules of Bankruptcy Procedure 2002.1, 3018.2, and 9014.1, and the Disclosure Statement Order, adequate notice of the time for filing objections to Confirmation of the Plan and the transactions contemplated thereby and adequate notice of the Confirmation Hearing and the assumption of the Assumed Contracts and related cure amounts was provided to all holders of Claims and Equity Interests, counterparties to the Assumed Contracts and other parties in interest entitled to receive such notice under the Bankruptcy Code and the Bankruptcy Rules.  No other or further notice of the Confirmation Hearing or Confirmation of the Plan is necessary or required.

D.    <u>Good Faith Solicitation (11 U.S.C. § 1125(e)).</u>    Based on the record, the Plan Proponents, Buyer, and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents and professionals (including but not limited to their attorneys, financial advisors, investment bankers, accountants, solicitation agents, and other professionals that have been retained by such parties) have acted in "good faith" within the meaning of Bankruptcy Code § 1125(e) and in compliance with the applicable provisions of the Bankruptcy Code, the Bankruptcy Rules, the Disclosure Statement Order and applicable non-bankruptcy law in connection with all of their respective activities relating to (1) the solicitation of acceptances or rejections of the Plan, (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests, the Newco Equity Interests, the New Crusader Shares, the New Subsidiaries Equity Interests, Buyer Equity (if any) and the CCPR (as hereinafter defined) under the Plan, and (3)

their participation in the other activities described in Bankruptcy Code § 1125. Votes for acceptance and rejection of the Plan were solicited in good faith and in compliance with Bankruptcy Code §§ 1125 and 1126, Bankruptcy Rules 3017 and 3018, the Disclosure Statement, the Disclosure Statement Order, all other applicable provisions of the Bankruptcy Code and all other applicable rules, laws and regulations. In addition, all procedures used to distribute the Solicitation Package to Holders of Claims and Equity Interests were fair, and conducted in accordance with the Bankruptcy Code, the Bankruptcy Rules, the Local Bankruptcy Rules, and all other applicable rules, laws and regulations. Therefore, the Plan Proponents, Buyer, and their respective directors, officers, employees, managers, members, attorneys, affiliates, agents and professionals are entitled to the full protections afforded by Bankruptcy Code § 1125(e).

### Compliance with Bankruptcy Code § 1129

E.    <u>The Plan Proponents have satisfied their burden of proof.</u>  A plan proponent has the burden to prove the requirements for confirmation by a preponderance of the evidence.[2] Here, the Plan Proponents have satisfied their burden of proof with respect to confirmation of the Plan.

F.    <u>Plan Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(1)).</u>  The Plan complies with the applicable provisions of the Bankruptcy Code, thereby satisfying Bankruptcy Code § 1129(a)(1).  Congress enacted Bankruptcy Code § 1129(a)(1) to ensure that a plan complies with the Bankruptcy Code's provisions regarding classification of claims and interests

---

[2]  *See Heartland Fed. Sav. & Loan Ass'n v. Briscoe Enters. (In re Briscoe Enters., Ltd., II)*, 994 F.2d 1160, 1163-65 (5th Cir. 1993) (recognizing that "preponderance of the evidence is the debtor's appropriate standard of proof both under § 1129(a) and in a cram down").

(11 U.S.C. § 1122*) and the contents of a plan of reorganization (11 U.S.C. § 1123).[3] These provisions are discussed in the following paragraphs.

G.    <u>Plan Compliance with Bankruptcy Code § 1122</u>.  The Plan complies with the classification requirements of the Bankruptcy Code.  Classification of claims and interests is governed by Bankruptcy Code § 1122, which provides that "a plan may place a claim or interest in a particular class only if such claim or interest is substantially similar to the other claims or interests of such class." 11 U.S.C. § 1122(a).  This section does not require that claims or interests within a particular class be identical.[4]  A plan proponent has flexibility in classifying claims, so long as the proponent has some reasonable basis for the classification or the creditor agrees to it.[5]

H.    Under the Plan, the claims or equity interests within each class are substantially similar to the other claims or equity interests within that class.  The Plan classifies claims and interests as follows:

Class 1:       Allowed Ad Valorem Tax Claims

Class 2:       Allowed Priority Claims

Class 3:       Allowed First Lien Secured Claims

---

[3] *See* S. REP. NO. 95-989, at 126 (1971), *reprinted in* 1978 U.S.C.C.A.N. 5787; H.R. REP. NO. 95-595, at 412 (1977), *reprinted in* 1978 U.S.C.C.A.N. 5963; *see also Kane v. Johns-Manville Corp.*, 843 F.2d 636, 648 (2d Cir. 1988).

[4] *In re DRW Property Co*., 60 B.R. 505, 511 (Bankr. N.D. Tex. 1986); *see also Phoenix Mut. Life Ins. Co. v. Greystone III Joint Venture (In re Greystone III Joint Venture)*, 995 F.2d 1274, 1278-79 (5th Cir. 1991) ("A fair reading of both subsections [of section 1122] suggests that ordinarily 'substantially similar claims,' those which share common priority and rights against the debtor's estate, should be placed in the same class").

[5] *See In re Jersey City Med. Center*, 817 F.2d 1055, 1060-61 (3d Cir. 1987) ("Congress intended to afford bankruptcy judges broad discretion [under section 1122 of the Bankruptcy Code] to decide the propriety of plans in light of the facts of each case.").  A plan proponent cannot "classify similar claims differently in order to gerrymander an affirmative vote on a reorganization plan," but there may be good business reasons to support separate classification. *In re Briscoe Enterprises.*, 994 F.2d at 1167 (quotations omitted); *see also In re The Heritage Org., L.L.C.*, 375 B.R. 230, 288 (Bankr. N.D. Tex. 2007) ("Substantially similar claims must be classified together unless some reason, other than gerrymandering, exists for separating them").

| | |
|---|---|
| Class 4: | Allowed Second Lien Secured Claims |
| Class 5: | M&M Secured Claims |
| Class 5A: | Allowed M&M Secured Claim - Hughes Specialty Tools |
| Class 5B: | Allowed M&M Secured Claim - Knight Oil |
| Class 6: | Allowed Other Secured Claims |
| Class 7A: | Allowed Non-Second Lien General Unsecured Claims |
| Class 7B: | Allowed Second Lien Deficiency Claims |
| Class 8: | Allowed Subordinated Claims |
| Class 9: | Allowed Equity Interests |

I.       Valid business, legal, and factual reasons exist for the separate classification of each of these classes of Claims and Equity Interests, and there is no unfair discrimination or gerrymandering between or among the holders of Claims and Equity Interests. Classifying and treating Non-Second Lien General Unsecured Claims (Class 7A) differently than the Second Lien Deficiency Claims (Class 7B) is reasonable and appropriate because, subject to confirmation and consummation of the Plan, the Second Lien Holders (as part of the global settlement) will subordinate their distributions on account of their deficiency claims to the negotiated distributions provided under the Plan to the Non-Second Lien General Unsecured Claims.

J.       Similarly, a reasonable justification also exists for the classification of Class 5 M&M Lien Claims. Secured claims, in particular mechanics liens, may be classified together

when there is a reasonable basis for doing so.[6]  The M&M Secured Claims are in fact substantially similar under Bankruptcy Code § 1122(a), and there is a reasonable basis for classifying them together.  All of the M&M Secured Claims arise under a common source—contractual relationships and state law providing similar relief to providers of goods and services to operators—and are secured by similar collateral—portions of the Debtors' oil and gas interests and (in some circumstances) related assets.  Thus, the M&M Secured Claims are substantially similar, and the classification of those Claims in one Class is appropriate.[7]  The subclassification of M&M Claims as provided in paragraph 27 of the Disclosure Statement Order is appropriate under the circumstances and is in compliance with Bankruptcy Code § 1122.

K.     In sum, all Claims and Equity Interests within each Class under the Plan are substantially similar and are afforded equal and reasonable treatment, or the claimant has agreed to the classification.  Accordingly, the classification of Claims and Equity Interests under the Plan satisfies the requirements of Bankruptcy Code § 1122.

L.     <u>The Plan Complies with Bankruptcy Code § 1123</u>.  In accordance with Bankruptcy Code § 1123(a), the Plan: (1) designates Classes of Claims and Equity Interests, other than Claims of a kind specified in Bankruptcy Code §§ 507(a)(2), 507(a)(3), or 507(a)(8); (2) specifies Classes of Claims and Equity Interests that are not Impaired under the Plan;

---

[6] *See* COLLIER ON BANKRUPTCY, ¶ 1122.03[4][c]; COLLIER ON BANKRUPTCY, ¶ 1111.03[2][a] ("Mechanics lienors may also comprise such a class" of claims.); *In re Chateaugay Corp.*, 10 F.3d 944, 956 (2nd Cir. 1993) (holding the debtors had a rational basis for classifying indemnity claims secured by letters or credit or surety bonds separately from an unsecured indemnity claim); *In re Mid-State Raceway, Inc.*, 343 B.R. 21 (Bankr. N.D.N.Y. 2006) (holding creditors asserting mechanics' liens must be classified together as there was no business justification for classifying them separately); *In re Dupell*, No. 99-10561DWS, 2000 WL 192972 (Bankr. E.D. Pa. Feb. 15, 2000) (classifying secured mortgages on nine different properties into five classes based on whether the property securing the mortgages was rental or nonrental income).

[7] *See In re Valley Park Group, Inc.*, 96 B.R. 16 (Bankr. N.D.N.Y.1989) (stating that "holders of mechanic's liens hold claims markedly different from the claims of the unsecured trade creditors and should be treated by and classified in the Plan accordingly").

(3) specifies the treatment of Classes of Claims and Equity Interests that are Impaired under the Plan; (4) provides the same treatment for each Claim or Equity Interest of a particular Class, unless the holder of a particular Claim or Equity Interest agrees to less favorable treatment of their respective Claim or Equity Interest; (5) provides for adequate means for the Plan's implementation; (6) provides for the inclusion in the charter of the Debtors the provision required under Bankruptcy Code § 1123(a)(6); and (7) contains only provisions that are consistent with the interests of holders of Claims and Equity Interests and with public policy with respect to the manner of selection of the Liquidating Trustee and of any officer or director of the Reorganized Debtors and Newco on and after the Effective Date. The relief provided in the Plan is fair and necessary for the orderly implementation of the Plan and the administration of the Estates. Therefore, the Plan satisfies the requirements of Bankruptcy Code § 1123(a) and (b).

     M.    <u>Plan Proponents' Compliance with Bankruptcy Code (11 U.S.C. § 1129(a)(2))</u>. In accordance with Bankruptcy Code § 1129(a)(2), the Plan Proponents have complied with the applicable provisions of the Bankruptcy Code. The Debtors are proper debtors under Bankruptcy Code § 109. The Plan Proponents have complied with the applicable provisions of the Bankruptcy Code (including sections 1122, 1123, 1124, 1125, 1126, and 1128), the Bankruptcy Rules (including Bankruptcy Rules 3017, 3018, and 3019), and the Disclosure Statement Order in transmitting the Plan, the Disclosure Statement, the Ballots, and all related documents and notices, and in soliciting and tabulating votes on the Plan.

     N.    Votes to accept or reject the Plan were solicited by the Debtors and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys

and agents after the Court approved the adequacy of the Disclosure Statement pursuant to Bankruptcy Code § 1125(a).

O.     The Plan Proponents and their respective members, partners, representatives, officers, directors, employees, advisors, attorneys and agents have solicited and tabulated votes on the Plan and have participated in the activities described in Bankruptcy Code § 1125 fairly, in good faith within the meaning of Bankruptcy Code § 1125(e) and in a manner consistent with the applicable provisions of the Disclosure Statement Order, the Disclosure Statement, the Bankruptcy Code, the Bankruptcy Rules and all other applicable laws, rules and regulations and are entitled to the protections afforded by Bankruptcy Code § 1125(e) and the exculpation provisions set forth in <u>Article XVIII</u> of the Plan.

P.     The Plan Proponents and their respective members, officers, directors, employees, advisors, attorneys and agents have participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code with regard to the offering, issuance and distribution of recoveries under the Plan and, therefore, are not, and on account of such distributions will not be, liable at any time for the violation of any applicable law, rule or regulation governing the solicitation of acceptances or rejections of the Plan or Distributions made pursuant to the Plan, so long as such Distributions are made consistent with and pursuant to the Plan.

Q.     <u>Plan Proposed in Good Faith (11 U.S.C. § 1129(a)(3))</u>.  To be confirmed, a plan must have been "proposed in good faith and not by any means forbidden by law."  11 U.S.C. § 1129(a)(3).  A plan is proposed in good faith if there is a reasonable likelihood that the plan

will achieve a result consistent with the objectives and purposes of the Bankruptcy Code.[8] "The requirement of good faith must be viewed in light of the totality of the circumstances surrounding the establishment of a Chapter 11 plan . . . ."[9]

R.     There is no question that the Plan is proposed in good faith and not by any means forbidden by law. The Debtors filed these reorganization cases with the legitimate and honest purpose of developing an orderly process to compensate legitimate claimants while preserving the Debtors' business and maximizing value. The Plan culminates a nine-month reorganization process during which the Debtors consistently have engaged in arm's-length negotiations among entities having very different and, in many instances, competing interests, all aimed at an over-arching goal of maximizing the value of the Debtors and the recovery to holders of Claims and Equity Interests in accordance with the Bankruptcy Code. In accordance with Bankruptcy Code § 1129(a)(3), the Plan Proponents have proposed the Plan in good faith and not by any means forbidden by law. All transactions contemplated by the Plan were negotiated and consummated at arm's-length, without collusion, and in good faith. In determining that the Plan has been proposed in good faith, the Bankruptcy Court has examined the totality of the circumstances surrounding the formulation of the Plan and the solicitation of votes to accept or reject the Plan. Furthermore, the Plan represents extensive arms-length negotiations among the Plan Proponents and other parties in interest, as well as their respective legal and financial advisors, and reflects the best interests of the Debtors' Estates and holders of Claims and Equity Interests.

---

[8]  *In re T-H New Orleans Ltd. P'ship*, 116 F.3d at 802; *In re Madison Hotel Assocs.*, 749 F.2d 410, 424-425 (7th Cir. 1984).

[9]  *Brite v. Sun Country Dev. (In re Sun Country Dev.)*, 764 F.2d 406, 408 (5th Cir. 1985); *see also In re JT Thorpe Co.*, 308 B.R. 782, 787 (Bankr. S.D. Tex. 2003).

S.     Payment for Services or Costs and Expenses (11 U.S.C. § 1129(a)(4)).     In accordance with Bankruptcy Code § 1129(a)(4), all payments and distributions, made or to be made by the Plan Proponents, the Reorganized Debtors, the Buyer, the Liquidating Trustee or by any other Person issuing equity securities or acquiring property under the Plan, for services or for costs and expenses in, or in connection with, these Cases, or in connection with the Plan and incident to these Cases, have been approved by, or are subject to approval of, the Bankruptcy Court as reasonable, unless otherwise ordered by the Bankruptcy Court.

T.     Directors, Officers, and Insiders (11 U.S.C. § 1129(a)(5)).     The Plan Proponents have complied with Bankruptcy Code § 1129(a)(5).   The Persons that must be identified pursuant to Bankruptcy Code § 1129(a)(5) have been identified in the Disclosure Statement, Plan, Plan Supplement, and Stock Purchase Agreement.   These provisions of the Plan are consistent with the interests of Claim and Equity Interest holders and with public policy, thereby satisfying Bankruptcy Code § 1129(a)(5).

U.     No Rate Changes (11 U.S.C. § 1129(a)(6)).   In accordance with Bankruptcy Code § 1129(a)(6), the Debtors are not subject to any governmental regulation of any rates.

V.     Best Interests of Creditors (11 U.S.C. § 1129(a)(7)).     Bankruptcy Code § 1129(a)(7), the "best interests of creditors test," requires that, with respect to each impaired class, each holder of a claim or interest in the class:

> i.     has accepted the plan; or
>
> ii.     will receive or retain under the plan on account of such claim or interest property of a value, as of the effective date of the plan, that is not less than the amount that such holder would so receive or retain if the debtor were liquidated under chapter 7 of this title on such date.

W.     The testimony and liquidation analysis presented by the Debtors' financial advisor, Jefferies & Co., Inc., in connection with the Confirmation Hearing, and other evidence adduced at the Confirmation Hearing, establish that the requirements of Bankruptcy Code § 1129(a)(7) are satisfied by the Debtors' Plan.   In accordance with Bankruptcy Code § 1129(a)(7), with respect to Classes of Impaired Claims or Impaired Equity Interests (*i.e.*, Classes 4 through 9 of the Debtors), each holder of a Claim or Equity Interest has accepted the Plan or will receive or retain under the Plan, on account of such Claim or Equity Interest, property of a value, as of the Effective Date, that is not less than the amount that such holder would so receive or retain if the Debtors were liquidated under chapter 7 of the Bankruptcy Code on such date.

X.     <u>Acceptance or Rejection of Certain Classes (11 U.S.C. § 1129(a)(8)).</u>  Classes 1, 2, and 3, are not Impaired and thus are deemed to have accepted the Plan.  Classes 4, 5, 5B, 6, 7A, and 7B are Impaired, and as demonstrated by the BMC Declaration and the Stipulation (as defined below) at Docket No. 1137, those Classes have accepted the Plan in accordance with Bankruptcy Code § 1126(c).  Class 5A is Impaired, and those Classes have rejected the Plan in accordance with Bankrutpcy Code § 1126(c).  Classes 8 and 9 are Impaired, and the holders of Claims and Equity Interests in those Classes are not entitled to receive or retain any property under the Plan and they are deemed to have rejected the Plan.

Y.     <u>Treatment of Administrative, Priority, and Tax Claims (11 § U.S.C. § 1129(a)(9)).</u> The Plan's treatment of Claims of a kind specified in Bankruptcy Code §§ 507(a)(1) through (8) satisfies the requirements set forth in Bankruptcy Code § 1129(a)(9).

Z.     <u>Acceptance by Impaired Class (11 U.S.C. § 1129(a)(10)).</u>  The evidence establishes, as discussed above, that all of the voting Impaired Classes under the Plan, other than

the voting impaired M&M Lien subclass of Hughes Specialty Tools (Class 5A), voted overwhelming to accept the Plan. In accordance with Bankruptcy Code § 1129(a)(10), at least one Class of Claims that is Impaired under the Plan has voted to accept the Plan, without including acceptances of the Plan by any insider.

AA.    Feasibility (11 U.S.C. § 1129(a)(11)).  The evidence proffered or adduced at the Confirmation Hearing with respect to feasibility (1) is persuasive, credible, and accurate as of the dates such analysis was prepared, presented, or proffered, (2) utilizes reasonable and appropriate methodologies and assumptions, (3) has not been controverted by other evidence, (4) establishes that Confirmation of the Plan is not likely to be followed by the need for further financial reorganization or liquidation of the Reorganized Debtors, the Liquidating Trust, or Newco except with respect to such other transactions proposed in the Plan, and (5) establishes that the Reorganized Debtors will have sufficient funds available to meet their obligations under the Plan. Thus, the Plan satisfies the requirements of Bankruptcy Code § 1129(a)(11).

BB.    Payment of Fees (11 U.S.C. § 1129(a)(12)).  In accordance with Bankruptcy Code § 1129(a)(12), to the extent that fees payable to the United States Trustee under 28 U.S.C. § 1930(a)(6) have not been paid, the Plan provides for the payment of all such fees on the Effective Date of the Plan and as they come due after the Effective Date.

CC.    Continuation of Retiree Benefits (11 U.S.C. § 1129(a)(13)).  In accordance with Bankruptcy Code § 1129(a)(13), the Plan does not alter retiree benefits to the extent any such benefits currently exist.

DD.    Other Provisions of 11 U.S.C. § 1129(a).  The provisions of 11 U.S.C. §§ 1129(a)(14), (a)(15), and (a)(16) are not applicable to the Debtors.

EE.     No Unfair Discrimination; Fair and Equitable (11 U.S.C. § 1129(b)).     The
Bankruptcy Court finds and concludes that Classes 5A, 8 and 9 are Impaired Classes of Claims
and Equity Interests, respectively, that have rejected or are deemed to have rejected the Plan
pursuant to Bankruptcy Code § 1126(g).  The Plan does not discriminate unfairly and is fair and
equitable with respect to Classes 5A, 8 and 9, as required by Bankruptcy Code § 1129(b)(1) and
(2).

FF.     Class 5A (Hughes Specialty Tools).  The claim in Classes 5A, which is a subclass
of Class 5 M&M Secured Claims, is asserted to be secured by an M&M Lien.  The Debtors
dispute the validity and amount of each such holder's Lien and Claim.  Under the Plan, the
Vested Assets shall vest in the Reorganized Debtors Free and Clear.  Unless the holder of an
M&M Secured Claim otherwise agrees in accordance with the provisions in Section 4.2(e) of the
Plan, each holder of an Allowed M&M Secured Claim against any of the Debtors' Estates shall
either (1) be paid by the Liquidating Trustee from the Carveout Reserve, as set forth in Section
13.5 of the Plan, the amount of such holder's Allowed M&M Secured Claim in one Cash
payment, or (2) receive such other less favorable treatment from the Carveout Reserve that may
be agreed upon in writing by the Liquidating Trustee and such holder, in exchange for and in full
satisfaction and discharge of the holders' Allowed M&M Secured Claim.  Any security interest
in or Lien upon property, or the net proceeds from the sale of such property, related to such
Claim shall attach to the Cash held in the Carveout Reserve with the same force, validity,
priority, and effect, if any, of such security interest and Lien.  The Plan, therefore, protects fully
M&M Secured Claims, is fair and equitable, does not discriminate unfairly, and satisfies sections
1129(b)(1) and (2) of the Bankruptcy Code.

GG.   Class 8 Subordinated Claims.   The Plan also satisfies the requirements of Bankruptcy Code § 1129(b)(1) and (2) with regard to Class 8 (Allowed Subordinated Claims). There are no known claims in Class 8.  If a Claim arises that is properly classified as a Class 8 Claim, the treatment of Class 8 creditors under the Plan does not reflect disparate treatment between similarly situated creditors.  Subordinated Claims are accorded lesser priority under the Bankruptcy Code than timely-filed General Unsecured Claims.  Further, no Class junior to Class 8 will receive any property under the Plan  Hence, the Plan satisfies the fair and equitable test under Bankruptcy Code § 1129(b)(2)(B) with respect to Class 8.

HH.   Class 9 Equity Interests.  The Plan is fair and equitable and does not discriminate unfairly as to Class 9 Equity Interests.  With respect to a class of *equity interests*, "fair and equitable" includes the requirement that either (i) each impaired equity interest receives or retains, on account of that equity interest, property of a value equal to the greater of the allowed amount of any fixed liquidation preference to which the holder is entitled, any fixed redemption price to which the holder is entitled, *or the value of the equity interest*, or (ii) the holder of any equity interest that is junior to the equity interest of that class will not receive or retain under the plan, on account of that junior equity interest, any property.  11 U.S.C. § 1129(b)(2)(C).

II.   Based on the evidence, the value of the Equity Interests in Crusader is negative. Accordingly, the first prong of Bankruptcy Code § 1129(b)(2)(C) is satisfied.  In addition, no junior classes will receive any property under the plan, so the second prong of Bankruptcy Code § 1129(b)(2)(C) is also satisfied.

JJ.   The thrust of the objections of the Ad Hoc Committee of Equity Holders is that the Debtors are solvent because the value of the Debtors' estates exceeds the amount of Creditors' Claims in these Cases and, therefore, the holders of Class 9 Equity Interests should be

entitled to participate in Distributions under the Plan. The Court finds that this argument is contrary to the great weight of the evidence because the best evidence of value is the results of the competitive auction conducted by the Debtors, and the Court finds that those results in no way indicate that the Debtors are solvent. Rather, the results of the auction and the fair value of the minimal assets that are being retained (and not sold) reflect that the value of the Class 9 Equity Interests is negative.

KK. Therefore, the Plan may be confirmed as to Classes 5A, 8 and 9. Upon confirmation and the occurrence of the Effective Date, the Plan shall be binding upon the members of all Classes of Claims and Equity Interests, including, but not limited to, Classes 5A, 8 and 9.

LL. Only One Plan – 11 U.S.C. § 1129(c). The Bankruptcy Court finds and concludes that, other than the Plan (including previous versions thereof), no other plan has been filed in the Cases. Accordingly, the requirements of Bankruptcy Code § 1129(c) have been satisfied.

MM. Principal Purpose (11 U.S.C. § 1129(d)). The principal purpose of the Plan is not the avoidance of taxes or the avoidance of the application of section 5 of the 1933 Act.

NN. Burden of Proof. The Plan Proponents have met their burden of proving the elements of Bankruptcy Code §§ 1129(a) and (b).

**Modifications to the Plan**

OO. Approval of Plan Modifications. Bankruptcy Code § 1127(a) provides, with respect to chapter 11 plan modifications:

> The proponent of a plan may modify such plan at any time before confirmation, but may not modify such plan so that such plan as modified fails to meet the requirements of Sections 1122 and 1123 of this title. After the proponent of a plan files a modification of such plan with the court, the plan as modified becomes the plan.

US 194465v.6

11 U.S.C. § 1127(a).  In addition, Bankruptcy Rule 3019 provides as follows:

> In a chapter 9 or chapter 11 case, after a plan has been accepted and before its confirmation, the proponent may file a modification of the plan. If the court finds after hearing on notice to the trustee, any committee appointed under the Code, and any other entity designated by the court that the proposed modification does not adversely change the treatment of the claim of any creditor or the interest of any equity security holder who has not accepted in writing the modification, it shall be deemed accepted by all creditors and equity security holders who have previously accepted the plan.

Fed. R. Bankr. P. 3019.  The Plan Proponents made certain modifications to the Plan, all of which have been filed with the Court ("Modifications").  The Modifications do not materially and adversely affect or change the treatment of any Claims or Equity Interests.  The Modifications comply with Bankruptcy Code § 1127, Bankruptcy Rule 3019, and all other provisions of the Bankruptcy Code, including, without limitation, Bankruptcy Code §§ 1122 and 1123, and do not require additional disclosure under Bankruptcy Code § 1125 or the re-solicitation of ballots under Bankruptcy Code § 1126, nor do they require that holders of Claims or Equity Interests be afforded an opportunity to change previously cast votes as filed with the Bankruptcy Court.  Disclosure of the Modifications constitutes due and sufficient notice thereof under the circumstances of these Cases.  Accordingly, the Plan, as modified, is properly before the Bankruptcy Court and all votes cast with respect to the Plan prior to the Modifications shall be binding and shall be deemed to be cast with respect to the Plan, as modified on the date of this Confirmation Order, pursuant to Bankruptcy Code § 1127(d) and Bankruptcy Rule 3019.

### Appeal of this Confirmation Order

PP.    The reversal or modification on appeal of this Confirmation Order does not affect the validity of the transactions contemplated under the Plan with respect to an entity that purchased or acquired property or an interest in property in good faith, whether or not such entity

knew of the pendency of the appeal, unless such authorization and the transactions contemplated under the Plan are stayed pending appeal.

**Successful Bid and Backup Bids**

QQ.    Marketing Process and Auction.  The Debtors have embarked on a comprehensive strategy to market their assets in a manner specifically designed and implemented to ensure that the highest and best offers for the Debtors and their assets would be forthcoming.  Specifically, the Court finds that the Debtors extensively marketed the Vested Assets, New Crusader Shares, and New Subsidiaries Equity Interests and conducted the sales process in compliance with the *Order (A) Approving the Procedures for the Solicitation of Higher or Better Offers; (B) Approving the Form and Manner of Notice; (C) Approving Procedures for Determining Cure Amounts for Executory Contracts and Unexpired Leases; (D) Approving the Stock Purchase Agreement and Authorizing the Debtors to Enter Into the Stock Purchase Agreement and Comply with Their Obligations Thereunder; (E) Approving a Break-Up Fee in Connection with the Transaction Contemplated by the Stock Purchase Agreement; and (F) Granting Related Relief* [Docket No. 761] (the "Bid Procedures Order").  The evidence shows that, prior to the selection of a stalking horse bidder, the Debtors, through their advisors, contacted 121 potential buyers for the Debtors and/or their respective assets, including 87 strategic candidates and 34 financial parties that the Debtors' advisors had reason to believe might be interested in pursuing a transaction to acquire the assets or equity of the Debtors.  The evidence shows that 97 of these parties were provided confidentiality agreements, of which 53 were executed and returned on behalf of potential purchasers.  Bidders were provided access to a comprehensive virtual data room of information, data and records regarding the Debtors and their assets upon execution of the confidentiality agreements.  The evidence further shows that the Debtors received 14 bids

during this process.  Ultimately, the Debtors chose SandRidge Energy and SandRidge Exploration as the stalking horse bid (the "Stalking Horse") and requested that the Court approve both the entry into a stock purchase agreement with the Stalking Horse and the proposed bid procedures (the "Bid Procedures"), which the Court approved in the Bid Procedures Order.  On or before the Bid Deadline (as defined in the Bid Procedures), the Debtors received two Qualified Bids (as defined in the Bid Procedures) in addition to the stalking horse bid of SandRidge Energy and SandRidge Exploration.  Potential bidders had a full and fair opportunity to submit bids and participate in the auction pursuant to the Bid Procedures.  On November 13, 2009, the Debtors conducted a competitive auction pursuant to the Bid Procedures.  The evidence indicates that the bidding at this auction was robust, conducted fairly, in good faith, and without collusion, involved over twenty rounds of competitive bidding and in accordance with the Bid Procedures Order ultimately led to the selection of a winning bid submitted by a party other than the Stalking Horse.  The totality of this evidence convinces the Court that the Debtors completed a full marketing and auction process in accordance with the Bid Procedures and all other requirements of the Bankruptcy Code and other applicable law.  The Debtors exercised their valid business judgment in identifying Qualified Bids, selecting the Initial Highest Bid (as defined in the Bid Procedures), conducting the auction, and identifying the successful bidder and the back-up bidder, all in accordance with the Bid Procedures and all other requirements of the Bankruptcy Code and other applicable law.  The Debtors' marketing process occurred over eight months.  Based on the testimony, the Court finds that this is an adequate – if not long – marketing period for these Debtors and their oil and gas assets.  Potential buyers had more than adequate time to conduct due diligence, vet the Debtors, and discuss proposals with the Debtors' management and professionals.  Given the scope, manner and length of the marketing process

the Court finds that this process has yielded fair value for the Debtors, and is not a "fire sale" or liquidation value. The Court further finds that additional marketing of the assets or the Debtors would not likely lead to any higher and better offers, and thus, additional marketing of the assets and/or the Debtors would not be in the best interest of the estates. Accordingly, the Court finds that the auction process should be and is appropriately closed, pending consummation of the Plan.

RR. <u>Successful Bid</u>. The board of directors of Crusader has selected the bid made by J/M Crusader Acquisition Sub LLC (the "<u>Successful Bidder</u>") as the Successful Bid (as defined in Bid Procedures). The Successful Bid constitutes the highest and best offer for the Vested Assets and the determination of the board of directors of Crusader is a valid and sound exercise of the Debtors' business judgment. The terms of the Successful Bid are reflected in that certain Stock Purchase Agreement dated as of November 13, 2009 by and among the Successful Bidder and the Debtors as amended by Amendment No. 1 to Stock Purchase Agreement dated December 16, 2009 (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "<u>Successful Stock Purchase Agreement</u>").

SS. <u>Back-Up Bid</u>. The board of directors of Crusader has selected the bid made by Crow Creek Energy II, L.L.C. (the "<u>Back-Up Bidder</u>") as the Back-Up Bid (as defined in the Bid Procedures) should the Successful Bid not be consummated. The terms of the Back-Up Bid are reflected in that certain Stock Purchase Agreement dated as of November 13, 2009 by and among the Back-Up Bidder and the Debtors (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "<u>Back-Up Stock Purchase Agreement</u>").

TT. <u>Good Faith of Plan Proponents and Buyer</u>. The Plan Proponents and Buyer (as defined and referenced in paragraph 5 below) have acted in good faith with respect to the Successful Stock Purchase Agreement and Back-Up Stock Purchase Agreement. In addition, Buyer is a good faith purchaser of the Debtors' property and interests and is entitled to the protections under Bankruptcy Code § 363(m). Buyer participated in a robust marketing process, which culminated in an auction where the Successful Bidder was selected as the winning bidder after numerous rounds of competitive bidding. Buyer complied with this Court's bidding procedures and participated in the auction in good faith, without collusion and with the honest intent to win the auction with the highest and best bid.

UU. <u>Arm's Length Sale</u>. The Successful Stock Purchase Agreement and the Back-Up Stock Purchase Agreement were negotiated, proposed, and entered into by the Debtors and the Successful Bidder and the Back-Up Bidder without collusion and in good faith, and from arm's length bargaining positions. The Buyer has not acted in a collusive manner with any person and the purchase price was not controlled by any agreement among the bidders.

VV. <u>Highest and Best Offer</u>. The Successful Bid constitutes the highest and best offer for the Vested Assets, and will provide the greatest recovery for the Debtors' estates than would be provided by any alternative transaction. The Debtors' determination that the Successful Bid constitutes the highest and best offer for the Vested Assets constitutes a valid and sound exercise of the Debtors' business judgment.

**Securities Findings and Conclusions/Exemptions**

WW. <u>Securities Issuance</u>. Each of the Liquidating Trust and the entity contractually obligated to pay the CCPR (as defined in the Successful Stock Purchase Agreement or the Back-Up Purchase Agreement, as applicable) (the "<u>CCPR Entity</u>") constitutes or will constitute a

"successor" and a "newly organized successor" to the Debtors under the Plan solely for purposes of Sections 1145 and 1125(e) of the Bankruptcy Code and each of the Plan Proponents has participated in good faith and in compliance with the applicable provisions of the Bankruptcy Code in the offer, sale, issuance and distribution of the Liquidating Trust Interests and the CCPR, as well as all other securities that may be deemed to be offered, sold, issued or distributed pursuant to the Plan including without limitation the Newco Equity Interest, the New Crusader Shares and the New Subsidiaries Equity Interests, pursuant to the Plan. With respect to the offer, sale, issuance and distribution of the Liquidating Trust Interests and the CCPR (to the extent such interests and/or rights constitute securities under the 1933 Act) pursuant to the terms of the Plan, (1) none of the Debtors, the Liquidating Trust nor the CCPR Entity are underwriters within the meaning of section 1145(b) of the Bankruptcy Code, (2) the offer, sale, issuance and distribution of the Liquidating Trust Interests and the CCPR shall be pursuant to the Plan (as a plan of reorganization), (3) the Liquidating Trust Interests and the CCPR are to be distributed in exchange for Claims against or Equity Interests in the Debtors, (4) the Liquidating Trust Interests (to the extent constituting a security under the 1933 Act), as securities of the Liquidating Trust, constitute securities of a successor and newly organized successor to the Debtors under the Plan (as a plan of reorganization) for purposes of Sections 1145 and 1125(e) of the Bankruptcy Code, and (5) the CCPR (to the extent constituting a security under the 1933 Act) constitute securities of a successor and newly organized successor to the Debtors under the Plan (as a plan of reorganization) for purposes of Sections 1145 and 1125(e) of the Bankruptcy Code. The findings of fact and conclusions of law in this paragraph WW shall be binding upon all parties to the Cases, the Debtors, the Reorganized Debtors, the Liquidating Trust, the Liquidating Trustee,

Newco, the U.S. Securities and Exchange Commission (the "SEC"), and all other federal, state, and local regulatory enforcement and other agencies.

XX. <u>Second Lien Disclosures</u>. The disclosure to the Liquidating Trust and Reorganized Crusader (1) by the Second Lien Agent of the identity and taxpayer identification number or social security number of the Second Lien Holders, (2) by all Second Lien Holders of the identity and taxpayer identification number or social security number of all other depositories, transfer agents, street name holders, and all other banks, brokers, or agent nominee record holders (collectively, "<u>Record Holders</u>") of the Second Lien Notes on whose behalf the Second Lien Holders hold Second Lien Notes, (3) by the Record Holders of the identity and taxpayer identification number or social security number of all other beneficial owners ("<u>Third Party Beneficial Owners</u>") of the Second Lien Notes held of record by such Record Holders for the benefit of Third Party Beneficial Owners, and (4) by the Second Lien Agent, the Second Lien Holders, all other Record Holders and all Third Party Beneficial Owners of the principal amount of the Second Lien Notes attributable to the Second Lien Holders, the Record Holders and all other Third Party Beneficial Owners is essential to the completion, implementation, and operation of the Plan.

YY. <u>Exemptions from Recording, Stamp, and Similar Taxes (11 U.S.C. § 1146(a))</u>. The Bankruptcy Court finds and concludes that, in accordance with Bankruptcy Code § 1146(a), any transfers from a Debtor to any Person pursuant to the Plan shall not be subject to any document recording tax, stamp tax, conveyance fee, intangibles or similar tax, mortgage tax, real estate transfer tax, mortgage recording tax, or other similar tax or governmental assessment

**Transactions Pursuant to the Plan**

ZZ.     Settlement; Releases and Discharges.  Pursuant to Bankruptcy Code §§ 363 and 1123 and Bankruptcy Rule 9019, and in consideration for the Distributions and other benefits provided pursuant to the Plan, the provisions of the Plan shall constitute a good faith compromise and settlement of Claims, Causes of Action and controversies that a holder of any Claim may have with respect to any Allowed Claim or any Distribution to be made on account of such Allowed Claim, including but not limited to the settlement and compromise among the Debtors, the Committee, the members of the Committee (but only in their capacity as members of the Committee), First Lien Holders, and the Participating Second Lien Holders, and the elections that may be made by holders of M&M Secured Claims.  The entry of this Confirmation Order shall constitute the Bankruptcy Court's approval of the compromise or settlement of all such Claims, Causes of Action and controversies and the Bankruptcy Court's finding that such compromise or settlement is in the best interests of the Debtors, their Estates and the holders of such Claims and is fair, equitable, and reasonable. In accordance with the provisions of the Plan, pursuant to Bankruptcy Code §§ 363 and 1123 and Bankruptcy Rule 9019(a), without any further notice or action, order or approval of the Bankruptcy Court, the Debtors may compromise and settle Claims against them and Causes of Action against other Persons, in their sole and absolute discretion, and after the Effective Date, such right shall pass to the Reorganized Debtors with respect to Vested Assets, and to the Liquidating Trust, the Liquidating Trustee, and Newco, as applicable, with respect to the Liquidating Trust Assets (subject to the Liquidating Trust Agreement).

AAA. Release, Injunction, and Exculpation.  The release, injunction, and exculpation provisions are an integral part of the Plan and represent a valid exercise of the Debtors' business

judgment. Pursuing any such claims against the Released Parties is not in the best interest of the Debtors' estates and various constituencies as the costs involved likely would outweigh any potential benefit from pursuing such claims. The failure to affect the release, injunction, and exculpation provisions of the Plan would impair the Debtors' ability to confirm the Plan, and the release, injunction, and exculpation provisions of the Plan are fair, equitable and reasonable. Accordingly, the compromises and settlements embodied in the release, injunction, and exculpation provisions described in Article XVIII of the Plan are approved.

BBB.  <u>Issuance of Liquidating Trust Interests, Newco Equity Interests, New Subsidiary Equity Interests, and New Crusader Shares.</u>  The issuance and distribution of the Liquidating Trust Interests, Newco Equity Interests, New Subsidiaries Equity Interests, New Crusader Shares, and Buyer Equity in accordance with the provisions of the Plan are reasonable and necessary.

CCC.  <u>Vesting of Vested Assets</u>.  The vesting of the Vested Assets in the Reorganized Debtors, on the Effective Date, in accordance with the Plan is reasonable and necessary and done in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code § 1123(b).

DDD.  <u>Transfer of the Liquidating Trust Assets</u>.  The Debtors' transfer of the Liquidating Trust Assets (including, but not limited to, the Excluded Causes of Action) to the Liquidating Trust or to Newco, as applicable, on the Effective Date in accordance with the Plan and the Liquidating Trust Agreement is reasonable and necessary and made in accordance with applicable state law and applicable provisions of the Bankruptcy Code, including Bankruptcy Code §§ 363(b) and 1123(b)(3).

EEE.    Assumption of Executory Contracts and Unexpired Leases.    The assumption of the Assumed Contracts and rejection of other executory contracts and unexpired leases pursuant to the Plan and this Confirmation Order are reasonable exercises of the Debtors' business judgment and are in the best interests of the Debtors and their Estates.  The respective amounts on the list filed at Docket No. 811 (as modified by the Stipulations (as defined below)) are the maximum amounts necessary under Bankruptcy Code §§ 365(b)(1)(A) and (B) to cure all defaults under the Assumed Contracts and pay all actual pecuniary losses to the respective counterparties to the Assumed Contracts resulting from all such defaults.  Reservation of Cash (subject to later allowance) or payment of such cure amounts will be made as set forth herein, and the Reorganized Debtors, the Liquidating Trust, the Liquidating Trustee, and Newco as applicable, have provided adequate assurance of future performance under the Assumed Contracts.

FFF.    Plan Documents Valid and Binding.    All other documents reasonably necessary to implement the Plan have been negotiated in good faith and at arm's length, shall be, upon execution on or after the Effective Date, valid, binding, and enforceable agreements, and are in the best interests of the Debtors and their Estates and have been negotiated in good faith and at arm's length.

GGG.    Compliance with Bankruptcy Rule 3016.    In accordance with Bankruptcy Rule 3016(a), the Plan is dated and the Plan Proponents that submitted it and filed it are appropriately identified.  The filing of the Disclosure Statement with the clerk of this Court satisfies Bankruptcy Rule 3016(b).

**The Buyer, the Liquidating Trust, and Newco Are Not Successors to the Debtors**

HHH.  Save and except as needed to comply with Bankruptcy Code § 1145, the Reorganized Debtors, the Buyer, the Liquidating Trust, Newco and their affiliates, successors, or assigns are not, as a result of actions taken in connection with the Plan, successors to any of the Debtors or a continuation or substantial continuation of any of the Debtors or any enterprise of any of the Debtors.  The Liquidating Trust and the Buyer (including the CCPR Entity) or any affiliate of the Buyer that issues Buyer Equity or other securities as Consideration under the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable) shall be deemed to be a successor to the Debtors only to the limited extent needed to comply with Bankruptcy Code § 1145 and for no reason under any state or federal law.

**Miscellaneous Provisions**

III.  <u>Best Interests of Persons.</u>  Confirmation of the Plan is in the best interests of the Debtors, their Estates, holders of Claims and Equity Interests, and all other parties in interest.

JJJ.  <u>Findings of Fact and Conclusions of Law on the Record.</u>  All findings of fact and conclusions of law announced by this Bankruptcy Court on the record in connection with Confirmation of the Plan or otherwise at the Confirmation Hearing are incorporated herein by reference.  To the extent that any of the findings of fact or conclusions of law constitutes an order of this Court, they are adopted as such.

**ORDER**

Based on the foregoing findings of fact and conclusions of law, it is hereby **ORDERED** that:

1.  <u>Confirmation of Plan.</u>  The Plan, as modified herein, is **APPROVED** and **CONFIRMED** under Bankruptcy Code § 1129.  Except as otherwise set forth in this

Confirmation Order, the Plan is valid and enforceable pursuant to its terms and the terms of the Plan are incorporated by reference into and are an integral part of this Confirmation Order.

2. <u>Objections Overruled</u>. All objections that have not been withdrawn, waived, or settled are **OVERRULED** on the merits.

3. <u>Approval of Plan Documents</u>. The form and substance of the Plan Documents, as reflected in the Plan Supplement or otherwise (including all exhibits and attachments thereto and documents referred to therein) are hereby **APPROVED**. The execution, delivery, and performance by the Debtors, the Reorganized Debtors, the Liquidating Trustee, the Liquidating Trust and Newco of the Plan Documents are authorized and approved without the need for further corporate or other organizational action or further Order or authorization of the Bankruptcy Court. The Debtors and/or Reorganized Debtors are authorized and empowered to make any and all modifications to any and all documents included as part of the Plan and Plan Supplement that may be agreed to by the parties thereto and that are consistent with the Plan and the terms of this Confirmation Order.

4. <u>Authority</u>.

    a. The Debtors, the Liquidating Trustee, the Liquidating Trust and Newco are authorized and empowered (including without limitation with the authorities set forth in Sections 6.15 and 7.7 of the Plan) to take such actions and do all things as may be necessary or required to implement and effectuate the Plan, the transfer to the Liquidating Trust and Newco of the Trust Assets and the retention by the Reorganized Debtors of the Vested Assets, and this Confirmation Order.

b. The Debtors, the Liquidating Trustee, the Liquidating Trust and Newco, and their respective directors, officers, partners, members, managers, trustees, agents, representatives, and attorneys, are authorized, empowered and ordered to carry out all of the provisions of the Plan, to issue, execute, deliver, file and record, as appropriate, any instrument, or perform any act necessary to implement, effectuate, or consummate the Plan and this Confirmation Order, and to issue, execute, deliver, file and record, as appropriate, such other contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents (collectively, "<u>Documents</u>"), and to perform such other acts and execute and deliver such other Documents as are required by, consistent with and necessary or appropriate to implement, effectuate, or consummate the Plan and this Confirmation Order and the transactions contemplated thereby and hereby, all without the requirement of further application to, or order of, the Bankruptcy Court or further action by their respective directors, stockholders, managers, members or other beneficiaries, and with the like effect as if such actions had been taken by unanimous action of the respective directors, stockholders, managers, members or other beneficiaries of such entities.

c. The Debtors are further authorized, empowered and ordered to enter into and, if applicable, cause to be filed with the Secretary of State or other applicable officials of any applicable Governmental Authority any and all amended and/or restated certificates or articles of incorporation,

**ORDER CONFIRMING SECOND AMENDED JOINT**
**PLAN OF REORGANIZATION FOR THE DEBTORS**    **Page 30 of 59**

US 194465v.6

organization or formation or amendments to limited liability company agreements, operating agreements or regulations and all such other actions, filings, or recordings as may be required under appropriate provisions of the applicable laws of all applicable Governmental Authorities with respect to compliance with Section 1123(a)(6) of the Bankruptcy Code.

d.      This Confirmation Order shall constitute all approvals and consents, if any, required by Nevada Revised Statutes – Chapter 78, the General Corporation Law of the State of Delaware, Oklahoma General Corporation Act and all other applicable business corporation, trust, and other laws of the applicable Governmental Authorities with respect to the implementation and consummation of the Plan and all actions authorized by this Confirmation Order.

e.      The Chief Restructuring Officer of Crusader and any other officer of the Debtors and, from and after the Effective Date, the Liquidating Trustee are authorized to execute and perform, for and on behalf of each Debtor, any and all Documents and other instruments referred to in the foregoing clauses (b) and (c) and the Powers of Attorney referred to in clause (f) below and to certify or attest to any of the foregoing actions taken by the Debtors.  The execution of any such Document, instrument or the taking of any such action by the Chief Restructuring Officer of Crusader or any other officer of the Debtors or, from and after the Effective Date, the

Liquidating Trustee shall be, and hereby is, deemed conclusive evidence of the authority of such action.

f.     As of the Effective Date, the Liquidating Trustee (as trustee of the Liquidating Trust and as manager of Newco) is hereby irrevocably appointed as the Debtors' attorney-in-fact (which appointment as attorney-in-fact shall be coupled with an interest), with full authority in the place and stead of each Debtor and in the name of each Debtor (i) to take any action and to execute any instrument that the Liquidating Trustee, in the Liquidating Trustee's discretion, may deem to be necessary or advisable to convey, transfer, vest, perfect, and confirm title of the Trust Assets, including without limitation to issue, execute, deliver, file and record such contracts, instruments, releases, indentures, mortgages, deeds, bills of sale, assignments, leases, or other agreements or documents, and to file any claims, to take any action, and to institute any proceedings that the Liquidating Trustee may deem necessary or desirable in furtherance thereof and (ii) with such powers and authority as contained in the irrevocable powers of attorney (the "Powers of Attorney") in substantially the form admitted into evidence at the Confirmation Hearing, the execution of which by the Debtors is hereby authorized.

5.     Approval of Stock Purchase Agreements.   The Successful Stock Purchase Agreement, Back-Up Stock Purchase Agreement, and Stock Purchase Agreement dated as of September 22, 2009, by and among SandRidge Energy, SandRidge Exploration, and the Debtors (together with any schedules, addendums, exhibits, annexes, or other attachments thereto and as

supplemented, amended, and modified, the "SandRidge Stock Purchase Agreement") are each **APPROVED**. Notwithstanding anything in the Bid Procedures Order to the contrary, the Back-Up Bidder shall keep its Back-Up Bid open through twenty days after the entry of this Confirmation Order. The Debtors are authorized to (i) take all actions and consummate all transactions contemplated under the Successful Stock Purchase Agreement or the Back-Up Stock Purchase Agreement (if the Successful Bid is not consummated), in accordance with the Plan and this Confirmation Order and (ii) take all actions to terminate the SandRidge Stock Purchase Agreement. Section 6.08 of the SandRidge Stock Purchase Agreement shall survive termination of the SandRidge Stock Purchase Agreement. The Successful Bidder shall be the Buyer (as defined in the Plan) unless the Successful Bid is not consummated, in which case the Back-Up Bidder shall be the Buyer if the Back-Up Bid is consummated.

6.      Approval of Liquidating Trust Agreement. The Liquidating Trust Agreement in substantially the form admitted into evidence at the Confirmation Hearing (together with all schedules, addendums, exhibits, annexes, and other attachments thereto and as supplemented, amended, and modified, the "Liquidating Trust Agreement") is **APPROVED** , and the Debtors, the Reorganized Debtors, the Liquidating Trustee, the Liquidating Trust and Newco are authorized to take all actions contemplated under the Liquidating Trust Agreement, including making appropriate modifications that do not materially affect substantive rights.

7.      Approval of Cure and Settlement Stipulations. The stipulations that are filed at Docket Nos. 1086, 1092, 1093, 1094, 1095, 1096, 1099, 1101, 1102, 1103, 1107, 1109, 1110, 1115, 1121, 1130, 1131 and 1137 (collectively, the "Stipulations") are approved, and the Debtors are authorized to take all actions contemplated under the Stipulations.

8.     Plan Classification Controlling.  The terms of the Plan (as modified by paragraph 26 of the Disclosure Statement Order) shall govern the classification of Claims and Equity Interests for purposes of the Distributions to be made thereunder.  The classifications set forth on the Ballots tendered to or returned by the Holders of Claims in connection with voting on the Plan: (a) were set forth on the Ballots solely for purposes of voting to accept or to reject the Plan; and (b) shall not be binding on the Debtors and the Reorganized Debtors except for voting purposes.

9.     Vesting of Assets.  Except as otherwise set forth in the Plan or this Confirmation Order, on the Effective Date, (a) the Vested Assets shall vest in the applicable Reorganized Debtors Free and Clear; and (b) the Assumed Contracts shall be assumed by the applicable Debtor(s) as provided in Section 7.3 of the Plan and in this Confirmation Order and vest in the applicable Reorganized Debtor(s).  Except as otherwise set forth in the Plan or the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable), from and after the Effective Date, the Reorganized Debtors shall perform and pay when due liabilities under, or related to the ownership or operation of, the Vested Assets, and the Liquidating Trustee, Liquidating Trust and Newco shall not be responsible for any such liabilities.  The Reorganized Debtors may operate free of any restrictions of the Bankruptcy Code.

10.    Continued Existence.  The Reorganized Debtors shall continue to exist after the Effective Date as separate entities in accordance with the applicable law in the applicable jurisdiction in which they were formed under their respective certificates of formation or other formation documents, as applicable, and bylaws, operating agreements or similar organizational documents, as applicable, in effect before the Effective Date except as their certificates of

formation or other formation documents and bylaws, operating agreements or similar organizational documents may be amended pursuant to the Plan.

11. <u>Preservation of Causes of Action</u>. The provisions of <u>Sections 6.19</u> and <u>7.8</u> of the Plan are hereby approved in their entirety. The Debtors, the Liquidating Trust, the Liquidating Trustee, and the Reorganized Debtors, as applicable, expressly reserve all rights to prosecute any and all of their respective Causes of Action against any Person, except as otherwise expressly provided in the Plan. Unless any Causes of Action against a Person are expressly waived, relinquished, exculpated, released, compromised or settled in the Plan or a Bankruptcy Court order, the Debtors, the Liquidating Trust, the Liquidating Trustee, and the Reorganized Debtors, as applicable, expressly reserve all of their respective Causes of Action, for later adjudication.

12. <u>Additional Orders</u>. After the Effective Date, the Reorganized Debtors may present such Order(s) or assignment(s) to the Bankruptcy Court, for entry or approval and suitable for filing in the records of every county or governmental agency where the Vested Assets is or were located, which provide that such property is conveyed to and vested in the Reorganized Debtors. The Order(s) or assignment(s) may designate all Liens, Claims, encumbrances, or other interests which appear of record and/or from which the property is being transferred and assigned. The Plan shall be conclusively deemed to be adequate notice that such Lien, Claim, encumbrance, or other interest is being extinguished, and no notice, other than by the Plan, shall be given prior to the presentation of such Order(s) or assignment(s). Any Person having a Lien, Claim, encumbrance, or other interest against any Vested Assets shall be conclusively deemed to have consented to the transfer, assignment and vesting of such Vested Assets Free and Clear to the Reorganized Debtors; provided, however, nothing herein shall be

deemed to be a release of any Lien, Claim, encumbrance or other interest on, in or against property that is not a Vested Asset.

13. <u>Liquidating Trust Assets</u>. Except as otherwise set forth in the Plan or this Confirmation Order, on the Effective Date, (i) the Liquidating Trust Assets, other than the Liquidating Trust Assets set forth on **Exhibit <u>A</u>** (the "<u>Newco Assets</u>"), shall be transferred and assigned to the Liquidating Trust Free and Clear and (ii) the Newco Assets shall be transferred and assigned to Newco Free and Clear, but, in each case, subject to the Liquidating Trust's obligations under the Plan. The Debtors shall convey, transfer, assign and deliver the Liquidating Trust Assets to the Liquidating Trust Free and Clear and the Newco Assets to Newco Free and Clear. All proceeds received by Newco on account of the transfer, sale, assignment or other disposition of a Newco Asset (less (A) expenses of Newco incurred in connection with, or otherwise existing upon, the transfer, sale, assignment or other disposition of such Newco Assets, (B) expenses of Newco sufficient to perform its obligations under the terms of any agreement relating to the transfer, sale, assignment or other disposition of such Newco Assets, and (C) all amounts determined by the Liquidating Trustee to be maintained at Newco for the payment of anticipated expenses of Newco) shall be delivered to the Liquidating Trust for deposit into the General Account. Notwithstanding anything to the contrary in the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable), any claims, liabilities, and causes of action against the Debtors that are identified in the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable) shall be subject to the treatment set forth in the Plan or this Confirmation Order. Except as otherwise set forth in the Plan or the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable), from and after the Effective Date, the Liquidation Trust or Newco, as the case may

be, shall perform and pay when due liabilities under, or related to the ownership or operation of, the Liquidating Trust Assets, and Reorganized Debtors shall not be responsible for any such liabilities. For the avoidance of doubt, the Oil and Gas Interests (as defined in the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable)) subject to the matter described in item 5 to <u>Schedule 3.11</u> of the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable) shall be assigned to the Liquidating Trust or Newco (as applicable) Free and Clear.

14. <u>Liquidating Trustee and Liquidating Trust Committee</u>. Jeffrey Compton is hereby approved to serve as the Liquidating Trustee subject to the terms set forth in the Plan, including the Plan Supplement, and Liquidating Trust Agreement. The Liquidating Trustee is authorized to take the actions contemplated in the Plan, the Liquidating Trust Agreement, and this Confirmation Order. The Liquidating Trustee shall be permitted to pay his fees and expenses and the fees and expenses of his professionals for services rendered in connection with these Cases and the Liquidating Trustee's appointment under the Plan, the Liquidating Trust Agreement, and this Confirmation Order. Such payments shall be made by the Liquidating Trust from the Liquidating Trust Expense Reserve in accordance with the Liquidating Trust Agreement. To the extent he is appointed a member and/or officer of Newco, the Liquidating Trustee is authorized and empowered to take all actions necessary to engage in business, convert assets to cash, wind up the affairs, and otherwise operate Newco. Eric Seeve, Mardi de Verges, and James R. Latimer, III are hereby approved to serve on the Liquidating Trust Committee. If Eric Seeve resigns or is otherwise removed, Michael Linn shall be appointed to serve on the Liquidating Trust Committee to fill the vacancy created by Mr. Seeve's resignation or removal. If Mardi de Verges resigns or is otherwise removed, John Estes shall be appointed to serve on the

Liquidating Trust Committee to fill the vacancy created by Ms. de Verges' resignation or removal. If James R. Latimer, III resigns or is otherwise removed, an individual selected by the remaining members of the Liquidating Trust Committee shall be appointed to serve on the Liquidating Trust Committee to fill the vacancy created by Mr. Latimer's resignation or removal.

15. <u>Ad Valorem Tax Claims</u>**.** The Liens related to Ad Valorem Tax Claims shall be expressly retained by the holders of such Liens, with the same force, validity, priority, and effect, if any of such security interest and Lien, until such time as such Ad Valorem Tax Claims, including all taxes, penalties and interest, secured by those Liens have been paid in full. Pursuant to the terms of the Successful Stock Purchase Agreement and Back-Up Stock Purchase Agreement (as applicable), the Buyer shall pay all accrued Ad Valorem Tax Claims within five business days after the Effective Date (for such Ad Valorem Tax Claims related to taxes that are due or payable as of the Closing (the "<u>Accrued Tax Liabilities</u>")) or when due (for such Ad Valorem Tax Claims related to taxes that are not due or payable as of the Closing). The Successful Stock Purchase Agreement provides for a purchase price adjustment for the Accrued Tax Liabilities. The Ad Valorem Tax Claims shall be entitled to interest under Bankruptcy Code §§ 506(b) and 1129 from the Petition Date until such Claims are paid in full at the applicable statutory rate as mandated by Bankruptcy Code § 511. To the extent any Ad Valorem Tax Claims for 2009 are timely paid pursuant to applicable state law, they shall not be entitled to interest under Bankruptcy Code § 511. To the extent that no objection is filed to any particular Ad Valorem Tax Claim by the Claim Objection Deadline, such Ad Valorem Tax Claim shall be deemed Allowed. Inasmuch as the holders of such Ad Valorem Tax Claims are exempt from Federal taxation, they shall not be subject to the requirements regarding IRS Form W-9.

16.     <u>Liquidating Trust Expense Reserve, Carveout Reserve, and Senior Claim Distribution Reserve</u>.  On the Effective Date, the Liquidating Trustee shall deposit Cash from the Liquidating Trust Assets into (a) the Liquidating Trust Expense Reserve in the amount of $2,000,000, (b) the Carveout Reserve in the amount of $46,588,551, and (c) the Senior Claim Distribution Reserve in the amount of $21,696,820.  Those Cash deposits are necessary and appropriate to satisfy the obligations of the Liquidating Trust.

17.     <u>Settling Holders of M&M Secured Claims</u>.  The holders of M&M Claims identified on the list attached hereto as **Exhibit B** have made the election set forth in <u>Section 4.2(e)(i)</u> or <u>(e)(ii)</u> of the Plan and the Debtors and the Participating Second Lien Holders have consented to the holder of such M&M Claims making such an election.  Those Persons identified on <u>Exhibit B</u> shall be bound by <u>Section 4.2(e)(i)</u> and <u>(ii)</u> of the Plan, including the treatment and releases set forth therein.

18.     <u>Deemed Subclassification</u>.  Hughes Specialty Tools, Inc. and Knight Oil Tools, Inc. have cast a timely and otherwise proper Ballot to reject the Plan and have not made the election set forth in <u>Section 4.2(e)(i)</u> or <u>(ii)</u> of the Plan.  The Plan shall be deemed to be modified to classify such Persons in their own respective subclass to Class 5 for all purposes.

19.     <u>Assumption and Rejection of Executory Contracts and Unexpired Leases (11 U.S.C. § 1123(b)(2)</u>.

a.      On the Effective Date, the Desired 365 Contracts identified on the list filed at Docket No. 811 shall be deemed Assumed Contracts, and they shall be assumed by the applicable Debtor on the Effective Date and vested in the applicable Reorganized Debtor on the Effective Date.  The Cure Claims identified on the list filed at Docket No. 811 (as modified by

the Stipulations) shall be either paid by the Liquidating Trustee from the Carveout Reserve on or as soon as reasonably practicable after the Effective Date or the amount of Cash necessary to pay the entire amount identified on the list filed at Docket No. 811 (as modified by the Stipulations) shall be deposited and maintained in the Carveout Reserve pending the entry of an Order of the Bankruptcy Court determining the amount of the Cure Claim to which such cure amount relates. Each Assumed Contract assumed pursuant to this Confirmation Order shall vest in and be fully enforceable by Reorganized Debtors, except as modified by the provisions of the Plan. The amounts identified on the list filed at Docket No. 811 (as modified by the Stipulations) are in full and final satisfaction of all defaults, including arrearages, under the respective Assumed Contracts as of the Effective Date. On the Effective Date, with respect to the Assumed Contracts, all applicable requirements of Bankruptcy Code § 365 have been met, including the requirement that all defaults be cured, and that adequate assurance of future performance be provided. As of the Effective Date, the Liquidating Trustee, the Liquidating Trust, Newco, and the Estates shall be relieved and discharged from any liability whatsoever, whether arising before, on, or after the Effective Date, under the Assumed Contracts other than the Liquidating Trust's obligation to satisfy Cure Claims.

b.  Any provisions in any Assumed Contract that prohibit or condition the assignment of such Assumed Contract or allow the counterparty to such

Assumed Contract to terminate, recapture, impose any penalty, condition on renewal or extension, or modify any term or condition upon the assignment of such Assumed Contract, constitute unenforceable anti-assignment provisions that are void and of no force or effect. On the Effective Date, (a) the Assumed Contracts shall remain in full force and effect, and (b) no default shall exist under the Assumed Contracts nor shall there exist any event or condition which, with the passage of time or giving of notice or both would constitute such a default.

c.    Except to the extent (a) the Debtors previously have assumed or rejected an executory contract or unexpired lease, (b) prior to the Effective Date, the Bankruptcy Court has entered an Order authorizing the assumption of an executory contract or unexpired lease, or (c) the executory contract or unexpired lease is identified on the list filed at Docket No. 811, the Debtors' executory contracts and unexpired leases shall be deemed rejected on the Effective Date, pursuant to Bankruptcy Code §§ 365 and 1123.

20.    <u>Authority</u>. All actions and transactions contemplated under the Plan and by the Successful Stock Purchase Agreement and Back-Up Stock Purchase Agreement (as applicable), including but not limited to, the Transaction Documents and any documents executed in connection therewith or related thereto, and any certificates, agreements or other documents or instruments to be executed in connection with (a) the transfer, assignment, and vesting of the Vested Assets in the Reorganized Debtors, Free and Clear, and the release of all Liens, Claims, Causes of Action, and other interests, rights of setoff, restrictions or limitation on use, successor

liabilities, rights asserted in litigation matters, rights asserted in adversary proceedings in these Cases, competing rights of possession, obligations to lend, expenses, and charges, of any type under, among other things, any document, instrument, agreement, cause, cause of action, or state or federal law, except for Permitted Liens, (b) the issuance of the New Subsidiaries Equity Interests to Reorganized Crusader, and (c) the issuance of the New Crusader Shares to the Buyer, shall be authorized upon entry of this Confirmation Order without the need of further approvals, notices or meetings of the Debtors' directors, officers, managers, and/or members.

21.     The Debtors, Reorganized Debtors, the Liquidating Trustee, the Liquidating Trust, and Newco, as applicable shall be authorized upon entry of this Confirmation Order without the need of further approvals, notice, or meetings to take all steps necessary to wind down or terminate any plan that is tax-qualified under Section 401(a) of the Internal Revenue Code ("IRC") that contains a cash or deferred arrangement under Section 401(k) of the IRC that is maintained by the Debtors and to make any distributions or payments in connection with such winding down and termination.

22.     <u>Injunctions, Exculpation, and Releases</u>.  The discharge, injunctions, moratoriums, exculpations, limitations of liabilities, releases, and covenants not to sue as set forth in the Plan, including in <u>Article XVIII</u> of the Plan, are approved and authorized in their entirety.  Any causes of actions arising under, or in any way related to, the First Lien Documents are property of the Debtors' Estates, and by the terms of the release contained in <u>Section 18.6(a)</u> of the Plan, such causes of action, if any, are barred from being asserted in any manner by the Debtors, the Reorganized Debtors, the Buyer, the Liquidating Trustee, the Liquidating Trust, Newco, the holders of Claims against the Debtors, or the current or former holders of Equity Interests in the Debtors.  For the avoidance of doubt, causes of action against the First Lien Holders, if any, shall

be released by the Released Parties to the extent provided in <u>Section 18.6(a)</u> of the Plan and such causes of action are not retained by, or conveyed to, any party pursuant to the Plan or any Plan Document.

23.     <u>Exemption from Certain Taxes</u>.  In accordance with Bankruptcy Code § 1146(a), none of the issuance, transfer or exchange of any securities under the Plan, the release of any mortgage, deed of trust or other Lien, the making, assignment, filing or recording of any lease or sublease, the vesting or transfer of title to or ownership of any of the Debtors' interests in any property, or the making or delivery of any deed, bill of sale or other instrument of transfer under, in furtherance of, or in connection with the Plan, including the issuance and delivery of the New Crusader Shares and the releases of Liens contemplated under the Plan, shall be subject to any document recording tax, stamp tax, conveyance fee, sales or use tax, bulk sale tax, intangibles or similar tax, mortgage tax, stamp act, real estate transfer tax, mortgage recording tax, Uniform Commercial Code filing or recording fee or other similar tax or governmental assessment in the United States. Federal, state and/or local governmental officials or agents shall forgo the collection of any such tax or governmental assessment and to accept for filing and recordation any of the foregoing instruments or other documents without the payment of any such tax or governmental assessment.

24.     <u>Exemption from Securities Laws</u>.

a.     The Liquidating Trust Interests and the CCPR offered, sold, issued and/or distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act, are deemed to have been offered, sold, issued and distributed pursuant to Section 1145 of the Bankruptcy Code.  Pursuant to Section 1145 of the Bankruptcy Code, the exemption of the offer and sale

of securities from the registration requirements of the 1933 Act, and any state or local law requiring registration for the offer or sale of a security, applies with respect to the Liquidating Trust Interests and the CCPR distributed pursuant to the Plan, to the extent constituting securities under the 1933 Act. Without limiting the generality of the foregoing, (i) the offer, sale, issuance and distribution of the Liquidating Trust Interests and the CCPR to Claimants pursuant to the Plan are and shall be exempt from the requirements of Section 5 of the Securities Act and all securities laws of all applicable Governmental Authorities pursuant to Section 1145(a) of the Bankruptcy Code. The Liquidating Trust Interests and the CCPR issued pursuant to the Plan (to the extent the Liquidating Trust Interests and the CCPR constitute securities under the 1933 Act) shall be subject to the provisions of Section 1145(b)(1) of the Bankruptcy Code relating to the definition of an underwriter in Section 2(11) of the 1933 Act, and to compliance with rules and regulations of the SEC, if any, applicable at the time of any future transfer.

b.     The offer, sale, issuance and distribution (i) by Reorganized Crusader of New Crusader Shares to Buyer, (ii) by the Reorganized Subsidiaries of the New Subsidiaries Equity Interests to Reorganized Crusader and (iii) by Newco of the Newco Equity Interests to the Liquidating Trust, pursuant to the Plan are exempt from the requirements of Section 5 of the Securities Act and all securities laws of all applicable Governmental Authority pursuant to Section 4(2) of the 1933 Act.

25.     Second Lien Disclosures.   Pursuant to Bankruptcy Rules 1007(i) and Section 1142(b) of the Bankruptcy Code, (i) Wilmington Trust FSB, as administrative agent under the Second Lien Credit Facility, and each successor thereto (the "Second Lien Agent"), is hereby directed to disclose to the Liquidating Trust and Reorganized Crusader, within ten (10) calendar days after the Effective Date, the name and taxpayer identification or social security number of each Second Lien Holder and the principal amount of the Second Lien Notes attributable to each such Second Lien Holder, using the Effective Date as the record date, (ii) each Second Lien Holder is hereby directed to disclose to the Liquidating Trust and Reorganized Crusader, within twenty (20) calendar days after the Effective Date, the name of each Record Holder of the Second Lien Notes for whose benefit such Second Lien Holder holds Second Lien Notes and, to the extent available, the address, and taxpayer identification or social security number of each such Record Holder, and the principal amount of Second Lien Notes owned by each such Record Holder, using the Effective Date as the record date; and (iii) each Record Holder is hereby directed to disclose to the Liquidating Trust and Reorganized Crusader, within thirty (30) calendar days after the Effective Date, the lists of such Third Party Beneficial Owners in whose name the Second Lien Notes are registered with such Record Holder and, to the extent available, the name, address and taxpayer identification or social security number of each such Third Party Beneficial Owner and the principal amount of the Second Lien Notes owned by each such Third Party Beneficial Owner on whose behalf such Record Holder holds record title of the Second Lien Notes, using the Effective Date as the record date.  The directions contained above shall apply and be effective notwithstanding the provisions of Rule 14b-1 and Rule 14b-2 promulgated under the Securities Exchange Act of 1934, as amended.

26.     Cancellation of Securities.   On the Effective Date, in accordance with Section 1141(d)(1) of the Bankruptcy Code:  (i) all of the Equity Interests in the Debtors (including all Equity Interests of the Debtors held in treasury by any Debtor immediately before the Effective Date) and all rights of the holders of Equity Interests of the Debtors therein, (ii) all certificates that previously evidenced those Equity Interests and (iii) all other agreements heretofore binding upon the Debtors or their assets with respect to the Equity Interests of Debtors shall be deemed to be terminated, cancelled, extinguished, void, and of no further force or effect in accordance with the Plan without any action by the holders of such Equity Interests of Debtors, and no consideration shall be paid or delivered with respect thereto.

27.     Management of Reorganized Debtors.   The officers and directors (if applicable) of each Reorganized Debtor shall be as set forth in the Plan Supplement, commencing as of the Effective Date.

28.     Reservation of Rights.   Prior to the Effective Date, none of the filing of the Plan, any statement or provision contained herein or the taking of any action by the Debtors with respect to this Plan shall be or shall be deemed to be an admission or waiver of any rights of the Debtors of any kind, including with respect to the holders of Claims or Equity Interests or as to any treatment or classification of any contract or lease.

29.     Terms of Injunctions or Stays.   Except for Section 18.3 of the Plan, any injunction or stay arising under or entered during the Cases under Bankruptcy Code §§ 105 and 362 or otherwise that is in existence on the Confirmation Date shall remain in full force and effect until the later of the Effective Date and the Date indicated in the Order providing for such injunction or stay.

30.     Notice of Effective Date.  On or before five Business Days after the occurrence of the Effective Date, the Liquidating Trustee shall mail or cause to be mailed to all holders of Claims that are not Disallowed Claims via first class United States mail, postage prepaid, a notice that informs such Persons of (a) the entry of the Confirmation Order, (b) the occurrence of the Effective Date, and (c) such other matters as the Liquidating Trustee deems appropriate or as may be ordered by the Bankruptcy Court.

31.     Waiver or Estoppel.  Each Holder of a Claim or an Equity Interest shall be deemed to have waived any right to assert any argument, including the right to argue that its Claim or Equity Interest should be Allowed in a certain amount, in a certain priority, Secured or not subordinated by virtue of an agreement made with the Debtors or their counsel, or any other Person, if such agreement was not disclosed in the Plan, the Disclosure Statement, or papers Filed with this Court prior to the Confirmation Date.

32.     Non-Occurrence of Effective Date.  If Confirmation or Substantial Consummation do not occur, or if the Effective Date does not occur on or prior to 120 days after the Confirmation Date, then (a) the Plan shall be null and void in all respects, (b) settlements or compromises embodied in the Plan (including the fixing or limiting to an amount certain of any Claim or Class of Claims), assumptions or rejections of executory contracts or unexpired leases affected by the Plan, and any documents or agreements executed pursuant to the Plan, shall be deemed null and void, and (c) nothing contained in the Plan or the Disclosure Statement shall (i) constitute a waiver or release of any Claims by or against, or any Equity Interests in, the Debtors or any other Person, (ii) prejudice in any manner the rights of the Debtors or any other Person, or (iii) constitute an admission of any sort by the Debtors or any other Person.

33.     <u>References to Plan Provisions</u>.  The failure specifically to include or reference any particular provision of the Plan in this Confirmation Order shall not diminish or impair the effectiveness of such provision, it being the intent of the Bankruptcy Court that the Plan be confirmed in its entirety (except as otherwise modified in this Confirmation Order).

34.     <u>Reversal</u>.  If any or all of the provisions of this Confirmation Order are hereafter reversed, modified, or vacated by subsequent order of this Bankruptcy Court or any other court, such reversal, modification, or vacatur shall not affect the validity of the acts or obligations incurred or undertaken under or in connection with the Plan prior to the Debtors' receipt of written notice of any such order.  Notwithstanding any such reversal, modification, or vacatur of this Confirmation Order, any such act or obligation incurred or undertaken pursuant to, and in reliance on, this Confirmation Order prior to the effective date of such reversal, modification or vacatur shall be governed in all respects by the provisions of this Confirmation Order and the Plan or any amendments or modifications thereto.

35.     <u>Applicable Non-Bankruptcy Law</u>.  Pursuant to Bankruptcy Code §§ 1123(a) and 1142(a), the provisions of this Confirmation Order, the Plan, or any amendments or modifications thereto shall apply and be enforceable notwithstanding any otherwise applicable non-bankruptcy law.

36.     <u>Modification of the Plan Prior to Substantial Consummation</u>.  After the Confirmation Date and prior to Substantial Consummation of the Plan, the Plan Proponents may, under Bankruptcy Code § 1127(b), with the approval of Buyer if required by the Successful Stock Purchase Agreement or Back-Up Stock Purchase Agreement (as applicable), (i) amend the Plan so long as such amendment shall not materially and adversely affect the treatment of any holder of a Claim, and in the case of the First Lien Holders does not, in the sole discretion of the

First Lien Holders, alter their treatment or benefits under the Plan, (ii) institute proceedings in the Bankruptcy Court to remedy any defect or omission or reconcile any inconsistencies in the Plan, the Disclosure Statement, or this Confirmation Order, and (iii) amend the Plan as may be necessary to carry out the purposes and effects of the Plan so long as such amendment does not materially or adversely affect the treatment of holders of Claims or Equity Interests under the Plan; provided, however, prior notice of any amendment shall be served in accordance with the Bankruptcy Rules or Order of the Bankruptcy Court

37.      Conflicts between Plan and Confirmation Order.  If there is any conflict between the Plan (as supplemented by the Plan Supplement) and this Confirmation Order, the terms of this Confirmation Order shall control.

38.      Severability of Plan Provisions.  Each term and provision of the Plan, as it may be altered or interpreted, is valid and enforceable pursuant to its terms.

39.      Retention of Jurisdiction.  This Bankruptcy Court's retention of jurisdiction as set forth in Article XVIII of the Plan is approved.  Such retention of jurisdiction does not affect the finality of this Confirmation Order.  For the avoidance of doubt, the Bankruptcy Court shall retain jurisdiction over all pending matters, including adversary proceedings.

40.      Nonseverable and Mutually Dependent.  The provisions of this Confirmation Order are nonseverable and mutually dependent.

41.      Recordable Form.  This Confirmation Order shall be, and hereby is, declared to be in recordable form and shall be accepted by any filing or recording officer or authority of any applicable Governmental Authority for filing and recording purposes without further or additional orders, certifications or other supporting documents.  Further, the Bankruptcy Court authorizes the Reorganized Debtors, the Liquidating Trustee, the Liquidating Trust, and Newco,

as applicable, to file a memorandum of this Confirmation Order in any appropriate filing or recording office as evidence of the matters herein contained.

42. <u>Waiver of Stay</u>. Notwithstanding Bankruptcy Rules 3020(e), 6004(h), and 6006(d) and subject to the Successful Stock Purchase Agreement or the Back-Up Stock Purchase Agreement (as applicable), the Debtors, the Buyer and all other parties to transactions contemplated by the Plan shall be authorized to consummate the Plan and the transactions and transfers contemplated thereby immediately after entry of this Confirmation Order.

<b># # # END OF ORDER # # #</b>

Submitted By:

William L. Wallander, SBT #20780750
Richard H. London, SBT #24032678
Beth Lloyd, SBT #24060179
**VINSON & ELKINS LLP**
Trammell Crow Center
2001 Ross Avenue, Suite 3700
Dallas, Texas 75201-2975
Tel: 214.220.7700
Fax: 214.220.7716
bwallander@velaw.com; rlondon@velaw.com
blloyd@velaw.com

**COUNSEL FOR THE DEBTORS**

# EXHIBIT A

## Newco Assets

Debtors' interests (if any) in and under all properties and Contracts assigned or purportedly assigned pursuant to the following agreements:

| Assignment Documentation | Date of Assignment | Assignor | Assignee(s) |
|---|---|---|---|
| Assignment and Bill of Sale | 9-12-08 | Crusader Energy Group Inc., "successor in interest to Crusader Energy II, LLC, Crusader Energy III, LLC and Knight Energy Group, LLC" | LCB Resources<br>406 N. Main<br>Kingfisher, OK 73013 |
| Assignment and Bill of Sale | 9-12-08 | Crusader Energy Group Inc., "successor in interest to Crusader Energy II, LLC, Crusader Energy III, LLC and Knight Energy Group, LLC" | LCB Resources<br>406 N. Main<br>Kingfisher, OK 73013 |
| Assignment of Oil and Gas Leases | 8-25-08 | Crusader Energy Group Inc., "successor by merger to the interest of Crusader Energy II, LLC" | SouthStar Exploration, LLC<br>222 East Sheridan Ave., Ste 6<br>Oklahoma City, OK 73104<br><br>Biscuit Hill, LLC<br>5400 N. Classen Blvd.<br>Oklahoma City, OK 73118<br><br>Hanna Oil and Gas Company<br>P.O. Box 1356<br>Fort Smith, AR 72902<br><br>Klabzuba Royalty Company<br>P.O. Box 567<br>Prague, OK 74864<br><br>M&M Oil and Gas Properties, LLC<br>410 17th St., Ste 1150<br>Denver, CO 80202<br><br>The Reserve Petroleum Company<br>6801 N. Broadway<br>Oklahoma City, OK 73116<br><br>Klabzuba Brothers, LLC<br>P.O. Box 567<br>Prague, OK 74864<br><br>Yale Oil Association, Inc.<br>6 NE 63rd St., Ste 425<br>Oklahoma City, OK 73105<br><br>H. Huffman & Co.<br>301 NW 63, Ste 510<br>Oklahoma City, OK 73116 |

| Assignment Documentation | Date of Assignment | Assignor | Assignee(s) |
|---|---|---|---|
| | | | Klabzuba Exploration, LLC<br>P.O. Box 567<br>Prague, OK 74864<br><br>Joe Paul Klabzuba<br>P.O. Box 567<br>Prague, OK 74864<br><br>KP2 Holdings, LLC<br>2417 N. Hudson<br>Oklahoma City, OK 73103<br><br>Waller Resources, Inc.<br>2932 NW 122nd St, Ste 4<br>Oklahoma City, OK 73120 |
| Assignment of Oil and Gas Leases | 3-11-09 | Crusader Energy Group Inc., "successor to the interest of Crusader Energy Group, LLC" | SouthStar Exploration, LLC<br>222 East Sheridan Ave., Ste 6<br>Oklahoma City, OK 73104<br><br>Biscuit Hill, LLC<br>5400 N. Classen Blvd.<br>Oklahoma City, OK 73118<br><br>Hanna Oil and Gas Company<br>P.O. Box 1356<br>Fort Smith, AR 72902<br><br>M&M Oil and Gas Properties, LLC<br>410 17th St., Ste 1150<br>Denver, CO 80202<br><br>The Reserve Petroleum Company<br>6801 N. Broadway<br>Oklahoma City, OK 73116<br><br>Klabzuba Royalty Company<br>P.O. Box 567<br>Prague, OK 74864<br><br>Klabzuba Brothers, LLC<br>P.O. Box 567<br>Prague, OK 74864<br><br>Yale Oil Association, Inc.<br>6 NE 63rd St., Ste 425<br>Oklahoma City, OK 73105<br><br>H. Huffman & Co.<br>301 NW 63, Ste 510<br>Oklahoma City, OK 73116<br><br>BRMK Holdings, LLC<br>3405 Edloe #204 |

| Assignment Documentation | Date of Assignment | Assignor | Assignee(s) |
|---|---|---|---|
| | | | Houston, TX 77027<br><br>Klabzuba Exploration, LLC<br>P.O. Box 567<br>Prague, OK 74864<br><br>KP2 Holdings, LLC<br>2417 N. Hudson<br>Oklahoma City, OK 73103<br><br>Joe Paul Klabzuba<br>P.O. Box 567<br>Prague, OK 74864<br><br>Santa Rosa Resources, Inc.<br>1 Greenway Plaza, Ste 700<br>Houston, TX 77046<br><br>SWC Production, Inc.<br>210 Park Ave, Ste 2820<br>Oklahoma City, OK 73102<br><br>Waller Resources, Inc.<br>2932 NW 122nd St, Ste 4<br>Oklahoma City, OK 73120 |
| Assignment of Oil and Gas Leases | 2-13-09 | Crusader Energy Group Inc. | Cogent Exploration, Ltd. Co.<br>7025 North Robinson<br>Oklahoma City, OK 73116<br><br>Gunn Oil Company<br>P.O. Box 94903<br>Wichita Falls, TX 76307<br><br>Apollo Exploration, LLC<br>1415 23rd St<br>Canyon, TX 79015<br><br>SellmoCo, LLC<br>9300 N May, Ste 400-203<br>Oklahoma City, OK 73120 |
| Assignment of Oil and Gas Leases | 8-21-08 | Crusader Energy Group Inc. | Encore Operating, L.P.<br>777 Main St, Ste 1400<br>Fort Worth, TX 76102 |
| Assignment of Overriding Royalty Interest | 4-1-09 | Crusader Energy Group Inc., "successor in interest to Crusader Energy Group, LLC" | Von Netzer Inc.<br>11908 Camelot Pl.<br>Oklahoma City, OK 73120 |
| Assignment of Overriding Royalty Interest | 12-16-08 | Crusader Energy Group Inc. | Von Netzer Inc.<br>11908 Camelot Pl.<br>Oklahoma City, OK 73120 |
| Assignment of Overriding Royalty Interest | 12-23-08 | Crusader Energy Group Inc. | Von Netzer Inc.<br>11908 Camelot Pl.<br>Oklahoma City, OK 73120 |

| Assignment Documentation | Date of Assignment | Assignor | Assignee(s) |
|---|---|---|---|
| Assignment of Overriding Royalty Interest | 10-17-08 | Crusader Energy Group Inc. | Von Netzer Inc.<br>11908 Camelot Pl.<br>Oklahoma City, OK 73120 |
| Assignment of Overriding Royalty Interest | 10-23-08 | Crusader Energy Group Inc. | Von Netzer Inc.<br>11908 Camelot Pl.<br>Oklahoma City, OK 73120 |
| Assignment of Overriding Royalty Interest | 2-27-09 | Crusader Energy Group Inc. | Barbee Exploration, Inc.<br>301 S. Polk, Ste 450<br>Amarillo, TX 79101<br><br>Harlen C. Hood<br>720 Old Kent Rd<br>Amarillo, TX 79109<br><br>Vernon H. Robinett & Bettye Revocable Living Trust<br>3530 Bremond<br>Amarillo, TX 70109<br><br>LPGC Inc.<br>6300 Gainsborough<br>Amarillo, TX 79106 |
| Assignment of Oil and Gas Leases | 2-27-09 | Crusader Energy Group Inc., "formerly known as Knight Energy Group II, LLC" | Barbee Exploration, Inc.<br>301 S. Polk, Ste 450<br>Amarillo, TX 79101<br><br>Harlen C. Hood<br>720 Old Kent Rd<br>Amarillo, TX 79109<br><br>Vernon H. Robinett & Bettye Revocable Living Trust<br>3530 Bremond<br>Amarillo, TX 70109<br><br>LPGC Inc.<br>6300 Gainsborough<br>Amarillo, TX 79106 |
| Assignment of Oil and Gas Leases | 11-3-08 | Crusader Energy Group Inc. | PetroVen, Inc.<br>5930 West Parker Rd, Ste 800<br>Plano, TX 75093 |
| Assignment of Oil and Gas Leases | 10-17-08 | Crusader Energy Group Inc. | Chesapeake Exploration, LLC<br>OK 73154 |
| Assignment of Force Pooled Acreage | 4-1-09 | Crusader Energy Group Inc., "successor in interest to Crusader Energy Group, LLC" | Deep Basin 2007 Drilling Program, Limited Partnership<br>P.O. Box 15205<br>Amarillo, TX 79105 |
| Assignment of Overriding Royalty Interest | 10-17-08 | Crusader Energy Group Inc. | Thomas G. Wygant<br>100 Park Ave, Ste 604<br>Oklahoma City, OK 73102 |
| Assignment of Oil and Gas | 3-9-09 | Crusader Energy Group Inc., "formerly Crusader | Encore Operating, L.P.<br>777 Main St, Ste 1400 |

| Assignment Documentation | Date of Assignment | Assignor | Assignee(s) |
|---|---|---|---|
| Leases | | Energy Group, LLC" | Fort Worth, TX 76102 |
| Assignment of Oil and Gas Leases | 3-11-09 | Crusader Energy Group Inc., "formerly Crusader Energy Group, LLC" | Encore Operating, L.P. 777 Main St, Ste 1400 Fort Worth, TX 76102 |
| Assignment of Overriding Royalty Interest | 3-11-09 | Crusader Energy Group Inc., "formerly Crusader Energy Group, LLC" | Harlen C. Hood 720 Old Kent Road Amarillo, TX 79109<br><br>Vernon H. Robinett & Bettye Revocable Living Trust 3530 Bremond Amarillo, TX 70109<br><br>LPGC Inc. 6300 Gainsborough Amarillo, TX 79106 |
| Assignment of Oil and Gas Leases | 3-11-09 | Crusader Energy Group Inc., "formerly Crusader Energy Group, LLC" | Barbee Exploration, Inc. 301 S. Polk, Ste 450 Amarillo, TX 79101<br><br>Harlen C. Hood 720 Old Kent Rd Amarillo, TX 79109<br><br>Vernon H. Robinett & Bettye Revocable Living Trust 3530 Bremond Amarillo, TX 70109<br><br>LPGC Inc. 6300 Gainsborough Amarillo, TX 79106 |

Debtors' interest in and under all properties and assets related to the following Oil and Gas Leases:

| Date of Oil and Gas Lease | Lessor | Lessee | Recording Data |
|---|---|---|---|
| *John M. & Cindi Lou Marsden v. EBS Oil & Gas Partners LLC, Westside Energy Production Company, L.P., et al.* | | | |
| 4-25-2001 | John Michael Marsden Cindi Lou Marsden | Argyle Resources, Inc. | County: Denton (TX) Vol. 4845, Pg. 00943 |

## EXHIBIT B

## Section 4.2(e) Elections

| Vendor | Settlement Offer[1] |
|---|---|
| HALLIBURTON ENERGY SERVICES INC | 3,127,901 |
| W B SUPPLY COMPANY | 1,766,240 |
| GOOBER DRILLING LLC | 1,264,200 |
| TRINIDAD DRILLING LP | 1,098,741 |
| GREY WOLF DRILLING COMPANY LP | 1,073,945 |
| PATTERSON - UTI DRILLING COMPANY LLC | 1,063,616 |
| BAKER HUGHES BUSINESS SUPPORT SERVICES | 1,021,035 |
| PATHFINDER ENERGY SERVICES  INC | 996,770 |
| NABORS DRILLING USA  LP | 805,335 |
| LEAM DRILLING SYSTEMS  INC | 626,938 |
| QUANTUM DRILLING MOTORS | 540,979 |
| TURBO DRILLING FLUIDS INC | 520,295 |
| J & L OILFIELD SERVICES LLC | 459,413 |
| B J SERVICES COMPANY | 420,477 |
| KNIGHT OIL TOOLS INC | 408,433 |
| ATLAS TUBULAR LP | 327,253 |
| WEATHERFORD U S LP | 306,593 |
| VIKING PIPE & SUPPLY LLC | 246,499 |
| SMITH INTERNATIONAL INC | 232,694 |
| GREAT WHITE PRESSURE CONTROL LLC | 216,732 |
| ALLIANCE DRILLING FLUIDS | 164,646 |
| CHAMPION DRILLING FLUIDS INC | 164,372 |
| FLO CO2 | 152,550 |
| WESTERN HOT OIL SERVICE INC | 148,349 |
| BEST OILFIELD SERVICE INC | 139,698 |
| THOMAS PETROLEUM LTD | 107,181 |
| SUMMIT LAYDOWN SERVICES INC | 101,364 |
| J & L CEMENTING SERVICE LLC | 93,630 |
| VISION LIGHTING SYSTEMS | 81,185 |
| DURANGO SERVICES INC | 77,993 |
| WOOD GROUP PRESSURE CONTROL | 69,185 |
| SIVALLS  INC. | 59,400 |
| T 3 ENERGY SERVICES | 54,503 |
| PLASTER & WALD CONSULTING CORP | 50,597 |
| NABORS WELL SERVICES LTD | 46,379 |
| IMPACT CASING SERVICES  LLC | 42,203 |
| OTI OPERATING INC | 41,475 |
| IMPACT ENERGY SERVICES LTD | 38,986 |
| NEWPARK DRILLING FLUIDS LLC | 35,878 |
| KEY ENERGY FISHING & RENTAL SERVICES | 32,357 |
| TRES MANAGEMENT INC | 32,340 |
| MCGUIRE INDUSTRIES  INC | 30,516 |
| B&K GENERATOR RENTAL LLC | 29,673 |
| POLY PIPE INC | 27,510 |
| SUMMIT CASING EQUIPMENT | 25,262 |
| XCHEM | 20,666 |
| ASAP RENTALS LLC | 14,063 |
| SMITTY'S WELDING SERVICE INC | 12,091 |
| SPECIALTY RENTAL TOOLS & SUPPLY | 8,411 |
| B S & W SOLUTIONS LLC | 7,417 |
| WEATHERFORD ENGINEERED CHEMISTRY | 3,435 |
| HUGHES SPECIALTY TOOLS  INC. | 1,260 |
| | 18,438,665 |

(1) Offer based upon lower of Debtor's records or filed liens.